AFFIDAVIT OF ATF SPECIAL AGENT GLEN JORDAN

I, Glen Jordan, am a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) special agent assigned to the Little Rock office, state on oath:

1.      I was assigned to the Little Rock office beginning in June, 1987 and have continuously been assigned to the Little Rock office since that date. I was one of the principal investigators in the Mueller Family murder investigation. During the course of the investigation, the Little Rock ATF field office worked extensively with the Spokane, Washington ATF field office. James and Delvine Wanker, residents of Spokane, were identified as important witnesses in the course of the investigation. Daniel Lewis Lee made statements to the Wankers implicating himself in a murder, "down south" with the bodies being disposed, "in a swamp". The Mueller Family murder investigation received media coverage in the Spokane, Washington area because it was tied to white supremacist as were the bombing of Spokane's city hall and the kidnaping of a prominent Collville, Washington couple who were transported from Collville to Spokane during their kidnaping. The media in Spokane, Washington, identified the Wankers as potential witnesses. Agents investigating these matters were extremely concerned as the criminal organization responsible for the Mueller murders, the Spokane city hall bombing, and the Collville, Washington kidnapings had many associates in Washington and Idaho. It was determined that ATF should assist the Wankers in moving because of the possibility that their address was widely known and the Wankers relayed to ATF that they were in fear of harm. The Bureau Alcohol, Tobacco, Firearms and Explosives provided $50.00



GOVERNMENT
EXHIBIT
A

per day in subsistence pay for the four days the Wankers were moving. A copy of the request for advance of funds and report of expenditures is attached to this affidavit. I have requested that ATF record keepers review the records to determine if any other payments were made to either James Wanker or Delvine Wanker. No other payments were made. I had knowledge that some minimal assistance was given the Wankers at the time of the their move for security reasons. I had no knowledge of the details. I believe that at the time I advised other persons working on the investigation that small expenditures had been made to assist the Wankers in their move. I did not obtain a copy of the expenditure records at the time. The matter was minor and other matters so pressing that the attorneys and investigators prosecuting the case who had knowledge of the payment failed to consider the matter again until the issue was raised in post-trial pleadings.

2.      I have been requested to review the discovery material provided Defense counsel concerning Don and Vernon Ahrens. The Ahrens were interviewed on July 11, 1996, on March 26, 1997, and on January 21, 1999. In the first interview, the Ahrens fixed the date they had last seen the Muellers by referring to Mr. Mueller's inability to do an electrical job as Mr. Mueller planned to attend a gun show. In the last interview, the Ahrens were taken a calendar for January, 1996 in an effort to explicitly determine the last time they saw the Muellers alive. The interview was conducted by Aaron Duvall, Pope County Deputy Sheriff. A copy of the interview summary is attached. After reviewing the calendar the Ahrens fixed the last day they saw the Muellers as either January 3rd or 4th, 1996. I was unable to

locate a separate interview report for Maria Ahrens.

3.    I have reviewed the records of the interviews of Jeff Brown. I have conducted a computer search of the records by inserting the dates January 12, January 13, January 12, 1996 and January 13, 1996. Based upon this review I have been unable to find any indication in any of the numerous interviews of Mr. Brown which indicate that he thought Chevie Kehoe was at the Shadows Motel on either January 12, or January 13, 1996.

4.    I have reviewed the NCIC and ACIC printouts of Jack Price's criminal history. Mr. Price's criminal history is extensive. However, I can find nothing in either printout that indicates that Mr. Price was ever convicted of armed robbery or assault with a firearm. Mr. Price's NCIC printout indicates that he was once charged with armed robbery in Tennessee and once charged with assault with a firearm in California. However, the NCIC record does not indicate that Mr. Price was convicted of either of these offenses.

5.    Investigators made inquiries regarding obtaining DNA analysis of the hair found in the raid cap. I do not recall the details of the inquiry. However, I do recall that investigators were advised that DNA testing was not possible on that hair.

_Glen Jordan_

GLEN JORDAN, Special Agent,
Bureau of Alcohol, Tobacco, Firearms
and Explosives

COUNT OF PULASKI
STATE OF ARKANSAS

Subscribed and sworn before me this ___27th___ day of _November_ , _2006_ .

_Cherith L. Beck_

Notary Public

"NOTARY SEAL"
Cherith L. Beck, Notary Public
Pulaski County, State of Arkansas
My Commission Expires 6/2/2013

My commission expires:

_June 2, 2003_

10/02/2006 15:26  9032437645                ATF SPOKANE                PAGE  02

| DEPARTMENT OF THE TREASURY<br>BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>**REQUEST FOR ADVANCE OF FUNDS**<br>*(For Investigative Purposes)* | INVESTIGATION NUMBER<br><br>746010 97 0033 | | |
|---|---|---|---|
| AGENT CASHIER<br>BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>Seattle                    , FIELD DIVISION | SUB-VOUCHER NUMBER<br><br>746010-98-16 | | A10 |

### PART I - GENERAL INFORMATION

| SUSPECT'S NAME AND ADDRESS (Street, city, State and zip code) | FUNDS ARE<br>REQUESTED<br>DIRECTLY FROM<br>*(Check one)* | X | SUBCASHIER |
|---|---|---|---|
| | | | HQ CASHIER *(Chief)* |

#### FUNDS INTENDED USE

| FIREARMS<br>TITLE I / TITLE II | | ARSON / EXPLOSIVES | | INFORMANT/<br>INVESTIGATIVE | CONTROLLED<br>SUBSTANCE |
|---|---|---|---|---|---|
| SILENCERS | | ARSON | | INVESTIGATIVE EXPENSE | HEROIN |
| MACHINEGUNS | | HIGH EXPLOSIVES | | PURCHASE INFORMATION | COCAINE |
| STOLEN FIREARMS | | LOW EXPLOSIVES | x | INFORMANT SUBSISTENCE | CRACK COCAINE |
| RIFLES / SHOTGUNS | | BLASTING AGENTS | | NRT SUPPORT | MARIJUANA |
| PISTOLS / REVOLVERS | | DESTRUCTIVE DEVICE | | PEN REGISTER | METHAMPHETAMINE |
| SHORT BARREL FIREARMS | | ILLEGAL EXPLOSIVE DEVICE | | TITLE III | ALCOHOL / TOBACCO |
| OTHER (Explain) | | OTHER (Explain) | | OTHER (Explain) | OTHER (Explain) |

EXPLAIN/JUSTIFICATION

Subsistence for CI 134, covering 1/20, 1/21, 1/22, 1/23/98 at $50.00 per day.

### PART II - SUB CASHIER FUNDS REQUEST AND APPROVAL

In connection with the above investigation, I request that an advance of funds, in the sum of $ 200.00
be issued to me by the sub cashier to be used for confidential expenditures, the purchase of information, and/or the purchase of evidence.

| SPECIAL AGENT<br>Michael Sprenger | DATE<br>1/20/98 | TOTAL FUNDS EXPENDED IN THE CASE TO DATE<br>$ 8127.27 | | |
|---|---|---|---|---|
| GROUP SUPERVISOR OR RESIDENT AGENT IN CHARGE<br>Robert L. Harper | DATE<br>1/20/98 | AMOUNT APPROVED (Write out)<br>Two hundred and no/100 | $ | 200.00 |

### PART III - DISBURSEMENT / RECEIPT OF FUNDS

| SUB CASHIER OR ALTERNATE<br>Sheri Hamlin | DATE<br>1/20/98 | AMOUNT DISBURSED (Write out)<br>Two hundred and no/100 | $ | 200.00 |
|---|---|---|---|---|
| SPECIAL AGENT<br>Michael Sprenger | DATE<br>1/20/98 | AMOUNT RECEIVED (Write out)<br>Two hundred and no/100 | $ | 200.00 |

### PART IV - RETURN OF FUNDS AND/OR EXPENDITURE

| RECEIPT OF FUNDS (Signature of sub cashier/Alternate)<br>Sheri Hamlin | DATE<br>1/20/98 | AMOUNT OF FUNDS RETURNED<br>(Write out)<br>Zero and no/100 | $ | 0.00 |
|---|---|---|---|---|
| SPECIAL AGENT SIGNATURE<br>Michael Sprenger | DATE<br>1/20/98 | AMOUNT OF FUNDS EXPENDED<br>(Write out)<br>Two hundred and no/100 | $ | 200.00 |

### PART V - FLASHROLLS/EMERGENCY EXPENSE FUNDS

| SPECIAL AGENT IN CHARGE (Reviewed by) | DATE |
|---|---|
| CHIEF, SPECIAL OPERATIONS DIVISION (Approved by) | DATE |

ATF F 3220.3 (3-94) PREVIOUS EDITIONS ARE OBSOLETE

*U.S. GPO: 1994 301 551/00000*

10/02/2006  15:28  5093247645    ATF SPOKANE    PAGE  03

| DEPARTMENT OF THE TREASURY<br>BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>**REPORT OF EXPENDITURES**<br>(For Investigative Purposes) | INVESTIGATION NUMBER<br><br>746010 97 0033 | |
|---|---|---|
| **AGENT CASHIER**<br>BUREAU OF ALCOHOL, TOBACCO AND FIREARMS<br>Seattle _____, FIELD DIVISION | SUB-VOUCHER NUMBER<br><br>746010-98-16 | *A10* |

## ITEMIZATION

| DATE | EXPLANATION OF EXPENDITURE<br>(Explain exact nature of EXPENDITURE and results achieved; describe evidence purchased, including persons involved and any other pertinent remarks.) | AMOUNT EXPENDED |
|---|---|---|
| 01/20/98 | Subsistence for CI *134*  covering 1/20, 1/21, 1/22 and 1/23/98 @ $50.00/day.<br><br>(receipt attached.) | $200.00 |

| | DATE |
|---|---|
| SPECIAL AGENT<br>Michael Sprenger | 1/20/98 |
| GROUP SUPERVISOR OR RESIDENT AGENT IN CHARGE (Reviewed by)<br>Robert L. Harper | 1/20/98 |
| SPECIAL AGENT IN CHARGE (Approved by) | DATE |

| TOTAL OF ALL AGENT CASHIER EXPENDITURES TO DATE | AMOUNT |
|---|---|
| | $8327.27 |

ATF F 3220.2A (3-94)

COPY 1  SUB CASHIER

## DEPARTMENT OF THE TREASURY
### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## PAYMENT RECEIPT FOR INVESTIGATIVE EXPENSES, INFORMATION, AND/OR TREASURY CHECK

| DATE RECEIVED | RECEIVED FROM (Name and Title) |
|---|---|
| 012098 | Steve Gunderson S/A ATF |

| AMOUNT RECEIVED | AMOUNT RECEIVED (Written in Words) | |
|---|---|---|
| $ 200⁰⁰ | Two Hundred Dollars | AND 00 / 100 |

**METHOD OF PAYMENT**

[X] CASH    [ ] CHECK    [ ] MONEY ORDER

IF CHECK OR MONEY ORDER, SHOW NUMBER AND OTHER IDENTIFYING DATA

$50⁰⁰ per day for Jan. 20,21,22,23,1998

**INVESTIGATIVE EXPENSES**

[X] SUBSIS-TENCE    [ ] OPERATING EXPENSES    [ ] MISC. EXPENSES

| CASE NUMBER | RECEIVER'S PRINTED NAME AND SIGNATURE |
|---|---|
| 746010 97 0033 | X |

WITNESS (Name and Title)

ATF F 3251.1 (10-96) PREVIOUS EDITION IS USEABLE

## CRIMINAL INVESTIGATION DIVISION

## POPE COUNTY SHERIFF'S OFFICE

> **CASE NO:**        96-1003

> **CRIME:**          Homicide

> **DATE:**           1/22/99

> **DICTATED BY:**    Inv. Aaron Duvall

---

## INTERVIEW

Subjects interviewed are:

DON AHRENS and VERNON AHRENS
Co-Owners – Vernon's Auto Repair
3230 Bernice Avenue
Russellville, AR  72801
501-967-1515 (Business)

On Thursday, 1/21/99, at approximately 12:30 p.m. INVESTIGATOR DUVALL interviewed DON and VERNON AHRENS at their auto repair shop in Russellville, Arkansas.

DON and VERNON were shown a calendar of January 1996 in an effort to determine the last time they had spoken with BILL and NANCY MUELLER. DON and VERNON stated that to the best of their knowledge, BILL and NANCY MUELLER were at the auto repair shop on either Wednesday, 1/3/96, or Thursday, 1/4/96, to discuss plans for wiring DON's building on Monday, 1/8/96. DON stated that the evening following the MUELLERS' visit to the repair shop, BILL telephoned DON at his residence (501-331-2890). DON stated that BILL told him that he couldn't do the work on Monday, 1/8/96. DON and VERNON believe that BILL and NANCY were planning to attend a gun show the weekend prior to working on DON's building.

DON and VERNON stated that was the last time either of them had seen or spoken with BILL or NANCY MUELLER.