IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF / RESPONDENT |
| | ) | |
| | ) | |
| VS. | ) | Case No. 4:97-CR-00243(02) GTE |
| | ) | |
| DANIEL LEE LEWIS | ) | DEFENDANT / MOVANT |
| | ) | |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO MOTION PURSUANT TO 28 U.S.C. § 2255 TO
VACATE CONVICTION AND SENTENCE**

The United States, by Jane Duke, Acting United States Attorney, Dan Stripling, Assistant United States Attorney, and Gwynn X Kinsey, Jr., Trial Attorney, United States Department of Justice, submits this Supplemental Memorandum in Opposition to Daniel Lewis Lee's Motion pursuant to 28 U.S.C. § 2255 to vacate conviction and sentence. The Government draws the Court's attention to the following authorities decided after the Government filed its December 6, 2006, response to Lee's Section 2255 motion.

1. Lee has argued that his death sentence is unconstitutionally arbitrary and irrational in light of the life sentence Chevie Kehoe received. *See* Reply in Support of Section 2255 Motion at 2 n.1, 46 (citing *Getsy v. Mitchell*, 456 F.3d 575 (6th Cir. 2006), and *United States v. Littrell*, 478 F. Supp. 2d 1179 (C.D. Cal. 2007)). This claim fails in light of a recent Eighth Circuit decision, *see United States v. Johnson*, __ F.3d __, 2007 WL 2163002, at *4-5 (8th Cir. July 30, 2007), and also the *en banc* decision in *Getsy*, rejecting the panel's rationale and reinstating Getsy's death sentence, *see Getsy v. Mitchell*, __ F.3d __, 2007 WL 2118956, at *5-10 (6th Cir. July 25, 2007) (*en banc*). Any contrary ruling, whether as a finding of direct error or in connection with a finding of ineffective

assistance of counsel, would constitute a new rule barred by the *Teague v. Lane*, 497 U.S. 288 (1989), non-retroactivity doctrine, discussed *infra*.

2.  Lee has argued, in support of his claims of ineffective assistance of counsel, that the Confrontation Clause extends to penalty phase evidence offered to prove matters other than the defendant's death penalty eligibility.  Section 2255 Motion at 32-33.  As the Fifth Circuit recently made clear, however, such evidence, not offered to prove guilt or eligibility for the death penalty, is not subject to the Sixth Amendment's confrontation strictures.  *United States v. Fields*, 483 F.3d 313, 324-38 (5th Cir. 2007).  Any contrary ruling, whether as a finding of direct error or in connection with a finding of ineffective assistance of counsel, would constitute a new rule barred by the *Teague* non-retroactivity doctrine, discussed *infra*.

3.  Lee has raised, both as direct claims and in support of allegations of ineffective assistance, multiple challenges to the Federal Death Penalty Act, to the death penalty itself, and to the application of the death penalty in this particular case.  Section 2255 Motion at 28-29, 38, 39; Reply in Support of Section 2255 Motion at 42-49.  These assertions all fail in light of the First Circuit's recent decision in *United States v. Sampson*, 486 F.3d 13, 19-29 (1st Cir. 2007).  Any contrary ruling, whether as a finding of direct error or in connection with a finding of ineffective assistance of counsel, would constitute a new rule barred by the *Teague* non-retroactivity doctrine, discussed *infra*.

4.  In *Whorton v. Bockting*, 127 S. Ct. 1173 (2007), the Supreme Court found that the Confrontation Clause decision in *Crawford v. Washington*, 541 U.S. 36 (2004), dealing with "testimonial" hearsay, was a "new rule" barred from application on collateral review by the *Teague* non-retroactivity doctrine.  The Court further concluded that neither of the two exceptions to non-retroactivity applied, because *Crawford* was neither a "substantive" new rule nor a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."

*Bockting*, 127 S. Ct. at 1181 (internal quotations omitted).

As this reiteration of *Teague* makes clear, the Supreme Court continues to enforce the non-retroactivity doctrine as a clear limitation on the federal courts' collateral review authority. *Teague* thus bars each of Lee's claims previously discussed, and all of Lee's other direct claims of trial court error, each of which is premised on a new rule, as discussed in the government's Response to Lee's Section 2255 motion. Further, Lee proposes *Teague*-barred departures from existing law in connection with the following claims of ineffective assistance of counsel, in addition to the ineffectiveness assertions discussed *supra*: that (a) counsel's performance was deficient and prejudicial in failing to challenge the multiple killings aggravating factor, *see* Section 2255 Motion at 26-27; Reply in Support of Section 2255 Motion at 32-37; (b) counsel's performance was deficient and prejudicial in failing to challenge the pecuniary gain aggravating factor, *see* Section 2255 Motion at 27-28; and © counsel's performance was deficient and prejudicial in failing to challenge the instruction on the available sentencing options, *see* Section 2255 Motion at 29-31; Reply in Support of Section 2255 Motion at 37-41.

5. Lee maintains that his motion cannot be decided without first affording him an evidentiary hearing. Reply in Support of Section 2255 Motion at 6-7, 51-52. As the Supreme Court recently reiterated in the Section 2254 context, however, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.

These principles apply with at least as much force on Section 2255 review.  Section 2255 itself provides that a hearing should be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255, ¶2.  Under this standard, a federal court can have broader authority to deny a hearing than it would with regard to a similar claim raised on Section 2254 review:

> Unlike federal habeas corpus proceedings, a motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion, even though he could not similarly dispose of a habeas corpus petition challenging a state conviction but presenting identical allegations.

*Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977).

Under these standards, a federal prisoner is not entitled to a hearing simply because he raises claims of ineffective assistance of counsel that are refuted by the record.  *See United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836-38 (8th Cir. 2005).

6.    Similarly, Lee's emphasis of a recent mtDNA analysis of hair from the raid cap introduced into evidence, *see* Lee's July 18, 2007, Supplemental Memorandum, should be rejected without a hearing. Lee recognizes, as he must, that Ms. Beckett, now Ms. Taylor,  in her testimony and the attorneys for the government in their arguments made clear that the only proof they were presenting was that the hair was similar to that of Lee.  As Lee correctly notes this point was made at the time Ms. Beckett testified and at the time the issue was argued to the jury.

The government also notes that Lee greatly overstates the significance of the hair testimony. As set forth in earlier pleadings, the evidence against Lee was overwhelming. The proof that the hair found in the raid cap was similar to Lee's was not the crux of the government's case as Lee now asserts.

Lee also argues that his counsel was ineffective for failing to have a mitochondrial DNA analysis made of the hair. This argument assumes that mitochondrial DNA testing was available for this hair in 1998 at the time Lee's defense was being prepared. This assumption is unwarranted. As the affidavit of ATF agent Jordan shows, investigators made inquiry to determine whether DNA testing of the hair could be conducted[1]. Agents were advised that no nuclear DNA testing was available as the hair had no root. As to mitochondrial DNA testing, agents were advised that two centimeters of hair was required for the test. As Ms. Taylor's affidavit shows, if the agents contacted the Arkansas State lab, they were advised that no nuclear DNA testing could be conducted because the hair had no root and that in order for mitochondrial DNA testing a 2 cm length of hair was required. (Exhibit B) As the laboratory submission provided from Serology Research Institute shows the hair was approximately 11 millimeters i.e. 1.1 centimeters in length. Attached to this pleading as Exhibit C is a portion of the mitochondrial DNA sequencing protocol in effect at the Federal Bureau of Investigation Laboratory from May 1998 through June 1999. The protocol provided that approximately 2 centimeters of hair was to be used in determining the DNA sequencing. If agents made inquiries directly to the FBI laboratory, they would have been advised of the protocol. As the Affidavit of agent Jordan establishes the government sought to have DNA tests conducted on the hair but was thwarted when advised of the protocol in effect.

---

[1]Agent Jordan's affidavit will be Exhibit A to this submission. The affidavit is prepared. However, as the result of an error by the attorney for the government the affidavit was not signed before agent Jordan traveled out of the United States. Agent Jordan will return next week and the affidavit submitted at that time. The essence of the affidavit is that during trial preparation agents made a contact to determine whether the hair could be submitted for DNA testing and were advised that the hair was not suitable for either nuclear or mitochondrial DNA testing. The attorney apologizes to the court and counsel for any inconvenience caused by his failure to obtain agent Jordan's signature before he left on his trip.

Attached as Exhibits D and E are the affidavits of Dr. Terry Melton and Dr. Meghan E. Clement. As the affidavit of Dr. Melton shows the company for which she works began conducting mitochondrial DNA hair analysis in March of 1999. Until that time only one private forensic laboratory, that for which Dr. Clement works, was providing this service. As Dr. Melton affidavit shows prior to March of 1999 she worked at Penn State University where occasional mitochondrial DNA analysis for attorneys was performed. However the scientists at Penn State did not accept single hair case. As the affidavit of Dr. Clement shows the laboratory for which she works did perform mitochondrial DNA analysis on a single hair in 1998. However the protocol that laboratory was using at the time calls for the use of a 2 centimeter portion of hair. Any attorney seeking to obtain mitochondrial DNA testing of a single hair in 1998 would have been met with a protocol which required a 2 centimeter section of hair for testing to be conducted. As the section of hair at issue in this case was approximately half that amount, no attorney in 1998 can be faulted for failing to obtain a mitochondrial DNA test of an 11 millimeter hair.

Respectfully submitted,


JANE W. DUKE
ACTING UNITED STATES ATTORNEY



By:     */s/ Dan Stripling*
        DAN STRIPLING, AR BAR #74142
        Assistant U. S. Attorney
        P. O. Box 1229
        Little Rock,  AR  72203
        (501) 340-2600

        GWYNN X. KINSEY, JR.
        TRIAL ATTORNEY
        U.S. DEPARTMENT OF JUSTICE

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy was mailed on this 21st day of August, 2007, to:

David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042

Laurence E. Komp
Attorney at Law
P.O. Box 1785
Manchester, MO 63011

*/s/ Dan Stripling*
Dan Stripling