IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/ RESPONDENT

vs.                              NO: 4:97-CR-00243(02) GTE

DANIEL LEWIS LEE                                DEFENDANT/MOVANT

MOVANT'S SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF HIS
28 U.S.C. 2255 MOTION REGARDING THE DNA EXCLUSION

COMES NOW Daniel Lewis Lee ("Movant"), by his undersigned counsel, and

files this memorandum in support of his 28 U.S.C. § 2255 motion to vacate, set aside,

and/or correct his convictions and sentences of death.  Movant had previously filed an

exculpatory mtDNA result (ECF Doc. 1138 Exhibit 1) and a memorandum regarding the

same.  ECF Doc. 1139.  The Government responded not only to the mtDNA but to other

claims raised by Movant.  ECF Doc. 1145.

A.     **Death Penalty Arbitrary and Capricious**

Movant does not dispute the holding of the lower court decisions cited by the

Government.  However, Movant stands by *Furman v. Georgia*, 408 U.S. 238 (1972).

Movant notes that his case is easily distinguishable from that considered by the Eighth

Circuit in *United States v. Johnson*, 495 F.3d 951, 2007 U.S. App. LEXIS 18059 (8th Cir.

2007).  Unlike *Johnson*, Movant faced the identical jury as his co-defendant.  The same

jury inexplicably gave a life sentence to the more culpable actor, Mr. Kehoe.  According

to the Government's best case, Mr. Kehoe spear-headed, conceived of, orchestrated the

1

crimes at issue, and was unquestionably the hands on killer of Sarah Powell.[1]  This

irrational disparate treatment implicates arbitrariness and capriciousness as well as

*Enmund v. Florida*, 458 U.S. 782, 801 (1982).  *Enmund* provides "that the death penalty

is a disproportionate penalty for a defendant who is guilty of felony murder, but who did

not kill, attempt to kill, or intend or contemplate that a killing would occur." *Johnson*,

495 F.3d at ___, 2007 U.S. App. LEXIS 18059 at *12-*13.

Assuming without conceding that the *Teague* doctrine applies in the 2255 context,

the Government misapprehends the *Teague v. Lane*, 497 U.S. 288 (1989) doctrine as it

applies to this case.  Movant rests his arguments on *Furman*, a constitutional basis that

existed decades before his conviction became "final" under the finality definition applied

in the 2254 context.  *See Smith v. Groose*, 205 F.3d 1045, 1053-1054 (8th Cir. 2000)

(Rejecting *Teague* argument in 2254 case when claim relies on long standing United

States Supreme Court authority).  The fact that two inferior courts have refused to

recognize a *Furman* error in specific cases or situations by no means implicates *Teague*.

While it may color this Court's consideration of the merits, it does not impose a

retroactivity bar.

Whether Movant can prevail on the substance of his 2255 claim or not, the

disparity in sentence and the jury's findings are unquestionably relevant when assessing

prejudice for allegations related to ineffective assistance of counsel at the penalty phase.

Given the errors committed by his trial counsel – errors that allowed improper

aggravators to be considered – when the required resentencing or reweighing is

conducted, a sentence other than death is probable.

---

[1] In Movant's circumstance, his jury did not find that any act occurred with premeditation or substantial planning.  *See* Movant's Sarah Powell Verdict form p. 4, Movant's William Mueller Verdict form p. 5, Movant's Nancy Mueller Verdict form p. 4.

### B. Confrontation Clause violated

The Eighth Circuit addressed Movant's claim as plain error on direct appeal. In so doing, the Court found that it was error albeit not plain error. Movant's current allegation embraces this ruling but simply states that had counsel objected, a lower standard of review would have been applicable, and Movant would have prevailed. This Court is bound by the Eighth Circuit's finding that Movant possessed confrontation rights at the penalty phase. *United States v. Lee*, 374 F.3d 637, 649-650 (8th Cir. 2004).

*United States v. Fields*, 483 F.3d 313 (5th Cir. 2007), does not control. First, as previously noted, the Eighth Circuit herein found confrontation rights existed but that Movant could not demonstrate plain error. *Lee*, 374 F.3d 637, 649-650. Second, unlike *Fields*, Movant never received the required notice that evidence from his codefendant's sentencing would be used in support of non-noticed, non-statutory aggravators. Indeed, in Movant's case no determination had been made as to who would proceed to sentencing first until after a finding of guilt. Thus, according to *Fields*, Movant's rights were violated under the principles relied upon by the Fifth Circuit from *Williams v. New York*, 337 U.S. 241 (1949), and *Gardner v. Florida*, 430 U.S. 349 (1977).

Assuming without conceding that the *Teague* doctrine applies in the 2255 context, the Government again misapprehends the *Teague* doctrine. Movant rests his arguments on *Crawford*, a constitutional basis that existed before his conviction became "final" under the finality definition applied in the 2254 context. *See Smith*, 205 F.3d at 1053-1054. The failure of an inferior court to recognize a constitutional basis for an error in a

specific case does not implicate *Teague*. While it may color this Court's consideration of the merits, it does not impose a retroactivity bar.

### C.    Death Penalty Statute Unconstitutional

Movant has adequately briefed the alleged error and rests on his previous briefing. Assuming without conceding that the *Teague* doctrine applies in the 2255 context, the Government again misapprehends the *Teague* doctrine. Movant rests his arguments on a constitutional basis that existed before his conviction became "final" under the finality definition applied in the 2254 context. *See Smith*, 205 F.3d at 1053-1054. The failure of an inferior court to recognize the constitutional principles allegedly violated in Movant's case in a different case or situation by no means implicates *Teague*. While it may color this Court's consideration of the merits, it does not impose a retroactivity bar.

### D.    Government Misunderstands Teague doctrine

According to the Government, *Teague* bars 2255 review of many of the claims raised by Movant. Setting aside the suspension problems if this were indeed accurate, the Government misunderstands and misstates the *Teague*.

The Supreme Court has yet to resolve whether criminal rulings of any sort that a federal prisoner seeks to enforce in a 28 U.S.C. § 2255 petition are subject to *Teague*. As noted by Justice Brennan, the plurality *Teague* opinion leaves unsettled the question of the *Teague* doctrine's application to collateral review of federal-prisoner convictions and sentences under section 2255. *See Teague*, 489 U.S. at 327 n.1 (Brennan, J., dissenting). The Supreme Court summarized *Teague* as follows: "The non-retroactivity principle [in *Teague] prevents* a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v.*

4

*Bohlen*, 510 U.S. 383, 389 (1994) (emphasis in original).  Movant is neither a state prisoner nor is he challenging a state conviction in federal court.  Rather, he is a federal inmate challenging his federal conviction in federal court.  Thus, the comity interests (federal respect for state court judgments and the state's interests in finality) that fueled *Teague*, do not come into play in Movant's 2255 context.

*Teague* specifically defines finality as "pending on direct review or not yet final." *Teague*, 489 U.S. at 305, *quoting Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *Accord American Trucking Ass'n v. Smith*, 496 U.S. 167, 168 (1990) (plurality opinion) (new criminal decisions are fully retroactive to cases "pending on direct review, or not yet final" (emphasis added)).  "Not yet final" becomes seminal in Movant's circumstance because a 2255 motion is an integral part of a continuous criminal proceeding that is not yet final.  Indeed, Movant's current 2255 motion carries the same case number as the trial proceedings.  The same case number establishes the continuity of a not yet final criminal proceeding.[2]

Even if *Teague* applies, it is not applicable to Movant's claims of ineffective assistance of counsel.  Movant rests his claims on the principles of the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984), which existed well before Movant's trial.  Further, the underlying basis of each ineffectiveness claim existed well before Movant's trial:

1.     IAC for failing to object to a statutory aggravator not in existence at time of crime premised upon the *ex post facto* clause.  Indeed, the Government previously relied upon a distinguishable case that pre-dates the conclusion of Movant's original

---

[2]  Whereas in 2254 habeas proceedings, the warden substitutes for the state as the party; government and prisoner exchange places procedurally and in the case caption; and an entirely new case is opened and a new docket number is assigned.

appeal, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).  In *Higgs*, the Fourth Circuit did find an *ex post facto* violation, but found it harmless.  The *Higgs* decision and the Government's previous citation to it demonstrates the perfunctory nature of the Government's assertion of *Teague* and that *Teague* is not applicable.  *See Love v. Johnson*, 57 F.3d 1305, 1315 (4th Cir. 1995) (State's assertion of *Teague* "borders on the frivolous.")

2.      IAC for failing to object to the improper pecuniary gain aggravator is premised upon the principles enunciated by the Eighth Circuit in *United States v. Allen*, 357 F.3d 745 (8th Cir. 2004).  The Eighth Circuit decided *Allen* prior to the completion of Movant's original appeal.  In a ruling favorable in relation to the underlying allegation raised by Movant, the Eighth Circuit relied on principles and authority that existed prior to Movant's trial and his conviction.  *See Allen*, 357 F.3d at 750-751. *Allen* and the principles upon which it relies demonstrates the perfunctory nature of the Government's assertion of *Teague* and refutes that *Teague* is applicable

3.      IAC for failing to object to improper instruction regarding illusory alternative sentences is premised upon the principles enunciated in *Jones v. United States*, 527 U.S. 373 (1999).  *Jones* issued from the United States Supreme Court prior to Movant's trial and his conviction.  Thus, the *Jones* decision demonstrates the perfunctory nature of the Government's assertion of *Teague* and refutes any notion that *Teague* is applicable

### E.      Evidentiary Hearing

Movant disputes the Government's recitation of the standard to be employed, especially in the intimation that this Court is more restricted as to when to grant a

hearing, or has a broader basis to deny a hearing than in the 2554 context.  This is wrong as a matter of law.  When Congress passed the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Congress severely limited a federal district court's discretion to even grant an evidentiary hearing.  *See* 28 U.S.C. 2254(e)(2).  When Congress amended the 2254 procedures, no similar limitations were placed upon 2255 proceedings.  *See Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent, the Townsend standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the Townsend standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases.")  As a result, Movant's request is governed by *Townsend v. Sain*, 372 U.S. 293 (1963).

Contrary to the Government's suggestion, Movant has not requested an evidentiary hearing on the basis of conclusory allegations, rebutted by the record.  Rather, he has asserted the need for a hearing to resolve material issues of fact that are not challenged by the record or the supplemental materials which the Government has attached periodically.  Further, Movant should be given the opportunity to test the Government's proffered evidence and should immediately receive any and all *Jencks* materials from the collection of the additional materials.

Movant disputes that *Blackledge v. Allison*, 431 U.S. 63 (1977) allows this Court to rely on matters not in the record, personal recollections, to resolve Movant's 2255.  Unlike the guilty plea considered in *Blackledge*, Petitioner presents substantial allegations of Sixth Amendment violations of his right to effective counsel.  By nature, these allegations of error reach well beyond the consideration of a guilty plea as

considered in *Blackledge*, but reach to the subjective reasons for acts or omissions of trial counsel in Movant's case. *See Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (district court erred by denying evidentiary hearing on allegations of ineffective assistance that were neither inadequate on their face nor conclusively refuted by record); *Estes v. United States*, 883 F.2d 645, 649 (8th Cir. 1989)(same).

While expansion of the record is permitted under Rule 7 of the Rules Governing Section 2255 Proceedings Habeas Rule, Rule 7(b) "Type of Materials" does not expressly allow independent recollections to be considered. In any case, Rule 7(c) requires that "the judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness." Relying on recollections would circumvent Rule 7 and the mandatory opportunity provided Movant to challenge any additional material.

### F.    mtDNA excludes Movant

Movant has not overstated the significance of the hair evidence – Lee simply restated the Government's position as to the hair before Movant's jury. Movant agrees that the significance of the hair was exaggerated – but this original sin was committed by the government in successfully obtaining a conviction and a sentence of death. In rebuttal closing, the Government relied in large measure on "Danny Lee's hair." Tr. 7000. While the Government initially paid lip-service to the limited "similarity" scope of Ms. Bequette's testimony, the Government then went much further. Specifically, the Government argued "We recognize that [there might be out there somewhere another hair that could match], but here, I submit to you, the evidence establishes that was Danny Lee's hair." Tr. 7000-01. Thereafter, the Government again referred to it as "Danny

Lee's hair." Tr. 7005. This seized upon Bequette's previous testimony that the only reason she could not make an exact match is because there was no database to allow her to compare it to every hair in the world. (Tr. 3653). Thus, the Government's position was that it was a shortcoming of technology that limited the declaration of a conclusive match, inadequate database, when in reality existing technology could conclusively establish the incorrectness of the Government's testimony and arguments, and that the hair in the raid cap did not belong to Movant. In this circumstance and contrary to the Government's position, counsel are ineffective when they allow the Government to argue for a conviction and death sentence based upon an inaccuracy, when technology exists that would allow the inaccuracy to be revealed.

While protocols required an "approximate" length of 2cm for mtDNA testing, the affidavits established the technology did exist to allow the testing Movant argues his attorneys should have requested. As noted by the Government in the affidavit from Meghan Clement of LabCorp, "if mtDNA analyisis were requested on a hair less that 2cm in length, LabCorp would attempt the analysis only after obtaining permission from the submitting agency to consume the entire sample." ECF Doc. 1145 Ex. E. This is confirmed by the attached declaration of Brian Wraxall, Chief Forensic Serologist of Serological Research Institute. Unquestionably the technology existed to test a sample less than 2cm, however, the testing would consume the sample. Exhibit A pars. 4 and 8. Thus, the technology existed at the time of Movant's trial – the protocols did not reflect a limitation on the technology but a safeguard to protect the sample from being exhausted.

9

Respectfully submitted,

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490 (fax)
davidruhnke@ruhnkeandbarrett.com

-and-

/s/ Laurence E. Komp
Laurence E. Komp
Attorney at Law
P.O. Box 1785
Manchester, MO 63011
(636) 207–7330
(636) 207–7351 (fax)
lekomp@swbell.net

COUNSEL FOR MOVANT


CERTIFICATE OF SERVICE

Movant's counsel have filed this Supplemental Memorandum on today's date via ECF, thereby serving the United States and all parties.

/s/ Laurence E. Komp
COUNSEL FOR MOVANT


Electronically   Little Rock, Arkansas
filed:                      October 8, 2007

10