IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

vs.                          NO: 4:97-CR-00243(02) GTE
                             (Civil Case No. 4:06-CV-1608)

DANIEL LEWIS LEE                             DEFENDANT/MOVANT

## DECLARATION OF KEVIN McNALLY

Kevin McNally hereby declares, under penalties of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney and serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys responsible for the defense of capital cases in the federal courts. The Resource Counsel Project is funded and administered under the Criminal Justice Act by the Office of Defender Services of the Administrative Office of the United States Courts. I am also an experienced capital defense trial attorney and have tried numerous capital cases in both state and federal court.

2. Among its responsibilities, the Project monitors all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases. This effort includes the collection of data on the initiation and prosecution of federal capital cases and

practices in those cases.[1] I am in frequent contact with lawyers all around the country who are engaged in various stages of federal capital cases, from initial charging and during the authorization process, trial, appeal, post-conviction and clemency.

3.    I have been asked by the attorneys for Daniel Lee to offer my opinion on the jury-selection strategy employed by the trial lawyers in that case. In that regard, I have reviewed the affidavit of Mark Hampton, Esquire, which was filed in connection with the government's response to the 2255 motion brought on Mr. Lee's behalf. It is my further understanding that Mr. Hampton represented Mr. Lee's co-defendant, Chevie Kehoe. In his affidavit, Mr. Hampton states the following regarding his jury-selection strategy:[2]

> Selecting a jury with as many black jurors as possible was a strategic decision made by defense counsel. Jury consultant Bob Berry concurred in that strategy. Defense counsel felt this strategy was reasonable because (1) blacks are more likely than whites to discredit government testimony, (2) research of attitudes indicates that blacks are generally less likely to give the

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in the report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50.

[2]I am aware that Mr. Lee's trial counsel did not discuss jury-selection strategies in the affidavit he filed.

2

> death penalty, and (3) it was felt that blacks were less likely to give the death penalty than whites in this particular case.

Affidavit of Mark F. Hampton, filed 12/06/2006, at p. 2, ¶ 4.

4.      It is my opinion that selecting jurors strictly on the basis of racial stereotypes is not a reasonable, effective strategy in any case. Such a strategy has been held to be discriminatory and illegal whether engaged in by the prosecution or the defense. *Georgia v. McCollum*, 505 U.S. 42 (1992); *Batson v. Kentucky*, 476 U.S. 79 (1986). As the sole basis for a jury-selection strategy (as reflected in Mr. Hampton's affidavit), such an approach ignores the fact that all racial groups are composed of individuals with their own views and opinions on the death penalty and other topics. While it is possible to generalize that African-Americans, as a group, are more opposed to the death penalty than whites, as a group, there are many white jurors who would bring moderate punishment views to a capital case, just as there are many African-Americans who would bring strongly pro-prosecution/pro-death-penalty views to the process.

5.      In this case, I am advised, the two defendants on trial were alleged to hold white supremacist views and considered other races inferior. Those views, I am told, formed an important part of the government's case. It is always important that jurors be selected with care and that the race of the jurors not trump the individual views of the jurors on the death penalty and other case-related issues. Given the repugnant

views on race allegedly held by the two defendants on trial, it was even more important in this case.

6. It is my further understanding that defendant Lee bore Nazi tattoos on his body and that those tattoos (the ones on his neck) were visible to the jury throughout the trial and that the other tattoos were presented to the jury via photographs as deemed relevant to the charges.

7. It is my opinion, therefore, that any strategic decision made by defense counsel in this case to select a jury based on the race of the jurors fell below prevailing professional norms for the defense of a capital case. I am willing to testify to my opinions at any hearing in this matter.

KEVIN McNALLY

Dated:        September 17, 2008