# JOHN F. EDENS, PH.D.

67 W. Gaslight Place
The Woodlands, TX 77382
(281) 367-1198
edens@shsu.edu

1. I, John F. Edens, Ph.D., am a licensed psychologist in the state of Texas (license #3-1105) and a tenured faculty member in the Department of Psychology at Sam Houston State University (SHSU). I received my doctoral degree in clinical psychology from Texas A&M University in 1996, after which I completed a two-year post-doctoral fellowship in forensic psychology in the Department of Mental Health Law and Policy at the Louis de la Parte Florida Mental Health Institute at the University of South Florida. I have been a faculty member at SHSU since 1998.

2. I am professionally active in the field of forensic clinical psychology. For example, I am an associate editor both for the social science journal *Assessment* and the *American Psychology-Law Society News*, the official newsletter of Division 41 of the American Psychological Association. I am on the editorial board of several psychology-law journals (e.g., *Law and Human Behavior, Behavioral Science and the Law, International Journal of Forensic Mental Health*) and I serve as an ad hoc reviewer for numerous other social science journals (e.g., *American Psychologist, Journal of Personality Assessment, Psychological Assessment, Journal of Abnormal Psychology*). I have been conducting research in the area of aggression and violence risk since the mid-1990s and have published approximately 40 peer-reviewed journal articles, book chapters, and professional manuals related to forensic assessment generally, and more than 20 peer-reviewed journal articles and book chapters specifically concerning psychopathic personality disorder (psychopathy). At present, I am a co-investigator on a 3-year, $1.3 million research grant from the National Institute of Mental Health that is examining the role of psychopathy in the adjustment of prison inmates and substance abusers.

3. I am familiar with the published research literature regarding the Hare Psychopathy Checklist-Revised (PCL-R). I have used the PCL-R both in my clinical work, which includes conducting risk assessments on convicted sex offenders who are being evaluated for possible civil commitment in the state of Texas, and in my research, which has specifically examined the relationship between PCL-R scores and institutional misconduct in correctional settings. I have provided consultative services and training to legal, correctional, and mental health professionals regarding violence risk and the PCL-R. I also have testified as an expert witness concerning the use of the PCL-R in the assessment of violence risk before criminal courts in Texas. I believe the PCL-R is an instrument that can be helpful in making judgments regarding the likelihood of future violence in certain instances in which there is sufficient scientific support to justify its use.

4. I have been asked in this declaration to provide my opinion on questions relating to the PCL-R and the appropriateness of reliance on this instrument to predict an individual's future dangerousness in a United States prison. I have published several articles that bear on these questions (see footnotes), and have additional work in this area in press and under review at scientific journals. These articles offer a more detailed and expansive discussion of the points I make in this declaration.

5. The PCL-R was not designed to be a measure of violence risk per se. The PCL-R is a 20-item instrument intended to assess traits associated with the construct of psychopathy. Although higher PCL-R scores have been found to be associated with a higher likelihood of aggression in certain contexts (e.g., individuals in the community), the PCL-R has not been demonstrated to be a valid and reliable indicator of increased violence risk for all people in all circumstances. As such, blanket statements that persons who are more psychopathic are 'more dangerous' than non-psychopathic offenders are significant oversimplifications of what is known about the relationship between psychopathy and violence across various contexts.

6. I am aware of four published studies (two of which were co-authored by me) and one unpublished doctoral dissertation that specifically have examined the relationship between psychopathy scores and violent behavior in male U.S. prison inmates.[1] Although these studies have found some significant correlations between PCL-R scores and various measures of institutional adjustment (e.g., non-compliance, hostility), *not one* has reported a statistically significant relationship between psychopathy and acts of physical violence. Moreover, it is important to note that one of these research projects (Walters, Duncan, & Geyer, 2003) specifically studied a large sample of prison inmates in the U.S. Federal Bureau of Prisons and failed to find a significant relationship between psychopathy and acts of physical aggression. Thus, the claim that a high PCL-R score indicates a high risk of future violence in a federal prison runs counter to existing evidence that does not support such an assertion. I do not believe that one could ethically and responsibly make such an assertion in the face of the available research in this area.

7. In a recent article,[2] I discussed a case in which a prosecution expert witness relied on the PCL-R to support an assertion that the defendant was a psychopath who was highly likely to engage in future acts of violence, even if he were incarcerated in a maximum security prison for the remainder of his life. I concluded in that article that, given the absence of research support for such a claim, this use of the PCL-R was misleading and

[1]    Buffington-Vollum, J. K., Edens, J. F., Johnson, D. W., & Johnson, J. (2002). Psychopathy as a predictor of institutional misbehavior among sex offenders: A prospective replication. *Criminal Justice and Behavior, 29*, 497-511.

Edens, J. F., Poythress, N. G., & Lilienfeld, S. O. (1999). Identifying inmates at risk for disciplinary infractions: A comparison of two measures of psychopathy. *Behavioral Sciences and the Law, 17*, 435-443.

Kosson, D. S., Steuerwald, B. L., Forth, A. E., & Kirkhart, K. J. (1997). A new method for assessing the interpersonal behavior of psychopathic individuals: Preliminary validation studies. *Psychological Assessment, 9*, 89-101.

Walters, G., Duncan, S., & Geyer, M. (2003). Predicting disciplinary adjustment in inmates undergoing forensic evaluation: A direct comparison of the PCL-R and PAI. *Journal of Forensic Psychiatry and Psychology, 14*, 382-292.

Westendorf, M. J. (2002). *Disciplinary institutional infractions: The role of psychopathy*. Unpublished doctoral dissertation, MCP Hahneman University, Philadelphia, PA.

[2]    Edens, J. F. (2001). Misuses of the Hare Psychopathy Checklist-Revised in court: Two case examples. *Journal of Interpersonal Violence, 16*, 1082-1093.

ethically questionable. The incident described in my article occurred in approximately May 2000, in a case called *U.S. v. Haynes*. At the request of defense counsel in that case, I provided an affidavit summarizing the then-current empirical literature regarding the relationship between psychopathy and institutional violence. Like several other forensic psychologists recognized as experts in the area of violence risk assessment who also submitted affidavits in the case, I noted my concerns about the scientific propriety of using the PCL-R to identify individuals as likely to commit acts of violence in prison. Had I been asked for such an affidavit in 1998, I would have made substantially the same statements I made in 2000. The basis for my view on this issue has only been strengthened by subsequent studies since 1998 that have replicated the lack of a meaningful correlation between psychopathy and U.S. prison violence found in earlier studies.

8. I have also written about and conducted research on the prejudicial impact that the label 'psychopath' and its associated traits may have on laypersons. In a recent article,[3] my colleagues and I discussed the means by which testimony about psychopathy may bias jurors who are considering whether to impose a death sentence. For example, to the extent that an examiner's description of PCL-R data comports with and adds 'scientific' credibility to preconceived notions of violence potential and remorselessness, as well as bolsters the prosecution's description of the defendant as a 'cold-blooded' killer, it is difficult to imagine that such testimony would not have a significant effect on jurors.

9. Based on these concerns, my colleagues and I have conducted several recent experiments[4] that have examined the effects of labeling criminal defendants as exhibiting psychopathic traits. The typical format of these studies has been to present laypersons with case history information relevant to an offender's crime(s) and to then manipulate whether he is described during testimony as psychopathic or as non-psychopathic (e.g., not mentally disordered or as suffering from some other form of mental illness such as schizophrenia). Participants in these studies are then queried about their perceptions of the defendant and what sanctions they would support in his case. The general pattern of findings from these studies is that laypersons who hear a defendant being described as psychopathic subsequently expect him to be much more violent and dangerous in the future than do laypersons who are exposed to the same case information but hear the defendant described as being non-psychopathic. Moreover, when participants in these studies are asked whether a death sentence is appropriate given the facts of the case presented to them, it is not surprising that a much higher percentage of those who hear the defendant described as psychopathic believe the appropriate sentence for his crimes is

[3]   Edens, J. F., Petrila, J., & Buffington-Vollum, J. K. (2001). Psychopathy and the death penalty: Can the Psychopathy Checklist-Revised identify offenders who represent "a continuing threat to society?" *Journal of Psychiatry and Law, 29*, 433-481.

[4]   Edens, J. F., Colwell, L. H., Desforges, D. M., & Fernandez, K. (2003). *Psychopathy predicts death sentences in a mock murder trial.* Manuscript submitted for publication.

    Edens, J. F., Desforges, D. M., Fernandez, K., & Palac, C. A. (in press). Effects of psychopathy and violence risk testimony on mock juror perceptions of dangerousness in a capital murder trial. *Psychology, Crime, and Law.*

    Edens, J. F., Guy, L. S., & Fernandez, K. (in press). Psychopathic traits predict attitudes toward a juvenile capital murderer. *Behavioral Sciences and the Law.*

    Guy, L. S., & Edens, J. F. (2003). Juror decision-making in a mock sexually violent predator trial: Gender differences in the impact of divergent types of expert testimony. *Behavioral Sciences and the Law, 21*, 215-237.

death. For example, in one of these studies (Edens, Colwell, Desforges, & Fernandez, 2003), 38% of the study participants who were informed that the defendant was not mentally disordered supported death and 30% of those who were exposed to testimony that the defendant was schizophrenic supported death. In the condition in which the defendant was described as psychopathic, however, 60% supported a death sentence, even though all other facts of the case were held constant across the three types of testimony. It is also noteworthy that these differing rates of support for the death penalty were obtained even when the prosecution expert acknowledged that the defendant was at 'low' risk for engaging in future acts of violence. Given these findings, it seems very likely that the introduction of psychopathy testimony into actual trials could increase the probability that jurors would support capital punishment.

10. In conclusion, it is my opinion that it is not, and never has been scientifically or ethically defensible to make claims that an individual offender high in psychopathic traits is significantly more likely than the typical prison inmate to commit serious acts of violence in a U.S. prison, given the absence of a meaningful association between the PCL-R and U.S. prison violence. The minimal probative value of the instrument in this context, combined with its likely prejudicial impact on jurors, raise serious concerns about testimony based on the construct of psychopathy.

I declare under penalty of perjury that the foregoing is true and correct.


_____
John F. Edens, Ph.D

11/24/03
Date