IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF / RESPONDENT |
| | ) | |
| VS. | ) | Case No. 4:97-CR-00243(01) GTE |
| | ) | |
| CHEVIE KEHOE | ) | DEFENDANT / PETITIONER |

**UNITED STATES' OPPOSITION TO MOVANT CHEVIE O'BRIAN KEHOE'S
MOTION TO ALTER OR AMEND PURSUANT TO
RULE 59(e) AND 52(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The United States, by Jane W. Duke, United States Attorney, Dan Stripling, Assistant United States Attorney, and Gwynn X. Kinsey, Jr., Trial Attorney, United States Department of Justice, submits this Opposition to Movant Chevie O'Brian Kehoe's Motion to Alter or Amend Pursuant to Rules 59(e) and 52(b) of the Federal Rules of Civil Procedure.

1.      Petitioner asserts that as a result of a mistake made by the court in its August 28, 2008 opinion, this court should amend that opinion and grant relief pursuant to the Section 2255 petition.  For the reasons set forth herein, the motion should be denied, except as to inconsequential, insignificant findings.

2.      An amendment to a pleading shall "relate back" to the date of the original pleading only if the claim asserted in the original pleading and the claim asserted in the amended pleading arouse out of the same conduct, transaction, or occurrence. Fed.R.Civ.P. 15(c)(2). *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir. 1999). *See also Mayle v. Felix*, 545 U.S. 644, 649-50 (2005).

3.      Petitioner first alleges error in the court's finding that the "relation back" doctrine was inapplicable to the amended motion's assertion that "counsel's alleged failure to adequately

1

investigate or to seek forensic testing with respect to hair or fingerprint samples from other suspects (excluding Faron Lovelace), paint chips, duct tape, or "flex cuffs". (Opinion p. 19) The court's holding is correct as to hair or fingerprint samples from other suspects, paint chips except where those chips are "flex transferred to the duct tape", and the duct tape, except insofar as "flecks" were transferred to the duct tape.

At page 35 of the original motion, after discussion of trial counsel's failures in other areas, the motion states:

"Counsel was also ineffective for failing conduct (sic) an adequate investigation into Kehoe's innocence. *Wiggins v. Smith,* ___ U.S. ___ (2003). Specifically, counsel should have, but unreasonably failed, to do the following:"

Following this paragraph is a three page list of 38 numbered paragraphs. Paragraph 17 states:

"To conduct a forensic examination of the rocks, if they still exist, of flecks transferred to the duct tape to establish their likely origin."

The last paragraph of this section, i.e., the paragraph following the three page list, reads:

"Had defense counsel investigated these matters, it is alleged that valuable evidence supporting Chevie Kehoe's innocence would have been uncovered. There is no strategic or tactical basis for failing to do so. Further, but for counsel's lack of investigation, there is a reasonable probability that the result of this trial would have been different. Prejudice under *Strickland* is thus also present." (Original petition p. 39)

The original petition referred only to "a forensic examination of the rocks" and "flecks transferred to the duct tape to establish their likely origin".

In the amended motion, at pages 45 and 46, in paragraph D.45 the amended motion states:

D.45. Trial counsel did not seek forensic examination of the duct tape or the paint chips found stuck to the duct tape. In the Summer and Fall of 1995, Kirby Kehoe possessed and drove the blue pick-up from which the paint chips allegedly originated. Trial counsel failed to investigate other sources of the paint chips. It was known that this particular model of the blue pick-up had an inherent problem due to a manufacturing defect - chronic peeling paint. Trial counsel failed to investigate other pick-ups of that model registered in the Russellville

area.

Insofar as paragraph D.45 of the amended petition refers to forensic examination of the duct tape or the paint chips found stuck to the duct tape, the government concedes that the issue was raised in the original petition. Insofar as that paragraph raises the spectrum of Kirby Kehoe's possession and use of the pick-up, that the particular model of the pick-up had an inherent "peeling paint" problem, and that other pick-ups of that model were registered in the Russellville area, the government continues to maintain that these issues were not raised in the original petition.

The government remains at a loss to understand how an examination of "flecks transferred to the duct tape to establish their likely origin" was not fully investigated by Kehoe's trial counsel and fully vetted at trial. At trial the government presented proof comparing the paint found on the tape which taped the Mueller bodies to rocks with paint on the vehicle being driven by Kehoe at the time. In response to that testimony Kehoe's trial counsel called as an expert witness James Corby (TR 6107-6129). Mr. Corby testified as an expert witness in an effort to discredit the government's proof regarding the connection between "flecks" on the tape and the paint on the truck. This testimony establishes beyond any doubt that Kehoe's trial counsel were well aware of the significance of the issue and did everything possible to blunt the government's proof.

As noted earlier, the original petition raised the issue "To conduct a forensic examination of the rocks, if they still exist, of flecks transferred to the duct tape to establish their likely origin." Clearly trial counsel considered this issue and did all that was possible to protect Kehoe's interest.

As to the allegation in the amended motion, i.e. "In the Summer and Fall of 1995, Kirby Kehoe possessed and drove the blue pick-up from which the paint chips allegedly originated. Trial counsel failed to investigate other sources of the paint chips. It was known that this particular model

of the blue pick-up had an inherent problem due to a manufacturing defect - chronic peeling paint. Trial counsel failed to investigate other pick-ups of that model registered in the Russellville area.", the issue was never raised in the original petition.

4.     In paragraph 4 of his motion Kehoe asserts error in the court's finding that the amended petition allegation of error in that trial counsel failed to inquire about specific race bias was time barred because it was not pled in the original petition. (Opinion p. 20, paragraph 4) The government concedes that this issue was raised in the original petition as asserted in the motion. (Original motion p. 35) The government recognizes that it erred in its response to the amended motion in that the government contended the issue was not raised in the original petition. The government apologizes to the court and counsel for its oversight in the review of the original petition.

As noted in the government's response to the amended petition, the issue of racial bias was raised in a dramatic way during voir dire. (TR. 252-255) Given that the issue of racial bias was raised by trial counsel, while movant's 59(e) motion correctly notes the error in the court's finding that the issue was not raised in the original petition, the issue presented is meritless.

5.     In paragraph 5 of his 59(e) motion Kehoe asserts error in the court's finding that trial counsel's alleged failure to adequately cross-examine Cheyne Kehoe was not raised in the original petition. In support of this assertion Kehoe references paragraph 6, page 36, of the original motion. This paragraph reads:

> "To investigate and examine discrepancies, contradictions and omissions between Gloria's and Cheyne's initial taped interviews and their testimony at trial, including, but not limited to, Gloria's assertion that Chevie and Danny waited around a few days after the murders for media reaction - a comment the defense did not bring up at trial."

The amended motion speaks at length of the failure to adequately cross-examine Cheyne. At pages 32-34 the amended motion states:

C.1. Trial counsel's cross-examination of Cheyne Kehoe and lack of cross-examination strategy constituted ineffective assistance of counsel.

C.2. Cheyne Kehoe, like Gloria, was a key witness for the Government. Like Gloria, Cheyne gave testimony alleging that Movant spontaneously volunteered his participation in the murders of the Muellers. Cheyne's prior statements, however, contained information not known to the general public, such as details regarding the Mueller house, how the bodies were bound and bagged, and the importance of the blue paint chips. Cheyne's prior statements contained inconsistencies and qualified answers. In giving his prior statements, Cheyne often built upon the investigator's questions in a give-and-take manner.

C.3. Trial counsel were ineffective in failing to adequately cross-examine Cheyne Kehoe. Trial counsel failed to effectively cross-examine Cheyne Kehoe. Trial counsel failed to effectively cross-examine him regarding his knowledge of the blue paint chips, how he knew to bring chips to law enforcement when he turned himself in and of the Mueller home. Trial counsel failed to cross-examine Cheyne regarding his relationship with Faron Lovelace. Cheyne and Mr. Lovelace were friends and it was through Cheyne that Movant met Mr. Lovelace. Trial counsel were ineffective in failing to adequately cross-examine Cheyne on his whereabouts from January 11 to 15, 1996, and after January 22, 1996.

C.4. Cheyne and Gloria's testimony corroborated each other and the performance of defense counsel in cross-examining Cheyne was deficient in several ways, all of which prejudiced Movant. Trial counsel failed to properly impeach Cheyne with his prior statements and testimony made under oath. E.g. *Driscoll v. Delo*, 71 F.3d 701, 710-11 (8th Cir. 1995); *see* also *Hadley v. Groose*, 97 F.3d 1131, 1136 (8th Cir. 1996).

C.5. Such failures by trial counsel constituted deficient performance because any objectively reasonable cross-examination would have included extensive impeachment of Cheyne with his prior statements and testimony, and would have explored each of the matters identified above.

C.6. As a whole, trial counsel erred by failing to conduct a focused cross-examination based upon reasoned strategy. As discussed, the evidence presented at trial was not overwhelming. Proper cross-examination and impeachment of Cheyne would have substantially impugned his credibility and therefore, the integrity of the Government's case.

C.7. But for trial counsel's deficient cross-examination and other failures, there is a reasonable probability that the outcome of his trial would have been different. Therefore, Movant is entitled to relief.

C.8. To the extent that trial counsel's failure to cross-examine flowed from a failure to investigate or failure to present witnesses, trial counsel were ineffective in failing "to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *Henderson,* 926 F.2d at 711.

The original motion refers only to trial counsel's alleged failure to investigate and examine discrepancies, contradictions and omissions between Cheyne Kehoe's initial taped interviews and his testimony at trial. Cross-examination of Cheyne Kehoe, as such, is not mentioned.

This section of the amended motion commences with an allegation of "lack of cross-examination strategy". Surely a broad based, far reaching allegation of trial counsel ineffectiveness for failing to have a cross-examination strategy does not relate back to an allegation of failure to properly investigate and examine discrepancies.

The government recognizes that the original petition raised the issue whether trial counsel was deficient in failure to investigate alleged discrepancies between Cheyne Kehoe's interviews and his testimony. However, that issue is far different than a wide ranging assault on the scope and nature of Cheyne Kehoe's cross examination. Insofar as the court found that trial counsel's alleged failure to adequately cross-examine Cheyne Kehoe was not raised in the original petition, the finding is correct. The conduct, transaction, or occurrence to which the original petition refers is in no way a general assault on the entire trial counsel cross-examination of Cheyne Kehoe.

## CONCLUSION

For the reasons stated above, Kehoe's 59(e) motion should in most respects be denied. As to those allegations where the amended section 2255 motion alleged error which arose out of the same conduct, transaction, or occurrence alleged in the original petition, the amended Section 2255 motion allegation is clearly meritless.

Respectfully submitted,

JANE W. DUKE
UNITED STATES ATTORNEY


By:    */s/ Dan Stripling*
DAN STRIPLING, AR BAR #74142
Assistant U. S. Attorney
P. O. Box 1229
Little Rock,  AR  72203
(501) 340-2600


## CERTIFICATE OF SERVICE

I certify that a copy was mailed on this 20th day of October, 2008, to:

T. Clifton Harviel
50 N. Front Street, Suite 850
Memphis, TN 38103

David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042

Laurence E. Komp
Attorney at Law
Post Office Box 1785
Manchester, MO 63011


*/s/ Dan Stripling*
Dan Stripling