IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PLAINTIFF |
| | ) | |
| VS. | ) | Case No. 4:97-CR-00243(02) GTE |
| | ) | |
| DANIEL LEWIS LEE | ) | DEFENDANT |

**GOVERNMENT'S RESPONSE TO SWORN STATEMENT/DECLARATION OF
DANIEL LOUIS LEE IN SUPPORT OF MOVANT'S
MOTION FOR RECONSIDERATION**

The United States, by Jane W. Duke, United States Attorney, Dan Stripling, Assistant

United States Attorney, and Gwynn X Kinsey, Jr., Trial Attorney, United States Department

of Justice, for its Response to Sworn Statement/Declaration of Daniel Louis Lee in Support

of Movant's Motion for Reconsideration states:

**I.      LEE'S AFFIDAVIT, WHICH HE SUBMITS IN SUPPORT OF HIS
RULE 59(E) MOTION, IS FURTHER INDICATION THAT THE
MOTION IS A SUCCESSIVE 2255 APPLICATION THAT THE
EIGHTH CIRCUIT MUST CONSIDER IN THE FIRST INSTANCE.**

As the noted in the government's opposition to Lee's motion to alter and amend

judgment pursuant to Fed. R. Civ. P. 59(e), the motion is a successive application for Section

2255 relief, and thus it must be considered in the first instance by the Eighth Circuit, and not

by this Court.  18 U.S.C. § 2255(h); Rule 9 of the Rules Governing Section 2255 Proceedings

for the U.S. District Courts; *see Gonzalez v. Crosby*, 545 U.S. 524, 526-38 (2005).  This is

true because the allegations of Lee's Rule 59(e) motion clearly "assert, or re-assert, claims

1

of error in the movant's . . . conviction" and thus constitute second or successive collateral review claims and not a true basis for post-judgment relief. *Gonzalez*, 545 U.S. at 538. That Lee also challenges the Court's denial of an evidentiary hearing on his claims does not entitle him to pursue relief in this Court pursuant to Rule 59(e); ultimately, Lee's assertions all concern this Court's "previous resolution of a claim *on the merits*," and not any erroneous "failure to reach the merits," "fraud on the federal habeas court," or similar "defect in the integrity in the habeas proceedings." *Gonzalez*, 545 U.S. at 532 & nn.4, 5, 538.[1]

Lee's present affidavit underscores that he is pressing successive, substantive claims for collateral relief that can be reviewed only with authorization by the Eighth Circuit in accordance with Section 2255(h). As Lee acknowledges on page four of his affidavit, the factual material that he alleges "supports my IAC [ineffective assistance] claims and questions evidence used against me at trial." Lee also raises claims of violations of *Brady v. Maryland*, 373 U.S. 83 (1963), which are self-evidently substantive, successive claims for collateral relief. Affidavit, page 5.

For all of these reasons, Lee's Rule 59(e) motion and supporting affidavit must be

---

[1]According to Lee, there is no authority for treating a prisoner's Rule 59(e) challenge to a denial of an evidentiary hearing as a successive collateral review application. However, in *Williams v. Norris*, 461 F.3d 999, 1004 (8th Cir. 2006), the Eighth Circuit rejected Williams's assertion that his Rule 59(e) motion was proper because it "challenged deficiencies in the habeas proceedings rather than directly attacking his underlying conviction and sentence." Significantly, among the arguments contained in Williams's Rule 59(e) motion was that the federal district court had the "authority and the duty to ensure that Mr. Williams receives a full and fair hearing of his federal constitutional claims." Petitioner's Motion to Alter or Amend Judgment or, in the Alternative, For Relief From Judgment, filed in *Williams v. Norris*, Case No. 5:02CV00296GH (E.D. Ark. filed July 26, 2004) (copy of the motion is attached as Exhibit 1).

dismissed or transferred to the Eight Circuit for resolution.  Nevertheless, in compliance with the Court's December 17, 2008, order, the government also provides the following response to the factual allegations of Lee's affidavit.

### II.    OLD TOWN, IDAHO (ALBANY FALLS MINI-STORAGE) SEARCH

Responding to Mr. Lee's allegations is difficult as the allegations have no basis in fact. ATF Agent Farnsworth was involved in the Thompson Falls Montana search, not the Old Town search. No FBI agents were involved in either search. Neither search was videotaped. Serial numbers on locks were not mentioned in testimony or reports.  All trial transcripts were made available to Lee's attorneys.

On December 8, 1998 (Hearing on Motions, Vol. II) a hearing was held regarding the Albany Falls mini-storage (Old Town) search. The government's theory was that the property found in the storage unit (unit no. 6) had been abandoned. The only witness called at the hearing was Arnan McCullough. (Hearing transcript 286-308)[2]

Mr. McCullough testified that he was the manager of Albany Falls mini-storage. (TR. 286) He had taken over management from an older gentleman who was a poor record keeper. (TR. 287-288). The only information he had regarding unit 6 was that the previous manager thought it had been rented by someone named Gomme. (TR. 289). No one made payments on the unit after May, 1997 when Mr. McCullough took over management.  (TR 289). The

---

[2]Some confusion may result from the fact that immediately following this hearing a hearing was held regarding the suppression of the evidence found at the Thompson Falls search. Agent Farnsworth was the first government witness testifying about the Thompson Falls search. (TR. 309)

existing record showed no payments after March 1996. (TR. 290) During the summer of 1997 the owners of the property decided to cut the lock on the unit and place their own lock on the unit. (TR. 290-291) Mr. McCullough saw the items inside the unit when this was done. This included gun parts, various magazines, fertilizer, a fire hydrant, and display cases. (TR. 292-293) Magazines were reviewed and the name Katrina Gumm was identified.[3] No contact was made with authorities. The owners of the property put their lock on the unit after cutting the first lock. (TR. 294) On April 16, 1998, approximately nine months after the owners had placed their lock on the unit, ATF Agent Springer and another ATF Agent searched the unit. (TR. 295) Some property was seized. The agents made arrangements to return after ATF agent Glenn Jordan, who was more familiar with the case, could join them. At the time of the first search Mr. McCullough provided the agents another lock which had just one key. Between searches agents locked the unit using this lock and kept the key. (TR. 296) The agents returned, this time with ATF agent Jordan, and conducted a second search on April 21, 1997. (TR. 297-298) Agents again seized property from the unit. Agents also made arrangements for Gloria Kehoe, Chevie Kehoe's mother, to return to the unit to retrieve personal items. This she did the next day. (TR. 298-299) Thereafter Mr. McCullough "spent about two days either hauling it (the remains in the unit) to the damp or burning it. It was mostly junk." (TR. 299) He donated the fire hydrant to the city. (TR. 300)

Trial testimony regarding the Old Town storage unit search commenced on Thursday,

---

[3]Katrina Gumm is Chevie Kehoe's wife's maiden name. (TR. 293)

March 25, 1999 (Volume 18) and continued on Monday, March 29, 1999 (Volume 19). This testimony followed testimony regarding the Thompson Falls Montana search, another possible cause of Lee's confusion. On the morning of Thursday, March 25th agent Farnsworth continued to be cross-examined regarding his March 6, 1998 search of the Thompson Falls unit. (TR. 3419)[4] Later that day the first witness, George Robbins, testified regarding the Old Town search. Mr. Robbins was manager of the storage unit prior to Mr. McCullough. (TR. 3447-3451) After Mr. Robbins' testimony, Mr. McCullough testified consistently, but in truncated form, with his prior hearing testimony. (TR. 3451-3454) Mr. McCullough testified "I guess I threw it (referring to the owner's lock on the storage unit) inside there" when explaining that he had replaced the lock on the unit with the owners lock. (TR. 3453)

Following Mr. McCullough's testimony two witnesses helped "trace" items found in the Old Town storage unit to Bill Mueller. (TR. 3454-3470) One of these witnesses, Mary Dodd, identified the display cases having been purchased by Mr. Mueller. (TR. 3455)[5] Agent Springer then commenced his lengthy testimony. (TR. 3471-3523) During the course of that testimony agent Springer was questioned regarding the lock which Mr. McCullough had cut off the storage unit. He did not recall exactly when Mr. McCullough provided the lock but testified "I believe the lock might have been on the inside of the storage facility Mr.

---

[4]Mr. Farnsworth's testimony had commenced late on the afternoon of Wednesday, March 24th. (Volume 18, TR. 3376)

[5]Lee's fingerprint was on one of the display cases.

McCullough attached his own lock to. Cut the lock that was on it off and placed it inside the storage facility." (TR. 3520-21) Agent Springer testified that Mr. McCullough told agent Springer that the lock agent Springer retrieved was the one which Mr. McCullough had cut from the door of the storage unit. (TR. 3521)

Following agent Springer's testimony several witnesses were called to "trace" items found in the various searches to the defendants. No FBI agents were called regarding either the Old Town or Thompson Falls searches. Both searches were the result of information developed by ATF agents.

### III.    MICHAEL BRESCIA

Lee alleges that the United States Attorney's Office possessed information that showed Michael Brescia knew that Bill Mueller feared for his life from Brescia and others. There is no such information.

Michael William Brescia was one of the Midwest bank robbers.  The Midwest bank robbers, during the mid-1990s, robbed dozens of banks in an effort to provide a "war chest" to fund the Aryan Republican Army's effort to overthrow the government. Several of the Midwest bank robbers, including Brescia, lived at Elohim City, Oklahoma. There Brescia and other Aryan Republic Army members met Chevie and Cheyne Kehoe. Following their arrests Brescia and another Midwest bank robber admitted purchasing firearms from the Kehoe brothers at Elohim City. It was the tie to Elohim City and the firearms purchases that caused the United States to interview Brescia. At no time did Brescia provide any

6

information of ties that the Midwest bank robbers had to Bill Mueller. The United States had no information regarding any ties between Brescia or any Aryan Republican Army member and Mueller. The only ties of which the United States was, or is, aware were between Midwest bank robbers and the Kehoes. These ties concerned only their interaction at Elohim City and the transfer of firearms from the Kehoes to members of the Aryan Republican Army.

## IV.     CONCLUSION

Lee's affidavit constitutes a successive 2255 application where Lee has failed to properly obtain permission to proceed. Further, the affidavit is wholly lacking in merit. The court should therefore disregard the affidavit.

Respectfully submitted,

JANE W. DUKE
UNITED STATES ATTORNEY

By */s/ Dan Stripling*
DAN STRIPLING
Assistant United States Attorney
Arkansas Bar No. 74142
Attorney for the United States
P. O. Box 1229
Little Rock, AR 72203
Telephone: (501) 340-2604
E-mail: dan.stripling@usdoj.gov

GWYNN X. KINSEY, JR.
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

## CERTIFICATE OF SERVICE

I certify that a copy was mailed on this 5th day of January, 2009, to:

David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042

Laurence E. Komp
Attorney at Law
Post Office Box 1785
Manchester, MO 63011

T. Clifton Harviel
50 N. Front Street, Suite 850
Memphis, TN 38103


*/s/ Dan Stripling*
Dan Stripling