IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/ RESPONDENT

vs.                    Case No: 4:06-CV-1608 GTE
                       (Criminal Case No. 4:97-CR-00243-(2) GTE)

DANIEL LEWIS LEE                            DEFENDANT/MOVANT

MOVANT'S MOTION TO RECONSIDER THE DENIAL OF A
CERTIFICATE OF APPEALABILITY

COMES NOW Daniel Lewis Lee ("Mr. Lee" or "Movant"), by his undersigned counsel,

and hereby moves the Court, pursuant to Rule 11(a) of the Rules Governing Section 2255

Proceedings, to reconsider its denial of a Certificate of Appealability ("COA") in the order

issued December 22, 2010.  ECF Doc. 1189.  In support of this motion, Mr. Lee states as

follows:

## I.    PROCEDURAL HISTORY

Mr. Lee filed his motion for post-conviction relief pursuant to 28 U.S.C. § 2255 on June

26, 2006.  ECF Doc. 1118.  After briefing by both parties, but without conducting an evidentiary

hearing, this Court issued an opinion denying Mr. Lee's § 2255 motion on August 28, 2008.

ECF Doc. 1163 (hereinafter, "Order").  On December 22, 2010, this Court denied Mr. Lee's

Rule 59 motion.  ECF Doc. 1189.  In the body of that order, the entirety of this Court's COA

analysis was as follows:

> The Court is required by the 2009 Amendments to Rule 11(a) of the Rules Governing
> 2255 Proceedings to "issue or deny a certificate of appealability when it issues a final
> order adverse to the applicant." After considering the matter, the Court concludes that
> Petitioner has failed to make a substantial showing of the denial of a constitutional right.
> 28 U.S.C.  Sec. 2253(c). The Court therefore declines to a grant a certificate of
> appealability.

1

*Id.* p. 12 (footnote omitted).

### II.   A COA REQUIRES ONLY A MINIMAL SHOWING, ESPECIALLY IN A CAPITAL CASE.

The standard for the issuance of a COA is set out in 28 U.S.C. § 2253, which provides, in pertinent part, that the movant make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To meet this standard, a movant need only "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal citations and quotation marks omitted).  *Barefoot's* standard has been twice reaffirmed by the Supreme Court, first in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and again, more recently, in *Miller-El v. Cockrell,* 537 U.S. 322 (2003). In *Miller-El*, the Supreme Court emphasized that a COA should be allowed when the movant's case is "debatable," or the issues could be "resolved in a different manner," or when the case "deserve[s] encouragement to proceed further." *See id*. at 336.

In capital cases, "the nature of the penalty is a proper consideration in determining whether to issue a certificate of appealability." *Barefoot*, 463 U.S. at 893.  Because this case involves the death penalty, "any doubts as to whether a certificate of appealability should issue must be resolved in [Movant's] favor." *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. Tex. 2004), citing *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  Surely it cannot be said that none of the claims here presented – in the context of a death sentence – do not, at a minimum, deserve encouragement to proceed further or are not even debatable.

It is vital to underscore the point that Movant need not establish that he will eventually win.  *Miller-El* noted specifically that "a COA does not require a showing that the appeal will succeed," and neither should a Court deny

the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor." *Barefoot*, *supra*, at 893 n. 4, 103 S.Ct. 3383."

*Miller-El* at 336-37 (internal quotation marks omitted).  Indeed, as *Miller-El* summarized:

We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Id.* at 337-38.

### III.   RECONSIDERATION IS MERITED.

The Court's blanket denial of a COA does not comport with the standards required by statute and settled case law.  Rather than determining whether one, some, or all of Mr. Lee's claims were debatable among jurists of reason, or whether a court could resolve the issues in a different manner, or whether the case deserves encouragement to proceed further, it appears that the Court conflated the COA standard with its merits-based determination of the claims.  In other words, it appears as if the Court denied a COA on the claims as a matter of course because the Court had denied the claims on the merits.  As the Supreme Court noted in *Miller El*, however, the "threshold [COA] inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based  on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction."  537 U.S. at 336-37.  *See also Tennard v. Dretke*, 542 U.S. 274, 283 (2004)

(reversing Fifth Circuit for "paying lip-service" to the COA standard, and remanding for further proceedings).

Therefore, Mr. Lee respectfully requests this Court reconsider its blanket denial of a COA and apply the correct minimal threshold inquiry required under *Barefoot, Slack* and *Miller-El* to each of the claims denied on the merits.  For purposes of judicial economy, Movant will only discuss a few of the claims in this motion in order to demonstrate how under the minimal COA standard Movant is entitled to the issuance of a COA on his claims.  Movant abandons none of his claims.

IV.    APPLICATION OF COA STANDARD.

As the underlying legal and factual bases for these claims have been thoroughly pled in prior filings with which the Court is already familiar, Mr. Lee incorporates those prior documents by reference and will merely discuss the claims in an abbreviated fashion in this pleading.

A.    *Ineffective Assistance of Trial Counsel Claims.*

Trial counsel's performance in both the guilt and penalty phases of Mr. Lee's trial, and on appeal, was ineffective.  Given the fact that the Eighth Circuit routinely reviews claims of ineffective assistance of counsel on the merits in capital cases, Mr. Lee's ineffective assistance claims are more than adequate to merit issuance of a COA. *See*, *e.g.*, *Ringo v. Roper*, 472 F.3d 1001 (8th Cir. 2007)(reviewing penalty phase and guilt phase ineffective assistance claims on the merits); *Middleton v. Roper*, 455 F.3d 838 (8th Cir. 2006); *Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002); *Link v. Luebbers*, 469 F.3d 1197 (8th Cir. 2006); *Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir. 2006); *Smith v. Bowersox*, 311 F.3d 915 (8th Cir. 2002).  Every inference must be drawn in the movant's favor, particularly where, as here, the movant has pled facts that if true

would entitle him to relief and the district court has denied relief without an evidentiary hearing. *See* 28 U.S.C. § 2255 ¶ 2; *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963) (requiring a hearing in federal habeas proceedings where the petitioner has alleged facts which, if proven, would entitle him to relief and where the district court has not resolved the merits of the factual dispute in a full and fair hearing); *Fontaine v. United States*, 411 U.S. 213, 215 (1973); *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) ("The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*–not prove– reasonably specific, non-conclusory facts that, if true, would entitle him to relief.") (emphasis in original); *See Parkus v. Delo*, 33 F.3d 933 (8th Cir. 1994) (remanding to the district court for evidentiary hearing on IAC claims); *Lawrence v. Armontrout*, 900 F.2d 127 (8th Cir. 1990); *Simmons v. Lockhart*, 856 F.2d 1144 (8th Cir. 1988); *Grigsby v. Mabry*, 637 F.2d 525 (8th Cir. 1980) (citing *Townsend v. Sain*). It is therefore respectfully submitted that a COA should issue on Movant's ineffective assistance of counsel claims, as well as the related procedural issues, to wit, the denial of an evidentiary hearing.[1]

### *1.    Claim  I  (G)  –  Defense  counsel's  racially-discriminatory  jury-selection "strategy"*

Mr. Lee's attorneys were ineffective and in deliberate violation of the principles established in *Georgia v. McCollum*, 505 U.S. 42 (1992) because the consciously and deliberately exercised peremptory challenges on the basis of race.  Indeed, the government itself introduced affidavits confirming that co-counsel exercised challenges with the express intent to

---

[1] Although case law establishes that a movant need not obtain a COA in order to appeal the denial of an evidentiary hearing pursuant to 28 U.S.C. § 2255 – *see e.g.*, *Reyes v. Quarterman*, 195 Fed. Appx. 272, 279 n.2 (5th Cir. 2006) (no COA required to appeal denial of request for evidentiary hearing) – Mr. Lee includes that procedural issue here in an abundance of caution.

exercise peremptories on the basis of the race of the jurors or based on racial stereotypes, the avowed goal being the exclusion of whites.

The Eighth Circuit in *United States v. Pospisil*, 186 F.3d 1023, 1027-28 (8th Cir. 1999), citing *McCollum*, noted that *Batson*'s principles prohibit both prosecutors and defendants from using peremptory strikes in a discriminatory manner.  Other district courts within the Eighth Circuit have recognized this error.  *See Quinn v. United States*, 2007 U.S. Dist. LEXIS 79582 at *18-*19 (E.D. Mo. 2007); *Ruiz v. Norris*, 868 F.Supp. 1471, 1489 (E.D. Ark. 1994).  These decisions demonstrate that Movant's claim is at least debatable among jurists of reason and could be resolved in a different manner, and deserves encouragement to proceed further.  Thus, a COA should issue on this claim.

### *2. Claim I (E) – Defense counsel's ineffectiveness in failing to request and conduct mtDNA testing that excluded Mr. Lee as a source of evidence the government's inaccurately presented to the jury as "Danny Lee's hair."*

Mr. Lee alleged as error trial counsel's failure to challenge and submit for testing the only direct scientific evidence implicating Mr. Lee.  Specifically, the centerpiece of the government's case for guilt was the existence of a hair found in a raid cap connected to the crime scene which the government claimed belonged to Mr. Lee.  A government expert, employing microscopic comparison, testified that the hair was almost certainly Mr. Lee's.  The government argued to the jury tht the hair was definitely Mr. Lee's. In the course of the § 2255 proceedings, however, that was subjected to Mitochondrial DNA testing ("mtDNA"), which conclusively excluded Mr. Lee as the source of that hair.  This method of testing was available to the defense at the time of trial.  In denying this claim, this Court essentially ruled that the outcome of the proceeding would not have been different even if trial counsel had obtained mtDNA testing and disproved Mr. Lee as the source of the hair found in the raid cap.  ECF Doc. 1163 at 49.  Respectfully, this Court's

ruling understates the importance of the hair evidence at Mr. Lee's trial, as well the central role that evidence played in the government's trial presentation and arguments to the jury. As noted in Mr. Lee's prior pleadings, the trial record is replete with references to the hair and raid cap, as the government questioned numerous witnesses about these pieces of evidence. Moreover, the government's core theory of the case, which it announced in its opening statement, presented via its witnesses, and reiterated in closing argument, was that the hair evidence proved Mr. Lee's participation in the crime. The hair was the sole piece of "hard" evidence presented in support of the government's case against Mr. Lee and may have been the piece of evidence that tipped jurors to voting guilty.

Moreover, the significance of the hair evidence in the government's case for guilt is apparent from the Eighth Circuit's opinion on direct appeal, in which the Court explicitly endorsed the government's theory of the case that the offense was carried out by persons wearing fake raid gear. The Court further relied upon the raid cap and hair evidence in its harmless error analysis to establish Mr. Lee's guilt independent of the claimed errors. *See United States v. Lee*, 374 F.3d 637, 641, 643-645 (8th Cir. 2004). In light of the central role the hair evidence played at Mr. Lee's trial and in the Eighth Circuit's legal analysis of his appeal, the issue of whether Mr. Lee was prejudiced by counsel's failure to challenge the hair evidence using available DNA testing is at least debatable among jurists of reason, could be resolved in a different manner, and deserves encouragement to proceed further. Thus, a COA should issue on this claim.

### 3.  Claims I (A)(3-11, 13-18) – Defense counsel's ineffectiveness in failing to locate, interview and present evidence undermining Mr. Lee's guilt and sentence

To protect an accused's constitutional rights, defense counsel must conduct a reasonable pretrial investigation. Counsel has a duty to investigate all lines of defense or reasonably decide

that a particular investigation is not necessary. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). Defense counsel has a duty to "conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case. . . ." ABA Standards for Criminal Justice 4-4.1(a)(3 ed. 1993). At a minimum, a reasonable pretrial investigation includes interviewing the prosecution's witnesses, as well as identifying and interviewing potential defense witnesses. *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005) ("Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories.") When defense counsel fails to interview witnesses or fails to conduct a reasonable pretrial investigation, defense counsel's actions constitute negligence, not trial strategy. *Wiggins v. Smith*, 539 U.S. 510, 526, 527-28 (2003) (failure to investigate based on "inattention, not reasoned strategic judgment" is unreasonable, as is abandoning an "investigation at an unreasonable juncture, making a fully informed decision ... impossible").

Mr. Lee respectfully requests a COA on the following subparts of Habeas Ground I(A) because they are debatable among jurists of reason and deserve encouragement to proceed further in light of the facts supporting the claims and the Eighth Circuit's treatment of similar claims suggesting that his trial counsel failed to comply with prevailing ABA norms and standards of practice under the Sixth Amendment.

      *a.*      *Evidence Implicating Paul Humphrey (Claims (A)(6), (A)(7), (A)(8))*

It has not been disputed that one aspect of Mr. Lee's failed trial defense was to adequately develop and present evidence of Paul Humphrey's role in the offense. Indeed, this Court previously noted that trial counsel failed in this regard to "establish a link between Humphrey and the death of the Muellers." ECF Doc. 1163 p. 27. Given the recognition of the

failed defense, it is at least debatable and deserving of encouragement to proceed whether trial counsel's failure to present specific testimony from three witnesses that established a pursued defense. The three witnesses, David Hill, Glen Hinson and Eldon King, were available and known to trial counsel. Each of the three could have fortified the failed defense. Specifically, Mr. Hill would have testified that he saw Paul Humphrey and another man throw something off the bridge at the Illinois Bayou in January 1996, the location where the victims' bodies were found. Mr. Hinson observed a nervous and scared Paul Humphrey obtain the title of the Mueller's vehicle, and Hinson also could have reported Mrs. Mueller's fear of Humphrey. Mr. King could have testified as to Humphrey's odd behavior after the Mueller's disappeared.

Each of the above witnesses supported a defense theory that this Court found trial counsel failed to adequately prove. Given that this evidence supported the failed defense theory, Movant's claim that counsel were ineffective for failing to present reasonably available evidence to carry the burden of persuasion on this defense theory deserves encouragement to proceed further. Additionally, in light of the Eighth Circuit's consistent review of similar claims, a COA should issue. *See White v. Roper*, 416 F.3d 728 (8th Cir. 2005); *Grooms v. Solem*, 923 F.2d 88 (8th Cir. 1991); *Chambers v. Armontrout*, 907 F.2d 825 (8th Cir. 1990).

    b.  *The APR (whatever it may mean) (Claims (A)(14), (A)(15), (A)(16), (A)(17))*[2]

The government never provided a precise name for the "APR." *See* ECF Doc. 1163 p. 5. While Kirby Kehoe pled guilty to a count regarding the enterprise, his guilty plea was not substantive evidence of the existence of the enterprise. Further, Faron Lovelace had his charges

---

[2] Three different names are purported to be behind the acronym "APR:" Aryan People's Republic, Aryan People's Resistance, or Aryan People's Revolution. The fact the government could not pin down a name underscores the lack of a then existing enterprise at the time of the Muellers' disappearances.

dismissed.    Thus, while the government presented evidence regarding Chevie Kehoe's aspirations based on an undoubtedly categorically offensive book, no direct and tangible evidence ever existed (or exists) documenting the existence of the underlying RICO enterprise, the APR.

Trial counsel failed to adequately challenge the existence of an enterprise – the illusive "APR" – which undercuts the heart of the government's case.[3]  Trial counsel failed to investigate and call Kelly Kramer, Faron Lovelace, Norda Lewis and Jeff Brown, each of whom would have testified that there was no existing APR enterprise.  Trial counsel could have attacked the heart of the government's case, and convinced at least one juror that no such enterprise existed.  If no enterprise existed, there was no basis for the federal death penalty.  Because the existence of the APR had to be proven to convict Movant of a death eligible offense, trial counsel were constitutionally obligated to investigate and defend against such evidence. *Rompilla*, 545 U.S. at 387 ("The notion that defense counsel must obtain information that the State has and will use against the defendant is not simply a matter of common sense.");  *id.* at 387-390.

Each of the above witnesses supported an available defense theory which would have excluded the possibility of a penalty phase.  Given that this evidence supported an available defense, Movant's ineffectiveness claim deserves at least encouragement to proceed further.  In light of the Eighth Circuit's consistent review of similar claims, a COA should issue.  *See White*, 416 F.3d 728;  *Grooms*, 923 F.2d 88;  *Chambers*, 907 F.2d 825.

> c.    *Unpresented Evidence Challenging the Government's Timeline (Claims (A)(9-11), (A)(17)*

---

[3] Even the government at Chevie's penalty closing noted that the murders and taking of items was not for purposes of the "APR" but Chevie "…supported his family with [it]." Tr. 7261.

This Court previously acknowledged that the government's theory of the case rested upon an extraordinarily tight timeline. *See e.g.* ECF Doc. 1163 p. 29 ("…after the January 12th date so critical to the Government's timeline."). Trial counsel challenged that timeline with evidence related to when the Muellers were last seen alive and evidence regarding Mr. Lee's arrival in the State of Washington. There were five available witnesses who were known to trial counsel and could have fortified the failed defense: Maria and Vernon Ahrens, Pam Wrappe, Earlene Branch and Jeff Brown. Specifically, Mr. and Mrs. Ahrens could have testified that they had contact with William Mueller the Thursday after the Mueller's were reported to have disappeared. Mrs. Branch indicated she heard William Mueller's distinctive cough in February 1996, when she was at the home of Sylvia and David Mason. Mr. Brown would indicate that Mr. Lee arrived in the State of Washington either late on January 12, or early morning January 13.

Each of the above witnesses supported a defense theory challenging the timeline of "critical" importance to the government's case. Given that this evidence supported the failed defense theory, Movant's claim that counsel were ineffective for failing to present reasonably available evidence to carry the burden of persuasion on this defense theory deserves encouragement to proceed further. In light of the Eighth Circuit's consistent review of similar claims, a COA should issue. *See White*, 416 F.3d 728; *Grooms*, 923 F.2d 88; *Chambers*, 907 F.2d 825.

### d.    Failure to Present Alternative Suspects (Claims (A)(3-5))

Trial counsel failed to present testimony from available witnesses of Mr. Mueller's expressed fears towards individuals other than Movant. Trial counsel failed to investigate and call George Eaton, Peter Langan, and Michael Brescia. Eaton interviewed Mr. Mueller and noted Mueller's expressed fear of individuals (expressly indicating he feared for his life from

Michael Brescia) in the Christian Identity movement, including individuals from Elohim City, Oklahoma.

A victim's expressed fear is admissible. First, the statement, at the minimum, provides circumstantial evidence of Mr. Mueller's state of mind. Fed R. Evid. 803 (3). Mr. Mueller's state of mind is relevant to Movant's case and is reliable given that it was a contemporaneous recordation of Mr. Mueller's state of mind. *See United States v. Partyka*, 561 F.2d 118, 125 (8th Cir. 1977) (noting difference between immediate statement and a recollection of a past statement). Indeed, state of mind evidence is regularly used as substantive evidence of guilt. *See United States v. Hyles*, 2007 U.S. App. LEXIS 6450 (8th Cir. 2007) (establishing intent to kill); *United States v. Dolan*, 120 F.3d 856 (8th Cir. 1997) (establishing intent to plan and motive).

Each of the above witnesses supports an available defense theory. Thus, Movant's ineffectiveness claim at least deserves encouragement to proceed further. Given the Eighth Circuit's consistent allowance of similar evidence to allow the government to establish elements of an offense, including intent, a COA should issue.

### 4.  Claim II(A) – Ineffectiveness for failing to challenge the inapplicable multiple murder aggravator; Appellate ineffectiveness for failing to raise the claim (Ground III(B)

The multiple-murder statutory aggravating factor was improperly submitted to the jury since it was not enacted as such until several months after the date on which the United States claims the murders occurred. This Court agreed that Mr. Lee should only have been subjected to statutory aggravating factors that existed when the crime allegedly occurred. ECF Doc. 1163 p. 70. Thus, an admitted constitutionally improper aggravating factor was considered by Movant's jury on each victim. In essence, Mr. Lee was charged with the crime of capital murder

containing an element that did not exist when the crime took place. *See Ring v. Arizona*, 536 U.S. 584 (2002).

Due to the shortcoming of the only other statutory aggravator, *see infra.*, the death sentences Movant received as to William and Nancy Mueller must be vacated as unsupported by any statutory aggravating factor. The sole remaining statutory aggravating factor as to the child, Sarah Mueller, would remain, but the balancing undertaken by the jury is likely to have been skewed substantially by factors not properly before it with regard to the child because the undisputed evidence was that Chevie Kehoe, whose life was spared by the same jury that sentenced Movant to death, not only killed young Sarah but did so because Movant would not kill a child.

The Supreme Court has uniformly held that an invalidated sentencing factor will render a death sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the jury's weighing process. *Brown v. Sanders*, 546 U.S. 212 (2006). *Brown* is quite clear – a court reviewing the improper consideration of an aggravating factor must determine whether on the basis of the existing trial record the sentencer could have considered that evidence as aggravation under any remaining aggravating factor actually presented at trial. In Movant's case, this was the only aggravator, as the pecuniary gain factor was also inapplicable. *See infra*. Thus, under 18 U.S.C. § 3593(d), Mr. Lee could not have been sentenced to death because by statute: "If no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law."

The Eighth Circuit has twice addressed *Brown* issues. *See Clayton v. Roper*, 515 F.3d 784 (8th Cir. 2008); *Rousan v. Roper*, 436 F.3d 951 (8th Cir. 2007). Given the uncontested fact that an improper statutory aggravating factor was considered, found, and weighed in the balance

13

by the jury that sentenced Mr. Lee to death, the *Brown* decision, and the frequency that the Eighth Circuit considers these types of errors (*see Clayton*; *Rousan*), Movant's claims are at least debatable among jurists of reasons and deserves encouragement to proceed further.

### 5. Claim II(B) – Ineffectiveness for failing to challenge an inapplicable pecuniary gain aggravator; Appellate ineffectiveness for failing to raise the claim (Claim III(C)

The pecuniary gain factor applies only where the murder is a necessary condition to the expected pecuniary gain. Thus, for example, where an heir kills to gain an inheritance, the pecuniary gain follows only if the murder occurs. The same is true where a beneficiary kills for life insurance proceeds or as a contract killer-for-hire. The Eighth Circuit had so held in *United States v. Allen*, 357 F.3d 745, 750-51 (8th Cir. 2004) (*Allen I*), *vacated on other grounds*, 406 F.3d 940 (8th Cir. 2005) (*Allen II*) (*en banc*).   Under *Allen*, the pecuniary gain factor was invalidly considered in Movant's case.   Further, given that the multiple murder factor was inapplicable to Movant's case, under 18 U.S.C. § 3593(d) a life sentence was required because there were no valid statutory aggravating factors in the case as to the murder of the two adults. With regard to the murder of the child, the evidence below was that Chevie Kehoe murdered young Sarah because Mr. Lee would not.

Because the Eighth Circuit decided *Allen* prior to the completion of Movant's original appeal on principles and authority that existed prior to Movant's trial and his conviction, Movant demonstrates that this issue is at least debatable among jurists of reason and deserves encouragement to proceed.

14

### *6.   Claims I (G)(H) and (I)  – Former Attorney Working for Governmental Agency Seeking His Death and Circumstances of Her Leaving the Defense Team.*

One of Mr. Lee's attorneys interviewed with and took a job with the prosecutor's office seeking his death while she represented him in that case.  Another defense attorney violated his duty to his client when he testified in that attorney's defense.  Under Supreme Court authority, these circumstances represented an actual conflict of interest.  *Cuyler v. Sullivan*, 446 U.S. 335 (1980).  The Sixth Amendment guarantees defendants effective assistance of counsel. "The Sixth Amendment right to counsel has been interpreted to provide for representation that is 'free from conflicts of interest or divided loyalties.'" *United States v. Reed*, 179 F.3d 622, 624 (8th Cir. 1999) (*quoting United States v. Acty*, 77 F.3d 1054, 1056 (8th Cir. 1996)).  It is reasonably debatable that this principle was violated in Movant's case.

In *Lee*, 374 F.3d at 654, the Eighth Circuit noted the vitality of this claim as follows: "[Lee] does not dispute that the district court has not developed a record on the issues….[therefore, these] claims are premature and should be raised collaterally through a 2255 motion in district court."  In response to the above, the government offered the affidavit of the turncoat counsel Karen (Coleman) Whatley.  Significantly, the government's self-serving affidavit was silent on the efforts expended to erect a formal "firewall" before and after Attorney Whatley moved from the defense camp to the prosecution's.  No evidence demonstrates that such a firewall actually existed, because there is no evidence in the record that established this alleged fact. As Mr. Lee requested, it is incumbent to learn of the nature of the firewall employed by the government – which includes the existence, if any, of an "electronic firewall."

The Eighth Circuit's prior opinion specifically endorsed that the above claims should be pursued in 2255 proceedings.  The Eighth Circuit would not have encouraged constitutional

claims that did not deserve encouragement to proceed further.  Therefore, this Court should grant a COA on Movant's 2255 Grounds (I)(G), (I)(H) and (I)(I).

### 7.    ClaimII(D) – Ineffectiveness regarding the Court's Penalty-Phase Instructions Concerning the Potential Alternative Punishments to a Sentence of Death

Movant was sentenced to death for three violations of 18 U.S.C. § 1959, Violent Crimes in aid of Racketeering Activity ("VICAR").  The VICAR statute was most recently-amended on September 13, 1994 as part of the enactment of the Federal Death Penalty Act of 1994.  The amendment added death as a potential punishment for racketeering-related murder.  As amended, and as in effect in this case, the statute reads in pertinent part:

> Whoever, . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . shall be punished – **(1)** for murder, by death or life imprisonment, . . . .

18 U.S.C. § 1959.  The statute does not specify a sentence of "up to life imprisonment," or "a term of years up to life imprisonment" or anything other than life.  In other words, the alternative punishments available in a case where the government seeks the death penalty in a VICAR murder are (1) the death penalty or (2) mandatory life imprisonment. Despite this clear statutory language, this Court, with no objection from the defense, mis-instructed the jury on the issue of potential punishment.

In particular, the Court instructed the jury that, once it had made its necessary preliminary findings on aggravation and mitigation (and assuming the necessary findings

16

of a "gateway" factor, at least one statutory factor, and that Movant was over 18 at the time of the offense), it should proceed as follows:

> Based upon this weighing process, you must determine whether a sentence of death is justified.  If you cannot unanimously agree upon a sentence of death, you must then decide whether to return a sentence of life in prison without the possibility of release.  Again, your finding with respect to a sentence of life in prison without the possibility of release must be unanimous.

(Tr. 7995-96.)  The second portion of the instruction quoted above is wrong as a matter of law.  If the jury was unable to reach unanimous agreement on a sentence of death, its deliberations were concluded and, as a matter of law, because of the mandatory life sentence required by the VICAR statute itself, the Court would be required to impose a life sentence.  The instruction continued:

> If you unanimously agree upon a sentence of death or a sentence of life in prison without the possibility of release, the Court is required to impose that sentence.  If you cannot unanimously agree upon either a sentence of death or a sentence of life in prison without the possibility of release, the Court will impose the sentence required by law.

(Tr. 7996.)  This latter instruction was also wrong as a matter of law.  Assuming a lack of agreement on death, the Court had no authority to impose any sentence other than lifetime imprisonment.

The dynamic such an erroneous instruction sets up – especially where the jury is left to speculate on what the Court means by "the sentence required by law" is that jurors may reasonably conclude that if they cannot agree on death and cannot agree on life, then it's up to the Court to impose some lesser sentence.  Jurors in a minority, therefore, could

17

find themselves convinced to vote for a death sentence in the face of arguments from jurors favoring a death sentence that if all jurors don't agree on something, Movant would be back on the streets someday.

Instructing a jury at the penalty-phase of a capital case in a manner that mis-states the potential punishments is serious error. At the very least, this claim is fairly debatable or deserves further encouragement and review.

### 8.    Claims II(H) and (J) – Ineffectiveness related to the Government's Introduction of Discredited Psychopathy Evidence; Appellate Ineffectiveness for Failing to Raise the Claim (Claim III(C)

The centerpiece of the government's argument to the jury for why it should sentence Mr. Lee to death was that he was an inherently violent "psychopath" who would remain a "future danger" in prison if sentenced to life without parole. The government was able to introduce substantial inflammatory evidence in support of this argument during its cross-examination of Dr. Cunningham and in its examination of Dr. Ryan. In the course of these examinations, the government elicited testimony regarding the concept of "psychopathy," an instrument known as the Hare Psychopathy Checklist-Revised ("PCL-R"), as well as information about Dr. Ryan's use of the PCL-R with Mr. Lee and concomitant assessment of his "psychological profile" to conclude that Mr. Lee was a psychopath. Trial counsel were ineffective for failing to properly object to the psychopathy and PCL-R evidence, as there was no scientific support for the use of the PCL-R and psychopathy evidence as a predictor of future dangerousness in prison. Additionally, counsel were ineffective in failing to immediately move and renew their request for access to DOJ materials regarding the strict conditions of confinement and other programs available to the Bureau of Prisons ("BOP") to neutralize inmates considered to be a "future danger," and thereby rebut the government's argument for death.

18

In denying these claims, this Court ruled that "the merits of this issue, which have been ruled on by the Eighth Circuit, may not be revisited on collateral review." ECF Doc. 1163 at 92; id. at 95. However, the claim before the Eighth Circuit on direct appeal was an *evidentiary* issue, i.e., whether the admission of the psychopathy evidence was unfairly prejudicial. The Court's resolution of that claim turned on the fact that the government had given prior notice of a relevant aggravating factor (future dangerousness), and therefore the psychopathy evidence was not "unfairly" prejudicial because it was probative of that previously-noticed sentencing factor. The §2255 claim, however, is legally distinct – namely, that trial counsel were ineffective for failing to fully and adequately object to the psychopathy evidence precisely because it was scientifically invalid and therefore *not* probative of the issue of future dangerousness. The invalidity of the psychopathy evidence was never raised on direct appeal, so the Eighth Circuit's prior decision is not dispositive because the Circuit Court never heard the present claim.[4] In light of the numerous other courts that have found such psychopathy evidence to be unreliable and unfairly prejudicial in capital sentencing hearings, counsel's failure to properly challenge the psychopathy evidence is a claim that is debatable among jurists of reason, could be resolved in a different manner, and deserves encouragement to proceed further. *See*, *e.g.*, *United States v. Taylor*, 320 F. Supp. 2d 790, 794 (N.D. Ill. 2004); *United States v. Sampson*, 335 F. Supp. 2d 217, 220-22 (D. Mass. 2004); *United States v. Stitt*, 369 F. Supp. 2d 679, 699-700 (E.D. Va. 2005); *United States v. Barnette*, 211 F.3d 803, 825 (4th Cir. 2000). Thus, a COA should issue on this claim.

---

[4] Indeed, as this Court implicitly recognized in its Order Denying Post judgment Relief (ECF Doc. 1189) at 10, this claim deserves encouragement to proceed further so that this Court can receive "permission and direction from the Eighth Circuit" with respect to its consideration of the affidavit evidence establishing the invalidity of the PCL-R and psychopathy evidence.

This Court also ruled that counsel's failure to seek the aforementioned DOJ materials was not ineffective because "such materials could not have been used as a mitigating factor at trial" and would not have "changed the outcome of the sentencing trial." Mem. Op. at 93. However, other courts that have considered nearly identical claims have reached the opposite conclusion, demonstrating that this issue is debatable among jurists of reason. *See*, *e.g.*, *United States v. Johnson*, 2010 U.S. Dist. LEXIS 133727, No. 02-C-6998 (N.D. Ill. Dec. 13, 2010) (granting habeas relief in capital § 2255 proceeding on claim that trial counsel was ineffective for failing to rebut future dangerousness aggravator with evidence of BOP's ability to impose strict conditions of confinement on prisoners to alleviate the security risk that any particular prisoner poses, and finding that but for counsel's ineffectiveness, there was a reasonable probability that the outcome of the sentencing proceeding would be different). Thus, a COA should issue on this claim.

### 9. Claims I(K) and II(L)– Ineffectiveness for failing to object to improper argument at the guilt and penalty phase; Appellate Ineffectiveness for Failing to Raise the Claim (Claims III(A)

Throughout closing arguments at the guilt and penalty phases of Movant's trial, the government made a series of improper remarks, in violation of Movant's rights under the Fifth, Sixth and Eighth Amendments. At the guilt phase, the government made five (5) improper arguments not objected to by Movant's counsel: 1) arguments regarding Cheyne Kehoe being threatened by an Aryan; 2) arguments that Kirby Kehow was not involved because Movant was present (premised upon Gloria Kehoe's hearsay); 3) arguments that Movant is a faithful dog; 4) arguments attributing a statement to Movant that one of the murder victims, Mrs. Mueller, was a "dumb bitch"; and 5) argument referencing Kirby Kehoe's guilty plea to the enterprise. As to each of the above improper arguments, trial counsel failed to object– thus, the jury's unfettered consideration of the improper arguments was prejudicial.

The record also demonstrates improper argument by the government in Movant's penalty phase closing, including the following: (1) numerous arguments related to psychopathy and propensity for violence improperly introduced through the cross of Dr. Cunningham and the direct of Dr. Ryan; (2) improper characterizations of defense argument as "smoke and mirrors;" "that's like the kid who killed his parents who walked into court, said, "Take mercy on me. I'm an orphan'"; argument that displaying a photo of Mr. Lee was subtle and effective "manipulation"; (3) improperly arguing that a nexus was required between the mitigation offered and the crime; (4) improperly arguing that family background and development mitigation evidence was an effort to "figuratively" blame others for the murders; (5) argument that "We have the right to be safe in our homes – 'our sanctuary.'"; "Doesn't an eight year-old girl, damn it, have that right?"; (6) arguing that Movant received more due process than the Muellers received; (7) opining that the difference in this case from Chevie Kehoe's is that (as argued by Prof Sullivan) Chevie could receive grace, and speculates that Compton "could not sell grace to you" because Movant has already had a shot at grace; and (8) requesting death for Danny Lee on the basis of Chevie's actions.

As to each of the above improper arguments, trial counsel failed to object– thus, the jury's unfettered consideration of the improper arguments was prejudicial.  The government's remarks constituted improper emotional appeals to the jury, and denigrated and improperly characterized constitutionally relevant mitigation evidence.  Such remarks have consistently been held to constitute reversible error. *See*, *e.g.*, *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992); *United States v. Lee,* 743 F.2d 1240 (8th Cir. 1984).

This Court did find many of the above remarks to be improper arguments.  ECF Doc. 1163 pp. 63, 64, 45, 68.  This Court did not lightly or unreasonably make this determination.

Given the well-settled precedent establishing the impropriety of the prosecution's remarks, this Court's finding of improper argument and counsel's duty to object to such remarks demonstrates that Movant's claim deserves encouragement to proceed further. Moreover, given that the Eighth Circuit Court of Appeals routinely reviews claims of prosecutorial misconduct in closing argument -- and trial counsel's failure to object to such improper argument -- on the merits, *see*, *e.g.*, *Weaver v. Bowersox*, 438 F.3d 832 (8th Cir. 2006); *Newlon v. Armantrout*, 885 F.2d 1328 (8th Cir. 1989); *Copeland v. Washington*, 232 F.3d 969 (8th Cir. 2000); *Shurn v. Delo*, 177 F.3d 662 (8th Cir. 1999), as well as the fact that is has recently granted COAs on nearly identical claims in other capital § 2255s -- *see Nelson v. United States*, 297 Fed. Appx. 563, 565-66 (8th Cir. 2008); *Sinisterra v. United States*, 600 F.3d 900, 909-912 (8th Cir. 2010) -- this claim is at least debatable and deserves at least the encouragement to proceed further.

### 10.  Claim II(M)– Ineffectiveness in failing to request voir dire of jury

Movant's trial counsel failed to request voir dire of the jury after a holdout juror suddenly switched his or her vote at the penalty phase. At the time of trial, Movant's counsel should have moved for a voir dire. Movant complied with this Court's local rules. L.D.R. 47-1 ( "No juror shall be contacted without express permission of the Court and under such conditions as the Court may prescribe.")  Due to the life sentence given to Movant's co-defendant and that there was a holdout juror in Movant's case, this issue at least debatable and deserves encouragement to proceed further.

### B .     Claim IV – Arbitrary and capriciousness of Mr. Lee's death sentence

Over the years, this Court has repeatedly noted the troubling nature of Movant's death sentence in comparison to the greater actor's life sentence. *See* ECF Doc. 1163 p. 117, 118, 119. Movant will not revisit his arguments in this regard. However, this Court's expressions are

reasonable, and establish that Movant's challenge related to the arbitrariness and capriciousness of the federal death penalty deserves encouragement to proceed further. In denying the § 2255 motion, this Court noted: "Perhaps the Eighth Circuit on appeal will provide more guidance on this important issue." (ECF 1163 at p. 114.) Absent a grant of a COA, however, the Eighth Circuit will not have jurisdiction to hear this case and provide the guidance to which this Court alluded. This Court's own comments suggest the issue is important or, at the very least, fairly debatable and deserving of encouragement. Thus, it is respectfully submitted that a COA should issue on this claim as well.

**Conclusion**

WHEREFORE, Movant respectfully requests the Court reconsider its denial of a COA and grant a COA on Mr. Lee's Claims for Relief in his § 2255 Motion.

Respectfully submitted,

/s/ David A. Ruhnke
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000
(973)746-1490 (fax)
davidruhnke@ruhnkeandbarrett.com

-and-

/s/ Laurence E. Komp
Laurence E. Komp
Attorney at Law
P.O. Box 1785
Manchester, MO 63011
(636) 207–7330
(636) 207–7351 (fax)
lekomp@swbell.net

COUNSEL FOR MOVANT

23

<u>CERTIFICATE OF SERVICE</u>

Movant's counsel have filed this Motion to Reconsider on today's date via ECF, thereby serving the United States and all parties.

<u>/s/ David A. Ruhnke</u>
COUNSEL FOR MOVANT

<u>Filed via ECF</u>:    Little Rock, Arkansas
February 9, 2011

24