IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA,　)
　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)　　Case No. 4:97-CR-00243-JLH
　　　　v.　　　　　　　　　　)　　　　(Capital Case)
　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
DANIEL LEWIS LEE.　　　　　　)

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR AN INDICATIVE RULING**

---

CHRISTOPHER R. THYER
United States Attorney
Eastern District of Arkansas

MYTHILI RAMAN
Acting Assistant Attorney General

DENIS J. McINERNEY
Deputy Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1264
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

**TABLE OF CONTENTS**

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Offense Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   Trial and Sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Kehoe's Sentencing Hearing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    Lee's Sentencing Hearing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    Dr. Cunningham's Cross-Examination and Dr. Ryan's
            Rebuttal Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    The Jury's Sentencing Verdict.. . . . . . . . . . . . . . . . . . . . . . 12

III.  New Trial Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   Section 2255 Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.    Lee's Section 2255 Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.    Judgment Denying the Motion.. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    C.    Motion for Reconsideration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    D.    Section 2255 Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.    Rule 60(b) Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.    The Court Should Dismiss the Purported Rule 60(b) Motion for
    Lack of Jurisdiction Because it is a Successive Motion for Relief
    Under 28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    A.    Lee Was Afforded His One Full Opportunity to Collaterally
        Attack His Conviction and Sentence Under 28 U.S.C. § 2255. . . 26

B.      Lee's Rule 60(b) Motion is a Second or Successive Motion for Relief Under 28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . 29

C.      *Trevino* Does Not Provide a Basis to Avoid Section 2255's Restrictions on Second and Successive Motions. . . . . . . . . . . . . . 34

      1.     *Trevino* is Only Applicable When State Prisoners Seek Federal Habeas Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

      2.     The Equitable Rule of *Trevino* Does Not Abrogate AEDPA's Statutory Barriers to Second and Successive Federal Habeas Applications. . . . . . . . . . . . . . . . . . . . . . . . 38

II.    Assuming Lee's Motion is Not a Successive Section 2255 Motion, Relief From Judgment is Not Warranted Under Rule 60(b). . . . . . . . . 40

      A.      Relief From Judgment is Not Warranted Under Rule 60(b)(6). . 41

      1.     Lee's Underlying Claim of Ineffective Assistance of Trial Counsel Lacks Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

      2.     Negligence on the Part of Collateral Counsel Does Not Establish Extraordinary Circumstances. . . . . . . . . . . . . . . 48

      3.     The *Trevino* Decision Does Not Establish Extraordinary Circumstances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

      B.      Rule 60(b)(5) is Inapplicable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA,  )
                           )
                           )   Case No. 4:97-CR-00243-JLH
 v.                        )          (Capital Case)
                           )
                           )
DANIEL LEWIS LEE.          )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR AN INDICATIVE RULING

The government submits this response to defendant Daniel Lewis Lee's

motion for an indicative ruling on his motion for relief from judgment under

Fed. R. Civ. P. 60(b). For the reasons state below, the Court should dismiss

Lee's Rule 60(b) motion for lack of jurisdiction or, if the Court concludes it

may exercise its jurisdiction, deny the motion on the merits.

## STATEMENT

This a capital murder case with a long history. Lee committed three

murders in January 1996. A jury recommended he receive the death penalty

in 1999. In 2000, this Court (Hon. G. Thomas Eisele) granted Lee a new

sentencing hearing. *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark.

2000). The Eighth Circuit reversed and reinstated the sentence of death in

2001. *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, 537 U.S.

1000 (2002). In 2004, the Eighth Circuit affirmed Lee's conviction and

-1-

sentence on direct appeal. *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005).

In June 2006, Lee filed a motion seeking postconviction relief under 28 U.S.C. § 2255. Dkt. 1118.[1] Judge Eisele denied the motion and a motion for reconsideration in 2008 and 2010, respectively. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008); *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). After Judge Eisele granted a certificate of appealability on one issue, Dkt. 1204, the Eighth Circuit granted a certificate of appealability on one additional issue, and the court of appeals issued an opinion affirming the denial of Lee's Section 2255 motion in April 2013. *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013).

Lee filed a rehearing petition in the Eighth Circuit on September 27, 2013. On that day, Lee also filed in this Court the pending motions for relief from judgment under Fed. R. Civ. P. 60(b), Dkt. 1230, and for an indicative ruling under Fed. R. Civ. P. 62.1, Dkt. 1231.

## I.   Offense Conduct

In January 1996, Lee and Chevie Kehoe committed three murders in furtherance of a scheme to create an independent nation of white

---

[1] "Dkt." refers to docket entries in this Court. "Tr." refers to the consecutively-paginated trial transcript.

supremacists in the Pacific Northwest. Expecting to find valuable property, they went to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. When Mueller arrived home with his wife Nancy and their eight-year old daughter, Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. After taking weapons and $50,000 in cash, Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. The men taped rocks to the bodies and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42; *United States v. Kehoe*, 310 F.3d 579, 584-85 (8th Cir. 2002).

## II.   Trial and Sentencing

Lee and Kehoe were charged with one count of conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); one count of conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); and three capital counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). The government provided notice of its intent to seek the death penalty against both defendants for each of the three murders. *See Lee*, 374 F.3d at 642.

Lee and Kehoe were tried together before a jury and, after a two-month trial, found guilty on all counts. Tr. 7111-16. Separate hearings were held for Lee and Kehoe to determine whether each should receive the death penalty for the three capital murders. *See* Tr. 7169-7337 (Kehoe sentencing hearing); Tr. 7367-8022 (Lee sentencing hearing).

The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593, required the jury to determine whether aggravating factors proved by the government sufficiently outweighed any mitigating factors proved by the defendants to justify the death penalty. *See generally United States v. Purkey*, 428 F.3d 738, 749, 761 (8th Cir. 2005). At both hearings, the government argued that five aggravating factors supported imposition of the death penalty: (1) Lee and Kehoe committed the murders in expectation of receiving something of pecuniary gain; (2) they committed the murders after substantial planning and premeditation; (3) they killed more than one person during a single criminal episode; (4) they would be a danger in the future to the lives and safety of others; and (5) Sarah Powell was a vulnerable victim. *See* Tr. 7175, 7373.

## A.    Kehoe's Sentencing Hearing

Kehoe conceded proof of each aggravating factor except for future dangerousness. *See* Tr. 7262-64, 7270-80. Kehoe claimed, however, that 16

-4-

mitigating factors weighed against a sentence of death. Tr. 7270-80; *see* Tr. 7175-77.

The jury rejected the government's contention that Kehoe would be a danger to others in the future and that he committed the murders after substantial planning and premeditation. The jury concluded, however, that the evidence established each of the other alleged aggravating factors. Tr. 7328-37.

One or more jurors found the existence of each of the 16 mitigating factors claimed by Kehoe. Every juror concluded, for example, that the influence of Kehoe's family on his adoption of white supremacist beliefs was a mitigating factor. Many jurors also found that the potential for Kehoe to be a father to his children also weighed against the death penalty. Tr. 7330-32.

After weighing the aggravating and mitigating factors, the jury unanimously decided against a sentence of death for each of the three murders and in favor of life imprisonment without the possibility of release. Tr. 7332, 7335, 7336-37.

### B.    Lee's Sentencing Hearing

The United States Attorney for the Eastern District of Arkansas, Paula Casey, informed the Court that in light of Kehoe's life sentence her office no longer wished to pursue the death penalty against Lee. *In re United States*, 197 F.3d 310, 311-12 (8th Cir. 1999). The Department of Justice (DOJ) death

penalty protocol required, however, that Ms. Casey submit a request to withdraw Lee's death notice to the Attorney General's Review Committee on Capital Cases – which consisted of the Deputy Attorney General and other DOJ officials – and that the Committee then make a recommendation to the Attorney General for a final decision. *Id.* at 311. Deputy Attorney General Eric Holder convened a meeting of the Committee to consider Ms. Casey's request and – after conferring with Ms. Casey by telephone – informed her that the death notice against Lee would not be withdrawn. *Id.* at 312.

Lee's sentencing hearing therefore went forward. The emphasis of the government's case at the hearing was Lee's future dangerousness. *See* Tr. 7379-88. The government introduced evidence showing that in 1990 Lee severely beat an individual named Joey Wavra, forced Wavra down a manhole into a storm sewer, and retrieved a knife for his cousin, who killed Wavra by repeatedly stabbing him and slitting his throat. Tr. 7394-96, 7401-07, 7412-15, 7441-46. The government also introduced the testimony of a prison guard who stated that Lee screamed and yelled and threatened to kill her after she told Lee he could not leave his cell to call his lawyer. Tr. 7462-67. Lee told the guard she was going to "die like the others" and he was "going to have [her] head blown off like the others." Tr. 7467. The government argued that this evidence, and the evidence of Lee's offense conduct introduced during the guilt phase of the trial, showed that Lee was violent

-6-

and volatile and would present a danger to others in the future. Tr. 7381, 7956-75.

Lee claimed 14 mitigating factors. *See* Tr. 7373-75. The emphasis of the defense presentation, however, was that Lee suffered from mental impairment due to his troubled upbringing. *See, e.g.*, Tr. 7385-88. The defense called lay witnesses, including his mother, to testify about Lee's past. *See, e.g.*, Tr. 7485-7553 (testimony of Debra Lee Graham). The defense also called two expert witnesses, Dr. Mark Cunningham, Ph.D., and Dr. Kevin Bianchini, Ph.D.

Dr. Cunningham testified about Lee's "adverse development life experiences," Tr. 7661, and opined that Lee "experienced many traumatic and adverse life experiences that fundamentally shaped him . . . neurologically, psychologically, socially, emotionally and ethically, and that . . . contributed to his involvement in this offense." Tr. 7742. Dr. Bianchini testified that he examined Lee, conducted tests, and diagnosed Lee with "nonpsychotic mental disorder following organic brain damage," which Dr. Bianchini characterized as "a very general term to describe brain damage." Tr. 7869.

### 1. Dr. Cunningham's Cross-Examination and Dr. Ryan's Rebuttal Testimony

During cross-examination of Dr. Cunningham, the government asked if Lee was a dangerous or violent person, and Dr. Cunningham testified that

Lee presents a "serious risk" "in the community." Tr. 7745-46. Lee's counsel moved in limine to prevent cross-examination of Dr. Cunningham regarding risk assessment or Lee's future dangerousness. Tr. 7746-47. Lee's counsel argued that Dr. Cunningham had not performed a risk assessment on Lee or testified about Lee's future dangerousness, and as a result those topics were outside the scope of Dr. Cunningham's direct testimony. *Id*. The Court concluded that Dr. Cunningham had conducted "an intimate investigation" of Lee and that the government therefore should be allowed to ask Dr. Cunningham questions "in the area of his expertise." Tr. 7747. Dr. Cunningham was "fully capable of explaining why he can't answer certain of these questions." *Id*. The government subsequently asked Dr. Cunningham about Lee's past history of violence and impulsive behavior. Tr. 7748-54. The government also elicited testimony about the term "psychopath" and the Hare psychopathy checklist revised. Tr. 7754.[2]

After the end of the trial day, Lee's counsel filed a written motion in limine asking the court to preclude Dr. Paul Ryan – the expert the government intended to call on rebuttal – from testifying about the topics of risk assessment, future dangerousness, and psychopathy. *Lee*, 274 F.3d at

---

[2] The Hare psychopathy checklist revised, the "PCL-R," is a test developed by a well-respected psychologist, Dr. Robert Hare, to determine whether an individual meets the criteria to be categorized as a "psychopath." Tr. 7782-84, 7797.

490. Defense counsel argued that these topics were not responsive to the topics Dr. Cunningham had discussed in his direct examination. 5/13/1999 Tr. 9. In response, the government informed the Court that it was "not going to present evidence in this case of Dr. Ryan's risk assessment evaluation of [Lee]," *id.* at 2, but argued that Dr. Cunningham's testimony on direct examination had opened the door to certain questions pertaining to psychopathy, *id.* at 2-7.

The Court voir dired Dr. Cunningham, who said he had not performed the Hare psychopathy checklist revised (PCL-R) or done any other analysis to determine whether Lee was a psychopath. *Id.* at 19. Judge Eisele ruled that the government could cross-examine Dr. Cunningham about conclusions he could draw from the investigation he performed, but that with regard to "taking him into areas that he didn't do and didn't investigate, then . . . I'm going to cut off some of that." *Id.* at 27. The Court concluded that it would delay a ruling on the scope of Dr. Ryan's rebuttal testimony until after Dr. Cunningham finished testifying. *Id.* at 26-29.

When cross-examination of Dr. Cunningham continued, the government asked, among other things, whether the Hare psychopathy checklist revised was useful to determine whether an individual would be dangerous in the future. *See, e.g.*, 7795-98. The government also elicited testimony that Dr. Cunningham had reviewed a report by Dr. Ryan and that Dr. Ryan had

-9-

identified Lee as falling into the psychopathy range under the Hare psychopathy checklist. Tr. 7825-27; *see generally Lee*, 89 F. Supp. 2d at 1024-26.

Dr. Cunningham testified that the Hare checklist was useful to assess the risk of future violence in the community but that it had "not yet been shown to be predictive of correctional institutional violence." Tr. 7812. Dr. Cunningham stated that "even though 25 percent of the guys in higher security prisons can be diagnosed as psychopaths, the base rate, the rate of serious violence that occurs in those facilities is very low and is much lower than what would be occurring, profoundly lower, than what would be occurring in this population in the community." Tr. 7819. Dr. Cunningham testified that he had used the Hare checklist to examine a defendant in a capital case in 1996, because at the time he "was not adequately familiar with how little research there was associated with the PCL-R with institutional conduct," and so he thought it "had predictive significance for institutional behavior." Tr. 7828. According to Dr. Cunningham, however, he subsequently "studied it more thoroughly and became aware of substantial weaknesses in that part of the research, and as a result [he] quit using the instrument in capital cases." *Id.* Dr. Cunningham testified that he "did not find it to be adequately research supported to tell me . . . how is this person going to act in prison, or how is he going to behave on old age parole, because there's

insufficient research with that group as well." Tr. 7828-29. As a result, Dr. Cunningham "discontinued using" the Hare checklist in capital cases, Tr. 7829.

After this cross-examination, Lee's counsel asked the Court for a ruling on whether Dr. Ryan would be allowed "to testify regarding risk assessment or psychopathy." Tr. 7830. Lee's counsel also said she "was assuming that [she] had an ongoing objection because of [her] motion" and explained that as a result she did not "stand up and object every time" during Dr. Cunningham's cross-examination. Tr. 7832. The Court confirmed that Lee's counsel had an ongoing objection. *Id*. The Court also said it was "convinced that I probably permitted the government to go much farther on cross-examination than is proper." Tr. 7836. The Court then granted Lee's "motion in limine with respect to the issue of psychopathy, the Hare psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote, on the basis that such would not be proper rebuttal." *Id*.

The government called Dr. Ryan as a rebuttal witness. On direct examination, he testified that he had spent over 20 hours interviewing and speaking with Lee. Tr. 7906. Dr. Ryan testified, among other things, that – contrary to Dr. Bianchini's diagnosis – Lee did not have brain damage and did not suffer from a mental illness. Tr. 7907-18. In addition, the Court allowed the government to elicit testimony, over the objection of Lee's counsel, that

Lee did not express remorse for getting into fights or other misconduct. Tr. 7929-31. In accordance with the district court's ruling, however, Dr. Ryan did not testify about the risk assessment he performed on Lee or his diagnosis of Lee as a psychopath. Dr. Ryan accordingly did not offer an opinion that Lee's diagnosis as a psychopath showed he posed a risk of future dangerousness while in prison.

### 2.    The Jury's Sentencing Verdict

The jury rejected the government's claim that Lee committed the murders after substantial planning and premeditation. The jury concluded, however, that the evidence established the other alleged aggravating factors, including that Lee would be a danger to others in the future. Tr. 8017, 8020.

The jury largely rejected Lee's mitigation case. One or more of the jurors found the existence of only five of the 14 mitigating factors claimed by Lee. Half of the jurors found that Lee's abuse and neglect as a child was a mitigating factor. But the jurors unanimously rejected the contention that Lee had a mental impairment that should weigh against application of the death penalty. Tr. 8017-19.

After weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for each of the three murder charges. Tr. 8019-22.

### III.    New Trial Motion

Lee filed a motion seeking a new sentencing hearing. As relevant here, he argued that the government "used its cross-examination of Dr. Cunningham to improperly develop new evidence of risk assessment and future dangerousness." *Lee*, 89 F. Supp. 2d at 1020. Lee also argued that the Court "erred in permitting the government to go beyond the scope of permissible rebuttal by questioning Dr. Ryan about risk assessment and future dangerousness." *Id.*[3]

Judge Eisele granted the motion. *United States v. Lee*, 89 F. Supp. 2d 1017, 1041-42 (E.D. Ark. 2000). The Court concluded that the cross-examination of "Dr. Cunningham went well beyond the mitigation evidence raised by Dr. Cunningham on direct and ultimately became an expanded encore presentation of the Government's case for future dangerousness." *Id.* at 1028. The Court similarly concluded that Dr. Ryan's rebuttal testimony "also improperly focused on Defendant Lee's violent character traits." *Id.* The Court concluded that it "erred in failing to restrain the Government in these respects despite Defendant Lee's insistence that the questioning was

---

[3] Lee also argued that the government improperly failed to follow the Department of Justice death penalty protocol. According to Lee, the Attorney General, and not the Deputy Attorney General, was required to make the final decision to decertify or withdraw the death penalty notice as to him. *See Lee*, 89 F. Supp. 2d at 1033.

improper," and that "[a]s a result, Defendant Lee's rights were irreversibly compromised." *Id*. at 1028-29.

With respect to the cross-examination of Dr. Cunningham about psychopathy, the Court concluded that, "[w]hile the psychopath evidence may, to a certain extent, have been proper cross-examination as it was an alternate explanation for [Lee's] alleged violence, the presentation of the psychopath evidence turned into future dangerousness and risk assessment evidence, thus going beyond the scope of proper cross-examination." *Id*. at 1029-30. Because "Lee chose neither to perform a risk assessment analysis nor to present rebuttal evidence on the future dangerousness aggravating factor," the Court concluded, he was "ill-equipped to handle the Government's discussion of psychopathy." *Id*. at 1030. The Court held that "[i]n failing to restrict the Government's statements and inquiries regarding psychopathy more than it did, the Court erred, and, as a result, Defendant Lee did not receive a fair sentencing hearing." *Id*. at 1031.

The Eighth Circuit reversed and reinstated Lee's death sentence. *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002). The court concluded, in relevant part, that it was not error for Judge Eisele to allow the government to elicit testimony from Dr. Cunningham "on the issue of psychopathy," even if the testimony exceeded the scope of Dr. Cunningham's direct examination. *Id*. at 495. The court explained that the

-14-

"Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings" and allows a district court to "exclude evidence only 'if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" *Id.* at 494 (quoting 18 U.S.C. § 3593(c)) (emphasis omitted). The court concluded that "Lee's potential psychopathy was probative of his future dangerousness." *Id.* The court further concluded that there was no "threat of unfair prejudice" because "Lee opened the door to testimony concerning psychological diagnosis" by "introducing a mental health expert in defense." *Id.* at 495. As for Dr. Ryan's rebuttal testimony, the court concluded that "[t]he government's brief examination of Dr. Ryan concerning Lee's lack of remorse exceeded the scope of Dr. Cunningham's direct testimony, but Dr. Ryan's statement fell within the wide boundaries set for the admission of evidence at capital sentencing hearings." *Id.* The court was unable to "conclude that this single comment unfairly prejudiced Lee." *Id.*[4]

---

[4] The court also concluded that the DOJ death penalty protocol "does not create individual rights that Lee can enforce," and therefore "any violation of it was not a basis on which the district court could issue its conditional order for a new penalty hearing." *Lee*, 274 F.3d at 493.

## IV.   Section 2255 Motion

### A.   Lee's Section 2255 Motion

The Eighth Circuit affirmed Lee's conviction and sentence on direct appeal, *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005), and Lee filed a motion for post-conviction relief under 28 U.S.C. § 2255, Dkt. 1118. As relevant here, he advanced three claims regarding the testimony of Dr. Cunningham and Dr. Ryan during the sentencing hearing. Dkt. 1118, at 33-34.

First, he argued that he received ineffective assistance of counsel because his lawyers "failed to fully and continuously object during the government's improper cross-examination" of Dr. Cunningham. Dkt. 1118, at 33. According to Lee, "the government exceeded the proper scope of cross examination and made Dr. Cunningham their own expert witness on the issue of [his] future dangerousness." *Id*. "Dr. Cunningham never performed a risk assessment," Lee argued, and the government therefore should not have been allowed to cross-examine him on the subject of Lee's future dangerousness. *Id*.

Second, he asserted that his counsel were ineffective because they used Dr. Cunningham, instead of a lay witness, to offer testimony about Lee's "life and family history." Dkt. 1118, at 33. According to Lee, this strategy "allowed the government to open the door to cross examination on the inflammatory

issue of 'psychopathy.'" *Id.* at 34. "One can imagine few things," Lee argued, "that are as damaging to a defendant on trial for his life as being characterized , 'scientifically,' as a 'psychopath.'" *Id.*

Third, he argued that his counsel were ineffective because they "failed to object to Dr. Ryan's testimony as improper rebuttal given that Dr. Cunningham never offered a diagnosis." Dkt. 1118, at 34. Lee further contended that "defense counsel failed to object to the submission of Dr. Ryan's report especially since it included a risk assessment, something that Dr. Cunningham had not included in his testimony." *Id.* In the context of this claim, Lee stated in a footnote that Dr. Ryan no longer believes that the Hare psychopathy checklist is "an appropriate instrument to be utilized in evaluating the future danger of capital defendants." *Id.* at 34 n.14

## B.   Judgment Denying the Motion

Judge Eisele denied Lee's Section 2255 motion. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008). As relevant here, he rejected Lee's three claims regarding the testimony of Dr. Cunningham and Dr. Ryan. *Id.* at *47-*48.

First, with respect to Lee's claim that "his counsel erred in allowing the Government to exceed the scope of cross-examination and make Dr. Cunningham a witness for the prosecution as to [his] future dangerousness," the Court concluded that Lee's "[t]rial counsel performed exactly as [Lee] now

-17-

argues that they should have – by interposing a continuing objection to said cross-examination of Dr. Cunningham." *Id.* at \*46. The Court further concluded that "[t]he subject of Dr. Cunningham's testimony has received extensive scrutiny, both post-trial and on appeal," and the "the merits of this issue, which have been ruled on by the Eighth Circuit, may not be revisited on collateral review." *Id.*

Second, the Court concluded that it was a reasonable trial strategy to have Dr. Cunningham, rather than a lay witness, present Lee's "family and social history including a history of prior mental diagnoses." *Id.* at \*47. The "strategy provided Lee with the benefit of having a certified forensic psychologist detail his family and social history, which allowed the expert to summarize such history with broad sweeping opinions which were difficult to counter." *Id.* In addition, the Court concluded, Lee's "trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination failed." *Id.* "Trial counsel attempted to limit the risk of damaging cross-examination of Dr. Cunningham by not having him perform any risk assessment or offer any testimony on direct as to a formal diagnosis or future dangerousness," the Court concluded, and "[i]t was certainly not foreseeable that this Court would allow the Government to expand the cross-examination as far as it did." *Id.*

-18-

Third, the Court found no merit to the claim that Lee's trial counsel were ineffective for failing to object to Dr. Ryan's rebuttal testimony. *Id.* at *47-*48. As relevant here, the Court concluded that Lee's "premise that Dr. Ryan was offered as a rebuttal witness to Dr. Cunningham is flawed, since a fair reading of Dr. Ryan's testimony indicates that he was called primarily to counter the opinion testimony of Petitioner's expert, Kevin Joseph Bianchini, Ph.D," who "diagnosed Lee with 'nonpsychotic mental disorder following organic brain damage.'" *Id.* at *48. The Court also concluded that Lee could not establish prejudice from any failure to object to Dr. Ryan's testimony. *Id.* "In light of this Court's prior decision to set aside the death verdict and the Eighth Circuit's subsequent holding that the evidence presented through Dr. Cunningham and Dr. Ryan as to Lee's psychopathy and lack of remorse did not unfairly prejudice Lee," the Court concluded, "it is difficult to see how any additional objection that Petitioner's counsel could have made to Dr. Cunningham's or Dr. Ryan's testimony could have altered the outcome." *Id.*

### C.    Motion for Reconsideration

On September 18, 2008, Lee filed a motion for reconsideration under Fed. R. Civ. P. 59(e). Dkt. 1165. The motion asserted numerous grounds for rehearing. As relevant here, Lee argued for the first time that he received ineffective assistance of counsel because his trial counsel did not object to the psychopathy evidence introduced during cross-examination of Dr.

Cunningham as "scientifically invalid and non-probative of the issue of future dangerousness." Dkt. 1165, at 20. Lee attached to his motion affidavits from psychologists (dated May 2000) stating that the current research was insufficient to conclude that the Hare psychopathy checklist could predict future dangerousness in prison. Dkt. 1165-7. He also attached an affidavit from Dr. Ryan stating that as of 2000 he determined it was not appropriate to use the Hare psychopathy checklist to assess an individual's future dangerousness in prison. Dkt. 1165-4.[5]

Judge Eisele denied the motion. *United States v. Lee*, No. 97-CR-00243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). As a general matter, the Court determined that at least some of the claims raised in the motion were subject to the applicable restrictions on filing successive motions for postconviction relief under 28 U.S.C. § 2255. *Id*. at *5, *6; *see* 28 U.S.C. § 2255(h). The Court also concluded that relief was not warranted under Rule 59(e). *Id*. Lee did not "present[] anything that would require the Court to revisit a previously asserted claim, such as showing manifest errors of law or fact." *Id*. The Court determined that most of the claims raised in the Rule 59(e) motion were

---

[5] There does not appear to be a dispute that a person diagnosed as a psychopath using the Hare checklist is more likely to present a risk of future dangerousness in the general population. These affidavits stated that the scientific studies did not show a statistically significant relationship between a diagnosis as a psychopath and acts of physical violence *while in prison*. *See* Dkt. 1654-7, at 3-4.

"either reiterations of previous arguments or attempts to introduce new evidence or legal theories which could have been raised prior to the entry of judgment." *Id.*; *see United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (explaining that a Rule 59(e) motion "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment").

Specifically with respect to Lee's claim pertaining to the psychopathy evidence and cross-examination of Dr. Cunningham, the Court concluded that the claim "should . . . be deemed successive." *Id.* at *5. Lee's Section 2255 motion did not put the Court "on notice" of the new arguments Lee advanced in his Rule 59 motion, Judge Eisele explained, and Lee did not "explain why the information he now includes [with the Rule 59(e) motion] was not included in connection with his original petition." *Id.* at *6.

The Court also concluded that the claim was "lacking in merit." *Id.* at *5; *see also id.* at *6 ("[T]he claim, even if considered on the merits, is problematic."). The Court determined that Dr. Ryan's 2000 change of mind did not establish that Lee's lawyers were ineffective at the time of trial (in 1999) for not challenging the scientific validity of using the Hare psychopathy checklist. *Id.* at *6.

### D.    Section 2255 Appeal

Judge Eisele granted a certificate of appealability with respect to one issue raised in Lee's Section 2255 motion: whether Lee's death sentence was unconstitutional because his co-defendant Chevie Kehoe received a sentence of life imprisonment. Dkt. 1204. Lee subsequently filed a motion in the Eighth Circuit seeking to expand the certificate of appealability to encompass 17 additional issues.

One of the issues for which Lee sought a certificate of appealability was whether "trial counsel rendered constitutionally ineffective assistance by failing to challenge the government's introduction of evidence of Mr. Lee's alleged psychopathy and concomitant predisposition towards violence on the ground that it was scientifically invalid and unsupportable and wholly misleading to the jury." COA Motion 78. According to Lee, "[r]easonably competent counsel would have moved to exclude the evidence under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)." *Id.*

The Eighth Circuit expanded the certificate of appealability to encompass one additional claim: whether Lee received ineffective assistance of counsel during jury selection because his lawyers exercised peremptory challenges on the basis of race. The court of appeals denied Lee's motion as to all other claims. The court also denied a petition for rehearing en banc.

-22-

Accordingly, in the ensuing appeal, Lee argued (1) that he received ineffective assistance of counsel during jury selection, and (2) that the disparity between his and Kehoe's sentences showed that his death sentence was unconstitutionally arbitrary. Lee COA Br. 16-33, 38-40. According to Lee, the "arbitrariness" of his sentence was "exacerbated" by the psychopathy evidence elicited at trial because "there is no scientific bases whatsoever for the proposition that individuals diagnosed as psychopaths are likely to be dangerous when incarcerated." Lee COA Br. 40-41.

On April 29, 2013, the Eighth Circuit issued an opinion affirming the denial of Lee's Section 2255 motion. *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013). The court rejected Lee's claim of ineffective assistance of counsel during jury selection. *Id.* at 221-24. The court also rejected the claim that Lee's death sentence was arbitrary, concluding that it had already rejected the claim on direct appeal and that Lee therefore could not relitigate it on collateral review. *Id.* at 224. With respect to Lee's contention that "the government's evidence of future dangerousness was premised on junk science," the court determined that this issue was "beyond the scope of our certificate of appealability" and "therefore not properly before the court." *Id.* The court also noted that it had "previously concluded that there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy

-23-

evidence by the government during sentencing." *Id.* (quoting *Lee*, 274 F.3d at 495).

## V.   Rule 60(b) Motion

Lee filed a petition for rehearing and rehearing en banc in the court of appeals on September 27, 2013. That same day he also filed in this Court the currently-pending motion for relief from judgment under Fed. R. Civ. P. 60(b). That motion renews the argument – first made in his Rule 59(e) motion, and again in his motion to expand the certificate of appealability – that his trial counsel were ineffective because they failed to object to testimony about his diagnosis as a psychopath on the grounds that it was "an unreliable and invalid predictor of an individual's future dangerousness in prison." Dkt. 1230, at 1. Lee also filed a motion under Fed. R. Civ. P. 62.1 asking this Court for an indicative ruling that the Rule 60(b) motion "raises a substantial issue" or that the Court "would grant the motion" if the court of appeals were to remand for that purpose. Dkt. 1231, at 11.[6]

### ARGUMENT

Fed. R. Civ. P. 60(b) sets forth six grounds on which a "court may relieve a party . . . from a final judgment." When a motion for relief from judgment under Rule 60(b) is filed during the pendency of an appeal from

---

[6] Lee also filed a motion asking the Eighth Circuit to stay appellate proceedings while his motion for an indicative ruling is pending. The court of appeals denied the motion on November 14, 2013.

that judgment, a district court lacks authority to grant the motion. *See Winter v. Cerro Gordo County Conservation Bd.*, 925 F.3d 1069, 1073 (8th Cir. 1991). Fed. R. Civ. P. 62.1 enumerates a district court's options in those circumstances. The court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a).

If the court elects option (3), and provides what is often referred to as an "indicative ruling," *see, e.g.*, Fed. R. App. P. 12.1, the court must "promptly notify" the court of appeals, Fed. R. Civ. P. 62.1(b). The court of appeals may then remand for the district court to decide the motion "but retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. P. 12.1(b); *see* Fed. R. Civ. P. 62.1(c).

Rule 62.1 is not applicable here. Although fashioned as a Rule 60(b) motion, Lee's motion in fact qualifies as a second or successive motion for collateral relief under 28 U.S.C. § 2255. As a result, Lee must first seek certification in the court of appeals. *See* 28 U.S.C. § 2255(h). Absent such certification, this Court lacks jurisdiction. *See Boyd v. United States*, 304 F.3d 813, 814 (8th Cir. 2002) (per curiam). The Court should therefore dismiss the motion for lack of jurisdiction. *Id.*

If the Court disagrees and concludes that Lee's motion is in fact a true Rule 60(b) motion, the Court should deny the motion as contemplated by Fed. R. Civ. P. 62.1(a)(2). Even if considered a true Rule 60(b) motion, relief from judgment is not warranted under the applicable Rule 60(b) standards.[7]

## I.    The Court Should Dismiss the Purported Rule 60(b) Motion for Lack of Jurisdiction Because it is a Successive Motion for Relief Under 28 U.S.C. § 2255

### A.    Lee Was Afforded His One Full Opportunity to Collaterally Attack His Conviction and Sentence Under 28 U.S.C. § 2255

Once a federal defendant's conviction becomes final he or she "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. The motion must "specify all the grounds for relief available to the moving party." Rule 2, Rules Governing Section 2255 Proceedings for the United States District Courts. Claims not raised in the

---

[7] After this Court ordered the government to respond to Lee's motion for an indicative ruling in 14 days, the government sought a 30-day extension in light of the "the complexity of the case, and the substantial issues involved." Dkt. 1233. In a recent Eighth Circuit filing, Lee claims that this statement was a concession that his Rule 60(b) motion "raises a substantial issue" for purposes of Fed. R. Civ. P. 62.1(a)(3). That is not correct. The government's extension motion simply reflects that substantial issues are involved in responding to a motion for an indicative ruling on a 54-page Rule 60(b) motion in a capital case, the procedural history of which spans more than 15 years. That is not the same as conceding that Lee's Rule 60(b) motion raises substantial issues on the merits. Moreover, assuming *arguendo* that the Rule 60(b) motion does in fact raise substantial issues, this Court is not required to issue an indicative ruling under Rule 62.1(a)(3). The Court has the option to "deny the motion," Fed. R. Civ. P. 62.1(a)(2), or even to "defer considering" it, Fed. R. Civ. P. 62.1(a)(1).

motion must be pursued in a second or successive motion for relief. *United States v. Hamilton*, 604 F.3d 572, 574 (8th Cir. 2010); *see Abdullah v. United States*, 240 F.3d 683, 685-86 (8th Cir. 2001); *Hines v. United States*, 282 F.3d 1002, 1005 (8th Cir. 2002).

Under provisions enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), any "second or successive motion" for relief under 28 U.S.C. § 2255 must be certified by a panel of the court of appeals. *See, e.g., Vitrano v. United States*, 721 F.3d 802, 606-08 (7th Cir. 2013). The court of appeals must certify that the motion raises a claim involving "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h); *see* 28 U.S.C. § 2244(b)(2) . A district court lacks jurisdiction to consider a successive motion absent such certification. *See United States v. Patton*, 309 F.3d 1093, 1094 (8th Cir. 2002) (per curiam); *Boyd*, 304 F.3d at 814.

A defendant cannot avoid the certification requirement "by purporting to invoke some other procedure," *United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005) (per curiam), such as a motion for relief from a judgment

under Fed. R. Civ. P. 60(b), *see Boyd*, 304 F.3d at 814. The Federal Rules of Civil Procedure, including Rule 60(b), apply in Section 2255 proceedings only to the extent they are not inconsistent with applicable federal statutory provisions. Rule 12, Rules Governing Section 2255 Proceedings for the United States District Courts; Fed. R. Civ. P. 81(a)(4)(A). It is the substance of a motion, not the label attached to it, that determines whether it is a "second or successive" motion subject to AEDPA's gatekeeping requirements. Thus, if a district court determines that a "Rule 60(b) motion is actually a second or successive habeas petition, the district court should dismiss it for failure to obtain authorization from the Court of Appeals or, in its discretion, may transfer the purported Rule 60(b) motion to the Court of Appeals." *Boyd*, 304 F.3d at 814.

The "idea behind" these provisions "is that a prisoner is entitled to one, but only one, full and fair opportunity to wage a collateral attack." *O'Connor v. United States*, 133 F.3d 548, 550 (7th Cir. 1998); *accord Prost v. Anderson*, 636 F.3d 578, 586 (10th Cir. 2011). Under Section 2255, "[t]here is only one bite at the post-conviction apple unless a second or successive petition can show" a new rule of constitutional law made retroactive on collateral review or newly-discovered evidence that sufficiently undermines a guilty verdict. *United States v. Barrett*, 178 F.3d 34, 57 (1st Cir. 1999). A defendant who has "failed to marshal all his claims of error in his first section 2255 petition"

cannot "rectify[] his omission by means of a second petition." *Id.* (internal citation and quotation marks omitted).

Lee was afforded his one unrestricted opportunity to collaterally attack his conviction and sentence. He filed a Section 2255 motion on June 26, 2006. Dkt. 1118. The motion was extensively briefed, and in an order dated May 22, 2008, the Court provided Lee with "one final opportunity to put before the Court additional legal authority or argument in support of the grounds for relief currently before the Court." Dkt. 1156. Once the Court denied the motion, Lee was required to satisfy the gatekeeping requirements of 28 U.S.C. § 2255 before pursuing a second or successive motion. *See Williams v. Norris*, 461 F.3d 999, 1003-04 (8th Cir. 2006) (gatekeeping requirements apply after the district court's judgment, even if the judgment has not yet been affirmed on appeal).

### B.      Lee's Rule 60(b) Motion is a Second or Successive Motion for Relief Under 28 U.S.C. § 2255

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court addressed when a motion under Fed. R. Civ. P. 60(b) will qualify as a "second or successive" application for relief under 28 U.S.C. § 2254 and therefore be subject to AEDPA's gatekeeping restrictions.[8] The Court held that "[a] motion

---

[8] Whereas Section 2255 allows federal prisoners to collaterally attack their federal convictions, 28 U.S.C. § 2254 provides that a federal court can entertain an application for a writ of habeas corpus from a state prisoner challenging his state conviction under federal law. The provisions restricting

that seeks to add a new ground for relief . . . will of course qualify." 545 U.S.
at 532. The Court concluded that "[u]sing Rule 60(b) to present new claims for
relief from a state court's judgment of conviction – even claims couched in the
language of a true Rule 60(b) motion – circumvents AEDPA's requirement
that a new claim be dismissed unless it relies on either a new rule of
constitutional law or newly discovered facts." *Id.* at 531 (citing 28 U.S.C.
§ 2244(b)(2)). On the other hand, the Court held that a Rule 60(b) motion that
"attacks, not the substance of the federal court's resolution of a claim on the
merits, but some defect in the integrity of the federal habeas proceedings"
should not be treated as a second or successive habeas petition. *Id.* at 532.

*Gonzalez* establishes that Lee's Rule 60(b) motion is a second or
successive Section 2255 motion. As an initial matter, although *Gonzalez*
involved a habeas petition by a state prisoner under 28 U.S.C. § 2254, courts
have uniformly concluded that *Gonzalez*'s reasoning applies with equal force
to a federal prisoner's motion for collateral relief under Section 2255. *Gilbert
v. United States*, 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc) (collecting
cases). Lee's Rule 60(b) motion is a successive motion under *Gonzalez* because
it seeks to present a new ground for relief.

---

second or successive Section 2254 petitions are similar but not identical to the
provisions limiting second or successive applications for postconviction relief
under Section 2255. *See Gonzalez*, 545 U.S. at 530 n.3.

In his first Section 2255 motion, Lee raised three ineffective assistance claims pertaining to the testimony of Dr. Cunningham and Dr. Ryan. He argued that his trial counsel were ineffective because they (1) failed to "fully and continuously object" to the government's cross-examination of Dr. Cunningham about Lee's future dangerousness as "exceed[ing] the proper scope of cross examination," Dkt. 1118, at 33; (2) used Dr. Cunningham (instead of a lay witness) to introduce evidence about Lee's life and family history, thereby "open[ing] the door to cross examination on the inflammatory issue of 'psychopathy,'" Dkt. 1118, at 34; and (3) failed to object to Dr. Ryan's rebuttal testimony, Dkt. 1118, at 34. None of these claims encompassed the claim, now advanced, that his trial counsel were ineffective because they did not object to the admissibility of the psychopathy evidence elicited during the cross-examination of Dr. Cunningham as unreliable and scientifically invalid. This is an entirely new claim that must satisfy AEDPA's gatekeeping provisions for successive motions.

That was Judge Eisele's view when Lee attempted to raise the claim for the first time in his Rule 59(e) motion. Judge Eisele concluded that Lee's first Section 2255 motion "was not sufficient to place the Court on notice of the full argument that Petitioner now presents," *Lee*, 2010 WL 5347174, at *6, and that the claim "should, in the Court's view, be deemed successive," *id*. at *5. Allowing Lee to pursue this new claim in a Rule 60(b) motion would

-31-

improperly circumvent Section 2255(h)'s requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts. 28 U.S.C. § 2255(h); *see* 28 U.S.C.§ 2244(a)(b)(2).

Lee's Rule 60(b) motion cannot be characterized as an attack on the integrity of the federal collateral proceedings in this case. An attack based on the omissions of collateral counsel – e.g., that counsel "omitted a claim of constitutional error," *Gonzalez*, 545 U.S. at 531 – "ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably," *id.* at 532 n.5; *accord Ward v. Norris*, 577 F.3d 925, 932-35 (8th Cir. 2009). As in *Ward v. Norris*, Lee's Rule 60(b) motion is "not based on a procedural defect, but rather attack[s] previous habeas counsel's omissions and ask[s] for a second opportunity to have the merits determined favorably." 577 F.3d at 935. Lee's motion "seeks to advance, through new counsel, new claims." *Id.* Lee therefore must proceed through the gatekeeping requirements of 28 U.S.C. § 2255(h).

The Second Circuit's decision in *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004), is instructive. In that case, the defendant's "Rule 60(b) motion sought relief from judgment because [collateral] counsel had failed to raise a Sixth Amendment claim." *Gonzalez*, 545 U.S. at 531 (describing *Harris*). Specifically, after the Second Circuit dismissed as second or successive a Section 2255 motion claiming "that counsel in [Harris's] direct appeal had

-32-

been constitutionally ineffective in failing to appeal two alleged sentencing errors," Harris "asserted the ineffectiveness claim again, this time in a motion" under Rule 60(b), "on the (more attenuated) theory that his counsel in the first [Section 2255 motion] had been ineffective because he failed to argue that counsel in his direct appeal had been constitutionally ineffective in failing to appeal the two alleged sentencing errors." *Harris*, 367 F.3d at 76. The Supreme Court, in *Gonzalez*, made clear that a Rule 60(b) motion "that seeks to add a new ground for relief, as in *Harris*, *supra*, will of course qualify" as a second or successive application for collateral relief. 545 U.S. at 532.

If *Gonzalez* deemed the motion in *Harris* to be "an example of a 60(b) motion that improperly sought to circumvent AEDPA," *Franqui v. Florida*, 638 F.3d 1368, 1373 (11th Cir. 2011) (discussing *Harris* and *Gonzalez*), then so too is Lee's Rule 60(b) motion. As in *Harris*, Lee seeks to raise a claim that his trial counsel were ineffective, and he seeks to do it in a Rule 60(b) motion on the ground that his collateral counsel were negligent for failing to raise it in the first instance. *Gonzalez* establishes that, as in *Harris*, Lee's Rule 60(b) motion is in fact a second or successive motion for collateral relief and that he therefore must proceed through AEDPA's gatekeeping provisions. Lee cannot "reopen his habeas proceeding so that he can litigate claims that the alleged ineffectiveness of his [collateral] attorneys prevented him from fully litigating

in the first habeas go-round." *Brooks v. Bobby*, 660 F.3d 959, 962 (6th Cir. 2011) (discussing *Harris* and *Gonzalez*). "If the successive-petition bar does not limit this theory, it limits nothing." *Id*. at 963.

### C.   *Trevino* Does Not Provide a Basis to Avoid Section 2255's Restrictions on Second and Successive Motions

Lee contends that the Supreme Court's decision in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), allows him to avoid Section 2255(h)'s gatekeeping provisions. Dkt. 1230, at 12-20. According to Lee, his collateral counsel during the Section 2255 proceedings "defaulted" the ineffective assistance claim that he now advances in his Rule 60(b) motion, and *Trevino* provides a basis to "excuse the default." *Id*. He is incorrect. To explain why that is so, we must provide some background on the principles governing collateral review of ineffective assistance claims.

### 1.   *Trevino* is Only Applicable When State Prisoners Seek Federal Habeas Review

Different statutory provisions allow for state and federal prisoners to collaterally attack their otherwise final convictions. Section 2255 provides that a federal prisoner may "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Under 28 U.S.C. § 2254, a federal court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a

State court" on the ground that he is in custody in violation of federal law. 28 U.S.C. § 2254(a).

There are limits to the claims a federal prisoner may raise in a Section 2255 motion. A defendant cannot relitigate claims previously raised on direct appeal. *Lee*, 715 F.3d at 224. And claims the defendant did *not* raise on direct appeal are generally "procedurally defaulted" and cannot be raised for the first time in a Section 2255 motion absent a showing of "cause" and "prejudice." *Bousley v. United States*, 523 U.S. 614, 620-23 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). One exception is that Sixth Amendment claims of ineffective assistance of trial counsel need not be raised on direct appeal and can (and generally should) be raised for the first time in a motion for relief under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

State prisoners seeking habeas relief under 28 U.S.C. § 2254 are likewise restricted in the claims they can raise. For example, under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law," but negligence on the part of the prisoner's attorney

during state postconviction proceedings generally does not qualify as "cause." *Id.*

In contrast to Section 2255 proceedings, a state defendant can procedurally default a claim of ineffective assistance of trial counsel – and thus be unable to raise it in a habeas petition under Section 2254 – by failing to adequately raise the claim during state proceedings. *See, e.g.*, *Schawitsch v. Burt*, 491 F.3d 798, 803-04 (8th Cir. 2007). In *Martinez v. Ryan*, however, the Supreme Court recognized a "narrow exception" to the rule that negligence on the part of counsel in state collateral proceedings may not qualify as cause to overcome procedural default. 132 S. Ct. at 1315.

*Martinez* held that in states requiring that ineffective assistance of trial counsel claims be raised for the first time on state collateral review, a defendant seeking to overcome procedural default of an ineffective assistance claim can establish cause in two circumstances: (1) when the defendant was not appointed counsel in the state collateral review proceedings where the claim of ineffective assistance of trial counsel had to be raised, or (2) when appointed counsel in the proceedings where the ineffective assistance claim had to be raised was himself ineffective under the standards of *Strickland v. Washington*, 466 U.S. 688 (1984). *Martinez v. Ryan*, 132 S. Ct. at 1318. In *Trevino*, the Court extended the application of *Martinez*'s narrow equitable exception to states that permit a defendant to initially raise a claim of

-36-

ineffective assistance of trial counsel on direct appeal but in practice make it virtually impossible to do so. *Trevino v. Thaler*, 133 S. Ct. at 1915.

*Martinez* and *Trevino* have no bearing on collateral proceedings brought by federal defendants under 28 U.S.C. § 2255. The rulings in *Martinez* and *Trevino* establish that procedural default of an ineffective assistance claim during state collateral proceedings may be excused – so that the claim can be raised for the first time in a habeas petition under 28 U.S.C. § 2254 – because of negligence by counsel during the state collateral proceedings. A federal defendant, however, cannot procedurally default a claim of ineffective assistance of trial counsel by failing to raise it prior to filing a Section 2255 motion. *Massaro*, 538 U.S. at 504-05. *Martinez* and *Trevino* therefore have no relevance to collateral review under 28 U.S.C. § 2255. *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012) ("*Martinez* is inapplicable to federal convictions and thus inapplicable to Buenrostro's application."); *United States v. Guillory*, Crim. No. 2:02–20062, 2013 WL 4782211, at *6 (W.D. La. Sept. 5, 2013) ("Several courts have held that *Martinez* is inapplicable to federal prisoners seeking to challenge their federal convictions. The undersigned agrees with the reasoning of those opinions.") (citing cases).

### 2.    The Equitable Rule of *Trevino* Does Not Abrogate AEDPA's Statutory Barriers to Second and Successive Federal Habeas Applications

*Trevino* and *Martinez* create a narrow equitable exception to the rule

that negligence on the part of counsel in state collateral proceedings may not

qualify as cause to overcome procedural default. Thus, when a state prisoner

files a first habeas petition under Section 2254 and seeks to raise a claim that

trial counsel was ineffective, under *Martinez* and *Trevino* he can – in some

circumstances – overcome a procedural default by showing that his state

collateral counsel was negligent.

The equitable rule of *Trevino* and *Martinez* does not, however, allow a

state prisoner to set aside AEDPA's gatekeeping provisions for successive

petitions by claiming that federal collateral counsel during the first Section

2254 petition provided ineffective assistance. If the state prisoner does not

raise an ineffective assistance claim in his first Section 2254 petition, and

seeks to raise it in a second or successive Section 2254 petition, he must

proceed through AEDPA's gatekeeping provisions. *Jones v. Ryan*, __ F.3d __,

2013 WL 5676467, at *6-*7 (9th Cir. Oct. 18, 2013); *In re Threadgill*, 522 Fed.

Appx. 236, 237-38 (5th Cir. 2013) (unpublished). Thus, even assuming

*Trevino* had some applicability to Section 2255 proceedings, which it does not,

the equitable rule of *Trevino* could not possibly abrogate the statutory

barriers to second or successive motions set forth at 28 U.S.C. § 2255(h). *See Buenrostro*, 697 F.3d at 1139-40.

Lee seeks to avoid that result by describing the failure to raise a claim in a first Section 2255 motion as "procedural default," Dkt. 1230, at 15, but that is not accurate. *See Magwood v. Patterson*, 130 S. Ct. 2788, 2801-02 (2010) (distinguishing "procedural-default rules" from Section 2244(b)'s restrictions on "second or successive" applications). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. In contrast, the limitation on "second or successive" applications established by 28 U.S.C. § 2255(h) and 28 U.S.C. § 2244 are statutory requirements that were created by Congress in AEDPA. The equitable exception to procedural default recognized in *Martinez* and *Trevino* does not – and cannot – abrogate the successive-motion bar of Section 2255(h). *See Buenrostro*, 697 F.3d at 1140; *United States v. Soto-Valdez*, No. CV–99–1591, 2013 WL 5297142, at *14 & n.11 (D. Ariz. Sept. 19, 2013).

In sum, the equitable rule of *Trevino* and *Martinez* applies only during a state prisoner's first federal habeas petition challenging his or her state conviction under 28 U.S.C. § 2254. At that time, under *Trevino* and *Martinez*, the state prisoner may be able to overcome procedural default of a claim that

his trial counsel provided ineffective assistance by showing that his state collateral counsel performed deficiently. The limited equitable rule of *Trevino* and *Martinez* does not abrogate the statutory gatekeeping requirements for second or successive Section 2254 petitions. Nor do *Trevino* or *Martinez* pertain to Section 2255 motions, where ineffective assistance claims cannot be procedurally defaulted. *Trevino* and *Martinez* simply have no bearing on Lee's case.[9]

## II.   Assuming Lee's Motion is Not a Successive Section 2255 Motion, Relief From Judgment is Not Warranted Under Rule 60(b)

If the Court concludes that Lee's Rule 60(b) motion is not a successive Section 2255 motion and that it can therefore exercise jurisdiction, the Court

---

[9] In a recent filing in the Eighth Circuit, Lee Stay Reply 9-12 (filed Nov. 4, 2013), Lee analogized an initial Section 2255 motion to the Texas collateral proceedings at issue in *Trevino*. Both are in effect the defendant's first opportunity to raise a claim that trial counsel was ineffective. Lee thus argues that, if a state defendant may overcome procedural default of an ineffective assistance claim in a first Section 2254 petition by showing that state collateral counsel was negligent in failing to raise that claim, then a federal prisoner should similarly be able to raise in a subsequent motion an ineffective assistance claim that his counsel negligently failed to raise during the first Section 2255 motion. As noted, however, *Trevino* does not – and cannot – overcome the statutory barrier to second or successive Section 2255 motions. Just as *Trevino* cannot excuse the failure to raise an ineffective assistance claim in a first Section 2254 petition, *see In re Threadgill*, 522 Fed. Appx. at 237-38, negligence of counsel during a first Section 2255 motion is not a basis to set aside AEDPA's gatekeeping provisions. It is simply in the nature of Section 2254 proceedings that a state prisoner gets an extra layer of review – *i.e.*, review in state courts – that is not available to federal prisoners. The existence of that additional level of review is no basis to ignore applicable statutory provisions.

should nonetheless deny the motion as contemplated by Fed. R. Civ. P.

62.1(a)(2). Lee is not entitled to relief under Fed. R. Civ. P. 60(b).

### A.    Relief From Judgment is Not Warranted Under Rule 60(b)(6)

Lee contends he is entitled to relief from judgment under the catch-all

provision of Rule 60(b)(6). Dkt. 1230, at 22-48. Relief under Rule 60(b)(6) is

available only in scenarios "not covered by the preceding five subsections."

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d

1147, 1155 (8th Cir. 2013). A movant seeking relief under Rule 60(b)(6) must

show "'extraordinary circumstances' justifying the reopening of a final

judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*,

340 U.S. 193, 199 (1950)); *accord In re Guidant Corp. Implantable*

*Defibrillators Prod. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir. 2007). Such

circumstances "rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

There are no rigid, defined rules for determining when "extraordinary

circumstances" exist. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486

U.S. 847, 863-64 (1988) (explaining that Rule 60(b)(6) "does not particularize

the factors that justify relief"). Yet cases applying Rule 60(b)(6) establish

certain principles. First, relief from judgment is only warranted if the movant

can "show that granting the motion will not be an 'empty exercise' by

demonstrating that the underlying claim for relief is likely to succeed on the

-41-

merits." *Caisse v. DuBois*, 346 F.3d 213, 215 (1st Cir. 2003); *accord Lepowski v. U.S. Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir. 1986). Second, attorney incompetence does not amount to extraordinary circumstances justifying relief under Rule 60(b). *See generally* 12 James Wm. Moore et al., *Moore's Federal Practice* ¶ 60.48[4][b] (3d ed. 2013). Third, changes in decisional law generally do not amount to extraordinary circumstances. *See generally id.* ¶ 60.48[5]. In the context of this case, these principles establish that extraordinary circumstances do not support Lee's motion for relief under Rule 60(b)(6).

### 1.   Lee's Underlying Claim of Ineffective Assistance of Trial Counsel Lacks Merit

Lee cannot show that he is likely to succeed on the ineffective assistance claim that he seeks to advance through his Rule 60 motion. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming that he received ineffective assistance of counsel must satisfy a two-prong standard. The defendant must first "show that counsel's representation fell below an objective standard of reasonableness," measured according to "prevailing professional norms." *Strickland*, 466 U.S. at 688. As a general matter, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The

-42-

defendant must then "affirmatively prove prejudice," which means he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. Lee cannot satisfy either prong of the *Strickland* standard, but for present purposes, we address only the performance prong.

Lee's trial counsel strenuously sought to keep out psychopathy evidence at Lee's sentencing hearing. *See, e.g.*, 5/13/99 Tr. 9 (arguing that "psychopath" is a "very pejorative term"). Accordingly, during the defense case, trial counsel did not offer evidence about Lee's future dangerousness and instead focused on proving mitigating factors that, according to the defense, weighed against a death sentence. This strategy allowed defense counsel to object to cross-examination of Dr. Cunningham about Lee's psychopathy on the grounds that it was outside the bounds of proper cross-examination. It also allowed defense counsel to contend that the government's expert witness, Dr. Ryan, should not be allowed to testify on rebuttal about Lee's diagnosis as a psychopath. Trial counsel's strategy eventually succeeded when the district court adopted the defense position and excluded evidence "of psychopathy, the Hare psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote." Tr. 7836. Dr. Ryan accordingly did not testify about these topics. To be sure, before the Court fully adopted the defense position, the government was allowed to ask Dr. Cunningham questions about

psychopathy. But as Judge Eisele concluded, "trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination failed." 2008 WL 4079315, at *47.

Lee nonetheless now contends that trial counsel should have taken a different tack to keep out evidence about his diagnosis as a psychopath. According to Lee, trial counsel should have instead argued that his diagnosis as a psychopath "was not, in fact, probative in the least of future dangerousness in prison." Dkt. 1230, at 5. According to Lee, "there was no scientific basis in 1999 for claiming that the PCL-R or a diagnosis of psychopathy was probative of future dangerousness in prison," and "[a]ny such 'expert opinion' would have been – and was – objectively unreliable and scientifically invalid." Dkt. 1230, at 6.

The fundamental flaw in Lee's argument is that there was no expert opinion testimony at Lee's trial that his diagnosis as a psychopath showed he would be a danger to others in prison. After the Court granted Lee's motion in limine, Dr. Ryan was precluded from testifying during rebuttal about "the issue of psychopathy" and "the Hare psychopathy test." Tr. 7836. Dr. Ryan therefore did not testify that he diagnosed Lee as a psychopath, let alone offer an opinion that Lee's diagnosis as a psychopath showed Lee would be a danger to others in prison.

Although the government cross-examined Dr. Cunningham about Lee's diagnosis as a psychopath and its relationship to Lee's future dangerousness, *see* Tr. 7795-98, Dr. Cunningham specifically testified – as Lee now strenuously argues is correct – that the test had "not yet been shown to be predictive of correctional institutional violence," Tr. 7812; *see* 7806-07, 7815-16, 7818-19, 7828-29. Dr. Cunningham made clear his view that although "[t]here's a greater risk of violence in the community with [a] high score" on the Hare checklist, "[i]t has not been clearly demonstrated that there is evidence that a high score is associated with violence in an institution and in fact there are some studies that don't find any association between the two." Tr. 7807. In other words, the expert opinion testimony that Lee contends would have been scientifically invalid and unreliable was never offered to the jury, but instead what the jury did hear, through Dr. Cunningham, is the expert opinion testimony that Lee contends is correct. Thus, the strategy implemented by Lee's trial counsel was successful even under Lee's current logic.

Lee nonetheless contends that the questions asked by the government during cross-examination of Dr. Cunningham supported the inference that his diagnosis as a psychopath meant he would be dangerous in prison. Dkt. 1239, at 30-34. According to Lee, "the jury was given all the evidence it needed to (erroneously) conclude that Mr. Lee would be a future danger in

prison if sentenced to life without parole." Dkt. 1230, at 34. However, the only actual evidence the jury heard on the issue, Dr. Cunningham's testimony, was to the contrary. And it is well-established that questions, comments, and arguments by the lawyers at trial are not evidence. *See, e.g.*, *United States v. Collins*, 642 F.3d 654, 658 (8th Cir. 2011).

Another flaw in Lee's argument is that the "Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings," and the Federal Rules of Evidence are inapplicable. *Lee*, 274 F.3d at 495. Fed. R. Evid. 702's relevance and reliability requirements for scientific expert opinion testimony therefore are not pertinent to the admissibility of evidence at a capital sentencing hearing. *United States v. Fields*, 483 F.3d 313, 342-43 (5th Cir. 2007). Moreover, in *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000), where the government offered the Hare psychopathy checklist to prove the defendant's future dangerousness in prison, *id.* at 811, the Fourth Circuit – operating under the assumption that Rule 702 applies at capital sentencing hearings – held that the checklist meets the rule's "standard for admissibility," *id.* at 815-16.[10]

---

[10] In *Barnette*, the court ordered a new sentencing hearing not because evidence about the Hare psychopathy checklist was introduced at the hearing, but because the district court prevented the defendant from offering Dr. Cunningham on sur-rebuttal to testify about the validity of using the checklist. 211 F.3d at 823-24. Here, in contrast, the psychopathy evidence came in only through Dr. Cunningham, who testified that the test was useful to assess the risk of future violence in the community but had "not yet been

Thus, although there was no expert opinion testimony at Lee's trial that his diagnosis as a psychopath meant he would be dangerous in prison, it is far from clear that any attempt to preclude such opinion testimony as scientifically valid and unreliable under Fed. R. Evid. 702 would have been successful.

Lee accordingly cannot show that his trial counsel performed deficiently. When evaluating attorney performance under *Strickland*, it is not appropriate to "second-guess trial strategy [or] use the benefit of hindsight to determine what a better course of action may have been." *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). The strategy pursued by Lee's trial counsel resulted in the exclusion of expert opinion testimony that Lee's diagnosis as a psychopath meant he would pose a danger to others in prison. And it left as the most relevant evidence testimony from his expert, Dr. Cunningham, that diagnosis as a psychopath was not relevant to institutional dangerousness. To be sure, before Judge Eisele categorically excluded any evidence about psychopathy, the government elicited testimony from Dr. Cunningham about psychopathy and Lee's diagnosis as a psychopath. But that testimony alone, without any opinion about whether the diagnosis meant Lee would be a danger in prison, would not be excludable under the Rule 702

shown to be predictive of correctional institutional violence." Tr. 7812; *see* Tr. 7806-07, 7828-29. There was no error in this case under the reasoning of *Barnette*.

theory now espoused by Lee. The strategy that trial counsel pursued was sound and well within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### 2. Negligence on the Part of Collateral Counsel Does Not Establish Extraordinary Circumstances

Negligence on the part of counsel does not establish extraordinary circumstances justifying relief from a final judgment under Rule 60(b)(6). *See Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). Courts have found extraordinary circumstances only where counsel's "gross negligence" amounts to virtual "abandonment." *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012); *accord Travelers Cas. & Sur. Co. of America v. J.O.A. Const. Co.*, 479 Fed. Appx. 684, 696 (6th Cir. 2012) (unpublished) (collecting cases); *Solaroll Shade & Shutter Corp. v. Bio–Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986); *Chang v. Smith*, 778 F.2d 83, 85 (1st Cir. 1985). It is not enough to show that counsel's performance was deficient under the *Strickland* standard. *See Williams v. Thaler*, 602 F.3d 291, 312 (5th Cir. 2010); *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004); *Saunders v. United States*, 380 Fed. Appx. 959, 964 (11th Cir. 2010) (unpublished). Lee does not, and cannot, claim that he was abandoned by collateral counsel. The deficiency Lee claims is one of mere negligence. *See* Dkt. 1230, at 20-22.

-48-

Lee's claim is therefore a better fit for Rule 60(b)(1), which allows relief from judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Lee cannot obtain relief under Rule 60(b)(1), however, because he cannot show that the neglect of his collateral counsel was "excusable," nor did he seek relief under Rule 60(b)(1) within the requisite one-year period. *See* Fed. R. Civ. P. 60(c)(1). Yet, because Lee's claim is one that could be considered under Rule 60(b)(1), relief under Rule 60(b)(6) is unavailable. *See Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) ("Because [the plaintiff's] reliance on a mistaken interpretation of law fits more naturally under Rule 60(b)(1), relief under (b)(6) is unavailable."); *Solaroll*, 803 F.2d at 1133 (11th Cir. 1986).

### 3. The *Trevino* Decision Does Not Establish Extraordinary Circumstances

The *Trevino* decision does not establish extraordinary circumstances justifying relief from judgment under Rule 60(b)(6). As explained above, *Trevino* and *Martinez* apply only when state prisoners file federal habeas petitions under 28 U.S.C. § 2254. They establish an equitable exception to the general rule that negligence of state collateral counsel cannot excuse procedural default. *Trevino* does not establish a rule of law that applies in Section 2255 proceedings, let alone a rule that supports relief from a final judgment denying a Section 2255 motion.

Even assuming that the rule of *Trevino* were somehow applicable to Section 2255 proceedings, it would not establish extraordinary circumstances for purposes of Rule 60(b)(6). "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997). In *Gonzalez v. Crosby*, for example, the district court dismissed a Section 2254 petition on statute-of-limitations grounds, and the petitioner filed a motion for relief of judgment under Rule 60(b)(6), arguing that the dismissal was incorrect in light of the Supreme Court's subsequent interpretation of the AEDPA statute of limitations in *Artuz v. Bennett*, 531 U.S. 4 (2000). The Supreme Court concluded that "*Artuz*'s change in the interpretation of the AEDPA statute of limitations" did not establish extraordinary circumstances supporting relief under Rule 60(b)(6). *Gonzalez*, 545 U.S. at 537. "The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of" AEDPA's statute of limitations, the Court concluded, and "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation." *Id.*

Federal courts have similarly held that the Supreme Court's decisions in *Martinez* and *Trevino* do not establish extraordinary circumstances justifying relief under Rule 60(b)(6). *Diaz v. Stephens*, 731 F.3d 370, 375-76

(5th Cir. 2013); *Jones v. Ryan*, __ F.3d __, 2013 WL 5676467, at *10-*11 (9th Cir. Oct. 18, 2013); *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012); *Ferguson v. Hobbs*, No. 5:11-CV-00267, 2013 WL 4431294, at *2 (E.D. Ark. Aug. 16, 2013); *see West v. Carpenter*, No. 3:01-cv-91, 2013 WL 5350627, at *4-*5 (E.D. Tenn. Sept. 23, 2013) (citing cases). To be sure, the Ninth Circuit has concluded that *Martinez* "was a remarkable – if limited – development in the Court's equitable jurisprudence" and therefore should "weigh slightly" in favor of reopening a final judgment under Rule 60(b)(6). *Jones v. Ryan*, 2013 WL 5676467, at *10. Yet the Ninth Circuit has never found that this factor provides sufficient weight to actually grant relief from judgment. *Id.* at *12 ("On balance, the Supreme Court's decision in *Martinez* does not constitute such an 'extraordinary circumstance' as to warrant reopening of Jones's case under Rule 60(b)(6)."); *Lopez v. Ryan*, 678 F.3d 1131, 1137 (9th Cir. 2012) (same); *but see Barnett v. Roper*, No. 4:03-CV-00614, 2013 WL 1721205, at *13-*17 (E.D. Mo. Apr. 22, 2013) (giving slight weight to *Martinez*'s change in the law and finding "extraordinary circumstances" after considering other factors).

Even if it is arguably appropriate in some circumstances to give slight weight to the change in law announced in *Martinez* and *Trevino*, as does the Ninth Circuit, that factor would be entitled to little if any weight in this case. The Ninth Circuit also considers "the closeness of the relationship between

the decision resulting in the original judgment and the subsequent decision that represents a change in the law." *Jones v. Ryan*, 2013 WL 5676467, at *11; *Lopez v. Ryan*, 678 F.3d at 1138-39. Here, any relationship between *Martinez/Trevino* and the judgment denying Lee's Section 2255 motion is highly attenuated at best. As noted, *Martinez* and *Trevino* are inapplicable to Lee's Section 2255 motion, because Lee could not – and did not – procedurally default any claims of ineffective assistance by failing to raise them prior to filing his Section 2255 motion. Thus, Judge Eisele, in denying Lee's Section 2255 motion, did not reject any ineffective assistance claims on the basis of procedural default. Judge Eisele simply did not address the ineffective assistance claim that Lee now advances, because Lee did not raise it in his Section 2255 motion. *Martinez* and *Trevino* do not "overrule the proposition in *Gonzalez* [*v. Crosby*] that 'an attack based on . . . habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings.'" *Jones v. Ryan*, 2013 WL 5676467, at *11 (quoting *Gonzalez*, 545 U.S. at 532 n.5).[11]

---

[11] The lack of connection between *Martinez/Trevino* and Judge Eisele's denial of Lee's Section 2255 motion distinguishes the district court's decision in *Barnett v. Roper*, No. 4:03-CV-00614, 2013 WL 1721205 (E.D. Mo. Apr. 22, 2013). In that case, the state prisoner filed a Section 2254 petition raising an ineffective assistance of trial counsel claim, but the district court denied the motion after concluding that the claim was procedurally defaulted due to a failure to adequately raise the claim during state collateral proceedings. *Id.* at *1, *11. *Martinez* therefore provided a basis to excuse the procedural default. *See id.* at *16. *Barnett* is also distinguishable because the court concluded that Barnett had a strong claim that he received ineffective assistance of trial counsel. *Id.* at *11, *17. As described above, however, Lee's ineffective

## B.    Rule 60(b)(5) is Inapplicable

Lee also invokes Rule 60(b)(5), which allows a court to order relief from a judgment when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). According to Lee, Rule 60(b)(5) allows for relief from a judgment in capital (but not non-capital) Section 2255 proceedings (but not Section 2254 proceedings). Dkt. 1230, at 49-52. His argument does not stand up to scrutiny.

The provision of Rule 60(b)(5) allowing relief from a prospective judgment "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004). Although the rule typically applies to injunctions, "it is not confined to that form of relief" and "applies to any judgment that has prospective effect." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2863 (3d ed. 2013). Yet "[v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C.Cir. 1988). A judgment "has 'prospective application'

assistance claim lacks merit. In addition, Lee contends that the government's interest in finality does not weigh against granting his Rule 60(b)(6) motion. Dkt. 1230, at 29. But in *Barnett*, also a capital case, the court acknowledged the "state's and the victims' interests in finality," which the court characterized as "significant." *Id.* at *16; *accord Jones v. Ryan*, 2013 WL 5676467, at *11 (in a capital case, concluding that finality interests weighed against relief from judgment); *Lopez v. Ryan*, 678 F.3d at 1136 (same).

within the meaning of [Rule 60(b)(5)] if 'it is executory or involves the supervision of changing conduct or conditions.'" *In re Racing Servs., Inc.*, 571 F.3d 729, 733 (8th Cir. 2009) (quoting *Twelve John Does*, 841 F.2d at 1139). Thus, "judgments that offer a present remedy for a past wrong do not fall within the rule." Wright & Miller, *supra*, § 2863.

Rule 60(b)(5) is inapposite here. The judgment at issue in this case is the district court's denial of Lee's motion to vacate his sentence under 28 U.S.C. § 2255. That judgment does not apply prospectively. *Cf. Twelve John Does*, 841 F.2d at 1139 ("[I]t is difficult to see how an unconditional dismissal could ever have prospective application within the meaning of Rule 60(b)(5)."); *Comfort v. Lynns School Comm.*, 560 F.3d 22, 27-28 (1st Cir. 2009). Even assuming, as Lee urges, that the judgment at issue is the criminal judgment imposing the death penalty, Rule 60(b)(5) is nonetheless inapplicable. A criminal sentence, whether it be a term of imprisonment or the death penalty, is punishment for a past wrong. A criminal judgment does not have prospective application within the meaning of Rule 60(b)(5).

## CONCLUSION

The Court should dismiss Lee's Rule 60(b) motion for lack of jurisdiction. In the alternative, the Court should deny the motion in accordance with Fed. R. Civ. P. 62.1(a)(2).

-55-

Respectfully submitted,


 /s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, U.S. Department of Justice
Appellate Section, Criminal Division
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Date: November 15, 2013

-56-

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on November 15, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, U.S. Department of Justice
Appellate Section, Criminal Division
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov