**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


**DANIEL LEWIS LEE**                                                                    **MOVANT**

**vs.**                                          **Case No: 4:06-CV-1608 GTE**
                                                 **(Criminal Case No. 4:97-cr-00243-JLH-2)**

**UNITED STATES OF AMERICA**                                         **RESPONDENT**

---

**MOVANT'S REPLY TO GOVERNMENT'S RESPONSE
TO MOTION FOR INDICATIVE RULING**

---

EDSON A. BOSTIC
FEDERAL PUBLIC DEFENDER
DISTRICT OF DELAWARE

KARL SCHWARTZ
Jennifer Merrigan
Assistant Public Defenders
Delaware Federal Defender Office
Capital Habeas Unit
800 King Street, Suite 200
Wilmington, DE 19801
(302) 442-6545
karl_schwartz@fd.org


*Oral Argument Requested*

**TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT…………………….…………….…3

INTRODUCTION………………………………………………………………….…....4

I.      THIS COURT MUST FIRST DETERMINE WHETHER IT HAS
        JURISDICTION IN THIS CASE……………………………………….…...11

II.     MR. LEE'S RULE 60(b) MOTION IS NOT A SECOND OR
        SUCCESSIVE MOTION FOR RELIEF UNDER 28 U.S.C. § 2255(h)………….13

III.    *TREVINO* IS APPLICABLE TO § 2255 PROCEEDINGS……………….…....…19

        A.      Ineffective Assistance of Trial Counsel Claims Are Properly Brought
                in Post-Conviction Proceedings in Both Texas and the Federal System…..19

        B.      The Government Offers No Reason Why Federal Prisoners Are Not
                Entitled to a Remedy………………………………………………….22

IV.     RELIEF UNDER RULE 60(b)(6) IS WARRANTED……………………….…..24

        A.      The Underlying Ineffective Assistance of Trial Counsel Claim
                Is Meritorious…………………………………………………………26

        B.      Rule 60(b)(6) Relief Is Warranted Using the Relevant Legal Tests……….35

                1.      The *Gonzalez* and *Ritter* Factors……………………………...37

                2.      The Fifth Circuit and the *Seven Elves* Balancing Test…………..41

                3.      The Ninth Circuit and the *Phelps* Balancing Test…………………48

                4.      Other District Court Opinions……………………………….......49

V.      RULE 60(b)(5) DOES APPLY TO MR. LEE'S CASE…………………….…...52

CONCLUSION………………………………………………………………….…....54

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Lee's *60(b) Motion* raises numerous substantial and complex legal questions including: the applicable legal test for determining whether to grant Rule 60(b)(6) relief; the consideration of the intervening change in law posed by *Trevino;* the applicability of Rule 60(b)(5) to federal capital cases given the uniquely prospective nature of federal judgments imposing a sentence of death; and other equitable factors in weighing whether Rule 60(b)(6) relief is warranted. Because of the complex nature of the questions posed by Mr. Lee's *Rule 60(b) Motion* and the government's *Response,* it is respectfully submitted that oral argument would assist the Court in evaluating the issues presented.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**


**DANIEL LEWIS LEE**                                                      **MOVANT**

**vs.**                              **Case No: 4:06-cv-01608-GTE**
                                     **(Criminal Case No. 4:97-cr-00243-JLH-2)**


**UNITED STATES OF AMERICA**                                  **RESPONDENT**


**MOVANT'S REPLY TO GOVERNMENT'S RESPONSE TO**
**MOTION FOR INDICATIVE RULING**

COMES NOW Daniel Lewis Lee ("Mr. Lee"), by his undersigned counsel, and hereby

submits this *Reply* to the government's *Response* to the *Movant's Motion for Indicative Ruling*.

**INTRODUCTION**

The issue presently before this Court is whether to grant Mr. Lee's request for an indicative

ruling made pursuant to Civil Rule 62.1. Specifically, Mr. Lee submits that his previously-filed *Rule*

*60(b) Motion* "raises a substantial issue" and that this Court should therefore issue an indicative

ruling to that effect. As was noted in his prior *Motion for Indicative Ruling*, such an indicative ruling

"does not bind the district court to any holding – it merely recognizes that the movant has raised an

issue that merits reconsideration of the order." *See Motion for Indicative Ruling* at 9 (quoting *Russell*

*Rd Food & Bev., LLC v. Galam,* No. 2:13-CV-776-JCM (NJK), 2013 U.S. Dist. LEXIS 83354, *8

(D. Nev. 2013) & citing Notes of Advisory Committee, Rule 62.1).[1]

---

[1] This Court does not presently have jurisdiction to hear Mr. Lee's *Rule 60(b) Motion* because his case is currently pending in the Eighth Circuit on a petition for rehearing. The government has been ordered to file a response to the petition by December 16, 2013.

In its request for an extension of time to respond to Mr. Lee's *Motion for Indicative Ruling*, the government conceded that Mr. Lee's *Rule 60(b) Motion* raised substantial issues. *See Unopposed Motion For Extension Of Time To Respond To Lee's Motion For Indicative Ruling*, Doc. No. 1233, at 1 ("Because of the *complexity of the case*, and *the substantial issues involved*, the government respectfully requests an extension of time…") (emphasis added). Having received the relief it requested – an extension of time to file its response to Mr. Lee's *Motion* – the government now sheepishly seeks to "take back" its prior written concession. As it stated in a footnote in its *Response*:

> The government's extension motion simply reflects that substantial issues are involved in responding to a motion for an indicative ruling on a 54-page Rule 60(b) motion in a capital case, the procedural history of which spans more than 15 years. This is not the same as conceding that Lee's Rule 60(b) motion raises substantial issues on the merits.

*Gov't Resp.* at 12 n.7. With all due respect to the government, its attempt to equivocate its way out of its prior admission that "substantial issues [were] involved" is unpersuasive. What "substantial issues" were "involved" in the case if not the issues raised by the *Rule 60(b) Motion*? Indeed, the government's entire 56-page *Response* to the *Motion For Indicative Ruling* is not aimed at the legal requirements of Rule 62.1 or the requisite showing necessary to obtain an indicative ruling, but rather addresses the *merits* of the issues raised in Mr. Lee's *Rule 60(b) Motion*.

Moreover, it is difficult to square the government's contention that the *Rule 60(b) Motion* does not raise substantial issues with the fact that the government's *Response* itself fails to dispute the merits of the *Motion* on a number of critical factual and legal issues. Among the substantial issues raised in Mr. Lee's *Motion* which the government essentially concedes are:

(1) The evidence presented at Mr. Lee's sentencing hearing -- that his score on the PCL-R and diagnosis as a "psychopath" established that he would be a future danger in prison – was false

evidence because it was unreliable and scientifically invalid. (It bears repeating that the government has never attempted to defend the reliability or scientific validity of this psychopathy/PCL-R evidence in the course of Mr. Lee's § 2255 proceedings.)

(2) The government's own expert, Dr. Ryan, has since disavowed as invalid his reliance on the PCL-R as a predictor of future violence in prison.

(3) The government no longer uses this psychopathy/PCL-R evidence in its federal capital prosecutions.

(4) Numerous federal courts have excluded the PCL-R from capital sentencing proceedings for precisely the reason raised by Mr. Lee in pleadings before this Court: there is no scientific basis for claiming that it is a valid predictor of an individual's future dangerousness in prison.

(5) The very same basis upon which other federal courts excluded the PCL-R from capital sentencing proceedings was available to Mr. Lee's trial counsel at the time of his trial in 1999.

(6) The presiding judge at Mr. Lee's trial issued a post-verdict ruling in which he noted that but for the introduction of the psychopathy/PCL-R evidence, it was "very questionable" that the jury would have sentenced Mr. Lee to death on the strength of the government's direct case alone.

(7) The more culpable defendant in this case was Mr. Lee's co-defendant, Chevie Kehoe, yet he received a sentence of life imprisonment without possibility of release. In fact, the "United States Attorney for the Eastern District of Arkansas, Paula Casey, informed the Court that in light of Kehoe's life sentence her office no longer wished to pursue the death penalty against Lee." *Gov't Resp.* at 5.

(8) Both the presiding trial judge and the Eighth Circuit noted that the critical factor explaining why Chevie Kehoe received a sentence of life imprisonment and Mr. Lee received a death sentence was the aggravating factor of Mr. Lee's alleged "future dangerousness."[2]

(9) Mr. Lee's first and only meaningful opportunity to raise a claim that trial counsel were ineffective for failing to challenge the psychopathy/PCL-R evidence was in his § 2255 proceeding.

(10) Mr. Lee's court-appointed § 2255 counsel did not plead and proffer the facts in support of this ineffective assistance claim until they submitted a post-judgment motion for reconsideration.

(11) The district court held that it was foreclosed from considering or reviewing those facts because § 2255 counsels' submission was untimely. The district court also held that it might have granted an evidentiary hearing on the ineffective assistance claim if § 2255 counsel had timely proffered the facts.[3]

(12) Mr. Lee's § 2255 counsel had no strategic or tactical rationale for failing to timely provide that information to the district court.

---

[2] *See United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. 2000) (Memorandum Opinion and Order Regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001) (finding gov't cross-examination did not exceed scope of direct); *United States v. Lee*, 715 F.3d 215, 223 (8th Cir. 2013).

[3] Indeed, the only issues which the government appears to dispute in its *Response* are: (1) whether Mr. Lee's *60(b) Motion* is a "true" 60(b) motion; (2) whether the Supreme Court's decision in *Trevino v. Thaler* provides a basis to excuse § 2255 counsels' ineffectiveness in failing to properly plead and timely proffer facts in support of the underlying ineffective assistance of trial claim; and (3) whether trial counsels' omission in failing to challenge the psychopathy/PCL-R evidence was objectively reasonable. These issues, however, can hardly be deemed "insubstantial" for purposes of Rule 62.1, as they involve complicated legal and factual questions, and as the ensuing pleading will demonstrate, the government has not established that Mr. Lee's position on these issues lacks merit. By any measure, therefore, Mr. Lee has made the requisite showing that his *Rule 60(b) Motion* raises substantial issues, and it is respectfully submitted that this Court should issue an indicative ruling to that effect.

Taken together, these undisputed facts raise substantial issues regarding whether this Court should exercise its "inherent power" under Rule 60(b) to "vacate judgments whenever such action is appropriate to accomplish justice." *Plaut v. Spendthrift Farms Inc.*, 514 U.S. 211, 233-24 (1995); *Klaprott v. United States*, 335 U.S. 601, 615 (1949). These facts demonstrate on their face that Mr. Lee did not receive meaningful review of a substantial claim of ineffective assistance of trial counsel because his court-appointed § 2255 counsel unreasonably failed to properly plead and timely proffer the facts in support of that claim. Although § 2255 counsel unquestionably committed a default, an intervening change in the law now exists to excuse that default and permit this Court to conduct a *full merits* review the ineffective assistance of trial counsel claim. If the judgment is not reopened to allow Mr. Lee to present those facts to this Court, Mr. Lee will have never received meaningful review of his constitutional claim of ineffective assistance of trial counsel, and he will be sentenced to death on the basis of evidence that neither the government nor its own trial expert defend as reliable or valid.

Considering that the decision to grant Rule 60(b) relief involves the need to heed "the incessant command of the court's conscience that justice be done in light of all the facts," *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007), it is respectfully submitted that Mr. Lee's Rule 60(b) Motion directly implicates the animating principle behind Rule 60(b) itself. Reopening the judgment to permit Mr. Lee to present the facts which had previously been foreclosed in support of his ineffective assistance of trial counsel claim is necessary to accomplish justice. Mr. Lee is the only person still on federal death row who was sentenced to death on the basis of unquestionably false psychopathy/PCL-R evidence, and it certainly would not serve the interests of justice for Mr. Lee to be executed on the basis of such evidence when even the government concedes its falsity. All Mr. Lee asks for at this stage is the opportunity to have his evidence heard and considered by at least one

court before his death sentence is carried out. Surely, the issues at stake here are substantial enough to at least warrant an indicative – and non-binding – ruling by this Court for this matter to proceed further.

Before responding to the specific points made by the government in its *Response*, the undersigned would like to provide a brief roadmap of the *Reply* pleading. In the argument below, Mr. Lee will establish the following:

(1) The undersigned will address the threshold question of whether this Court has jurisdiction to entertain the Rule 60(b) Motion. Although this question is premature in light of the fact that the instant *Motion* merely seeks an indicative ruling in order that Mr. Lee can then seek jurisdiction for this Court from the Eighth Circuit via Appellate Rule 12.1,[4] the government spends a considerable amount of its pleading arguing that Mr. Lee's Rule 60(b) Motion is not a "true" 60(b) motion, but rather a successive petition. Mr. Lee disputes the government's characterization of his 60(b) motion, but concurs that if this Court deems the motion to be successive, then it does not have jurisdiction to consider the motion on the merits.

(2) The Supreme Court's decision in *Trevino* is applicable to § 2255 proceedings. The animating principle behind *Trevino* is that habeas petitioners must be afforded a meaningful opportunity for review of an ineffective assistance of trial counsel claim in their initial collateral review proceeding. That principle applies equally to federal initial-review collateral proceedings – i.e., § 2255 proceedings – as it does to state initial-review collateral proceedings.

---

[4] Rule 12.1 of the Federal Rules of Appellate Procedure describes the procedure for obtaining a remand from the circuit court after an indicative ruling has been issued by the district court pursuant to Rule 62.1. It was adopted simultaneously with Rule 62.1, as the two rules correspond with one another.

(3) Mr. Lee's underlying claim of ineffective assistance of trial counsel is meritorious. Under *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Lee must demonstrate that trial counsels' failure to challenge the psychopathy/PCL-R evidence was objectively unreasonable (the "performance prong"), and that but for counsels' error, there is a reasonable probability that the outcome of the proceeding would have been different (the "prejudice prong"). The government's contention that trial counsels' omission was objectively reasonable is belied by the fact that the relevant challenge to the psychopathy/PCL-R evidence, which they failed to make, was entirely consistent with their trial strategy of seeking to exclude such evidence from the trial. Moreover, it is clear that the relevant information with which to raise such a challenge was readily available to Mr. Lee's trial counsel at the time of his trial in 1999, and this very same information has led to the exclusion of this evidence in other federal capital trials. Indeed, that strategy was so effective that the government no longer even *attempts* to introduce such evidence in its capital prosecutions. Additionally, there is no question that Mr. Lee was prejudiced by the psychopathy/PCL-R evidence; as the presiding trial judge acknowledged in a post-trial ruling, it was "very questionable whether the jury would have given Defendant Lee the death penalty based upon the Government's direct case, a properly confined cross-examination of Dr. Cunningham, and a properly limited rebuttal by the Government."[5]

(4) The decision on whether to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires a court to weigh a variety of equitable factors. Various circuit courts have articulated balancing tests that identify these factors and provide guidance on how those factors should be weighed. In his *Rule 60(b) Motion*, Mr. Lee cited to these factors as discussed in the recent of case of

---

[5] *United States v. Lee*, 80 F. Supp.2d 1017, 1031 (E.D. Ark. 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001) (finding gov't cross-examination did not exceed scope of direct).

*Barnett v. Roper.* In this *Reply,* Mr. Lee demonstrates, that even using the balancing tests endorsed by the cases upon which the government depends in its *Response*, the factors still weigh strongly in favor of granting Mr. Lee Rule 60(b)(6) relief.

(5) Finally, Mr. Lee's death sentence is distinguishable from other criminal sentences in that it is a prospective judgment – that is, his execution is a future act that has not yet been carried out. Under Rule 60(b)(5), such prospective judgments can be vacated in the interests of justice. The government's contention that a criminal judgment does not have prospective application ignores statutory law and the government's own promulgated code of federal regulations that a death sentence itself is not actually carried out at the time of sentencing, but rather relies on additional, future steps for actual implementation.

With these points in mind, Mr. Lee respectfully submits the following *Reply*.

## I.    THIS COURT MUST FIRST DETERMINE WHETHER IT HAS JURISDICTION IN THIS CASE.

In its response, the government argues that Mr. Lee's *60(b) Motion* is successive and should be dismissed for lack of jurisdiction. *Gov't Resp.* at 29-34; 54. Although Mr. Lee believes the government's argument is erroneous, he agrees that this Court must resolve this question prior to addressing any other issue before it, and refrain from addressing the merits if it finds jurisdiction to be lacking. *See, e.g., Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1998) (explicitly declining to allow federal courts to proceed to the merits of a case when the court believes that no jurisdiction exists); *Ruhrgas v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) (noting that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits); *Public School Retirement System of Missouri v. State Street Bank & Trust Co.*, 640 F.3d 821, 825 (8th Cir.  2011) ("…jurisdiction is a threshold question and must be answered before all

other questions."); *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115 (8th Cir. 2011) (quoting *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009)) ("[A] court may not assume 'hypothetical jurisdiction' to decide 'contested questions of law when its jurisdiction is in doubt.").

This doctrine has been applied to 60(b) motions in habeas proceedings. *See e.g. Leal Garcia v. Quarterman*, 573 F.3d 214, 224-25 (5th Cir. 2009) (vacating district court's merits determination "based on its erroneous assumption of hypothetical jurisdiction"); *Phelps v. Alameida,* 569 F.3d 1120, 1127-28 (9th Cir. 2009) (noting that order holding 60(b) to be successive petition and discussing the merits of the motion violated "unequivocal Supreme Court and Ninth Circuit precedents rejecting the doctrine of 'hypothetical jurisdiction'".) As explained below, however, Mr. Lee is confident that his 60(b) motion is not successive and there is therefore is no jurisdictional bar to granting him the relief he seeks.

Although the government urges this Court to dismiss Mr. Lee's *60(b) Motion* for lack of jurisdiction, it argues in the alternative that this Court should deny the motion on the merits under Rule 62.1(a)(2). *Gov't Resp.* at 54. Mr. Lee respectfully submits that this Court, absent a hearing, is unable to make a full and fair merits determination of the underlying issue as Mr. Lee's *Motion* on raises a number of complex factual issues – issues which cannot properly be determined on the papers alone. Among them are the fact-specific inquiries into both trial counsels' and § 2255 counsels' ineffective assistance; the impact of trial counsels' limiting their penalty phase defense – a fact conceded by the government[6] - to avoid introduction of the unreliable and prejudicial PCL-R evidence; and the reliability and scientific validity of the PCL-R evidence that was presented at Mr.

---

[6] *Gov't Resp. to Def. Mot. for Stay of Appellate Proc.* at 18, Case No. 11-1380, Entry ID No. 4087848 (8th Cir. 10/21/13).

Lee's trial in 1999, should that still be in any doubt. Indeed, as Judge Eisele noted when presented with these same issues in Mr. Lee's Rule 59 motion, had this evidence been timely provided to the Court it "might have determined that an evidentiary hearing was required." *United States v. Lee*, 2010 WL 5347174 at *5 (Dec. 22, 2010). Given the myriad of contested factual issues between the parties, it is respectfully submitted that if the Court is inclined to reach the underlying merits of the PCL-R claim, the parties should be afforded the opportunity for full factual development and briefing.

## II.  MR. LEE'S RULE 60(b) MOTION IS NOT A SECOND OR SUCCESSIVE MOTION FOR RELIEF UNDER 28 U.S.C. § 2255(h).

The crux of the government's response to Mr. Lee's 60(b) request is its assertion that Mr. Lee has presented a new claim to this Court and is thus seeking an impermissible, additional opportunity to attack his conviction and sentence.[7] *Gov't Resp*. at 29-34. This assertion is incorrect and is flatly contradicted by both the Court's Rule 59 opinion and the government's own response to Mr. Lee's Rule 59 motion. Mr. Lee is not seeking to litigate a new claim. He is merely asking for review of evidence previously presented to the district court judge but foreclosed from consideration due to his court-appointed § 2255 counsels' ineffectiveness. Nor is Mr. Lee attempting to reopen his habeas proceeding to litigate claims about the ineffectiveness of his post-conviction counsel as the government alleges. *Gov't Resp*. at 33. The ineffectiveness of Mr. Lee's § 2255 counsel is not the basis of a new claim; it merely, in light of *Trevino*, allows this Court to rectify the previously-

---

[7] The government spends several pages arguing that Mr. Lee was given "one full opportunity to collaterally attack his conviction and sentence." *Gov't Resp*. at 26-29. If the government intends to suggest that no § 2255 movant whose claims have been denied would ever have a basis to seek 60(b) relief, it is simply incorrect. *See Gonzalez v. Crosby*, 545 U.S. 524 (2005).

imposed procedural bar.[8] In other words, if Mr. Lee's § 2255 counsel had competently presented the evidence supporting his trial IAC claim, Judge Eisele would not have foreclosed review of the evidence and might have "determined that an evidentiary hearing was required."

This Court's opinion on Mr. Lee's Rule 59 motion demonstrates that his claim was already before it. In its Rule 59(e) denial, this Court foreclosed review not because Mr. Lee's counsel failed to give notice of the claim but rather because counsel failed to provide the factual support required. *See United States v. Lee*, 2010 WL 5347174 (Dec. 22, 2010) at *3 ("Petitioner's obligation, however, is greater than simply placing the Court on notice of claims alleged…"); *id* at *6 ("Lee's original § 2255 Petition included only one sentence referencing [the PCL-R] argument…Petitioner now [in the Rule 59 motion] devotes over 25 pages to this argument."); *id*. ("Petitioner does not explain why the information he now includes was not included with his original petition."). As the decision makes clear, the district court was aware of the claim but faulted § 2255 counsel—and refused to review the facts supporting the claim—for not timely attaching sufficient factual support that was available to counsel. The claim at issue is not new; it was rejected by the district court because § 2255 counsel failed to comport with habeas pleading requirements. But for § 2255

---

[8] By narrowly framing its discussion, the government argues that there was no "procedural default" in Mr. Lee's case. Gov't Resp. at 37. This is incorrect. In denying 59(e) relief, this Court left no doubt that Mr. Lee was foreclosed from full review of his IAC claim solely because 2255 counsel failed to comply with the rules governing habeas actions. *Lee*, 2010 WL 5347174 at *59 ("[The] affidavits or other supporting information were not provided to the Court before it ruled on [Petitioner's] original motion for § 2255 relief. [] [T]he Court is foreclosed by existing legal principles from considering the information now . . . ."). This "foreclosure" – informed by the principle of finality – conforms precisely to the definition of procedural default that the government provided to the Eighth Circuit in a previous pleading (but omitted from the pleading to this Court): "a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Gov't Resp. to Def. Mot. for Stay of Appellate Proc.* at 16, Case No. 11-1380, Entry ID No. 4087848 (8th Cir. October 21, 2013). The foreclosure in Mr. Lee's case bears every significant characteristic of a procedural defect as defined and discussed in *Gonzalez v. Crosby,* 545 U.S 524 (2005), *Martinez,* and *Trevino,* and belies the government's argument that this is a successive claim.

counsels' failures, Mr. Lee would have had full review of his claim.

Attempting to bolster its argument that this is a "new" claim, the government mischaracterizes the language of the district court, asserting that Judge Eisele explained "Lee's Section 2255 motion did not put the court 'on notice' of the *new* arguments Lee advanced in his Rule 59 motion…" *Gov't Resp*. at 5 (emphasis added). This paraphrase is incorrect and misleading: the district court actually said the 2255 did not "place the Court on notice of the *full* argument…" *United States v. Lee*, 2010 WL 5347174 at *6 (Dec. 22, 2010) (emphasis added). The import of this alteration is obvious.

Likewise, the government's current position represents an about face from the one it took in previous pleadings. On October 20, 2008, in its Response to Mr. Lee's Rule 59 Motion, the government argued that "**all of these claims concern this Court's previous resolution on the merits**, and not any erroneous failure to reach the merits, fraud on the federal habeas court, or similar defect in the integrity of the habeas proceedings." Government Response Dkt # 1170 at 4 (internal citations/quotes omitted) (emphasis added).[9] The government pointed out that Mr. Lee "proffers an expansive collection of affidavits and other papers **supplementing** the affidavit that accompanied his original Section 2255 motion, yet he does not remotely suggest that he was

---

[9] It is worth noting that § 2255, unlike § 2254, does not mandate dismissal of claims presented in a previous motion. The language of 28 U.S.C § 2244(b)(1) precluding same claim successors is explicitly limited to § 2254 cases and, although the Eighth Circuit has not weighed in, there is disagreement among the circuits as to its application in§ 2255. *See United States v. McDonald,* 641 F.3d 596, n.9 (4th Cir. 2011)(declining to resolve "open issue" of whether same claim successor bar applies to § 2255 cases).

[10] Indeed, the government's argument here appears to constitute another about-face. When the Supreme Court was deciding *Martinez*, the United States submitted an *amicus* brief against the Arizona prisoner, noting as its interest the potential effects of a ruling for him on the administration of § 2255 cases. *See* Brief for the United States as Amicus Curiae Supporting Respondent at 1-2, *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (No. 10-1001). Having lost that decision, the government now claims the case has no application.

prevented by 'fraud' or a similar 'defect in the integrity of the proceedings' from proffering this information in his original motion…" *Id.* at 5 (emphasis added). In yet another pleading in January 2009, the government again used this exact language to reiterate that "Lee's assertions all concern this Court's previous resolution of a claim on the merits…" Dkt #1181 at 2.

Now that Mr. Lee, in light of the Supreme Court's recent decision in *Trevino,* can demonstrate that his § 2255 counsels' ineffectiveness should excuse the failure to receive full and meaningful habeas review of his trial IAC claim, the government has done an about face and asserts that this claim is "new" and therefore successive. It is neither. Mr. Lee, in light of *Trevino*, now has the opportunity to do exactly what the government suggested he should have done in his Rule 59 motion: explain why a defect in the proceeding (his counsels' ineffectiveness) precluded full review of his IAC claim.

In his Rule 60(b) Motion, Mr. Lee has explained why his *Trevino* claim is a proper 60(b) motion and should not be deemed successive under *Gonzalez*. The government invites this Court to avoid resolving the issues before it by referring to Judge Eisele's musing that Mr. Lee's Rule 59 claim should be "deemed successive". *Gov't Resp*. at 21. This argument assumes too much. Judge Eisele did not have the benefit of the Supreme Court's *Trevino* decision when he ruled on Mr. Lee's Rule 59 motion and thus his decision cannot be determinative of whether the current pleading is successive. If this Court finds, as Mr. Lee believes it should, that his 60(b) motion is not a successive pleading because *Trevino* created a means of remedying the procedural defect in his case, it necessarily follows that Mr. Lee's Rule 59 motion would also not have been deemed successive had Judge Eisele had the benefit of the Supreme Court's decision. Accepting the government's invitation to rely on Judge Eisele's pre-*Trevino* decision resolves nothing; it simply begs the question to be decided by this Court.

16

The case law cited by the government is likewise inapposite. The government cites *Ward v. Norris,* 577 F.3d 925, 935 (8th Cir. 2009) to argue that § 2255 counsel's deficient performance which prevents full merits consideration of an IAC claim is not a procedural defect upon which a Rule 60(b) action may be brought. *Gov't Resp.* at 32. The government's suggestion that *Ward* applies to Mr. Lee is wrong on several grounds. First, in *Ward* the petitioner attempted to raise a **new** claim of incompetence for the first time in a 60(b) motion. The Eighth Circuit found that Ward's new claim amounted to a substantive claim of IAC of habeas counsel. *Id.* at 932.  As discussed, *infra*, Mr. Lee is not raising a new claim; his 60(b) motion merely seeks to set aside a previously-imposed procedural bar.

Second, in *Ward,* the Eighth Circuit actually *did* characterize "ineffective assistance of habeas counsel" as a "defect in the integrity of the proceeding." *Id.* at 932. But *Ward* was decided before *Martinez v. Ryan,* 132 S.Ct. 1309 (2012) and *Trevino v. Thaler,* 133 S.Ct. 1911 (2013) (i.e., in the absence of Supreme Court authority that post-conviction counsel's default could constitute cause), and the holding was informed by the AEDPA's "broad" prohibition on claims of ineffectiveness of post-conviction counsel. *Ward,* 577 F.3d  at 933. Accordingly the Eighth Circuit properly held, at that time, that Ward's 60(b) Motion could not be based on his post-conviction counsel's ineffectiveness, even if it constituted a procedural defect. *Id.*

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Supreme Court – while acknowledging the AEDPA's prohibition upon claims of ineffective assistance of habeas counsel – held that post-conviction counsel's default of a substantial IAC claim could be excused upon a showing that post-conviction counsel was ineffective. *Martinez* constituted a "remarkable" development in the Supreme Court's jurisprudence, *Lopez v. Ryan,* 678 F.3d 1131, 1136 (9th Cir. 2012), and the Court's language leaves little doubt that such a showing now could constitute a procedural defect affecting

17

the integrity of the federal proceeding. *See Martinez.* at 1316-17 ("When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim;" "The right to the effective assistance of counsel is a bedrock principle in our justice system;" "Indeed, the right to counsel is the foundation for our adversary system.").

After *Martinez,* several federal courts have recognized that the assertion of ineffective assistance of post-conviction counsel as "cause" constitutes a procedural defect, not a successive claim, and have analyzed the defect pursuant to Rule 60(b) to determine if it affected the integrity of a post-conviction proceeding. *See, e.g., Barnett v. Roper,* 2013 U.S. Dist. LEXIS 57147 at * 44-*58 (E.D. Mo. April 22, 2013) (granting relief following 60(b) analysis); *Lopez,* 678 F.3d at 1136 (denying relief following 60(b) analysis); *Cook v. Ryan,* 2012 U.S. Dist. LEXIS 94363 at *15-37 (D. Ariz. July 6, 2012), *affirmed,* 688 F.3d 598 (9th Cir. 2012) (same).

The government's reliance on *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004) and *Brooks v. Bobby*, 660 F.3d 959 (6th Cir. 2011), two pre-*Martinez* cases, is also misplaced. In *Harris*, as the government notes, the IAC claim was raised for the first time in a successive posture and thus the Rule 60(b) motion sought "to add a new ground for relief…" *Gov't Resp*. at 33. The movant in *Harris* had never alerted the district court to the claim he sought to litigate until he pled it in a subsequent petition for habeas corpus relief. *Harris* at 76. When the circuit court declined to authorize that successive petition, he then moved to reopen his first habeas proceeding to add the missing IAC claim. *Id*. As discussed above, Mr. Lee seeks to do no such thing. Mr. Lee informed the Court of his claim in his first § 2255 pleading but failed to provide evidentiary support for it in a timely manner as required and as the Court then noted. His Rule 60(b) motion does not seek to add a new claim. It simply requests that cause be found for the previously-imposed procedural default.

18

The petitioner in *Brooks v. Bobby*, 660 F.3d 959 (6th Cir. 2011), unlike Mr. Lee, also sought to add new claims through a Rule 60(b) motion. As the *Brooks* court noted, 60(b) motions "that do not seek to add a new ground for relief but instead raise 'some defect in the integrity of the federal habeas proceeding'…are not successive petitions." *Id.* at 962 (quoting *Gonzalez* at 532 & n.5). Moreover, the circuit court in *Brooks* was deciding whether the petitioner was entitled to a stay of his pending execution and thus the analysis—whether Brooks met a four-factor test supporting a stay—was distinct from the question before this Court. *Id.* at 962-63. Finally, in light of *Trevino*, which was decided after *Brooks*, the government's reliance on the *Brooks* court's assertion that the ineffectiveness of habeas counsel is irrelevant rings hollow.

The relief Mr. Lee seeks applies to an extremely narrow category of cases: Mr. Lee did not discover a new claim unasserted in his § 2255 motion; nor has he marshalled new evidence for this 60(b) proceeding in support of a previously-pled claim. Rather, he was formerly prevented from full review of his claims because of a procedural bar imposed due to his attorneys' ineffectiveness. Rule 60(b) provides a vehicle to remedy that error.

## III.    *TREVINO* IS APPLICABLE TO § 2255 PROCEEDINGS.

The government argues that *Trevino* is only applicable when state prisoners seek federal habeas review. *Gov't Resp.* at 34-37. The government is incorrect.

### A.    Ineffective Assistance of Trial Counsel Claims Are Properly Brought in Post-Conviction Proceedings in Both Texas and the Federal System.

As the Supreme Court noted in *Trevino*, in jurisdictions where "the procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies[.]" *Trevino*, 133 S. Ct. at 1921. Mr. Lee's *Rule 60(b) Motion*

explained why it is highly unlikely in the typical federal direct appeal that a defendant will have a meaningful opportunity to raise an IATC claim, for the very reasons identified in *Trevino*: the need for a new lawyer to raise IATC claims; the fact that such claims depend on evidence outside the trial record; and the fact that development of extra-record evidence on direct appeal might "run afoul of abbreviated deadlines, depriving the new attorney of adequate time to investigate the ineffective-assistance claim." *Id.* at 1918 (citing *Martinez*, 132 S. Ct. at 1318) (internal quotation marks omitted). *See also Rule 60(b) Motion* at 15-19 (describing applicability of *Trevino* to § 2255 proceedings).

The government does not dispute that these features of the federal system are identical to the features of the Texas system which was at issue in *Trevino*. Indeed, lest there be any doubt that the *Trevino* Court considered the federal system such a jurisdiction, one need look no further than the fact that the *Trevino* opinion cited *Massaro v. United States*, 538 U.S. 500 (2003) - a case in which the Supreme Court held that § 2255 proceedings are better suited for consideration of ineffective assistance claims than direct appeal - for the proposition that "practical considerations, such as the need for a new lawyer, the need to expand the trial court record, and the need for sufficient time to develop the claim, argue strongly for initial consideration of the claim during collateral, rather than on direct, review." *Trevino*, 133 S. Ct. at 1921. There is simply no question that, given the features inherent in the federal system, *Trevino* applies to § 2255 proceedings.[10]

---

[10] Indeed, the government's argument here appears to constitute another about-face. When the Supreme Court was deciding *Martinez*, the United States submitted an *amicus* brief against the Arizona prisoner, noting as its interest the potential effects of a ruling for him on the administration of § 2255 cases. *See* Brief for the United States as Amicus Curiae Supporting Respondent at 1-2, *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (No. 10-1001). Having lost that decision, the government now claims the case has no application.

Instead of confronting these points, the government appears to contend that because *Trevino* dealt with a default that occurred in a *state* collateral review proceeding, it has no applicability in a federal § 2255 proceeding. At best the government misreads both *Martinez* and *Trevino*. The dispositive fact in both of those cases was not that the IATC claim was defaulted in a *state* collateral proceeding, but rather that the default occurred in an *initial-review* collateral proceeding. *See Martinez*, 132 S. Ct. at 1315 (ineffective assistance of habeas counsel may excuse procedural default of an underlying IATC claim if habeas counsel defaulted the underlying IATC claim in an "*initial-review* collateral proceeding") (emphasis added). The rationale behind both *Martinez* and *Trevino* was that if habeas counsel's default due to ineffective assistance was allowed to stand, then that lawyer's failure to competently raise an IATC claim during initial review collateral proceedings could deprive a defendant of *any review of that claim at all. Trevino*, 133 S.Ct. at 1921 ("[F]ailure to consider a lawyer's 'ineffectiveness' during an initial-review collateral proceeding as a potential 'cause' for excusing a procedural default will deprive the defendant of any opportunity at all for review of an ineffective-assistance-of-trial-counsel claim.") (citing *Martinez*, 132 S.Ct. 1309).

Indeed, *Trevino* should apply with even greater force in § 2255 proceedings because the district court litigation is not only the "initial-review collateral proceeding" described in *Trevino*, it is the *only*-review collateral proceeding available to federal prisoners. If § 2255 counsel fails to raise or properly plead an ineffective assistance claim, then the § 2255 litigant will be deprived of *any* opportunity for review of that claim. This is exactly the situation for which *Trevino* provides a remedy.

**B.** **The Government Offers No Reason Why Federal Prisoners Are Not Entitled to a Remedy.**

Under the government's reading of *Martinez* and *Trevino*, there is simply no remedy for a federal prisoner whose court-appointed § 2255 counsel fails to raise or properly plead an ineffective assistance claim. Indeed, if that same lawyer represented a state prisoner in a state collateral review proceeding and a federal prisoner in a § 2255 proceeding, and defaulted on an IATC claim in both cases in the same way – e.g., failing to properly plead facts in support of the claim – under the government's approach the default that harmed the state prisoner could be addressed, but the default that harmed the federal prisoner could not. There is simply no basis for such different outcomes given the animating principle behind *Martinez* and *Trevino*, yet this is exactly the kind of absurd and arbitrary result that the government's approach would produce. Clearly, the government's interpretation of *Martinez* and *Trevino* is incorrect.[11]

The government cites two cases in support of its contention that *Trevino* is not applicable to § 2255 proceedings: *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012), and *United States v. Guillory*, 2013 U.S. Dist. LEXIS 127084 (W.D. La. Sept. 5, 2013). Each of these cases is distinguishable. In *Buenrostro,* the Ninth Circuit did not even discuss *Trevino* and its applicability to § 2255 proceedings. Indeed, *Buenrostro* was decided before *Trevino* was even issued, and nowhere in the *Buenrostro* decision does the Ninth Circuit discuss any of the features of the federal system that make it identical to the Texas system at issue in *Trevino*. Moreover, *Buenrostro* did not address

---

[11] The government also makes the argument that because federal prisoners are not required to raise ineffective assistance claims on direct appeal after the Supreme Court's decision in *Massaro v. United States*, 538 U.S. 500 (2003), it is impossible for a federal prisoner to default on an ineffective assistance claim at all. But this merely asserts a non-controversial – and irrelevant – point: that an ineffective assistance claim cannot be considered procedurally defaulted for failing to raise it on direct appeal. This has nothing to do with the kind of default which *Martinez* and *Trevino* address – namely, a defaulted ineffective assistance claim caused by *habeas counsel's* failure to properly plead and present the claim in *the initial collateral review proceeding*, as is the case here.

22

the fact pattern at issue in Mr. Lee's case – i.e., the failure to timely present facts in support of an ineffective assistance claim – but rather an entirely different issue: whether *Martinez* can "form the basis for an application for a second or successive motion[.]" *Buenrostro*, 697 F.3d at 1139.

In *Guillory*, the district court did not even mention *Trevino*, much less hold that it was inapplicable to § 2255 proceedings. Rather, the district court there held that "*Martinez* is inapplicable to federal prisoners seeking to challenge their federal convictions." *Guillory*, 2013 U.S. Dist. LEXIS 127084 at *20. The fact that *Martinez* has no bearing on federal prisoners is, frankly, irrelevant because its holding only applied to jurisdictions that were unlike the federal system – that is, jurisdictions where habeas petitioners are *prohibited* from raising IAC claims on direct appeal, and are *required* to raise such claims in a collateral proceeding. Indeed, that is why *Trevino* now provides a remedy for Mr. Lee; in *Trevino*, the Supreme Court extended *Martinez* to jurisdictions where habeas petitioners are *not* restricted to raising IAC claims in collateral proceedings.

Moreover, *Guillory* is distinguishable on its facts. There, the movant raised an entirely new claim in his 60(b) motion regarding trial counsel's failure to advise him correctly regarding a plea offer. That claim was not raised in his original § 2255 motion, and, per *Gonzalez*, his attempt to raise the claim for the first time in a 60(b) motion was barred as successive. By contrast, Mr. Lee's *60(b) Motion* does not raise a new claim; rather, it is addressed to a defect in the § 2255 proceedings -- § 2255 counsels' failure to timely proffer information in support of the IATC claim.[12]

---

[12] The *Guillory* decision cites to five other opinions for its holding that *Martinez* is inapplicable to § 2255 proceedings. Notably, none of the five cases mention *Trevino* or address the issue of *Trevino*'s applicability to § 2255 proceedings. Moreover, all of the cited cases are distinguishable. In three of the cases, the issue before the court was whether the petitioner could rely on *Martinez* to excuse the untimeliness of his § 2255 motion, rather than to cure a procedural default cause by habeas counsel's ineffectiveness. *See United States v. Juarez,* 2013 U.S. Dist. LEXIS 28794 (N.D. Fla. 2013); *United States v. Sanchez,* 2013 U.S. Dist. LEXIS 4580 (D. Neb. 2013); *Cuero-Salazar v. United States,* 2013 U.S. Dist. LEXIS 55747 (M.D. Fla. 2013). In a fourth case: (1) the decision did not concern a

The government also argues that *Martinez* and *Trevino* do not abrogate the statutory requirements for bringing second or successive petitions. *Gov't Resp.* at 38-40. This argument is a red herring. Nowhere in his *Rule 60(b) Motion* does Mr. Lee argue that *Martinez* and *Trevino* provide a basis for filing successive petitions. Indeed, as was noted *supra*, if this Court deems that the *Rule 60(b) Motion* is not a "true" 60(b) motion, but rather a second or successive petition, then this Court has no jurisdiction to consider the pleading at all. Rather, what Mr. Lee argues is that: (1) a 60(b) motion that is directed to a defect in the integrity of the habeas proceeding is a "true" 60(b) motion under *Gonzalez*; (2) § 2255 counsels' failure to properly plead and timely proffer information in support of the IATC claim constituted a defect in the integrity of the § 2255 proceeding that foreclosed full merits review of Mr. Lee's claim; and (3) *Trevino* now provides a basis to excuse § 2255 counsels' default and reopen the judgment so that Mr. Lee can present the previously untimely information for this Court's consideration. The government's arguments about AEDPA's restrictions on successive petitions are simply inapposite to the matter before this Court.

## IV.   RELIEF UNDER RULE 60(b)(6) IS WARRANTED.

As courts have long recognized, the inquiry into whether to grant equitable relief under Rule 60(b)(6) must be made on a case-by-case basis. *See, e.g., Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007); *Phelps v. Alameida*, 569 F.3d 1120, 1134-35 & n. 16 (9th Cir. 2009) (collecting cases); *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). In order to assist with that inquiry, several courts have devised balancing tests to weigh a variety of commonly recognized factors in determining whether the equities warrant relief. *See e.g., Barnett v. Roper*, 2013 U.S. Dist LEXIS

federal prisoner in a § 2255 proceeding; (2) the petitioner filed a second, successive petition, not a 60(b) motion, and (3) the district court relied on *Ibarra v. Thaler*, 687 F.3d 222, 226 (5th Cir. 2012), to hold that *Martinez* was inapplicable, a case which has since been overruled by *Trevino*. *Lebron v. Terrell*, 2013 U.S. Dist. LEXIS 15301 (D.R.I. 2013). The final case cited by the *Guillory* court is *Buenrostro*, which is discussed and distinguished *supra*.

57147 (E.D. Mo. Apr. 22, 2013); *Lopez v. Ryan,* 678 F.3d 1131, 1136 (9th Cir. 2012). As noted in his *Motion*, application of these factors to the facts of Mr. Lee's case demonstrates that relief is warranted under Rule 60(b)(6). See *Rule 60(b) Motion* at 23-48.

The government, rather than engage in the requisite legal analysis, which is to analyze Rule 60(b)(6) claims under a balancing test -- *see infra* where various balancing tests are set out -- merely cites to a series of cases in which Rule 60(b)(6) relief was denied. As is explained in detail below, these cases are distinguishable on their facts, and thus have no bearing on Mr. Lee's *60(b) Motion*. Moreover, the cases on which the government relies hold that the decision on whether to grant Rule 60(b)(6) relief must be made in light of case-specific facts, with reference to a variety of equitable factors. In the discussion below, Mr. Lee demonstrates that under the various prevailing legal tests for Rule 60(b)(6), the balance of equitable factors weigh in his favor and warrant a grant of relief.

One of the factors that a court must assess is whether there is "some merit" to the underlying ineffective assistance claim. The government contends that Rule 60(b)(6) relief is not warranted because the underlying ineffective assistance of trial counsel claim is not meritorious. *See Gov't Resp.* at 42-48. The government is wrong, and its position ignores the utter unreliability of the "scientific" evidence employed against Mr. Lee at his penalty phase hearing.[13]

---

[13] Although this discussion is addressed to the specific arguments raised in the government's response, the undersigned also respectfully directs this Court's attention to Mr. Lee's *Rule 60(b) Motion*, where this argument was first addressed in greater detail. *See Rule 60(b) Motion* at 29-48. Additionally, it bears repeating that at this stage, Mr. Lee need only show that his underlying IATC claim is "substantial," which is a showing that the claim has "some merit," not that the claim is meritorious under *Strickland. See, e.g., Barnett v. Roper*, 2013 U.S. Dist. LEXIS 57147 at * 33 & n. 12 (E.D. Mo. Apr. 22, 2013); *cf. Lopez v. Ryan*, 678 F.3d 1131, 1137 (9th Cir. 2012) (denying Rule 60(b) motion, in part, because underlying ineffective assistance claim was not "substantial").

**A.    The Underlying Ineffective Assistance of Trial Counsel Claim Is Meritorious.**

The government does not deny that its own expert who administered the PCL-R to Mr. Lee has since disavowed his reliance on that instrument as a predictor of future dangerousness in prison, and has condemned its use for that purpose; that the basis for challenging the evidence was readily available to trial counsel at the time of Mr. Lee's trial in 1999; or that it has abandoned even *trying* to admit such evidence in federal capital trials; nor does the government suggest that the PCL-R evidence that it introduced at Mr. Lee's penalty phase hearing was, in fact, reliable. These facts strongly demonstrate that the prosecution's central argument for death made to the jury - that Mr. Lee was a "psychopath" who would likely commit future acts of violence if imprisoned for the rest of his life[14] - was predicated on false evidence that reasonably competent counsel would have been able to exclude.

Moreover, the government makes no attempt to contest the contemporaneous observation of the presiding trial judge regarding the impact that the psychopathy/PCL-R evidence had on the jury's sentencing determination. As Judge Eisele noted in a post-trial ruling, it was "very questionable whether the jury would have given Defendant Lee the death penalty based upon the Government's direct case, a properly confined cross-examination of Dr. Cunningham, and a properly limited rebuttal by the Government."[15] In other words, but for the improper introduction of the prejudicial psychopathy/PCL-R evidence at trial, there is a reasonable probability that the outcome of the

---

[14] *See Rule 60(b) Motion* at 30-34, 37-38 (excerpting government's opening statement and closing argument).

[15] *United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. March 21, 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001) (finding government's cross-examination did not exceed scope of direct). It should be noted that although the Eighth Circuit reversed the district court's decision on other grounds, it did not dispute this finding in its opinion.

sentencing hearing would have been different because it was "very questionable" that the strength of the government's "direct case" for death absent that evidence would have resulted in a death sentence. Additionally, as the government has conceded in other pleadings, the introduction of the psychopathy/PCL-R evidence had the further prejudicial effect of causing trial counsel to refrain from presenting mitigation evidence it otherwise would have put on for the jury. *See Gov't Resp. to Def. Mot. for Stay of Appellate Proc.* at 18, Case No. 11-1380, Entry ID No. 4087848 (8th Cir. October 21, 2013) (conceding that "trial counsel limited the defense case at sentencing" in order to avoid introduction of psychopathy evidence). Therefore, the psychopathy/PCL-R evidence not only constituted improper aggravation, it prejudicially undermined the mitigation case.

Instead of responding to any of the above arguments demonstrating *Strickland* prejudice, the government maintains that it was objectively reasonable for trial counsel to *solely* challenge the psychopathy/PCL-R evidence on evidentiary grounds. *Gov't Resp.* at 43-44. The government asserts that "[t]his strategy allowed defense counsel to object to cross-examination of Dr. Cunningham about Lee's psychopathy on the grounds that it was outside the bounds of proper cross-examination." *Id.* at 43. What the government fails to explain, however, is why trial counsels' "beyond the scope" challenge – which failed – relieved them of the responsibility to challenge this damning testimony on the grounds that it was utterly unreliable and scientifically invalid. The government does not dispute that there was no scientific basis in 1999 for claiming that the PCL-R or a diagnosis of psychopathy was probative of future dangerousness in prison, or that any such "expert opinion" would have been objectively unreliable and scientifically invalid. If trial counsels' goal was to exclude the psychopathy evidence from the trial, as the government readily admits,[16]

---

[16] *See Gov't Resp.* at 43 (describing trial counsels' "strategy" as "strenuously [seeking] to keep out psychopathy evidence at Lee's sentencing hearing").

then there can have been no objective reason for them to have failed to make such a challenge. This is not a situation where trial counsel were forced to choose between two competing defense strategies – e.g., an alibi defense versus self-defense. Indeed, challenging the reliability of the psychopathy/PCL-R evidence would not have required counsel to "have taken a different tack to keep out evidence about [Mr. Lee's] diagnosis as a psychopath," *Gov't Resp.* at 44, because such a challenge was not mutually exclusive with the evidentiary objection that trial counsel raised: indeed, it was a wholly complementary and more powerful challenge. Simply put, counsels' failure to pursue a challenge that would have strengthened their trial strategy of excluding the psychopathy/PCL-R evidence was objectively unreasonable. *See Henderson v. Sargent*, 926 F.2d 706, 712 (8th Cir. 1991) ("[A] tactical decision to pursue one defense does not excuse failure to present another defense that would bolster rather than detract from the primary defense.") (internal quotation marks and citation omitted).

The government argues that the fact that the psychopathy/PCL-R evidence was admitted through its cross-examination of Dr. Cunningham rather than through its direct-examination of Dr. Ryan is a "fundamental flaw" in Mr. Lee's argument. *Gov't Resp*. at 44. This is a distinction without a difference: the jury still heard the evidence. As is noted in the *Rule 60(b) Motion*, the government elicited from Dr. Cunningham the fact that Dr. Ryan administered the PCL-R to Mr. Lee; that Mr. Lee's score on the PCL-R was in the psychopathy range; and that there was a body of research that established that "psychopaths" were at a higher risk to be a future danger. *See Rule 60(b) Motion* at 30-34. Indeed, even the presiding judge recognized that the government turned Dr. Cunningham into its own witness and that the psychopathy/PCL-R evidence that it elicited during its cross-examination explains why Mr. Lee was sentenced to death and his co-defendant was not:

In sum, it is now apparent from the Government's opening statement and the brevity of its own direct case on the issue of future dangerousness that the government intended from the beginning to make its most compelling showing of future dangerousness through its cross-examination of Dr. Cunningham and its "rebuttal" testimony of Dr. Ryan. Hence, the Court must ask: Would this jury have given Defendant Lee the death penalty if: 1) the Government had not used Dr. Cunninghmam at all, or 2) if the Government had not been permitted to open up an area on cross-examination that Dr. Cunningham had not addressed during direct-examination? The Court concludes that it is very questionable whether the jury would have given Defendant Lee the death penalty based upon the Government's direct case, a properly confined cross-examination of Dr. Cunningham, and a properly limited rebuttal by the Government.

*United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. March 21, 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001) (finding gov't cross-examination did not exceed scope of direct).

The government maintains that because the defense expert questioned the predictive value of the PCL-R as an indicator of future violence in prison, the jury heard "correct" testimony about the PCL-R's utility. *Gov't Resp.* at 45. This argument is flawed in a number of respects. First, the prosecution clearly conveyed its view that the PCL-R applied here by arguing vehemently about Lee's purported psychopathy to a jury that was deciding between death and a lifetime of incarceration. *See, e.g.*, Tr. 3739 ("[It is Mr. Lee's] psychological profile that in the end will convince you that as he sits here today and will be in the future, Mr. Lee is a dangerous man. *That, ladies and gentlemen, is a lot of what this trial will be about.*") (emphasis added); Tr. 7381 ("In the end, what the evidence that will be presented will establish is that *Mr. Lee is a psychopath. I don't mean that in a common term. I do mean that in the medical use.*") (emphasis added); Tr. 7383 ("We will prove in this case to you that Mr. Lee, *because of his psychological profile*, *who he is and who he will be for years to come, is dangerous and will continue to be dangerous.*"); *see also Rule 60(b) Motion* at 37-38 (excerpting government statements to jury). Indeed, even the government concedes

in its *Response* that the "emphasis of the government's case at the hearing was Lee's future dangerousness," *Gov't Resp.* at 6, and as the presiding judge recognized, it was "apparent from the Government's opening statement and the brevity of its own direct case on the issue of future dangerousness that the government intended from the beginning to make its most compelling showing of future dangerousness through its cross-examination of Dr. Cunningham and its 'rebuttal' testimony of Dr. Ryan." *Lee*, 89 F. Supp. 2d at 1031.[17]

Second, the government portrayed the defense expert as untrustworthy for hiding the most critical fact, getting him to agree that, "What you didn't do is you didn't tell this jury that [the prosecution's expert] made a diagnosis that Mr. Lee was a psychopath, did you?" Tr. 7826. This expert was the prosecutor's best witness as to future dangerousness in prison and the government relied on him extensively in arguing for a death sentence. *Lee*, 89 F. Supp. 2d at 1027-31 (excerpting trial record to demonstrate that the government "ma[d]e Dr. Cunningham its own witness"); *Rule 60(b) Motion* at 30-34 (same). The jury simply never heard any countervailing evidence on this point, much less the sort of robust challenge to the unreliabity and scientific invalidity of the PCL-R which is the subject of the underlying ineffective assistance of counsel claim here.[18] It is abundantly clear that neither the government, who made psychopathy the centerpiece for its case for death, nor

---

[17] This also belies the government's assertion that the "strategy pursued by Lee's trial counsel resulted in the exclusion of expert opinion testimony that Lee's diagnosis as a psychopath meant that he would pose a future danger to others in prison." *Gov't Resp.* at 47. The trial record plainly demonstrates that the government elicited Dr. Ryan's diagnosis of Mr. Lee's alleged psychopathy through its cross-examination of Dr. Cunningham. Tr. 7825-27 (government elicitation from Dr. Cunningham during cross-examination that Dr. Ryan administered PCL-R to Mr. Lee and diagnosed him as a psychopath). The government also elicited through Dr. Cunningham that individuals diagnosed as "psychopaths" through use of the PCL-R are substantially more likely to commit future acts of violence and are not amenable to treatment. Tr. 7806-11, 7819.

[18] *Lee*, 89 F. Supp. 2d at 1030 (finding Lee's counsel "ill-equipped to handle the Government's discussion of psychopathy").

the presiding judge, who deemed that evidence critical to the resulting death verdict, 89 F. Supp. 2d at 1031, believed that the jury disregarded the evidence. [19]

Moreover, had trial counsel challenged the validity of the test to begin with, the jury never would have heard a word about Mr. Lee's purported "untreatable" psychopathy.[20] *See* Tr. 7819 (Dr. Cunningham's testimony on cross-examination that individuals who score above 30 on PCL-R "do not appear amenable to treatment"). The government in its pleading ignores the power of the label as it lingered on at trial. As numerous courts have correctly concluded, such a "diagnosis" is extremely prejudicial in the context of a capital sentencing hearing. *See United States v. Sampson*, 335 F. Supp. 2d 217, 222 n.27 (D. Mass. 2004) (prohibiting government expert from using the word "psychopath" because it "would have entailed a high risk that, despite any limiting instruction, the jury would have considered [the expert] testimony as tending to show that [the defendant] would be dangerous in the future . . ."); *United States v. Taylor*, 320 F. Supp. 2d 790 (N.D. Ind. 2004) (prohibiting PCL-R from being used in federal capital trial); *United States v. Barnette*, 211 F.3d 803, 825 (4th Cir. 2000) (finding testimony that federal capital defendant's PCL-R score and alleged psychopathy was "as damning as it could be" and "contributed to the death sentence"); *Stitt v. United States*, 369 F. Supp.

---

[19] Indeed, the government is merely trying to elevate two sentences out of *nearly 70 pages of cross-examination* of Dr. Cunningham in which the government successfully turned him into its own best witness on the issue of Mr. Lee's "diagnosis" of psychopathy and alleged future dangerousness.

[20] The government skews the prejudice analysis by implying that it is permissible for a jury to hear unabashedly false expert evidence as long as it also hears some contrary evidence. The government cites no authority for this proposition. It is patently obvious that if all the parties agree that evidence is unreliable and scientifically invalid, a lay jury should not be put in the position of considering it for any purpose in its sentencing determination. The government's position would be akin to saying that it should be allowed to present to the jury an astrologist as an expert on future dangerousness ("The defendant is a Scorpio, and Scorpios are known to be hostile"), so long as the defense is allowed to present a counter-expert on the issue of astrology. Such a result would be absurd and would make a mockery of the Eighth Amendment's command for a heightened need for reliability in capital sentencing determinations.

2d 679 (E.D. Va. 2005) (finding that outcome of sentencing proceeding would have been different but for Dr. Ryan's expert testimony regarding PCL-R and psychopathy).

The government goes on to argue that the psychopathy/PCL-R evidence might have been admitted regardless because of the FDPA's relaxed evidentiary standards. *Gov't Resp.* at 46. Notably, however, the government does not contest any of the now-proffered facts establishing that the psychopathy evidence admitted at Mr. Lee's trial was scientifically invalid and unreliable. *See*, *e.g.*, *Decl. of John F. Edens, PhD.*, (Exh. 3 to *Rule 60(b) Motion* at ¶ 6) ("[I]n 1999, at the time of Mr. Lee's trial there was no scientific basis to support the use of the PCL-R as a predictor of his future dangerousness in prison and the grounds for challenging its use for that purpose were known within the scientific and mental health communities."). Notable also is the government's silence in response to Mr. Lee's assertion that it has abandoned its use of this evidence in federal capital trials. For this reason, this Court should take little comfort in the government's assurance that "Fed. R. Evid. 702's relevance and reliability requirements for scientific expert testimony [] are not pertinent to the admissibility of evidence at a capital sentencing hearing." *Gov't Resp.* at 46. The government further fails to mention that in cases in which counsel has challenged the PCL-R *on the grounds articulated in the 60(b) Motion,* the evidence has been found to be completely unreliable. *See, e.g., United States v. Taylor,* 320 F.Supp. 2d 790, 794 (N.D. Ind. 2004) ("[D]ue to the uncertainty of the validity and reliability of the PCL-R as it is used in capital sentencing hearings, the Government and any of its experts is prohibited from utilizing this test in evaluating Defendant . . . ."); *United States v. Haynes,* No. 8:98 –cr-00520- PJM (D. Md.) [Doc. 241] (in response to defense motion, Dr. Ryan, proponent of PCL-R, withdrew opinion after admitting its unreliability); *Stitt v. United States,* 369 F.Supp. 2d 679, 699 (E.D. Va. 2005) (court finds PCL-R evidence to be unreliable and "cannot conceive" of refusing to consider a claim that scientific evidence used at trial was later found to be

"[in]accurate" and "unreliable," death sentence vacated on other grounds).[21]  This evidence plainly would be deemed inadmissible under both Eighth Amendment and FDPA standards, and trial counsels' failure to seek to exclude it on these grounds was not objectively reasonable.[22]

The government cites *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006), for the proposition that "it is not appropriate to second-guess trial strategy or use the benefit of hindsight to determine what a better course of action might have been." *Gov't Resp.* at 47. The *Williams* case, however, is distinguishable on its facts. There, a defense witness who was to testify about the defendant's alibi voluntarily absented herself from the trial, and after trial counsel made reasonable -

---

[21] The government cites *United States  v. Barnette*, 211 F.3d 803 (4th Cir. 2000), for the proposition that other courts have found the PCL-R to be admissible. That case, however, does not suggest that the PCL-R is a reliable indicator of future dangerousness in prison. The defendant in *Barnette* did not raise that issue, and instead raised an altogether different challenge to the PCL-R: that it was unreliable because "it had not been standardized as to the black population (Barnette is black) or as to the post middle-age population." 211 F.3d at 816.

[22] As courts have found in a variety of contexts, the failure to raise a legally meritorious challenge to exclude inculpating government evidence is ineffective and objectively unreasonable. *See*, *e.g.*, *Tice v. Johnson*, 647 F.3d 86 (4th Cir. 2011) (counsel failed to investigate facts "already in the litigation file" and failed to file a motion to suppress a statement which, if it had "been made, the trial court would have little choice but to grant"); *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005) (counsel was ineffective in failing to file meritorious motion to suppress identification evidence); *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004) (counsel's motion to suppress tangible evidence erroneously forfeited meritorious claim); *Joshua v. DeWitt*, 341 F.3d 430 (6th Cir. 2003) (counsel was ineffective in failing to litigate Fourth Amendment issue, which "reasonable trial attorney would have raised" based on applicable law and facts of case, given that "there is nothing in the record to reflect that ... trial counsel considered and declined to raise [issue] ... for strategic reasons"); *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001) (counsel failed to file meritorious motion to suppress physical evidence; counsel's claim of strategic judgment is rejected because "it is difficult to imagine what tactical advantage, or cost, could justify [counsel]'s decision"); *Tomlin v. Myers*, 30 F.3d 1235 (9th Cir. 1994) (counsel failed to file identification suppression motion to challenge obvious violation of petitioner's right to counsel at lineup; "absent some indication the motion would have been lacking in merit[,] ... the failure to bring to the court's attention a major constitutional error in the prosecution's case is not the product of reasonable professional judgment"); *Smith v. Dugger*, 911 F.2d 494 (11th Cir. 1990) (counsel failed adequately to investigate possible grounds for moving to suppress petitioner's confessions, which were "critical to the state's case").

- but unsuccessful -- efforts to locate her at places she was known to frequent as well as at her home, *Williams*, 452 F.3d at 1011-12, trial counsel decided to substitute her testimony for that of another alibi witness. *Id*. at 1014 ("counsel's efforts to locate Clara when she voluntarily absented herself mid-trial in contravention of her subpoena, were reasonable and did not constitute ineffective assistance of counsel"). In *Williams*, the witness's decision to violate her subpoena was beyond trial counsel's control. In *Lee*, however, the "missing" evidence – the unreliability and scientific invalidity of the PCL-R as a predictor of future dangerousness in prison – was readily available at the time of Mr. Lee's trial. *See Decl. of John F. Edens, Ph.D.* (Exh. 3 to *Rule 60(b) Motion*) (basis for challenging PCL-R was available at time of Mr. Lee's trial in 1999); *Decl. of Donald N. Bersoff, Ph.D., J.D.* (Exh. 4 to *Rule 60(b) Motion*). Unlike trial counsel in *Williams*, Mr. Lee's trial counsel did not make "reasonable efforts" to obtain this information and present it to the court.

The government, in fact, provides no evidence that trial counsel investigated a challenge to the reliability and scientific validity of the PCL-R and thereafter made a strategic decision not to make that challenge. Indeed, a decision to forego litigating an issue in the absence of reasonable investigation cannot be characterized as strategic or objectively reasonable at all.

> As the Eighth Circuit has repeatedly recognized,

> Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories. An attorney must make a reasonable investigation in preparing a case or make a reasonable decision not to conduct a particular investigation. *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.), *cert. denied*, 112 S. Ct. 431 (1991). Before an attorney can make a reasonable strategic choice against pursuing a certain line of investigation, the attorney must obtain the facts needed to make the decision. *See id.* An attorney's "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)).

*Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993).

Additionally, in *Williams*, the defense presented other alibi witnesses after being unable to locate the missing witness, which demonstrated lack of prejudice because the missing witness's testimony would have been cumulative to what the jury heard at trial. By contrast, the challenge to the psychopathy/PCL-R evidence that is the subject of the underlying IATC claim was not cumulative of any other evidence that trial counsel presented to the court or to the jury. Moreover, in *Williams* "the Government offered several witnesses who directly contradicted what [the missing alibi witness's] testimony would have been," so "the outcome likely would not have been different had her testimony been offered" at the trial. 452 F.3d at 1013-14.

This is not a case, however, where the erroneously admitted evidence can be deemed harmless.  Had trial counsel  challenged the reliability and validity of the psychopathy/PCL-R evidence, the jury would not have heard that Mr. Lee was a diagnosed psychopath; there would have been no evidence that psychopaths cannot change;[23] the government could not have elicited testimony equating psychopathy with future danger; the heart of the government's case for future danger would have been excluded; and there is a reasonable probably that at least one juror would have determined that life imprisonment rather than death was the appropriate sentence.

### B.    Rule 60(b)(6) Relief Is Warranted Using the Relevant Legal Tests.

The government argues that the Supreme Court's decision in *Trevino* does not establish extraordinary circumstances for purposes of Rule 60(b)(6). Specifically, the government cites *Gonzalez v. Crosby*, 545 U.S. 524 (2005), for the proposition that intervening changes in the law cannot constitute extraordinary circumstances. *Gov't Resp.* at 50. The government is incorrect. In

---

[23] Treatable mental illnesses "are likely to [be] regarded by a jury as more mitigating than generalized personality disorders, which are diagnosed on the basis of reported behavior, are generally inseparable from personal identity, and are often untreatable through medical or neurological means." *Wilson v. Sirmons*, 536 F.3d 1064, 1094 (10th Cir. 2008)

*Gonzalez*, the Supreme Court applied a case-by-case approach rather than a *per se* rule. *See Gonzalez*, 545 U.S. at 533 ("The change in law" was insufficient ground for relief under Rule 60(b)(6) "*in petitioner's case*") (emphasis added). This was made all the more clear by the *Gonzalez* Court's favorable citation to the Eleventh Circuit's opinion in *Ritter v. Smith*, 811 F.2d 1398, 1400 (11th Cir. 1987). In *Ritter*, the Eleventh Circuit squarely addressed the argument that "a supervening change in the law can never present a sufficient basis for Rule 60(b)(6) relief." 811 F.2d at 1401. The court reached "the opposite conclusion" and held that precedents from its own and other circuits "plainly allow Rule 60(b)(6) relief where there has been a clear-cut change in the law." *Id.* (citing *Wilson v. Fenton*, 684 F.2d 249, 251 (3d Cir. 1982); *Fackleman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977)).

The Supreme Court's favorable citation to *Ritter* as an "instance[]" in which "Rule 60(b) ha[d] an unquestionably valid role to play in [a] habeas case[]," when combined with the Court's own analysis of the Rule 60(b) motion at issue in *Gonzalez*, indicates that the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court. 545 U.S. at 534. As the Sixth Circuit rightly held when applying *Gonzalez*, "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgment and the incessant command of the court's conscience that justice be done in light of all of the facts." *Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir. 2007) (internal quotation marks omitted). It is this "case-by-case inquiry," and not the *per se* rule for which the government advocates, that should govern Rule 60(b)(6) after *Gonzalez*.

36

### 1.    The *Gonzalez* and *Ritter* Factors

The Supreme Court in *Gonzalez*, and the Eleventh Circuit in *Ritter*, laid out certain factors that should guide courts in the exercise of their Rule 60(b)(6) discretion. In *Gonzalez*, the Court emphasized two specific factors: (1) whether the intervening change in law overruled an otherwise settled legal precedent; and (2) whether the petitioner was diligent in pursuing review of the underlying issue in his Rule 60(b) motion. *See Gonzalez*, 545 U.S. at 536-37. Mr. Lee easily meets both factors. With respect to the first factor, *Martinez* and *Trevino* did not simply address an unsettled question of statutory interpretation that differed from the appellate court's then-prevailing interpretation, as was the case in *Gonzalez. Compare Gonzalez*, 545 U.S. at 536. Rather, *Martinez*'s and *Trevino*'s change in the law represents a remarkable departure from decades-old precedent – law which lower courts and litigants understood as settled. *See Martinez*, 132 S. Ct. at 1319 (Scalia, J., dissenting) (noting that *Martinez* is a "repudiation of the longstanding principle governing procedural default"). Prior to *Martinez* and *Trevino*, it was well-established in this and every other circuit that claims of ineffective assistance of habeas counsel could not constitute cause to excuse procedural default. *See*, *e.g.*, *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009); *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 75 (1st Cir. 2009); *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007); *Hall v. Freeman*, 991 F.2d 86, 91 (3d Cir. 1993); *Smith v. Angelone*, 111 F.3d 1126, 1133 (4th Cir. 1997); *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir. 1999); *Byrd v. Collins*, 209 F.3d 486, 516 (6th Cir. 2000); *Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002); *Smith v. Bladwin*, 510 F.3d 1127, 1146-47 (9th Cir. 2007); *Anderson v. Sirmons*, 476 F.3d 1131, 1141 n.9 (10th Cir. 2007); *Mize v. Hall*, 532 F.3d 1184, 1191 (11th Cir. 2008). *Martinez* and *Trevino* changed all this and overruled otherwise settled precedent. *See* 132 S. Ct. at 1316-18; *id.* at 1324 (Scalia, J., dissenting).

With respect to the second factor, Mr. Lee has been diligent in pursuing his theory that the ineffectiveness of his § 2255 counsel provides cause for the procedural default of his underlying IATC claim. *See Rule 60(b) Motion* at 27-28. Contrary to the petitioner in *Gonzalez*, who "abandoned any attempt to seek review of the District Court's decision on this statute-of-limitations issue" after the relevant change in law, 545 U.S. at 537, Mr. Lee filed his *Rule 60(b) Motion* within four months of the issuance of the *Trevino* decision, during the pendency of time in which to file a rehearing petition in the Eighth Circuit. As is explained in the *Rule 60(b) Motion* – and as is uncontested by the government – this was the earliest that his motion could practically be filed given that Mr. Lee was still being represented by his original § 2255 counsel when *Trevino* was issued; this posed an obstacle to the litigation given the obvious conflict of interest presented by having original § 2255 counsel litigate their own ineffectiveness under *Trevino*. Original § 2255 counsel therefore withdrew from the case, and Mr. Lee then expeditiously filed his *Rule 60(b) Motion*. There is no question that Mr. Lee has been diligent in the wake of *Trevino* to excuse the default on his underlying IATC claim caused by his original § 2255 counsel.

In addition to the two factors relied upon by the Supreme Court in *Gonzalez*, which weigh heavily in Mr. Lee's favor, the four factors relied upon by the Eleventh Circuit in *Ritter* also provide useful guidance for courts applying Rule 60(b)(6) in the habeas context. The first factor articulated in *Ritter* is whether granting the motion to reconsider would "undo the past, executed effects of the judgment," thereby disturbing the parties' reliance interest in the finality of the case. 811 F.2d at 1402. As an example, the court noted that when a judgment affords a federal habeas petitioner a new trial that results in the eventual dismissal of the charges and his release from custody, the judgment should not be disturbed and the petitioner's freedom revoked years later due to intervening precedents because doing so would significantly alter his legal status as a free man. *Id*. at 1402

38

(citing *Hall v. Warden*, 364 F.2d 495 (4th Cir. 1966)). The underlying principle of this factor is that Rule 60(b)(6) relief is less warranted when the final judgment being challenged has caused one or more of the parties to change their legal position in reliance on that judgment.

In Mr. Lee's case, however, neither party has relied in such a fashion on the finality of the district court's denial of the § 2255 motion. Neither the government nor Mr. Lee has undergone any change in legal position due to the district court's judgment. To the contrary, Mr. Lee availed himself of the right to appeal the denial of the § 2255 motion to the Eighth Circuit, and should that Court not grant his petition for rehearing, he will avail himself of the opportunity to petition for a writ of certiorari to the United States Supreme Court. In other words, there are no "past effects" of the judgment that would be disturbed if it were reopened for consideration of the underlying IATC claim, as the judgment itself is not even final. Moreover, unlike in some capital cases, where the executive has set an execution date and can therefore demonstrate a reliance interest on the judgment because the warrant could expire and the State be forced to "restart the entire execution process," *Jones v. Ryan*, 2013 U.S. App. LEXIS 21173 (10/18/2013), there is no execution date pending, nor one likely to be set before the entire § 2255 process is completed. Thus, this factor weighs heavily in Mr. Lee's favor.

The second factor relied upon by the *Ritter* court examines the "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief." 811 F.2d at 1402. This factor is similar to the second *Gonzalez* factor, which emphasizes the petitioner's diligence in challenging the judgment he seeks to reopen. Thus, much like that *Gonzalez* factor, this *Ritter* factor also weighs strongly in Mr. Lee's favor. *See supra*.

The third *Ritter* factor was "the close relationship between the two cases at issue" – the decision embodying the original judgment and the subsequent decision embodying the change in

39

law. 811 F.2d at 1402. If there is "a close connection between the two cases, the court [will be more likely to] f[i]nd the circumstances sufficiently extraordinary to justify disturbing the finality of the [original] judgment." *Id*. To the extent that the government argues that the relationship between *Trevino* and Mr. Lee's case is not "close," *Gov't. Resp.* at 51-52, the government is simply wrong. Here, there is an identity of issues between *Trevino* and Mr. Lee's case – namely, whether a default on an IATC claim can be excused by habeas counsel's ineffectiveness. The *Trevino* decision provides Mr. Lee with a remedy for his habeas counsels' default, as federal law mirrors the Texas law at issue in *Trevino* (i.e., while claims of IATC may at least theoretically be raised on direct appeal doing so is impractical and disfavored).  In addition, just as in *Trevino*, the default of the IATC claim here occurred in the initial collateral review proceeding. Finally, as in *Trevino*, this Court previously held that it was precluded from reviewing the extra-record evidence in support of the underlying IATC claim because habeas counsel failed to plead and proffer the relevant affidavits and supporting information in a timely manner. Thus, there is a very close connection between *Trevino* and Mr. Lee's case, and this factor accordingly weighs heavily in favor of granting 60(b)(6) relief.

The final factor considered by the *Ritter* court was preserving comity between federal and state courts. This factor weighs in Mr. Lee's favor because he is not seeking to have a federal court overturn a state court judgment. Here, Mr. Lee asks that this Court reopen its own judgment so that he can have the opportunity for one Court to review the evidence in support of his underlying ineffective assistance of trial counsel claim. Indeed, Mr. Lee's *Rule 60(b) Motion* does not seek reconsideration of the prior judgment on the *merits*, but rather of a *default* that prevented the Court from ever reaching the full merits of the underlying IATC claim. Even after the enactment of AEDPA, "[t]he writ of habeas corpus plays a vital role in protecting constitutional rights." *Slack v.*

40

*McDaniel*, 529 U.S. 473, 483 (1972). Accordingly, in applying Rule 60(b) to habeas corpus

petitions, the Fifth Circuit has persuasively held that

> [t]he "main application" of Rule 60(b) "is to those cases in which the *true merits* of a case might never be considered." Thus, although we rarely reverse a district court's exercise of discretion to deny a Rule 60(b) motion, we have reversed "where denial of relief precludes examination of the *full merits* of the cause," explaining that in such instances "even a slight abuse may justify reversal."

*Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007) (emphasis added) (quoting *Fackelman v. Bell*,

564 F.2d 734, 735 (5th Cir. 1977); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)).

*See also Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("We too believe that a central

purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent

the *true merits* of a petitioner's constitutional claims from ever being heard. In such instances . . .

this factor will cut in favor of granting Rule 60(b)(6) relief.") (emphasis added).

     As the preceding evaluation of the factors set forth in *Gonzalez* and *Ritter* demonstrates, Mr.

Lee's *Motion* establishes the extraordinary circumstances necessary to grant relief under Rule

60(b)(6). Here, the remarkable departure from precedent represented by *Martinez* and *Trevino*, the

diligence Mr. Lee has exhibited in pursuing review of his defaulted claim, the lack of reliance by

either party on the finality of the original judgment, the close relationship between Mr. Lee's case

and intervening change in law that provides a remedy, the fact that comity interests are not

implicated, and the fact that Mr. Lee does not challenge a judgment on the merits of his § 2255

motion but rather a default that has prevented review of the full merits of his underlying IATC claim

all weigh strongly in favor of granting Rule 60(b)(6) relief.

### 2.    The Fifth Circuit and the *Seven Elves* Balancing Test

     The government cites two Fifth Circuit cases for the proposition that *Martinez* and *Trevino*

do not establish extraordinary circumstances justifying relief under Rule 60(b): *Diaz v. Stephens*,

41

731 F.3d 370 (5th Cir. 2013), and  *Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012). However, the

government overstates the holding in these cases. In *Adams* and *Diaz*, the Fifth Circuit stated that a

change in decisional law "is not *alone* grounds for relief from a final judgment" under Rule 60.

*Adams*, 679 F.3d at 319 (emphasis added) (internal citation omitted); *see also Diaz*, 731 F.3d at 375.

Thus, all that *Adams* and *Diaz* held is that a change in decisional law may not constitute the kind of

extraordinary circumstances that warrant relief under Rule 60(b) if it is the *sole* basis for such

circumstances.[24] This is consistent with Mr. Lee's *60(b) Motion*, which argues that the change in law

brought about by *Martinez* and *Trevino* is one among several equitable factors that that weigh in

favor of granting relief under Rule 60(b).

Indeed, even the Fifth Circuit appears to endorse the use of a balancing test in the Rule

60(b)(6) context. Specifically, the *Diaz* court pointed to the equitable factors outlined in *Seven Elves*

*Inc. v. Eskenazi,* 635 F.2d 396 (5th Cir. 1981), which are as follows:

> (1) That final judgments should not lightly be disturbed;
> (2) that the Rule 60(b) motion is not to be used as a substitute for appeal;
> (3) that the rule should be liberally construed in order to achieve substantial justice;
> (4) whether the motion was made within a reasonable time;
> (5) whether[,] if the judgment was a default or a dismissal in which there was no consideration of the merits[,] the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense;
> (6) whether[,] if the judgment was rendered after a trial on the merits[,] the movant had a fair  opportunity to present his claim or defense;
> (7) whether there are intervening equities that would make it inequitable to grant relief; and
> (8) any other factors relevant to the justice of the judgment under attack.

---

[24] Additionally, to the extent that *Adams* and *Davis* characterize *Martinez* and *Trevino* as a mere change in decisional law, such a characterization is inaccurate. As noted *supra*, *Martinez* and *Trevino* did not simply address an unsettled question of statutory interpretation that differed from the appellate court's then-prevailing interpretation, as was the case in *Gonzalez*. Rather, *Martinez*'s and *Trevino*'s change in the law represents a remarkable departure from decades-old precedent that lower courts and litigants had previously understood as being well-settled.

*Diaz*, 731 F.3d at 377 (citing *Seven Elves*, 635 F.2d at 402).

Using the equitable factors identified in *Seven Elves*, Mr. Lee's *60(b) Motion* should be granted. First, the Supreme Court has explicitly discounted finality as a basis for denying Rule 60(b)(6) relief precisely because the very purpose of Rule 60(b) is to make exceptions to finality. *Gonzalez*, 545 U.S. at 529 (giving "little weight to the respondent's appeal to the virtues of finality" because "[t]hat policy consideration, standing alone, is unpersuasive in the interpretation of a provision [Rule 60(b)] whose sole purpose is to make an exception to finality"). Second, the government's interest in finality is, at best, no greater than Mr. Lee's interest in not being subject to the finality of an unconstitutional execution. If anything, Mr. Lee's interest here is greater because unlike a grant of sentencing relief, after which the government will have a second "bite at the apple" to capitally prosecute Mr. Lee if it so chooses, an execution is irreversible. Indeed, it is precisely because "death is different," *Ford v. Wainwright*, 477 U.S. 399, 411 (1986), that this factor weighs in Mr. Lee's favor, as capital cases require a greater need for reliability and fairness, and the underlying IATC claim goes to the heart of the reliability and fairness of Mr. Lee's death sentence given that the jury relied on evidence whose falsity not even the government disputes.

As for the second *Seven Elves* factor, the 60(b) motion is not being used as a substitute for appeal; it is aimed at a defect in the integrity of the § 2255 proceedings – i.e., the default by § 2255 counsel in failing to timely proffer facts and information in support of the underlying ineffective assistance of trial counsel claim. Indeed, the fact that § 2255 counsel committed a default that foreclosed full merits review of the IATC claim is not an issue that Mr. Lee could have raised as a cognizable appellate claim to the Eighth Circuit, so the 60(b) motion is clearly not taking the place of an otherwise available appellate remedy. Rather, the 60(b) motion is properly being used here to re-open the judgment to cure the default caused by habeas counsels' ineffectiveness.

The third *Seven Elves* factor – that the rule should be liberally construed in order to achieve substantial justice – clearly weighs heavily in Mr. Lee's favor. The government has never contested that the "expert evidence" introduced at Mr. Lee's sentencing hearing that purports to demonstrate a link between Mr. Lee's score on the PCL-R and his alleged future dangerousness in prison was unreliable and scientifically invalid. Nor has the government ever contested that the basis for challenging the psychopathy/PCL-R evidence – the same basis that has resulted in the exclusion of such evidence in other federal capital trials – was readily available to Mr. Lee's trial counsel at the time of his trial in 1999. Nor does the government dispute the presiding trial judge's contemporaneous observation that, but for the introduction of this psychopathy/PCL-R evidence, it is "very questionable" whether the jury would have sentenced Mr. Lee to death. On its face, this has all the hallmarks of a substantial, meritorious claim of ineffective assistance of trial counsel. Through no fault of his own, however, the full merits of Mr. Lee's claim have never been considered by any court. Mr. Lee's first and only opportunity to have this claim considered and to present extra-record evidence in support of it was during his § 2255 proceeding, yet § 2255 counsel failed to properly plead and present the facts. Indeed, original § 2255 counsel have submitted sworn declarations acknowledging that they had "no strategic or tactical rationale" for failing to timely plead and proffer the relevant extra-record facts. *See Declarations of Laurence Komp, Esq.,* and *David A. Ruhnke, Esq.,* September 25, 2013 at Point 17 (attached as Exhibits 1 & 2 to *Rule 60(b) Motion*).[25]

---

[25] The government argues that negligence on the part of collateral counsel does not establish extraordinary circumstances justifying Rule 60(b)(6) relief. *Gov't Resp.* at 48-49. First of all, as is apparent in this pleading and in Mr. Lee's *Rule 60(b)(6) Motion*, the determination of whether to grant Rule 60(b)(6) relief rests on a *variety* of factors and Mr. Lee respectfully submits that under any analysis of these factors, the equities weigh in favor of granting him relief. Second, § 2255 counsels' failure to timely plead and proffer facts in support of the underlying IATC claim can hardly be characterized as merely negligent. As this Court stated in its Order denying § 2255 relief, § 2255 counsel failed to meet basic fact-pleading standards in its presentation of the § 2255 motion.

Moreover, this Court's Order on the Rule 59(e) Motion makes clear that § 2255 counsel's failure to timely proffer the information in support of the underlying IATC claim prejudiced Mr. Lee. As the Court stated in its Order, it was § 2255 counsels' errors that resulted in the denial of a hearing on the claim. *United States v. Lee*, 2010 WL 5347174 at *5 (E.D. Ark., Dec. 22, 2010) (Order Denying

---

*See United States v. Lee*, 2010 WL 5347174  at *3 (E.D. Ark. Dec. 22, 2010) ("[p]etitioner failed to adequately present facts sufficient to support his ineffective assistance of counsel claims." The Court explained that it was "purposefully lenient in permitting the parties to expand the record as they wished" and even helpfully pointed out potential pleading deficiencies in certain claims. *Id*. at *2. In an order dated May 22, 2008, the Court even gave § 2255 counsel "one final opportunity to put before the Court additional legal authority or argument in support of the grounds for relief…" *Id*. Yet § 2255 counsel still "failed to include supporting affidavits or *other independent support.*" *Id* at *3 (emphasis in original). It could not be clearer that "[p]etitioner's counsel was on notice of the law and pleading requirements for § 2255 motions" yet simply failed to comply. *Id*. at * 4. This is not mere negligence; it is a repeated failure to comply with basic requirements in the litigation of a § 2255 motion because counsel was apparently unaware of what those requirements were. *Compare Declarations of Laurence E. Komp. Esq.* and *David A. Ruhnke, Esq.* (Exh. 1 & 2) at Point 17 ("There was no strategic or tactical rationale for not asserting the readily available facts in support of our (sic) the claim . . . nor was there a strategic or tactical rational for not obtaining and appending supporting documentation to our Motion . . . We thought that by pleading the issue we had met the requirements of § 2255 .") *with Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001) (in order to meet the pleading requirements of § 2255, movant cannot merely assert a legal claim; movant must also identify the factual basis for the claim, including readily available evidence in support of the claim).

The government also makes the claim that Mr. Lee's *Motion* should have been brought under Rule 60(b)(1), which allows relief from judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." *Gov't Resp.* at 49. As noted *supra*, however, § 2255 counsel's failure to plead and proffer facts in support of the underlying IATC claim cannot be properly characterized on this record as "mistake, inadvertence, surprise, or excusable neglect." This Court repeatedly put § 2255 counsel on notice of the deficiencies in its pleading and gave § 2255 counsel numerous opportunities to correct the pleading defect and proffer facts in support of the claim. Indeed, even the government concedes that collateral counsels' failures in this regard cannot be deemed "excusable." *Gov't Resp.* at 49 ("[Petitioner] cannot show that the neglect of his collateral counsel was 'excusable'"). Contrary to the government's assertion, Rule 60(b)(1) is not "a better fit" given the facts of this case. Rather, that provision is typically used in cases where, for example, the party's failure to comply with procedural rules is excusable due to a court error – *see., e.g., Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir. 1985) (per curiam) (finding "excusable neglect" under Rule 60(b) when a pro se prisoner let an appeal deadline lapse after notice of the entry of judgment was sent to her former attorney rather than to her) – or where counsel "has some reasonable basis for noncompliance with the rules" that is not based on the attorney's "ignorance or carelessness." *United States v. Puig*, 419 F.3d 700, 702 (8th Cir. 2005) (internal quotation marks and citation omitted).

45

Post-Judgment Relief). In light of the fact that *Trevino* provides a highly germane remedy to excuse § 2255 counsel's prior default, and would therefore insure that Mr. Lee finally receives review of an IATC claim whose factual underpinnings are essentially uncontested by the government, granting the *Rule 60(b) Motion* would achieve substantial justice. Indeed, it is worth repeating that the relief requested in Mr. Lee's *Motion* is not the vacatur of his convictions and/or death sentence, but merely the opportunity to be able to present to this Court the *full merits* of his underlying IATC claim for its consideration, an opportunity denied him by the ineffectiveness of his court-appointed § 2255 counsel.

The fourth factor examines whether the Rule 60(b) motion was made within a reasonable time. As explained *supra*, this factor weighs in Mr. Lee's favor, as he expeditiously filed his motion within four months of the intervening change of law that provided him with a remedy to cure his prior habeas counsels' default of his underlying IATC claim.

The fifth *Seven Elves* factor examines whether the prior judgment was made on the full merits of the underlying claim, and if not, whether that underlying claim, considered in full, has merit. Here, Mr. Lee's underlying IATC claim was not considered on the full merits; as this Court explained in its order denying the Rule 50(e) motion, it was "foreclosed" from reviewing any of the affidavits and information proffered in support of the claim because § 2255 counsel failed to timely present them to the Court. *United States v. Lee*, 2010 WL 5347174 at *5 (E.D. Ark., Dec. 22, 2010) (Order Denying Post-Judgment Relief). Thus, it is clear that this Court did not consider the full merits of the underlying IATC claim because it expressly did not consider any of the extra-record information supporting the claim. In other words, the claim was considered in the absence of any facts or supporting information whatsoever, and merely based on the assertion alleged in the § 2255 Motion. As stated in that same Order, the Court was "not place[d] . . . on notice of the *full*

46

argument…" *Id.* at \*6 (emphasis added). That the underlying IATC claim, considered in full, has

merit is an issue that has been briefed *supra* as well as in Mr. Lee's *Rule 60(b) Motion*. *See Rule*

*60(b) Motion* at 29-49. This factor clearly weighs heavily in Mr. Lee's favor.

The sixth factor examines whether, if the judgment was rendered after a trial (or, in the

habeas context, an evidentiary hearing) on the merits, the movant had a fair opportunity to present

his claim or defense. Here, the judgment was not rendered after a trial or hearing on the merits, as

Mr. Lee's IATC claim was decided on the papers alone and in the absence of an evidentiary hearing,

and without the consideration of relevant extra-record supporting information. *See supra*. Moreover,

this is attributable to the errors of § 2255 counsel; as noted above, it was § 2255 counsels' failure to

timely proffer the relevant extra-record facts that resulted in the denial of an evidentiary hearing on

the underlying IATC claim. Thus, this factor weighs in favor of Mr. Lee.

The seventh factor is whether there are intervening equities that would make it inequitable to

grant relief. This factor also weighs in favor of Mr. Lee. As noted *supra*, the government has not

asserted any reliance interest that would be adversely affected if relief were granted, as the judgment

denying § 2255 relief is not yet final. By contrast, a failure to grant relief would work a substantial

injustice on Mr. Lee, as it would result in an irreversible execution based on a sentencing

determination that rested on fundamentally unreliable evidence.

The final *Seven Elves* factor is whether there are other factors relevant to the justice of the

judgment under attack. Indeed, there are. As even the government conceded at trial, Mr. Lee was the

*less* culpable actor in the incident, yet he received a death sentence, while the more culpable actor,

Chevie Kehoe, received a sentenced of life imprisonment.[26] The arbitrariness of this sentencing

---

[26] There was no "psychopathy" evidence presented in Mr. Kehoe's case.

result cries out for justice. Considering that the best outcome that Mr. Lee can hope for if he eventually prevails on his underlying IATC claim is a sentence that the local prosecutor previously acknowledged[27] would be a proper sentencing result in Mr. Lee's case, it is difficult to conceive how granting Mr. Lee the opportunity to merely present evidence in support of that claim would prejudice the government in any way. Justice requires that Mr. Lee be afforded at least one meaningful opportunity to have his IATC claim reviewed fully on the merits, and that is all that he asks for by way of his *Rule 60(b)(6) Motion*.

### 3.     The Ninth Circuit and the *Phelps* Balancing Test

The government also cites to the Ninth Circuit's decision in *Jones v. Ryan*, 2013 U.S. App. LEXIS 21173 (9th Cir. Oct. 18, 2013), for the proposition that *Martinez* and *Trevino* do not establish extraordinary circumstances justifying relief under Rule 60(b)(6). However, as the government later concedes in that very same paragraph, the holding in *Jones* was that the decision in *Martinez* was one among several equitable factors that it considered in deciding whether to grant the Rule 60(b) motion in that case, and one that weighed "slightly" in the petitioner's favor. *Jones*, 2013 U.S. App. LEXIS 21173 at *30. Much like the *Diaz* court, the *Jones* court recognized that while a change in decisional law may *not in and of itself* constitute the extraordinary circumstances necessary to warrant relief under Rule 60(b), "the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court" and that a "decision to grant Rule 60(b)(6) relief, then, is a 'case-by-case inquiry' that requires [the court] to balance numerous factors[.]" *Jones* at *29 (internal quotation marks and citation omitted).

---

[27] *See supra* regarding U.S. Attorney effort to withdraw death notice following Kehoe life verdict.

The *Jones* court then cited to the balancing test laid out in *Phelps v. Alameda*, 569 F.3d 1120

(9th Cir. 2009), and articulated the following six factors relevant to the inquiry:

> (1) Whether there was a change in the law;
> (2) the petitioner's exercise of diligence in pursuing his claim for relief;
> (3) whether granting Rule 60(b) relief would upset the parties' reliance interest in the finality of the case;
> (4) the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief;
> (5) the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law; and
> (6) principles of comity between federal and state courts.

*Jones* at *29-*33.

As these factors overlap with the factors discussed by the Eleventh Circuit and Fifth Circuit¸

*supra*, Mr. Lee will not review each of these factors again. Suffice it to say, however, that

application of the *Phelps* factors to Mr. Lee's case establishes that he is entitled to Rule 60(b)(6)

relief.[28]

### 4.    Other District Court Opinions

The government also cites to two district court opinions for the proposition that *Martinez* and

*Trevino* do not establish extraordinary circumstances justifying relief under Rule 60(b): *West v.*

*Carpenter*, No. 3:01-cv-91, 2013 U.S. Dist. LEXIS 135534 (E.D. Tenn. Sept. 23, 2013), and

*Ferguson v. Hobbs*, No. 5:11-CV-00267, 2013 U.S. Dist. LEXIS 116212 (E.D. Ark. Aug. 16, 2013).

These cases are distinguishable.

In *West*, the district court looked at a variety of factors to determine whether Rule 60(b)(6)

relief was warranted, and based on the specific circumstances of the case before it, held that the

---

[28] Additionally, Mr. Lee refers the Court to *Barnett v. Roper*, No. 4:03CV00614-ERW, 2013 U.S. Dist LEXIS 57147 (E.D. Mo. April 22, 2013) (Memorandum and Order), which applied the Ninth Circuit test in granting relief under Rule 60(b)(6) on facts that are substantially similar to Mr. Lee's case. *Barnett*, as well as application of the *Barnett* factors to Mr. Lee's case, is discussed in Mr. Lee's *Rule 60(b)(6) Motion* at 23-48.

balance of the factors did not weigh in the petitioner's favor. Weighing against the prisoner was the fact that his underlying conflict-of-interest of trial counsel claim lacked documentary and evidentiary support, and that he had not been diligent in pursuing Rule 60(b) relief. *West*, 2013 U.S. Dist. LEXIS 135534 at *20. The district court also noted that "the interest in finality and comity appears to be fairly equally balanced." *Id.* As noted above, however, these same factors weigh in Mr. Lee's favor in the context of his Rule 60(b) motion: his underlying ineffective assistance of trial counsel claim is rife with documentary and evidentiary support; his undersigned counsel were diligent in filing the 60(b) motion; the government's interest in finality is no greater than Mr. Lee's interest in avoiding the irreversible finality of an unconstitutional execution; and principles of comity weigh in Mr. Lee's favor, because this matter does not involve a state court judgment. Mr. Lee's case is thus clearly distinguishable from *West*.

Moreover, the *West* court did not find that *Martinez* and *Trevino* cannot ever establish extraordinary circumstances warranting Rule 60(b) relief; rather, the district court noted that there was "uncertainty as to their exact application" to Tennessee cases, and that in the absence of "instruction from the Sixth Circuit or Supreme Court" about *Martinez*'s and *Trevino*'s application in the Rule 60(b)(6) context, it simply declined "to find that these cases extend to claims raised in a Rule 60(b) motion." *Id.* at *21. Notably, however, despite denying the petitioner's Rule 60(b) motion, the district court granted a certificate of appealability on the issue of "whether *Martinez*, as expanded by *Trevino*, may constitute extraordinary circumstances meriting Rule 60(b)(6) relief." *Id.* at *22-*23.[29]

---

[29] The government notes that *West* cites other cases holding that *Martinez* and *Trevino* do not establish extraordinary circumstances warranting Rule 60(b)(6). In all, the *West* opinion cites six cases, each of which are distinguishable. Two of those cases – *Adams v. Thaler* and *Ferguson v. Hobbs* -- are discussed and distinguished *supra*. Two others are

In *Ferguson*, the district court summarily adopted a magistrate report recommending the denial of the petitioner's Rule 60(b) motion. *See Ferguson v. Hobbs*, No. 5:11-CV-00267, 2013 U.S. Dist. LEXIS 116217 (E.D. Ark. July 30, 2013). That magistrate report, however, contains no substantive legal analysis; it merely cites to the Fifth Circuit's *Adams* case, which is discussed *supra*.[30] Considering the more persuasive authority discussed *supra* regarding the relevant equitable

---

distinguishable because in each of those cases the district court found that *Martinez* was not applicable because the underlying claim was not an ineffective assistance of trial counsel claim. *See Tilcock v. Budge*, 2013 U.S. Dist. LEXIS 75330, \*5-\*6 (D. Nev. May 28, 2013) ("Petitioner's defaulted claim was not one of ineffective assistance of counsel. … So *Martinez* does not provide the extraordinary circumstances required for relief under Rule 60(b)(6)."); *Jackson v. Ercole*, 2012 U.S. Dist. LEXIS 169253 \*8-\*9 (W.D.N.Y. Nov. 28, 2012) ("Unlike Martinez, Jackson is not seeking to overcome the procedural default of a claim of ineffective assistance of counsel. Jackson's procedurally defaulted claim pertained to an evidentiary error that was record-based and was appropriately raised on direct appeal by appellate counsel.").

A fifth case, *Haynes v. Thaler*, 2012 U.S. Dist. LEXIS 143123 (S.D. Tex. Oct. 3, 2012, *cert. granted, judgmt. vacated*, 133 S.Ct. 2764 (June 3, 2013), was decided prior to the Supreme Court's decision in *Trevino*; thus, its holding that it was bound by Fifth Circuit precedent that *Martinez* does not apply to Texas cases is no longer valid. Moreover, its ruling that *Martinez* cannot form the basis for Rule 60(b)(6) relief relies exclusively on *Adams v. Thaler*, which is discussed and distinguished *supra*.

Finally, *Sheppard v. Robinson*, 2013 U.S. Dist. LEXIS 5565 (S.D. Ohio Jan. 14, 2013) is distinguishable on a number of grounds. First, *Martinez* was inapplicable because the petitioner's underlying claim was not actually ineffective assistance of trial counsel. *Id.* at \*26 ("*Martinez* is no help to him because the *Martinez* exception to *Coleman* is limited to claims of ineffective assistance at trial" and petitioner's claim raised only ineffective assistance of appellate counsel claims). Additionally, the district court held that the underlying claim, even if it could be construed as ineffective assistance of trial counsel, lacked merit because it concerned a claim of juror misconduct that lacked prejudice. *Id.* at \*40-\*42.

[30] The magistrate report also cites to a series of other district court cases, many of which were also cited by the *West* court and distinguished *supra*. The remaining cases cited in *Ferguson* are also distinguishable. In two of the cases, *Martinez* did not even apply because the petitioner sought to use the case for equitable tolling purposes. *See Vogt v. Coleman*, 2012 U.S. Dist. LEXIS 99767, \*10, \*11 (W.D. Pa. Jul. 18, 2012) ("[T]here is nothing in *Martinez* that amounts to a change in the law that is applicable to Petitioner's situation"; "*Martinez* did not provide that post-conviction counsel's ineffectiveness could establish an exception to or equitable tolling of AEDPA's one-year statute of limitations for filing a federal habeas petition."); *Gale v. Wetzel*, 2012 U.S. Dist. LEXIS 161594, \*24

factors to be considered in deciding whether to grant Rule 60(b)(6) relief, neither *West* nor *Ferguson* are apposite to this Court's determination of Mr. Lee's *Rule 60(b) Motion*.

In short, whichever set of factors this Court relies on, Mr. Lee is able to establish on the specific facts of his case that his Rule 60(b)(6) motion should be granted.[31]

## V.    RULE 60(b)(5) DOES APPLY TO MR. LEE'S CASE.

The government argues that 60(b)(5) is inapplicable for two reasons: 1) according to the government, the judgment at issue in this case is the denial of the § 2255 motion not the underlying criminal judgment and 2) even if the judgment at issue is the criminal judgment, it is not prospective. *Gov't Resp*. at 54. The government is incorrect on both counts.

As Mr. Lee noted in his initial briefing, unlike a § 2254 proceeding, a § 2255 motion is "a further step in the movant's criminal case and not a separate civil action." Committee Notes to Rule 1 of Rules Governing § 2255 Proceedings. A grant of relief in a § 2255 case is not a conditional grant dependent on further action by the sentencing court (as in a § 2254 case) but rather

---

(M.D. Pa. Sep. 27, 2012) ("We also find as the Court in *Vogt v. Coleman* found that there is nothing in *Martinez* that amounts to a change in the law that is applicable to Petitioner's … situation since the Court's consideration of Petitioner's … habeas petition was limited to the threshold issue of timeliness.") (internal quotation marks and citation omitted). In a third case, the district court found that *Martinez* didn't apply because the petitioner's Rule 60(b) motion did not concern defaulted ineffective assistance claims. *See Fitzgerald v. Klopotski*, 2012 U.S. Dist. LEXIS 160142 at * 8 (W.D. Pa. Nov. 8, 2012) ("There was no procedural default of his claims at the state court level that prevented a resolution of his claims on the merits such that *Martinez* would even be applicable.")

[31] As Mr. Lee has noted, this Court currently lacks jurisdiction to grant his *Rule 60(b) Motion*, which is why the relief requested at this stage is for an indicative ruling pursuant to Rule 62.1(c) that his *Motion* raises a substantial issue. It bears repeating, however, that even as part of his *Rule 60(b) Motion*, his prayer for relief is that he be allowed to reopen the judgment to have this Court review the evidence which this Court previously stated it was "foreclosed" from considering in determining whether to grant an evidentiary hearing on Mr. Lee's claim. That is, his *Rule 60(b) Motion* does not ask this Court to vacate his death sentence; it merely asks that he be granted a meaningful opportunity to have the full merits of his underlying IATC claim reviewed by a court before he is executed.

immediately vacates the criminal judgment or sentence. This principle is clear, for example, in cases where a district court grants penalty phase relief. In such circumstances, because the district court order in the § 2255 proceeding immediately vacates the sentence, no appellate jurisdiction exists until the resentencing is completed. *See United States v. Hammer*, 564 F.3d 628 (3rd Cir. 2009); *United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006). Any attempt by the government to create a meaningful distinction between the § 2255 decision and the underlying criminal sentence is spurious.

The government also incorrectly suggests that a death sentence is similar to a term of imprisonment and has no prospective application. *Gov't Resp*. at 54. Strangely, the government relies on this quote from *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988): "[I]t is difficult to see how an unconditional dismissal could ever have prospective application within the meaning of Rule 60(b)(5)." This has no bearing on Mr. Lee's case. At issue in *Twelve John Does* was an order discharging the Attorney General from any further involvement in the case. In finding that the "unconditional dismissal" of the Attorney General from the litigation did not have prospective application, the court noted that it would have prospective application if the order "compel[led] him to perform, or order[ed] him not to perform, any future act…" *Id*. A death sentence, unlike a term of imprisonment, compels performance of a future act. *See* 18 U.S.C. § 3596(a) ("When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence…"). In fact, the government's own regulations explicitly define the future acts that are necessary to implement the sentence in this case. *See* 28 C.F.R. §26.2 ("…the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order" stating the conditions, date and time of the execution). The unique circumstances of a federal capital

judgment entail the implementation of future conduct and is thus a prospective judgment that falls under 60(b)(5).

<strong><u>CONCLUSION</u></strong>

For over fourteen years, Mr. Lee has sat on federal death row on the basis of false evidence regarding his alleged future dangerousness. Yet all this time not a single federal judge has once reviewed the substance of his ineffective assistance of counsel claim. This is made all the more egregious by the fact that, in large part, the government does not even dispute the factual underpinnings of Mr. Lee's ineffective assistance claim. An avenue now exists for Mr. Lee to finally obtain meaningful review of his claim. All that Mr. Lee asks is for the opportunity of which he was deprived, through no fault of his own, to present that evidence to this Court for its consideration. The first step in obtaining such review, however, is for this Court to issue an indicative ruling that Mr. Lee's *60(b) Motion* raises a substantial issue. The issuance of such an indicative ruling has no binding effect on this Court, but is merely a predicate act so that the Circuit Court can determine pursuant to FRAP 12.1 whether to remand jurisdiction to this Court for full merits review of Mr. Lee's *60(b) Motion*. In light of the significant showing Mr. Lee has made in the foregoing *Reply* and in his *Rule 60(b) Motion*, it is respectfully submitted that Mr. Lee has satisfied the requirement of Rule 62.1 and that a corresponding indicative ruling should be issued.

The Supreme Court has made clear that the equitable power embodied in Rule 60(b) is the power to "vacate judgments whenever such action is appropriate to accomplish *justice*." *Gonzalez*, 545 U.S. at 542 (emphasis added) (quoting *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 864 (1988)). Given that directive, the decision to grant Rule 60(b) relief must be measured by "the incessant command of the court's conscience that justice be done in light of all of the facts." With that guiding principle in mind, Daniel Lee respectfully requests that this Court review this

54

single claim, before the government - which even at time of his trial was satisfied that a sentence of life imprisonment in this case would satisfy the interests of justice - is permitted to execute him.

Respectfully Submitted:

**EDSON A. BOSTIC**
**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF DELAWARE**

By:    /s/*Karl Schwartz*_____
        KARL SCHWARTZ
        Bar # 38994 (PA)
        Jennifer Merrigan
        Bar # 56733 (MO)
        Assistant Federal Public Defender
        Delaware Federal Defender Office
        800 King Street, Suite 200
        Wilmington, DE 19801
        (302) 442-6545
        karl_schwartz@fd.org

Dated: December 6, 2013

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on December 6, 2013. This Reply was served via this court's CM/ECF electronic case filing system upon:

JOHN M. PELLETTIERI
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., N.W., Rm. 1264
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov


By:    /s/*Karl Schwartz*_____
       KARL SCHWARTZ
       Bar # 38994 (PA)
       Jennifer Merrigan
       Bar # 56733 (MO)
       Assistant Federal Public Defender
       Delaware Federal Defender Office
       800 King Street, Suite 200
       Wilmington, DE 19801
       (302) 442-6545
       karl_schwartz@fd.org