OFFICE OF THE **FEDERAL  PUBLIC  DEFENDER**
FOR THE DISTRICT OF DELAWARE

**EDSON A. BOSTIC**
FEDERAL PUBLIC DEFENDER

**KARL D. SCHWARTZ**
CHIEF, CAPITAL HABEAS UNIT

**JENNIFER A. MERRIGAN**
ASSISTANT DEFENDER,
CAPITAL HABEAS UNIT

February 13, 2014

Hon. J. Leon Holmes
United States District Court
Eastern District of Arkansas
500 West Capitol Avenue
Little Rock, AR 72201

>Re:       *United States v. Lee*
>              4:97-cr-00243-JLH-2

Your Honor:

Counsel for Daniel Lee submit this letter brief to clarify answers to several questions which arose during the recent oral argument. We appreciate the Court's willingness to entertain this letter, and we would be happy to address any further concerns the Court may have.

**1.       Is there an analytical distinction under *Trevino* between attempting to re-open a § 2255 judgment pursuant to Rule 60(b) and attempting to re-open a § 2254 judgment pursuant to Rule 60(b)?**

*Trevino* applies only to the performance of post-conviction counsel in *initial*-review collateral proceedings.[1] Thus, a *Trevino*-based 60(b) motion is permissible regarding counsel's ineffectiveness in a § 2255 proceeding, but not in a § 2254 proceeding, because the former is an initial-review collateral proceeding, and the latter is not. *Trevino* has no bearing on the effectiveness of § 2254 counsel in a § 2254 proceeding because the § 2254 proceeding is not the initial-review collateral proceeding -- the prior state court post-conviction proceeding is. So, for example, if a § 2254 counsel fails to properly plead and present an ineffective-assistance-of-trial-counsel ("IAC") claim in the § 2254 court, a state prisoner is not entitled under *Trevino* to raise the ineffectiveness of § 2254 counsel, because the § 2254 court is not the initial-review collateral proceeding for a state prisoner. In the § 2254 context, *Trevino* only applies to the errors committed by *state post-conviction counsel*

---

[1] *See Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1921 (2013) ("failure to consider a lawyer's 'ineffectiveness during an ***initial-review*** collateral proceeding as a potential 'cause' for excusing procedural default will deprive the defendant of any opportunity at all for review of an ineffective-assistance-of-trial-counsel claim") (emphasis added); *see also Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1320 (2012) (noting that its holding – that ineffectiveness of post-conviction counsel can serve as "cause" to excuse default – "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial").

OFFICE of the FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

in the *state post-conviction court*; if § 2254 counsel is ineffective, *Trevino* provides no remedy to a state petitioner.[2]

For purposes of a *Trevino* analysis, a § 2255 court is procedurally in the same posture as a state post-conviction court – it is the *initial*-review collateral proceeding for a federal prisoner seeking to collaterally attack a federal conviction and/or sentence, just as the state post-conviction court is the initial-review collateral proceeding for a state prisoner seeking to collaterally attack a state conviction and/or sentence. In the case of federal prisoners, however, the § 2255 court is also the *only* collateral review proceeding; unlike state prisoners, who can file a § 2254 petition in federal court after a state court has denied post-conviction relief, a federal prisoner has no other avenue for seeking post-conviction relief on a substantial IAC claim after the § 2255 court denies relief.

This is a significant distinction. If a federal prisoner's IAC claim is procedurally barred due to § 2255 counsel's ineffectiveness, a post-judgment motion is the only proper vehicle with which to vindicate *Trevino's* concern that "failure to consider a lawyer's ineffectiveness during an initial-review collateral proceeding as a potential 'cause' for excusing a procedural default will deprive the defendant of any opportunity at all for review of an ineffective-assistance-of-trial-counsel claim." *Trevino*, 133 S.Ct. at 1921. This is because there is nothing analogous to a § 2254 court to which a federal prisoner can subsequently turn to remedy the default that § 2255 counsel committed in the § 2255 proceeding. Thus, absent recourse to a post-judgment motion, there would be *no* procedural vehicle available to a federal prisoner to remedy a default committed by § 2255 counsel on a substantial IAC claim.

After *Trevino,* a state prisoner need not file a 59(e) or 60(b) motion to remedy state post-conviction counsel's ineffectiveness, because the § 2254 petition itself is the procedural vehicle through which a state prisoner can remedy the default. That is, the state prisoner can allege the defaulted claim of IAC in the § 2254 petition, and the § 2254 court can analyze the situation per the factors articulated in *Trevino* to determine whether there is cause to excuse the default. No such procedural vehicle is available to a federal prisoner, however, to excuse the ineffectiveness of § 2255 counsel.

The undersigned recognize that in *Barnett v. Roper*, 941 F. Supp. 2d 1099 (E.D. Mo. 2013), which is a § 2254 case, the petitioner raised a *Martinez*-based 60(b) motion. However, that 60(b) motion alleged the ineffectiveness of *state post-conviction counsel*, not § 2254 counsel. *See Barnett*, 941 F. Supp. at 1103 (IAC claims "were procedurally barred from federal court review due to petitioner's *default during the post-conviction proceedings in state court*") (emphasis added). In that case, the petitioner had to avail himself of a 60(b) motion because the § 2254 court – prior to the issuance of *Martinez* – previously entered a judgment finding that the IAC claim was defaulted in state court. *Id*. While this is an

---

[2] *See Cross v. Benedetti*, 2012 U.S. Dist. LEXIS 110117 at *7 & n.7 (D. Nev. Aug. 7, 2012) (denying *Martinez*-based 60(b) motion brought against § 2254 counsel because *Martinez* only applies to initial-review collateral proceedings, not subsequent § 2254 proceedings).

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

appropriate use of a 60(b) motion in a § 2254 context – i.e., to remedy a default caused by *state post-conviction counsel* which, prior to *Martinez/Trevino*, precluded the § 2254 court from meaningfully reviewing the IAC claim – nothing in the holding of *Barnett,* or in the interpretation of *Trevino* that Mr. Lee advances, would allow a state prisoner to raise the ineffectiveness of § 2254 counsel via a 60(b) motion. *Barnett,* like Mr. Lee's case, involved the narrow circumstance in which a procedural bar foreclosed review of proffered facts, and subsequently, there has been an intervening change in the law that would allow the bar to be excused.

**2.      Does *Trevino* change the limitations on successive motions codified in § 2255(h)?**

*Trevino* does nothing to alter § 2255(h), and the relief Mr. Lee seeks does not depend upon such an argument. Mr. Lee's 60(b) motion is a true 60(b) motion because it only attacks a defect in the integrity of the federal habeas proceeding and thus is not barred by *Gonzalez v. Crosby*, 545 U.S. 524 (2005).[3] Many courts are in agreement about this issue. Although Mr. Lee directed this Court to the decision in *Barnett v. Roper*, 941 F. Supp. 2d 1099 (E.D. Mo. April 22, 2013), where the court granted 60(b) relief in a similar situation, cases cited by the government also support Mr. Lee's assertion. For example, in *Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) a pre-*Trevino* case cited by the government to argue that *Trevino* does not establish a *per se* extraordinary circumstance supporting 60(b) relief, the Fifth Circuit found that this issue was not successive. The court held that because a *Martinez* argument merely asserted that a previous ruling precluding meaningful review of an ineffective assistance claim was in error, "Adams's Rule 60(b) motion is not to be

---

[3] *Gonzalez* did not unequivocally preclude a 60(b) motion based on a defect due to post-conviction counsel's ineffectiveness. The *Gonzalez* court noted only that post-conviction counsel's omissions "**ordinarily** do[] not go to the integrity of the proceedings…". *Id* at n. 5. (emphasis added). That statement is correct given that *Gonzalez* was decided against the backdrop of *Coleman v. Thompson*, 501 U.S. 722 (1991), which explicitly declined to recognize a constitutional right to effective assistance of post-conviction counsel as a basis to excuse procedural default caused by attorney error. *Coleman* remains good law in that respect, and it also remains the case that "ordinarily" post-conviction counsel's omissions will not go to the integrity of the post-conviction proceeding. However, *Trevino* recognized a narrow category of post-conviction attorney error that is an exception to the rule in *Coleman* – that is, a procedural default committed by post-conviction counsel in the initial-review collateral proceeding that precludes meaningful review of a substantial IAC claim. Given the narrow exception to *Coleman* articulated by *Martinez* and *Trevino*, a 60(b) motion such as Mr. Lee's, which squarely falls within that *Coleman* exception, comports with *Gonzalez* and does not require this Court to reach the question of whether *Trevino* changed *Gonzalez*'s definition of a "true" 60(b) motion. *See*, *e.g.*, *Barnett v. Roper,* 941 F. Supp. 2d 1099, 1108-09 (E.D. Mo. 2013); *Cook v. Ryan*, 688 F.3d 598, 608 (9th Cir. 2012); *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012); *Balentine v. Stephens*, 2014 WL 341432 at *1 (5th Cir. Jan 30, 2014).

OFFICE OF THE **FEDERAL PUBLIC DEFENDER**
FOR THE DISTRICT OF DELAWARE

construed as an improper successive habeas petition and is properly before the district court." *Id*. at 319.

After *Trevino* was decided, the Supreme Court remanded at least two cases where a *Trevino* issue was raised in a 60(b) motion, thus indicating that Rule 60(b) motions could be proper vehicles to remedy a default caused by initial-review counsel's ineffectiveness. *See Balentine v. Thaler,* 133 S.Ct. 2763 (2013) and *Haynes v. Thaler*, 133 S.Ct. 2764 (2103).[4] Last week, the Fifth Circuit acknowledged that even in light of its prior decision in *Adams v. Thaler*, there are circumstances where a 60(b) motion raising a *Trevino* claim is appropriate, and it remanded *Balentine* to the district court for further proceedings. *See Balentine v. Stephens*, 2014 WL 341432 (5th Cir. Jan. 30, 2014).[5]

---

[4] As discussed *supra*, a 60(b) motion in a §2254 case is proper where the federal court has previously entered a default judgment based on the failure of the initial state post-conviction counsel to effectively litigate an IAC claim. It does not provide any ability for a §2254 petitioner to assert the ineffectiveness of his §2254 counsel, and granting Mr. Lee's 60(b) motion would not change that fact.

[5] An exhaustive survey of such cases may be impossible at this point because unreported cases in which a district court grants relief could deprive respondent of the ability to appeal that decision until the case is final. *See*, *e.g.*, *Parks v. Collins*, 761 F.2d 1101, 1104 (5th Cir. 1985) ("When an order granting a Rule 60(b) motion merely vacates the judgment and leaves the case pending for further determination, the order is akin to an order granting a new trial and is interlocutory and nonappealable.") (internal quotation marks and citation omitted).

However, in response to the Court's question as to whether there were other §2255 cases where *Trevino* was discussed in a 60(b) motion, undersigned counsel searched for such a case. The only case remotely related to this issue is not on point and adds little to this Court's analysis. The movant, acting *pro se*, in *United States v. Soto-Valdez*, 2013 WL 5297142 (D. Ariz. Sept. 19, 2013), filed a 60(b) motion nine years after judgment arguing that §2255 counsel abandoned him by not timely filing an opening appellate brief in the circuit court. The *Soto-Valdez* court denied the 60(b) motion, in part, because the *pro se* movant alleged that the relevant default occurred *on appeal* from the denial of §2255 relief, and the court noted that *Martinez* simply did not extend to procedural defaults that occur in any proceeding beyond the initial-review collateral proceeding. *Soto-Valdez* at *14. In addition, unlike here, the §2255 district court had not subsequently imposed a procedural bar limiting review of the IAC claim. *Soto-Valdez* is thus clearly distinguishable from Mr. Lee's 60(b) motion, which *does* address a procedural bar that limited meaningful review of his IAC claim due to §2255 counsel's ineffectiveness in the district court proceedings. To the extent that *Soto-Valdez* also appears to suggest that *Trevino* does not apply to federal convictions, it suffers from the same deficiencies as the cases to which it cites, and which the undersigned have addressed in the reply brief submitted to this Court. Namely, neither *Soto-Valdez* nor the cases it cites offer any analysis as to why a § 2255 proceeding should not be considered an initial-review collateral proceeding within the meaning of *Trevino*, especially considering that the *Trevino* court specifically cited to *United States v. Massaro*, 538 U.S. 500 (2003), which held that collateral review in a § 2255 proceeding is the best opportunity for federal prisoners to receive meaningful review of an IAC claim.

Additionally, the *Soto-Valdez* court was unclear regarding its jurisdiction to consider the 60(b) motion. Although noting that the magistrate's report, issued prior to *Trevino*, found the *pro se* 60(b)

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

The relief Mr. Lee seeks does not disturb well-settled doctrines ensuring the finality of a judgment and does not require this Court to contravene the jurisprudence on successive pleadings. His case presents a very narrow and rare circumstance that entitles him to the equitable relief of Rule 60(b): 1) a procedural bar was imposed in his case which led to truncated review; and 2) there has been an intervening change in the law (*Trevino*) which would allow that procedural bar to be excused. Absent both criteria, a §2255 movant could not avail himself of Rule 60(b). *Trevino* is not a substantive claim; it provides cause, affording review only to those §2255 movants who received truncated review because of a procedural ruling imposed on account of §2255 counsel's ineffectiveness. Thus, §2255 claimants who seek 60(b) relief where the district court has not foreclosed full review of a claim pled in the district court could not file a 60(b) motion permissible under *Gonzalez* because they would not be seeking to set aside a procedural defect in the proceedings. Only those cases, like Mr. Lee's, where there was a previously-imposed procedural bar foreclosing meaningful review, can avail themselves of the relief Mr. Lee seeks.

**3.      Does *Barefoot v Estelle*, 463 U.S. 880 (1983) affect the analysis in Mr. Lee's case as the government argued?**

No. The *Barefoot* Court was asked to decide the broad question of whether psychiatrists in general are competent to testify regarding a defendant's potential future dangerousness and a correlated evidentiary question as to whether that evidence could be introduced based solely on a hypothetical question, absent an examination of the defendant. *Id*. at 896. Unlike Barefoot, Mr. Lee is not contesting the admission of psychiatric evidence in general nor the manner in which it is presented. He does not dispute that psychiatric evidence may be relevant to the issue of future dangerousness and has made no objection to such a presentation. The error in Mr. Lee's case is that the particular instrument employed in his case (the PCL-R) to allege a finding of psychopathy and to persuade the jury to vote for death is not—and never has been—a valid predictor of future dangerousness in prison. Had trial counsel timely objected, this evidence would have been excluded by the Court, or it would simply have been withdrawn by Dr. Ryan himself.

---

motion to be a successor, the district court nevertheless issued a ruling on the merits and denied -- rather than dismissed – the motion, implying that the district court understood that the magistrate's conclusion was no longer valid after *Trevino*, and therefore the district court had jurisdiction to consider the motion on the merits. S*ee Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) (court cannot discuss merits of a case where it believes it has no jurisdiction). However, to the extent the district court did not reject the magistrate's finding that the 60(b) motion was a successor, it certainly made no attempt to explain its divergence from other circuit courts, such as the Fifth Circuit in *Adams*, who have reached the opposite conclusion as to whether a *Martinez-* or *Trevino*-based 60(b) motion is a successor. *See* discussion *supra* at 3.

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

In *Barefoot*, the Supreme Court noted that "no case, federal or state, … had adopted the categorical view[ ]…" rejecting psychiatric testimony of future dangerousness. *Id.* at 900. It also pointed out that Barefoot's complaint was at heart "quantitative, not qualitative"; it was not about the "diagnosis and prediction" but rather about the "extreme certainty" expressed by the expert. *Id.* at 902. In contrast, the issue in Mr. Lee's case is clearly qualitative: the "diagnosis and prediction" were invalid and unreliable. The courts that have considered the instrument in federal death penalty cases have found as much. *See e.g. United States v. Taylor*, 320 F. Supp. 2d 790 (N.D. Ind. 2004) (prohibiting use of PCL-R due to the "uncertainty of the validity and reliability of the PCL-R as it is used in capital sentencing hearings"); *Stitt v. United States*, 369 F. Supp. 2d 679,699 (E.D. Va. 2005) ("Dr. Ryan's material testimony predicted Petitioner's future dangerousness based upon a scientific instrument [PCL-R] that Dr. Ryan now believes he inaccurately applied… Therefore, the Court finds that Dr. Ryan's testimony was erroneous and has been recanted.").[6]   As undersigned counsel has previously noted, Mr. Lee is the only prisoner still on federal death row against whom the government introduced this type of evidence, a fact which counsel for the government could not dispute in oral argument.

**4.        Did the Eighth Circuit already resolve the issue of *Strickland* prejudice regarding Mr. Lee's IAC claim?**

During oral argument, this Court asked whether the Eighth Circuit's reference to the term "junk science"[7] indicated that the Circuit considered the prejudice of trial counsel's failure to challenge the PCL-R's unreliability in addition to the issue raised in a previous appeal (i.e., whether introduction of the PCL-R evidence erroneously exceeded the scope of permissible cross-examination and rebuttal), and thus also held that under this understanding of the claim, Mr. Lee also failed to demonstrate *Strickland* prejudice.

The answer is no. First, the Eighth Circuit explicitly refused to consider the *Strickland*  claim based on the unreliability of the PCL-R, because that issue was "beyond the scope of [the] certificate of appealability and … therefore not properly before the court." *United States v. Lee*, 715 F.3d 215, 224 (2013). There was no merits determination that Mr. Lee's IAC claim, based on trial counsels' failure to challenge the PCL-R's reliability, did

---

[6] After argument, the Fourth Circuit issued an opinion affirming the district court's judgment. *United States v. Stitt*, 441 F.3d 297 (4th Cir. 2006). Prior to issuance of the mandate, the Fourth Circuit realized that in a §2255 case, unlike §2254 cases, when a district court grants punishment phase relief there is no appellate jurisdiction until the resentencing occurs, and the Fourth Circuit consequently recalled its opinion. *United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006). The district court opinion remains good law.

[7] *United States v. Lee*, 715 F.3d 215, 224 (2013).

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

not establish *Strickland* prejudice. As the Circuit held, it lacked jurisdiction to make a merits-based determination of the claim.

To conclude that the Eighth Circuit reached (and denied) the issue of *Strickland* prejudice would require reading the 2013 opinion to have adopted one of the following two rationales:

1.        There was no *Strickland* prejudice because even absent the introduction of the PCL-R evidence, there is a reasonable probability that the jury would still have sentenced Mr. Lee to death; or

2.        There was no *Strickland* prejudice because despite the defense expert declarations, Dr. Ryan's disavowal of the PCL-R, and the government's own concession that the PCL-R is not a reliable and valid predictor of future dangerousness in prison,[8] the Eighth Circuit now finds that the PCL-R is, in fact, a valid and reliable predictor of future dangerousness in prison.

It is clear that the Eighth Circuit did not adopt the first rationale, because the Court did not "re-weigh" the aggravating and mitigating factors in the absence of the psychopathy evidence and conclude that Mr. Lee would have been sentenced to death without its having been introduced. In fact, the only court to consider the impact of the psychopathy evidence was the district court, which presided over the trial, heard all the evidence related to psychopathy, and observed the jury. As Judge Eisele contemporaneously noted, if the psychopathy evidence had never been elicited, it was "very questionable whether the jury would have given Defendant Lee the death penalty,"[9] even considering the balance of the evidence in aggravation. Notably, the Eighth Circuit did not disturb this finding in its opinion reversing the grant of a new trial.

Nor is it plausible to argue that in its 2013 opinion, the Eighth Circuit ruled that the PCL-R is, in fact, probative of future dangerousness in prison. The entirety of the Court's statement on the matter is as follows: "Furthermore, we have previously concluded that there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing. *Lee*, 274 F.3d at 495." As the undersigned argued to this Court, the only fair reading of the Eighth Circuit's reference to its previous appellate ruling is for the proposition stated by the Circuit in that earlier opinion, i.e., that

---

[8] This was the evidence submitted in the Rule 59(e) motion but not considered by the district court.

[9] *United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. March 21, 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001) (finding gov't cross-examination did not exceed scope of direct).

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

assuming the reliability and relevance of PCL-R evidence[10], its admission – albeit in possible contravention of evidentiary rules - did not render its use unfairly prejudicial.

The circuit's use of the legal term "unfair prejudice" further underscores that it did not decide Mr. Lee's *Strickland* claim. *Strickland* analysis requires a court to determine whether, absent counsel's error, there is a reasonable probability of a different outcome. In Mr. Lee's case, that analysis requires a court to examine how the exclusion of the PCL-R evidence would have affected the outcome of the sentencing proceeding. This reassessment not only involves reweighing the balance of aggravating and mitigating factors, but also the effect the exclusion of the PCL-R reasonably could have had on trial counsel's preparation and presentation. In contrast, the circuit's determination on appeal as to whether the evidence was unfairly prejudicial assumed that it had probative value, and weighed that value against the purported unfairness of introducing evidence alleged to be beyond the scope of direct examination. The fact that under that analysis, the evidence was deemed not to be unfairly prejudicial does not resolve the legal question of whether the outcome of the proceeding would have been different had trial counsel mounted a proper challenge, and the PCL-R evidence had been excluded.

It is also unreasonable to presume that the Eighth Circuit substantively considered any of the materials that § 2255 counsel proffered in the Rule 59(e) reconsideration motion in ruling on the certificate of appealability. Apart from the fact that the Eighth Circuit makes no mention of these materials in its 2013 opinion, it is highly unlikely that the Eighth Circuit would have considered such materials as being properly part of the record before it. Not only did Judge Eisele specifically note that the materials attached to the reconsideration motion were untimely and that the District Court therefore was foreclosed from considering

---

[10] In its 2001 opinion, the Eighth Circuit presumed that the psychopathy evidence was "probative of [Mr. Lee's] future dangerousness." *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001). The other two reasons that the Court offered in that same passage for why the elicitation of the PCL-R/psychopathy evidence did not result in the "threat of unfair prejudice" were: (1) "By introducing a mental health expert in defense, Lee opened the door to testimony concerning psychological diagnosis"; and (2) "[T]he FDPA provides for a broad scope of evidence at the penalty phase in a capital case." *Id*. Neither of those rationales implicate what has been well known since before Mr. Lee's trial: that such psychopathy evidence is false because the PCL-R is not a probative, reliable and valid predictor of a capital defendant's future dangerousness in prison. Expert evidence in a capital trial must be probative, valid and reliable, and there is no authority that stands for the proposition that a capital defendant can "open the door" to non-probative, invalid and unreliable expert evidence; nor is there any authority that the FDPA allows non-probative, unreliable and invalid expert evidence to be admissible at a federal capital sentencing proceeding. *See*, *e.g.*, *United States v. Taylor*, 320 F. Supp. 2d 790, 794 (N.D. Ind. 2004) (prohibiting government from using PCL-R at federal capital sentencing hearing "due to the uncertainty of the validity and reliability of the PCL-R"). It is thus highly unlikely that the Eighth Circuit would have advanced either rationale in its 2001 opinion had it been apprised of the falsity of the psychopathy evidence.

them, but Eighth Circuit precedent establishes that evidence proffered for the first time in a reconsideration motion is not part of the record on appeal. *See, e.g., Baxter Int'l v. Morris,* 11 F.3d 90, 92 n.2 (8th Cir. 1993) ("Since the affidavits accompanying Baxter's 'Motion to Reconsider' were filed after the final order that is the subject of this appeal, they are **not part of the record** on appeal and we will not consider them.") (emphasis added).

Notably, § 2255 counsel did not move to expand the record in the district court to include those materials,[11] nor did counsel move to enlarge the record on appeal.[12] Thus, for the Circuit Court to have been able to substantively consider the untimely proffered materials, it would have had to rule that the district court abused its discretion in refusing to consider the proffered evidence and therefore it could reach the merits, or even assuming that the district court did not abuse its discretion, the appellate record was expanded in some way that would allow it to consider the proffered evidence.  The Eighth Circuit did not remotely allude to either of these propositions in its 2013 opinion, and there is no other indication that the Eighth Circuit acted in contravention of its own precedent barring it from considering the Rule 59(e) materials.

Moreover, to the extent that the Circuit Court might have simply deferred to the district court's "fact-finding," that would be problematic as well. Due to § 2255 counsel's ineffectiveness in properly pleading and presenting facts in support of the IAC claim, the district court's factual findings were both inaccurate and incomplete (e.g., the challenge to the PCL-R was readily apparent as early as 1998, and *not,* as the district court was led to believe, only in 2000). Additionally, Judge Eisele's statement that he might well have granted an evidentiary hearing had § 2255 counsel timely presented the affidavits suggests that the materials raised unresolved issues of fact that required a hearing to accurately and

---

[11] See Rule 7(a) & (c) of the *Rules Governing Section 2255 Proceedings* (noting that "[i]f the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the merits of the motion," and requiring that the "judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness"). The record in the district court clearly reflects that § 2255 counsel did not file a motion pursuant to Rule 7 for leave to expand the record, nor was the government "offered an opportunity to admit or deny their correctness."

[12] *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 988 F.2d 61, 63 (8th Cir. 1993) (noting that "[g]enerally, an appellate court cannot consider evidence that was not contained in the record below" unless "the interests of justice demand" that "an appellate court … order the record of the case enlarged.") No order to enlarge the record was entered in Mr. Lee's case. *See also United States v. Ortiz,* 664 F.3d 1151, 1165 (8th Cir. 2011) (denying motion to enlarge the record in capital case, in part, because movant had "ample time . . . to develop a record since filing his § 2255 motion . . . and the sheer volume of the material that [Ortiz] now seeks to present suggest that any gaps in the record are due to a lack of diligence on [Ortiz's] part.") (citing *Von Kahl v. United States,* 242 F.3d 783, 788 (8th Cir. 2001)).

OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF DELAWARE

properly resolve them. In other words, the factual record on Mr. Lee's IAC claim remained incomplete before both the district and appellate courts. Thus, it cannot be said that either court performed a full merits review of the IAC claim.[13]

Finally, to the extent that there is any ambiguity as to whether the Eighth Circuit has ever remotely addressed trial counsel's failure to challenge the reliability of the PCL-R, Mr. Lee should not be foreclosed from receiving meaningful review of this claim. This is particularly true where the nature of the ambiguity – i.e., whether the Eighth Circuit substantively considered the proffered evidence and found the challenge to the probity of the PCL-R to be without merit – turns on a fact which the government itself does not contest. This is Mr. Lee's final and only opportunity to have a court substantively consider the facts in support of his claim. Given that Rule 60(b) is intended to be an equitable remedy, it is respectfully submitted that the equities in Mr. Lee's case – including the undisputed fact that the PCL-R was invalidly used in Mr. Lee's trial, that the more culpable co-defendant received a life sentence, that the local U.S. Attorney did not even want to proceed capitally against Mr. Lee at the time of his sentencing hearing, that the neither the government nor the government's expert stand by the psychopathy evidence that Judge Eisele contemporaneously observed was the linchpin of the death verdict against Mr. Lee - require that any ambiguity in the Eighth Circuit's 2013 opinion be resolved in Mr. Lee's favor

Respectfully Submitted:.
/s/*Karl Schwartz*
Karl Schwartz (PA # 38994)
Jenny Merrigan (MO # 56730)
Assistant Federal Public Defenders


Cc: John M. Pellettieri
        Assistant United States Attorney

---

[13] For example, there was no evidence in the record conclusively demonstrating that Mr. Lee's trial counsel acted within the range of competence demanded of attorneys in federal death penalty cases. Nor does the record affirmatively refute a prejudice finding where, had Dr. Ryan's opinion been excluded or withdrawn, trial counsel's approach to the case would have been substantially altered. The Eighth Circuit cannot do a proper merits review of such a record. *See Sinisterra v. U.S.*, 600 F.3d 900 (8th Cir. 2010). Indeed, based on recent conversations with trial counsel, Cathleen Compton, undersigned counsel believe that, if given the full and fair review process Mr. Lee now seeks, he will establish that Ms. Compton concurs with Mr. Lee's allegations that the defense should have made a challenge to the PCL-R test, and that the defense would have been substantially different had the PCL-R been excluded or withdrawn.