

**U.S. Department of Justice**

Criminal Division

---

*Appellate Section*                                                                 *Washington, D.C.  20530*

March 6, 2014

The Honorable J. Leon Holmes
United States District Judge
Eastern District of Arkansas
500 West Capitol Avenue, Room D469
Little Rock, AR 72201

    **Re:   United States v. Daniel Lewis Lee, 4:97-CR-00243-JLH**

Dear Judge Holmes:

Currently pending before the Court is defendant Daniel Lee's motion for relief from judgment under Fed. R. Civ. P. 60(b). Oral argument was heard on the motion on January 31, 2014. On February 13, 2014, Lee submitted a letter brief addressing questions that arose during the argument. We submit this letter in response.

Lee's letter brief is divided into four sections. We address each of these sections in turn, albeit in a different order.

1.    **Lee's Motion is a Second or Successive Motion for Relief Under 18 U.S.C. § 2255 (Lee Section 2)**

Under 28 U.S.C. § 2255(h), absent certification from the court of appeals, this Court lacks jurisdiction over a motion for relief from judgment under Fed. R. Civ. P. 60(b) that qualifies as a second or successive motion for relief under 28 U.S.C. § 2255. *See Boyd v. United States*, 304 F.3d 813, 814 (8th Cir. 2002) (per curiam). A Rule 60(b) motion is a second or successive Section 2255 motion if it asserts that a prior Section 2255 motion "omitted a claim of constitutional error" due to neglect and "seek[s] leave to present that claim." *Gonzalez v. Crosby*, 545 U.S. 524, 530-31 (2005). A Rule 60(b) motion that "present[s] new evidence in support of a claim already litigated," *id.* at 531, is also a second or successive Section 2255 motion.

In the government's view, Lee's Rule 60(b) motion raises a new claim of constitutional error that he neglected to raise in his first Section 2255 motion. Specifically, Lee argues that he received ineffective assistance of counsel at trial because his lawyers did not raise an objection, under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), seeking to exclude expert opinion

testimony linking psychopathy and future dangerousness in prison. According to Lee, he merely seeks to offer additional argument or evidence in support of a claim raised in his Section 2255 motion. As the above cited passages from *Gonzalez* make clear, however, this disagreement is immaterial, because in either case Lee's Rule 60(b) motion qualifies as a second or successive Section 2255 motion.

Lee argues (Letter Br. 3) that his Rule 60(b) motion "is a true 60(b) motion," and not a second or successive Section 2255 motion, "because it only attacks a defect in the integrity of the federal habeas proceeding." The Supreme Court made clear in *Gonzalez,* however, that "an attack based on . . . habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." 545 U.S. at 532 n.5. Lee's Rule 60(b) motion seeks "to do just that—to reopen his habeas proceedings so that he can litigate claims that the alleged ineffectiveness of his attorneys prevented him from fully litigating in the first habeas go-round." *Brooks v. Bobby*, 660 F.3d 959, 962 (6th Cir. 2011).

Lee nonetheless contends (Letter Br. 3 n.3) that *Gonzalez* "did not unequivocally preclude" a Rule 60(b) motion based on the negligent omissions of counsel in a Section 2255 proceeding. He emphasizes the language in *Gonzalez* stating that a Rule 60(b) motion attacking a judgment "based on . . . habeas counsel's omissions . . . *ordinarily* does not go to the integrity of the proceedings." *Gonzalez*, 545 U.S. at 532 n.5 (emphasis added). But even if this language leaves open the possibility that in exceptional circumstances the omissions of collateral counsel will go to the integrity of the proceedings, the mere negligence of counsel in failing to raise a claim or argument will not qualify.

This conclusion follows from *Gonzalez*, which cited *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004), as an example of a Rule 60(b) motion that "seek[s] to add a new ground for relief" and that "will of course qualify" as a second or successive application for collateral relief. 545 U.S. at 532. The defendant in *Harris* filed a Rule 60(b) motion seeking to raise two new claims of ineffective assistance of counsel on the grounds that his collateral counsel was negligent for failing to raise the claims in his initial Section 2255 motion. *Harris*, 367 F.3d at 78-79. According to the Second Circuit, collateral counsel's omissions, while arguably negligent, were not "so egregious and profound that they amount[ed] to the abandonment of the client's case altogether, either through physical disappearance, or constructive disappearance." *Id.* at 81-82 (internal citations omitted).

*Gonzalez*'s reliance on *Harris* therefore makes clear that the negligent failure of counsel to raise claims or arguments in an initial Section 2255 motion is an "ordinary" omission that does not go to the integrity of the proceedings. Or as the Sixth Circuit has put it, a claim of "general ineffective assistance of habeas counsel" is "a plain-vanilla successive petition designed to do nothing more than attack . . .

2

earlier counsel's omissions." *Brooks v. Bobby*, 660 F.3d at 962-63. And even assuming that omissions of collateral counsel that go beyond mere negligence—*i.e.*, omissions amounting to abandonment—might go to the integrity of the proceedings, Lee does not (and cannot) contend that he was actually or constructively abandoned by counsel in the Section 2255 proceedings. Thus, under *Gonzalez*, Lee's Rule 60(b) motion qualifies as a second or successive Section 2255 motion.

The Eighth Circuit's decision in *Ward v. Norris*, 577 F.3d 925 (8th Cir. 2009), further supports this conclusion. In that case, the defendant filed a Section 2254 petition raising grounds to set aside his state conviction. *Id.* at 927-28. After the petition was denied, the defendant filed a Rule 60(b) motion raising a new claim, *i.e.*, that he was not competent to proceed before the district court on his habeas petition. *Id.* at 928, 931-32. The Eighth Circuit construed the Rule 60(b) motion as contending that prior habeas counsel was negligent for failing to raise the competency claim in the initial Section 2254 petition. *Id.* at 932. And the court concluded that the Rule 60(b) motion was a second or successive Section 2254 petition. *Id.* at 932-35. The Rule 60(b) motion did not assert "a procedural defect" that went to the integrity of the proceedings, the court concluded, but rather attacked previous habeas counsel's omissions and asked for a second opportunity to have the merits determined favorably." *Id.* at 935.

Although Lee correctly acknowledges (Letter Br. 3) that the Supreme Court's decision in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), "does nothing to alter § 2255(h)," he suggests (Letter Br. 3-4 & n.3) that in light of *Trevino* the omissions of collateral counsel alleged in his Rule 60(b) motion go to the integrity of the proceedings. The cases cited by Lee, however, are inapposite and do not support that contention.

In each of the cases cited by Lee, a state prisoner filed a Section 2254 petition, prior to *Trevino* or *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), seeking to raise a claim of ineffective assistance of trial counsel that had not been adequately asserted in state proceedings. *See Barnett v. Roper*, No. 4:03-CV-00614, 2013 WL 1721205, at *1 (E.D. Mo. Apr. 22, 2013); *Cook v. Ryan*, 688 F.3d 598, 604-05 (9th Cir. 2012); *Adams v. Thaler*, 679 F.3d 312, 315-16 (5th Cir. 2012); *Balentine v. Stephens*, No. 12-70023, 2014 WL 341432 (5th Cir. Jan. 30, 2014) (unpublished). Applying pre-*Martinez/Trevino* law, the district courts in those cases found the ineffective assistance claims procedurally defaulted and did not reach the merits. After the Supreme Court held in *Martinez* and *Trevino* that ineffective assistance of state collateral counsel may establish cause to overcome procedural default, the state prisoners filed Rule 60(b) motions arguing that, in light of those Supreme Court cases, the district court's rulings with respect to procedural default were erroneous. The Rule 60(b) motions in the Section 2254 cases cited by Lee therefore asserted, in the words of *Gonzalez*, "that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to

exhaust, *procedural default*, or statute-of-limitations bar." 545 U.S. at 532 n.4 (emphasis added). Thus, these Rule 60(b) motions plainly did not qualify as second or successive petitions under *Gonzalez*.

In contrast, in this case, Judge Eisele did not decline to address, on the basis of procedural default, any claims of ineffective assistance of trial counsel that Lee asserted in his Section 2255 motion. To the contrary, Judge Eisele addressed and rejected on the merits each of the numerous ineffective assistance claims raised by Lee in the motion. *See United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *8-*53 (E.D. Ark. Aug. 28, 2008). Lee's Rule 60(b) motion now seeks to raise a new claim (or new arguments) that Judge Eisele did not address on the merits, but not because of a finding of procedural default, rather because the claim or arguments were not put before Judge Eisele in Lee's initial Section 2255 motion. Thus, in contrast to the Section 2254 cases cited by Lee, Lee's Rule 60(b) motion does not assert that Judge Eisele made a ruling on procedural default that is incorrect under intervening precedent and that precluded a merits determination. The cases cited by Lee are therefore inapposite.

Lee acknowledges (Letter Br. 4-5 n.4) that his research has not uncovered any case in which a federal court has recognized *Trevino* as a basis for a successful Rule 60(b) motion to reopen a Section 2255 judgment. The government also is unaware of any such case. In the government's view, there are no such cases because, as discussed below, *Trevino* plainly does not apply in the context of Section 2255 proceedings.

**2.    A Comparison With Proceedings Under 28 U.S.C. § 2254 Further Demonstrates That *Trevino* Has No Bearing on This Case (Lee Section 1)**

Lee contends (Letter Br. 1-3) that *Trevino* provides a vehicle to raise, in a Rule 60(b) motion, new arguments that he received ineffective assistance of trial counsel that were not advanced in his initial Section 2255 motion. According to Lee, this mechanism is available to a federal prisoner in Section 2255 proceedings, but not a state prisoner who wants to raise additional arguments after filing a habeas petition under 28 U.S.C. § 2254, because a Section 2255 motion, unlike a Section 2254 petition, is the first opportunity that a federal defendant has to raise claims of ineffective assistance of trial counsel. Lee's arguments ignores important distinctions between Section 2255 and Section 2254 proceedings that reveal why *Trevino* is not at all applicable in Section 2255 proceedings.

The *Trevino* and *Martinez* decisions define the scope of procedural default in federal habeas proceedings. As the Supreme Court explained in *Martinez*, "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are

accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." 132 S. Ct. at 1316. "These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Id.* Procedural default is "not a statutory or jurisdictional command" but rather a judge-made doctrine "grounded in considerations of comity and concerns for the orderly administration of criminal justice." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1937-38 (2013) (Scalia, J., dissenting) (internal citation and quotation marks omitted); *see Dretke v. Haley*, 541 U.S. 386, 392-393 (2004).

A habeas petitioner can overcome a procedural default by "showing cause for the default and prejudice from a violation of federal law." *Martinez*, 132 S. Ct. at 1316. But ineffective assistance of counsel in state collateral proceedings generally does not constitute cause. *Id.* In *Martinez* and *Trevino*, however, the Supreme Court established a limited exception to that rule that applies only to claims of ineffective assistance of trial counsel. In state systems that require, or effectively require, defendants to raise ineffective assistance claims for the first time in state collateral proceedings, the negligence of state collateral counsel in failing to raise a claim in those state collateral proceedings may constitute cause to overcome procedural default in federal habeas proceedings under 28 U.S.C. § 2254. *See Martinez*, 132 S. Ct. at 1318-19; *Trevino*, 133 S. Ct. at 1917-18, 1921.

Section 2255 proceedings are different. Although a federal defendant can procedurally default certain claims by failing to raise them on direct appeal, *see Massaro v. United States*, 538 U.S. 500, 504 (2003), a federal defendant cannot procedurally default a claim of ineffective assistance of trial counsel, *id.* at 503-05. Unlike a state prisoner filing a Section 2254 petition, a federal defendant can raise any and all claims of ineffective assistance of trial counsel for the first time in a Section 2255 motion.

Two conclusions follow from these background legal principles. First, because procedural default is a judge-made doctrine, it must give way to the statutory commands of 28 U.S.C. § 2255(h). In other words, regardless of how far *Trevino* extends, *Trevino* cannot absolve Lee of complying with the statutory requirements for second-or-successive Section 2255 motions. Second, because *Trevino* establishes an exception to procedural default of ineffective assistance claims, and because ineffective assistance claims cannot be procedurally defaulted in Section 2255 proceedings, *Trevino* simply has no application in the context of Section 2255.

Lee nonetheless attempts to shoehorn his case into *Trevino* by characterizing the failure to raise a claim of ineffective assistance in a Section 2255 motion as "procedural default." *See* Letter Br. 2, 3 n.3. But that is not accurate. In Section 2255 proceedings, procedural default occurs when the defendant fails to raise a

claim on direct appeal. *Massaro*, 538 U.S. at 503. And as discussed above, a federal defendant cannot procedurally default a claim of ineffective assistance of trial counsel. *Id.* at 503-05. Thus, a defendant who does not raise an ineffective assistance claim in an initial Section 2255 motion—or for that matter any other claim of constitutional error, so long as it was preserved on direct review—has not procedurally defaulted that claim. He has merely omitted a claim in his first Section 2255 motion—either for strategic reasons or due to oversight—and in order raise it in a second or successive motion, he must satisfy the requirements of 28 U.S.C. § 2255(h). The exception to procedural default created by *Trevino* is not relevant in this case or in any other Section 2255 proceedings.

### 3.     The Eighth Circuit's Prior Rulings Undermine Lee's *Strickland* Claim (Lee Section 4)

If the Court were to conclude that Lee's Rule 60(b) motion is not a second or successive motion for relief under Section 2255, the Court would have to address whether Lee is entitled to relief under Rule 60(b). One essential consideration would be whether the claim of ineffective assistance of trial counsel that Lee seeks to advance in his Rule 60(b) motion has merit. *See* Gov't Br. in Response to Motion for Indicative Ruling (Gov't Br.) at 41-42. To make that determination, the Court would have to consider (1) whether Lee's trial counsel performed deficiently; and (2) whether Lee was prejudiced by his trial counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688-89, 693-94 (1984). The Eighth Circuit has made several rulings in this case that are relevant to the Court's application of the *Strickland* standard to Lee's ineffective assistance claim.

First, in reversing the order granting Lee a new sentencing hearing, the Eighth Circuit concluded that the evidence pertaining to psychopathy elicited during cross-examination of Lee's expert, Dr. Mark Cunningham, was properly admitted at trial under the applicable standards, namely the Federal Death Penalty Act (FDPA), which permits a district judge to "exclude evidence only 'if its probative value is outweighed by the danger of creating *unfair* prejudice, confusing the issues, or misleading the jury.'" *United States v. Lee*, 274 F.3d 485, 494 (8th Cir. 2001) (quoting 18 U.S.C. § 3593(c)) (emphasis in *Lee*). The court concluded that the psychopathy evidence "was probative of [Lee's] future dangerousness," and was also relevant to cross-examination of Dr. Cunningham, *id.* at 495, because Dr. Cunningham testified about "Lee's mental health and propensity to criminal behavior," *id.* at 496, which "opened the door to testimony concerning psychological diagnosis," *id.* at 495. The court further held that the psychopathy evidence was not unfairly prejudicial. *Id.* at 495-97.

Second, on direct appeal, Lee argued that "the FDPA's relaxed admission standard during the penalty phase allows for introduction of less reliable evidence in violation of his due process and confrontation rights." *United States v. Lee*, 374

F.3d 637, 648 (8th Cir. 2004). The Eighth Circuit held that "the FDPA standard does not impair the reliability of the evidence admissible during the penalty phase." *Id.* "Rather," the court concluded, "the admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the defendant." *Id.*

Third, when appealing the denial of his Section 2255 motion, Lee argued that his death sentence was unconstitutional because, among other things, "the government's evidence of future dangerousness was premised on junk science." *United States v. Lee*, 715 F.3d 215, 224 (8th Cir. 2013). Lee argued that using a diagnosis as a psychopath to "predict future dangerousness in capital cases is scientifically and ethically inappropriate, because there is no scientific basis whatsoever for the proposition that individuals diagnosed as psychopaths are likely to be dangerous when incarcerated." Lee Section 2255 Br. 41. The Eighth Circuit concluded that this issue was "beyond the scope of our certificate of appealability and therefore not properly before the court." *Lee*, 715 F.3d at 224. Yet the court also stated that "[f]urthermore, we have previously concluded that there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing." *Id.* (quoting *Lee*, 274 F.3d at 495).

The above decisions are the law of the case, *see Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008),[1] and they establish that Lee cannot make out an ineffective assistance claim under the *Strickland* standard. Lee claims that he received ineffective assistance because his trial counsel did not raise an objection, under Fed. R. Evid. 702 and *Daubert*, to expert opinion testimony linking a diagnosis of psychopathy using the Hare checklist (PCL-R) to dangerousness in prison. Under the Eighth Circuit's prior decisions, however, all of the evidence about psychopathy elicited during cross-examination of Dr. Cunningham was admissible under the relevant standards, namely the FDPA, 18 U.S.C. § 3593(c). The court made clear that it is error to determine the admissibility of evidence at a capital sentencing hearing under the Federal Rules of Evidence rather than "apply the § 3593 balancing test between probative value and unfair prejudice." *Lee*, 274 F.3d at 495. Trial counsel's failure to object to the admission of evidence under Fed. R. Evid. 702 and *Daubert* therefore cannot qualify as ineffective assistance, because it is not ineffective assistance to fail to raise a meritless objection. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001); *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012).

---

[1] "Under the 'law of the case' doctrine a decision in a prior appeal is followed in later proceedings unless a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice." *United States v. Stuckey*, 255 F.3d 528, 530 (8th Cir. 2001) (internal citations and quotation marks omitted).

Lee contends (Letter Br. 6-10) that the Eighth Circuit's recent affirmation that "there was no threat of unfair prejudice from the elicitation in this case of psychopathy evidence by the government during sentencing," *Lee*, 715 F.3d at 224 (internal citation and quotation marks omitted), does not dispose of whether he was prejudiced by admission of the evidence for purposes of *Strickland*. While the government agrees that the Eighth Circuit's prior rulings do not directly determine the issue of *Strickland* prejudice under the law of the case, in the government's view, the Eighth Circuit's decisions go a long way toward establishing that Lee cannot establish *Strickland* prejudice.

If the Court were to conclude that Lee's trial counsel performed deficiently by failing to object to evidence on *Daubert* grounds, in order to determine whether Lee was prejudiced under *Strickland*, the court would have to determine what evidence would have been excluded from trial had counsel performed adequately and successfully lodged an objection. The Court would then have to assess whether there is a reasonable probability that, had that evidence not been introduced at trial, the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. This question of prejudice is not precisely the same as whether the psychopathy evidence was unfairly prejudicial to Lee for purposes of 18 U.S.C. § 3593(c).

Nonetheless, the Eighth Circuit's conclusions as to the admissibility of the psychopathy evidence have substantial relevance in the *Strickland* prejudice context. Under Lee's current theory, his trial counsel should have argued that there was insufficient support, under Fed. R. Evid. 702 and *Daubert*, for expert opinion testimony linking diagnosis as a psychopath and future dangerousness in prison. According to Lee, current studies do not establish a statistically significant link between diagnosis as a psychopath and dangerousness in prison. Thus, under Lee's theory, if trial counsel had successfully lodged a *Daubert* objection at trial, the district court would have excluded expert opinion testimony linking a psychopathy diagnosis and future dangerousness in prison. In fact, however, there was no such opinion evidence introduced at trial. That is because Lee's trial counsel pursued a strategy that caused Judge Eisele to preclude any testimony about psychopathy from the government's expert, Dr. Paul Ryan. As a result, the only witness who testified about psychopathy was Lee's expert, Dr. Cunningham. And Dr. Cunningham provided testimony that, according to Lee, is fully accurate and correct.  Specifically, Dr. Cunningham testified that research had not shown the PCL-R "to be predictive of correctional institutional violence." *See generally* Gov't Br. 7-12, 43-46.

Lee therefore cannot establish *Strickland* prejudice. The Eighth Circuit's prior decisions establish that, even had Lee been successful in lodging a *Daubert* objection, all of the psychopathy evidence that actually came into evidence at Lee's trial would have still been admissible. Because Dr. Cunningham testified that Lee "experienced many traumatic and adverse life experiences that fundamentally

shaped him . . . neurologically [and] psychologically . . . and that . . . contributed to his involvement in" the murders in this case, Trial Tr. 7742, the government was entitled to introduce "testimony concerning psychological diagnosis," *Lee*, 274 F.3d at 495, including testimony that Lee was diagnosed as a psychopath and that psychopaths are more likely to commit acts of violence in the general population. In other words, because Lee argued that the effects of adverse life experiences on his neurological and psychological composition were causes of his involvement in the three murders in this case, the government was entitled to offer alternative psychological explanations for his involvement in the murders, namely that he qualifies as a psychopath under the PCL-R.

In addition, as the Eighth Circuit concluded, "Lee's potential psychopathy was probative of his future dangerousness." *Lee*, 274 F.3d at 495. Not only is this conclusion the law of the case, it is correct. Information is relevant and therefore "admissible at a capital sentencing if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].'" *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010) (quoting Fed. R. Evid. 401). Lee does not appear to dispute that a person diagnosed as a psychopath using the PCL-R is more likely to present a risk of danger to others in the general population, and a jury could make the reasonable inference that someone prone to violence in the larger community would be at least somewhat more prone to violence while imprisoned. The jury was therefore entitled to consider evidence of Lee's psychopathy when assessing future dangerousness. To be sure, Lee contends that at the time of his trial there were no studies that "reported a statistically significant relationship between the PCL-R and acts of physical violence in prison, meaning that the state of the science was that scores from this instrument could not be used to identify to any meaningful degree of certainty which U.S. prison inmates were likely to engage in violence." Lee Rule 60(b) Motion, Ex. 3, at 3-4.[2] These asserted facts, however, go to the weight that should be afforded psychopathy evidence in assessing future dangerousness, not its relevance. And through Dr. Cunningham, Lee vigorously presented the position that a diagnosis as a psychopath should be afforded little weight in assessing future dangerousness in prison. The jury was entitled to hear and consider all of this relevant information.

4.    ***Barefoot v. Estelle* Further Establishes That Lee's *Strickland* Claim Lacks Merit (Lee Section 3)**

The Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), further supports the conclusion that the psychopathy evidence was properly admitted at Lee's sentencing hearing and that he therefore cannot establish that the failure to raise a *Daubert* challenge constituted ineffective assistance of counsel under *Strickland*.  In *Barefoot*, the Court rejected the argument, supported by the

---

[2] According to Lee, this remains true today. *See* Lee Rule 60(b) Motion, Ex. 4, at 5 n.1.

American Psychiatric Association, that expert opinion testimony about future dangerousness is too unreliable to be admissible at capital sentencing hearings. *Id.* at 896-903. The Court concluded that the "adversary process" could be "trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness." *Id.* at 901. Relevant evidence "should be admitted and its weight left to the factfinder, who would have the benefit of cross-examination and contrary evidence by the opposing party." *Id.* at 898. In that manner, "[p]sychiatric testimony predicting future dangerousness may be countered not only as erroneous in a particular case but also as generally so unreliable that it should be ignored." *Id.*

*Barefoot* is fully consistent with the statutory scheme of the FDPA. As the Eighth Circuit held in this case, the FDPA "erects very low bars to the admission of evidence at capital sentencing hearings." *Lee,* 274 F.3d at 485. And the FDPA "requires that 'the defendant . . . be permitted to rebut any information received at the hearing and . . . be given fair opportunity to present argument as to the adequacy of the information.'" *Id.* at 496 (quoting 18 U.S.C. § 3593(c)). By allowing "more rather than less evidence during the penalty phase," and by allowing the adversarial system to test that evidence, the FDPA "does not impair the reliability of the evidence admissible during the penalty phase." *Lee,* 374 F.3d at 648. To the contrary, this system "increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." *Id.*

Thus, in this case, it was proper to allow the government to elicit the psychopathy evidence during cross-examination of Dr. Cunningham.[3] Lee had the opportunity to offer argument and evidence about the reliability and relevance of the psychopathy evidence, and in fact he did so through Dr. Cunningham. Because there was no error in the admission of the evidence at trial, there is no merit to a *Strickland* claim based on a failure to object to that evidence.

Respectfully submitted,

<u>s/ John M. Pellettieri</u>
John M. Pellettieri
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Avenue, NW, Rm. 1264
Washington, DC 20530

---

[3] We again emphasize that a successful *Daubert* challenge, as now proposed by Lee, would not have excluded *all* evidence regarding psychopathy, only expert opinion testimony linking diagnosis as a psychopath and future dangerousness in prison. And in fact, there was no expert opinion testimony at Lee's trial linking psychopathy and future dangerousness in prison. To the contrary, Dr. Cunningham testified that the PCL-R had not "been shown to be predictive of correctional institutional violence" and that he quit using it to assess defendants in capital cases. *See* Gov't Br. 10-11.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on March 6, 2014. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ John M. Pellettieri
John M. Pellettieri