IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DANIEL LEWIS LEE,**
              **Movant**                          **Case No. 4:18-CV-00649-JLH**
                                            **Criminal Case No. 4:97-CR-00243-JLH-2**

**v.**                                           **CAPITAL CASE**

**UNITED STATES OF AMERICA**
              **Respondent**

**MOVANT'S MOTION TO ALTER OR AMEND PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

Movant, Daniel Lee, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, respectfully requests that this Court alter or amend its February 26, 2019 order denying relief.[1] The district court has broad authority to "rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Security,* 455 U.S. 445, 450 (1982). A Rule 59(e) motion can be used to correct manifest errors of law. *United States v. Metropolitan St. Louis Sewer Dist.,* 440 F.3d 930, 933 (8th Cir. 2006). "Arguments that the court misapplied the law or misunderstood the movant's position are properly brought under Rule 59(e)[.]" *In re Ebel*, No. 96-1190, 1997 WL 428574, at *6 (10th Cir. July 30, 1997) (citing *Van Skivver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991)).

I.      **This Court misapplied the prejudice inquiry of *Brady* and its progeny when examining the suppressed Wanker evidence.**

In his § 2255 Motion, Mr. Lee alleged that the Government suppressed evidence relating to the testimony of its witness, James Wanker, and also presented the jury with a false impression of his testimony. In denying his claim, this Court found that Mr. Lee had failed to

---

[1] This motion is timely made because judgment was entered on March 22, 2019. *See* Doc. No. 1316.

demonstrate prejudice. Doc. No. 1313 at 13. According to this Court, Mr. Lee's arguments are not new: "the jury heard related evidence." *Id.* Because Mr. Wanker had told the jury that, at the time he heard the statement, he believed Mr. Lee was "talking to hear himself talk," this Court held that the new evidence "does not materially change his testimony…. Evidence of Wanker's continued opinion is not enough to overcome the overwhelming evidence of Lee's guilt." *Id.* By isolating the Wanker statement and subsequently deciding that its falsity alone was insufficient to demonstrate prejudice, this Court's analysis of the misconduct claim was flawed and should be reconsidered.

### A.  The materiality of *Brady* evidence must be considered *in toto*.

The Supreme Court's decisions applying *Brady v. Maryland*, 373 U.S. 83 (1963), have explained that a materiality analysis is cumulative in nature, i.e. the whole trial must be examined in light of the new evidence. It is error to simply determine whether the piece of suppressed evidence, standing alone, would have resulted in a different verdict.

In *Kyles v. Whitley*, 514 U.S. 419 (1995), for example, the Court repeatedly emphasized that both the IAC-prejudice and *Brady*-materiality analyses were cumulative. *Id.* at 436 (after noting identity between IAC prejudice and *Brady* materiality, explaining that, "[for materiality purposes], suppressed evidence [must be] be considered collectively, not item by item"); *id.* at 436 n.10 ("We evaluate [the] cumulative effect [of undisclosed evidence] for purposes of materiality separately and at the end of the discussion . . . ."); *id.* at 441 ("The result . . . is incompatible with a series of independent materiality evaluations, rather than the cumulative evaluation required by [precedent]."). Most recently in *Wearry v. Cain*, 136 S. Ct. 1002, 1007 (2016), the Supreme Court again rejected a prejudice determination that focused solely on the

effect of evidence in isolation ("[T]he state postconviction court improperly evaluated the materiality of each piece of evidence in isolation rather than cumulatively….")

Following *Kyles,* the Eighth Circuit has also insisted on a holistic prejudice analysis. *See, e.g., Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997) ("When determining the impact of evidence unavailable at trial, a court must make its final decision based on the likely cumulative effect of the new evidence had it been presented at trial."); *Battle v. Delo*, 64 F.3d 347, n.11 (8th Cir. 1995) (same).

**B. Viewed in light of the whole trial, the Wanker evidence is material.**

The analysis of prejudice in this case therefore is not whether Mr. Wanker's present declaration is "enough to overcome the overwhelming evidence of Lee's guilt." Rather, the question is what the *whole* trial would have looked like to the jury absent constitutional violations. To resolve this question, this Court must engage with the remaining evidence in Mr. Lee's case in light of Mr. Wanker's statement rather than analyzing the effect of the suppressed evidence alone. In addition, absent a hearing, this Court must accept Mr. Lee's allegations as true because they are not contradicted by the record or inherently incredible. *See Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011). This is particularly true here, where the Government has never contested the veracity of Mr. Wanker's undisclosed assertions.

First, it must be noted that an unsupported assertion has followed this case like a mantra since initial appellate review: that the evidence against Daniel Lee was "overwhelming." *See*, *e.g.*, Doc. No. 1163 at 22, 31, 49; Doc. No. 1313 at 13. Close scrutiny of the record shows this conclusory description of the evidence to be false.

The case against Mr. Lee rests squarely on the credibility of the confessions testified to by Gloria and Cheyne Kehoe and James Wanker. Absent that testimony, there is no compelling

evidence that Mr. Lee participated in the Mueller murders. The hair evidence, which the Government held up at trial as scientific proof of Mr. Lee's involvement in the murders, has since been debunked. Indeed, when pressed on what evidence remains to establish guilt, the only other piece of evidence the Government could point to is circumstantial at best: a fingerprint found on a display case in a storage unit Mr. Lee entered on a regular basis. Doc. No. 1307 at 36.[2]

As noted in Mr. Lee's reply brief, that evidence could hardly stand on its own or be considered "overwhelming" given its other substantial shortcomings. Doc. No. 1312 at 12 & n.10. That is precisely why the favorable evidence concerning Mr. Wanker is material. The Court wrote that Mr. Wanker's present declaration does not "materially change his testimony" because he testified at trial that he thought Mr. Lee was just "talking to hear himself talk." Doc. No. 1313 at 13. Respectfully, this is incorrect. The cited trial testimony was made directly in response to a discrete challenge levied on cross-examination about why he did not immediately alert authorities when he heard the confession.[3] His overall testimony, though, clearly left the jury with the impression that he had changed his opinion since then. The Government cemented this impression in closing when it argued that the purported confession was especially reliable because Mr. Wanker was an unbiased witness with "no reason … to come in here and tell you that story unless it's the truth." Tr. 7002.

---

[2] Although the Government also contended Mr. Lee was "flush" with cash and the Muellers' property, the trial evidence did not establish that. *See* Doc. No. 1312 at 11.

[3] Defense counsel could not ask him more because, lacking access to the witness, they had no idea what he might answer. *See, e.g.,* Doc. No. 1297-3 (Exh. B: Declaration of Jack T. Lassiter) at ¶ 11 (noting that "the very fact that the government brought [Wanker] all the way from Spokane and put him on the stand to testify against Mr. Lee suggested to me that he would not have given me a favorable answer [about whether he had changed his opinion]").

Moreover, Mr. Wanker's declaration is materially different in another respect: it describes how the Government explicitly instructed him to limit his testimony. This Court must consider how the jury would have received Mr. Wanker's evidence had that information come out on cross-examination.

A *Brady* materiality analysis is *not* a sufficiency of the evidence test. Mr. Lee does not have to prove that after discounting the effect of the suppressed evidence, he would have been acquitted. *Kyles v. Whitley,* 514 U.S. 419, 434-35 (1995). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 434.

The facts of *Kyles* are instructive as to how a court should conduct this inquiry. There, the Supreme Court reversed a capital murder conviction on a *Brady* claim alleging the prosecution suppressed favorable evidence that a non-testifying witness who initially led authorities to identify the petitioner as the murderer gave multiple inconsistent statements. The Court found that this evidence was material despite damning evidence: two eyewitnesses were unaffected by the new evidence; "*[n]o* witness involved in the case ever identified *anyone* but petitioner as the murderer;" the victim's purse was found in a garbage bag outside petitioner's home; the murder weapon was recovered behind his kitchen stove; a matching shoulder holster was in his wardrobe; cartridges of the same caliber and brand used in the murder were in his bedroom dresser drawer; and shopping bags from the store where the murder occurred were found in petitioner's apartment containing 15 cans of pet food including the brands the victim bought for her pets while the evidence suggested that petitioner was "very poor" and had no pets. *Id.* at 468 *et seq*.

As *Kyles* clarified, a cumulative materiality analysis must account not only for the direct impact of the suppressed evidence but its collateral effects as well. *See id.* at 445-46 (evidence would have allowed jury to also question reliability of investigation). In Mr. Lee's case, the materiality inquiry must also examine all the possible findings his jury could have made if it had learned that Mr. Wanker had been instructed to limit his testimony and law enforcement reports of his previous statements had been crafted to exclude exculpatory evidence. Such an analysis would have to consider (at a minimum):

- *The false evidence presented about the hair* recovered from a cap allegedly used during the crime that the Government told the jury was scientifically and conclusively matched to Mr. Lee. DNA testing after trial definitively proved this assertion false. This Court must assume the jury relied extensively on this piece of evidence. A proper materiality analysis must account for its subsequent rejection and the fact that the prosecution highlighted it in closing.

- *The contradictory and inconsistent statements of Gloria and Cheyne Kehoe* which contradicted the physical evidence and hinged on an implausible timeline. We know the jury was troubled by that timeline because during deliberations it sent a note on that very issue. Moreover, we know the jury questioned the Kehoes' testimony because it rejected several other charged crimes based on their evidence alone. This evidence must be examined in light of the whole trial and the newly-discovered evidence.

- *Government witness Sean Haines' trial testimony* placed Mr. Lee in Spokane on January 12 which completely undermines the Government's timeline of the crime. If the jury discounted what Mr. Wanker had heard, it is reasonably likely they would have given more weight to the defense's attack on the Government timeline.

- *Numerous witnesses testified to seeing the victims after they were allegedly murdered*, including several who knew them well.  The Court must consider whether the jurors would have given more credence to these eyewitnesses if they had reason to doubt that Mr. Lee's statements to Mr. Wanker were true.

This Court should reopen Mr. Lee's case and conduct a materiality analysis as prescribed by the Supreme Court in *Kyles* and its progeny.

**II.      This Court failed to address an argument presented in Mr. Lee's § 2255 Motion.**

This Court failed to rule on Mr. Lee's alternate argument for why the Wanker material was favorable under *Brady*. Knowledge of his full statement would have allowed counsel not only to impeach Mr. Wanker's testimony, but also to *exclude* it.[4] *See White v. Helling*, 194 F.3d 937, 943-46 (8th Cir. 1999) (prosecution's failure to disclose *Brady* material regarding witness's pre-trial identification "might have led the trial court to exclude [witness's in-court identification of defendant] altogether").[5]

Under then-prevailing (and current) circuit law, the underlying statement against penal interest by Mr. Lee was not admissible unless "corroborating circumstances *clearly* indicate the trustworthiness of the statement." *United States v. Mendoza*, 85 F.3d 1347, 1351 (8th Cir. 1996) (quoting *United States v. Riley*, 657 F.2d 1377, 1383 (8th Cir. 1981) (emphasis added). Here, the suppressed information indicated the opposite: Mr. Wanker, who had seen Mr. Lee on numerous

---

[4] *See* Doc. No. 1297 at 4 ("Had the defense been privy to this information, they would have discredited *or moved to exclude Mr. Wanker's testimony*[.]") (emphasis added). *See also* Doc. No. 1297-3 (Exh. B: Declaration of Jack T. Lassiter) at ¶ 9 ("I would have certainly wanted to have known about this information because it indicated that the underlying statement was not trustworthy or reliable. If this information had been disclosed to me, I would have moved to exclude the statement under the Federal Rules of Evidence.")

[5] *See also* United States Attorneys' Manual at § 9-5.001.C.2 (acknowledging that *Brady* encompasses information that "might have a significant bearing on the admissibility of prosecution evidence").

7

other occasions take "credit" for crimes he had never committed, repeatedly warned law enforcement that Mr. Lee's statement *lacked* trustworthiness. Thus, counsel could have successfully argued Mr. Wanker's testimony was inadmissible. *See Smith v. United States*, 666 A.2d 1216, 1224-25 (D.C. 1995) (witness statement should have been disclosed under *Brady* because it called into question whether prosecution's evidence was properly admitted under exception to hearsay rule); *James v. United States*, 580 A.2d 636, 645-47 (D.C. 1990) (same).

**III.    Mr. Lee is entitled to reopen the judgment on his first § 2255 motion to consider the suppressed Wanker evidence.**

Mr. Lee asked in the alternative that the Court consider his claim concerning the suppression of the Wanker information pursuant to Rule 60 of the Federal Rules of Civil Procedure. *See* Doc. No. 1297 at 62-64. Specifically, he argued that the Government committed "fraud…, misrepresentation, or misconduct" in violation of Rule 60(b)(3), or committed "fraud on the court" in violation of Rule 60(d)(3). *Id*.

This Court denied the motions. It deemed the 60(b)(3) motion "untimely" because it was filed more than one year after Mr. Lee's first § 2255 motion was denied. *See* Doc. No. 1313 at 19. The Court also stated that Mr. Lee had "not alleged facts showing that the omission of any evidence during his § 2255 proceeding was due to the Government's misconduct or that the Government intentionally misrepresented any facts." *Id*. With regard to Rule 60(d)(3), the Court ruled that Mr. Lee's allegations did "not clear the high bar" necessary to establish fraud on the court. *Id*. at 19-20. Respectfully, this Court should reconsider its denial of Mr. Lee's Rule 60 motions.

### A.     The Government has consistently sought to hide favorable evidence concerning Mr. Wanker.

The Government has never contested the central allegations here: that Mr. Wanker repeatedly warned authorities that Mr. Lee's purported confession was not credible, and that the Government intentionally concealed this favorable information from the defense and this Court.

Mr. Wanker was interviewed by law enforcement multiple times. In each interview, he warned authorities that although he heard Mr. Lee make an incriminating comment, it shouldn't be taken at face value because Mr. Lee had a history of boasting about crimes he had not committed to make himself appear tough.[6] In context, Mr. Wanker's full statement to authorities made clear that the "confession" he was ostensibly reporting was untrustworthy. The Government, however, never memorialized Mr. Wanker's warnings in any of the official reports it turned over to defense counsel.[7]

These omissions were not accidental; the Government intended to hide this information from the defense. Indeed, when Mr. Wanker privately discussed his anticipated testimony with the Government prior to trial and again repeated that he had reason to suspect Mr. Lee's alleged confession was not true, the Government did not notify defense counsel. Instead, it instructed Mr. Wanker not to volunteer this information while on the stand and to only answer the specific questions posed to him.[8] The Government was thus able to elicit highly misleading testimony from this witness: the jury heard that Mr. Lee confessed to him, but never learned that Mr. Wanker himself deemed the statement untrustworthy, *even as he testified about it to the jury*.

---

[6] *See* Doc. No. 1297-2 (Exh. A: Declaration of James Wanker) (hereafter "Wanker Dec.") at ¶¶ 3, 8-11.

[7] Upon reviewing these reports, Mr. Wanker himself stated that he was "very surprised that the reports did not include all of what I said." Wanker Dec. at ¶ 3. *See also id.* at ¶ 11 ("I was recently shown written reports of my interviews with the Arkansas officer and Agent Sprenger and I was surprised this information was not included in the reports.").

[8] *Id.* at ¶ 11-12.

Nor was this the first time the Government had shaped Mr. Wanker's testimony. Prior to his appearance before the grand jury, Mr. Wanker told the Government that Mr. Lee had said a third person traveled with him and Chevie Kehoe to Arkansas—Sean Haines.[9] This was a red flag that Mr. Lee's story was—as Mr. Wanker had warned—not credible. As the Government knew, Sean Haines did not go to Arkansas in January of 1996. But rather than allow Mr. Wanker to include this key discrepancy in his grand jury testimony, the Government simply erased it: it prepared a written statement for Mr. Wanker that "left out" any mention of Sean Haines,[10] and this written statement was then read to the grand jury in lieu of live testimony about the purported confession.[11]

The Government thereafter actively concealed its misconduct from opposing counsel and the Court. As officers of the court they promised pretrial to provide all *Brady* material to the defense, Doc. No. 55 at 2, and represented in open Court that they had, 4/9/98 Tr. at 32, thus prompting this Court to dismiss the pretrial *Brady* motion as moot. Doc. No. 145 at 1, 3. Yet the Government never disclosed the favorable evidence concerning Mr. Wanker. Nor did it correct the false impression Mr. Wanker's testimony left with the jury.

The Government doubled down in the § 2255 proceedings. Counsel for Mr. Lee broadly alleged that the Government had improperly failed to disclose exculpatory and impeachment evidence, and also directly requested that "the Government review its files and the files of its investigating agencies for any information favorable to the defense bearing on guilt" so that Mr. Lee could accordingly "amend the petition and seek relief appropriate to the nature of the material newly-disclosed or uncovered." Doc. No. 1118-1 at 7 n.3. Once again, the Government

---

[9] *See* Doc. No. 1297-9 (Exh. H: Wanker Statement to ATF) at 2.
[10] *See* Grand Jury Testimony of James Wanker at 2, Aug. 14, 1997; Wanker Dec. at ¶ 12.
[11] *See* Grand Jury Testimony of James Wanker at 2-3.

failed to disclose the favorable information about Mr. Wanker in its possession. Instead, it represented that it had previously provided a "huge amount" of discovery to trial counsel and otherwise ignored its § 2255 *Brady* allegations. Doc. No. 1126-1 at 45 n.16.

Notably, the Government has not contested any of these allegations. It does not deny that Mr. Wanker consistently warned that Mr. Lee's statement was not credible. It does not deny that it purposefully omitted this information from its official reports, instructed Mr. Wanker to avoid testifying to it, and repeatedly represented to this Court that it had fully complied with its *Brady* obligation. Tellingly, the Government's objections to the Rule 60 motion were on narrow technical grounds. As is explained below, this Court should reconsider its adoption of the Government's arguments.

> **B.      The one-year limitation period of Rule 60(b)(3) should be equitably tolled.**

The Court concluded that because the Government "properly asserted the one-year time limit … [t]he Court has no authority to extend that deadline." *Id.* at 18.  This is not the case. Because Rule 60(b)(3)'s time limitation is found in a procedural rule, not a statute, it is properly classified as a non-jurisdictional mandatory claim-processing rule. *See Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U.S. ___, 138 S. Ct. 13, 16-17 (2017). The Supreme Court recently clarified that although such mandatory claim-processing rules are ordinarily not subject to equitable tolling, *see Nutraceutical Corp. v. Lambert*, 586 U.S. ___, 139 S. Ct. 710, 714-15 (2019), there may be circumstances where tolling the limitations period is justified. *See id.* at 717 n.7 (leaving open whether equitable tolling might apply where a litigant was "misled" about the filing deadline, or "whether an insurmountable impediment to filing timely might compel a different result"). Mr. Lee's case squarely presents such a circumstance.

As a general matter, motions such as Mr. Lee's are consonant with the doctrine of equitable tolling because Rule 60(b) "represents an effort to codify the equitable practice with respect to the correction of judgment after the time for appeal has expired." *Lafferty v. District of Columbia*, 277 F.2d 348, 351 n.6 (D.C. Cir. 1960). *See also In re Brown,* 68 F.R.D. 172, 174 (D.D.C.1975) (describing Rule 60(b) as codification of various methods for gaining equitable relief from judgments). Thus, Rule 60(b) is distinguishable from other mandatory claim-processing rules because its animating principle is a concern for equity rather than the strict enforcement of time limits. *See Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005) (describing Rule 60(b) as "a provision whose whole purpose is to make an exception to finality").

The doctrine of equitable tolling is particularly applicable where, as here, the fraud goes undiscovered because the opposing party has taken positive steps after its commission to keep it concealed. *See In re Benjamin's-Arnolds, Inc.*, 1997 WL 86463, *10 n.9 & *11 n.10 (Bankr. D. Minn. Feb. 28, 1997) (doctrine of equitable tolling would act to toll one-year limitations period of Rule 60(b)(3) until time fraud is actually discovered); *see also Holmberg v. Ambrecht*, 327 U.S. 392, 396-97 (1946) (noting that "fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time" and thus concluding that limitations period does not begin to run until fraud is discovered). To hold otherwise would unfairly reward a party for managing to successfully conceal its fraud beyond the one-year limitations period. *Cf. Julius v. Jones*, 875 F.2d 1520, 1525 (11th Cir. 1989) (To overcome procedural bar, defense not required to "ferret out the violation;" duty is on prosecution and any ruling otherwise "would reward the wrongdoer because he was not timely found out;" defense may "rely on a belief that prosecutors will comply with the Constitution and will produce *Brady* material on request").

Indeed, consider the Government's conduct here: Mr. Lee's habeas counsel reasonably relied on the Government's repeated assurances at both trial and in the § 2255 proceedings that it had complied with *Brady*. *See Strickler v. Greene*, 527 U.S. 263, 284 (1999) ("[I]f it was reasonable for trial counsel to rely on … the presumption that the prosecutor would fully perform his duty to disclose all exculpatory material … we think such reliance by [post-conviction] counsel was equally reasonable.") But it was precisely this reliance that allowed the Government to continue to conceal the Wanker information throughout § 2255 proceedings.

It would be a perverse result for this Court to penalize the party that relied on the false representations, rather than the party that made them. *See id.* at 263 (defendant cannot litigate on basis of speculation but is entitled to rely on representations of prosecution). Because the Government misled Mr. Lee and thereby directly impeded his ability to timely raise a *Brady* claim concerning the Wanker information during his § 2255 proceedings, as well as raise a timely Rule 60(b)(3) motion thereafter, equitable tolling is warranted here. *See Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 855 (8th Cir. 2003) (circumstances warranting equitable tolling include state conduct that "lulled the petitioner into inaction"); *Pliler v. Ford*, 542 U.S. 225, 235 (2004) (O'Connor, J., concurring) ("if the petitioner is affirmatively misled … by the State, equitable tolling might well be appropriate"). Equitable tolling is especially warranted given that this is a capital case.

**C.    The Government's pattern of misconduct constitutes "exceptional circumstances" warranting relief under Rule 60(b)(3).**

As this Court acknowledged, a party's failure to produce evidence requested in discovery is cognizable as "fraud" under Rule 60(b)(3). *See* Doc. No. 1313 at 19.[12] Here, however, the

---

[12] *See also Scott v. United States*, 2016 WL 323902, *3 (M.D. FL January 26, 2016) (granting relief pursuant to Rule 60(b)(3) to reopen § 2255 proceeding to determine whether

Court found that Mr. Lee did not show "that the failure was due to misconduct by the party that should have produced the evidence." *Id.* Specifically, the Court stated that "Lee has not alleged facts to show that the omission of any evidence during his § 2255 proceeding was due to the Government's misconduct or that the Government intentionally misrepresented any facts." *Id*. Respectfully, Mr. Lee takes issue with this Court's characterization.

Mr. Lee has consistently alleged that the Government engaged in a demonstrable pattern of misconduct that spanned the entirety Mr. Lee's pre-trial, trial, and post-conviction proceedings. This misconduct includes intentionally failing to memorialize Mr. Wanker's warnings in official reports; instructing Mr. Wanker to omit this information from his grand jury and trial testimony; failing to correct Mr. Wanker's substantially misleading trial testimony; falsely representing to this Court that it had complied with its constitutional obligations under *Brady* to turn over all relevant materials to the defense prior to trial; and then repeating that fraudulent claim in the §2255 proceedings in response to counsel's renewed request for such materials. Thus, Mr. Lee has plainly alleged facts that satisfy the threshold showing under Rule 60(b)(3) that the omission of the relevant *Brady* information during the § 2255 proceeding was due to the Government's misconduct.[13]

newly disclosed *Brady* material affected prejudice analysis of any grounds raised in initial § 2255 motion); *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) ("an adverse party's failure, either inadvertent or intentional, to produce such obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)"); *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983) (failure to produce requested discovery material can constitute Rule 60(b)(3) misconduct); *Square Construction Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981) (same).

[13] Indeed, this is particularly true here, where Mr. Lee's § 2255 counsel explicitly noted that the purpose of the post-conviction *Brady* request was to discover any facts within the Government's possession that would warrant amending the § 2255 motion to raise additional *Brady* claims. As noted above, Mr. Lee should not be faulted for reasonably relying on the Government's affirmative representations that it had fully complied with its *Brady* obligations.

This Court further stated that the Government's failure to disclose the Wanker evidence did not prevent Mr. Lee from "fully and fairly litigating his initial § 2255 claim" because he "could have interviewed Wanker before filing his first habeas petition." Doc. No. 1313 at 19. Respectfully, the premise of the Court's argument is contrary to well-settled law.

In both *Strickler v. Greene* and *Banks v. Dretke*, 540 U.S. 668 (2004), the Supreme Court rejected the notion that "defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Banks*, 540 U.S. at 695-96. *See also Strickler*, 527 U.S. at 286-87. *Banks* is particularly instructive because it addressed an argument nearly identical to the one at issue here: whether a petitioner could have investigated and interviewed witnesses in search of prosecutorial misconduct before filing his first state habeas petition. As the Court noted, to focus the inquiry on whether the defendant could have uncovered the evidence despite the prosecution's fraudulent representations would be incompatible with the due process concerns at the heart of *Brady*:

> The State here … urges, in effect, that the prosecution can lie and conceal and the prisoner still has the burden to discover the evidence, so long as the potential existence of a prosecutorial misconduct claim might have been detected. A rule thus declaring "prosecutor must hide, defendant must seek" is not tenable in a system constitutionally bound to accord defendants due process.

*Banks*, 540 U.S. at 696 (internal quotation marks and citations omitted). As in *Banks*, the Government here "represented at trial and in [post-conviction] proceedings that [it] had held nothing back." *Id*. at 698. Thus, it "was not incumbent on [Mr. Lee] to prove these representations false; rather [Mr. Lee] was entitled to treat the prosecutor's submissions as truthful." *Id. See also id.* at 694 (Banks entitled to rely on prosecution's representation of full disclosure); accord *Williams v. Taylor*, 529 U.S. 420, 443 (2000).

This principle has also long been recognized by the Eighth Circuit. *See Parkus v. Delo*, 33 F.3d 933, 940 (8th Cir. 1994) (petitioner had cause for failing to raise *Brady* claim in state court because his counsel on appeal and in state post-conviction proceedings relied on prosecutor's representation to trial counsel that "all relevant records and reports had been disclosed"); *Fairchild v. Lockhart*, 979 F.2d 636, 640 (8th Cir. 1992) (cause found for omission of *Brady* claim from previous federal habeas petition where prosecutor told petitioner's counsel "that he had turned over his entire file, thereby leading the attorney to believe that he had received everything that existed"); *Bliss v. Lockhart*, 891 F.2d 1335, 1341 (8th Cir. 1989) ("prosecutorial interference with disclosure of the full evidence [by expressly or implicitly telling a witness to avoid a subject at trial] may indeed constitute cause").

**D.    Mr. Lee's allegations establish "fraud on the court" pursuant to Rule 60(d)(3).**

The Court held that Mr. Lee's allegations "do not clear [the] high bar" required to meet the standard for fraud on the court under Rule 60(d)(3). Doc. No. 1313 at 20. But as the Court recognized, fraud which is "directed to the judicial machinery itself" is cognizable under the Rule. *Id.* at 19. Thus, this Court should reconsider its decision because Mr. Lee's allegations squarely concern a fraud that harmed the integrity of the judicial process.

First, the Government's fraudulent representation that it had satisfied *Brady* was directed not simply at Mr. Lee, but also at this Court. Mr. Lee's prior § 2255 motion raised two related issues for this Court's adjudication: (1) a claim that the Government violated his constitutional rights by failing to disclose exculpatory and/or impeachment evidence, and (2) a request that the Government comply with its ongoing duty under *Brady* so that he could properly amend his § 2255 motion based on any disclosures. The Government's misconduct directly impeded this Court's ability to properly adjudicate both issues. By fraudulently representing that it had already

16

fully complied, it essentially rendered the issues moot; indeed, this Court never formally adjudicated Mr. Lee's prior § 2255 claim or the request for additional *Brady* disclosures. Because Mr. Lee has alleged that the Government's misconduct precluded this Court from properly adjudicating the issues before it in the § 2255 proceeding, he has met the requisite standard to establish fraud on the court. *See Kerwit Medical Products, Inc. v. N & H Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980) (fraud on the court "is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication"); *United States v. Smiley*, 553 F.3d 1137, 1145-46 (8th Cir. 2009).[14]

Second, the fraud in question concerns the concealment of *favorable* information. As a number of courts have recognized, such conduct does not merely prejudice the opposing party; it also constitutes a fraud on the court because it harms the integrity of the adversarial process itself. *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 348-56 (6th Cir. 1993) (Government's failure to disclose to courts and detainee exculpatory information in its possession during denaturalization and extradition proceedings constituted fraud on the court; although attorneys acted in good faith, they recklessly disregarded their obligation to provide information specifically requested by detainee, the withholding of which misled his counsel and endangered his ability to mount defense); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1130-34 (9th Cir.1995) (granting 60(b) based on fraud where attorney failed to disclose favorable evidence and failed to correct false impression it caused at trial).

---

[14] *See also Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (fraud involves instances where "the withheld evidence was highly relevant to and probative on the theory on which the case was decided").

Third, the very fact that the misrepresentations here were made by *officers of the court* is sufficient to bring Mr. Lee's allegations within the ambit of Rule 60(d)(3). *See Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (an attorney's "loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court."); *In re Intermagnetics America, Inc.,* 926 F.2d 912, 916 (9th Cir. 1991) ("fraud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court").

Finally, what distinguishes Mr. Lee's case from the mine-run cases where plaintiffs fail to establish fraud on the court under Rule 60(d)(3)[15] is the sheer breadth and depth of the Government's misconduct here. Mr. Lee's case does not involve a "one-off" failure to comply with a discovery request. Rather, the Government engaged in a sustained campaign to hide information over a number of years. It sanitized official government reports; instructed a witness to avoid disclosing information while on the stand; allowed substantially misleading testimony to stand uncorrected; manipulated grand jury testimony to erase facts unfavorable to the prosecution; and repeatedly made fraudulent representations about its compliance with its *Brady* obligations during the pretrial, trial, and post-conviction proceedings, thereby short-circuiting judicial review of its pattern of misconduct. On these facts, Mr. Lee has properly established fraud on the court pursuant to Rule 60(d)(3).

---

[15] *See* Doc. No. 1313 at 19-20 (citing cases)

WHEREFORE, Daniel Lee respectfully moves this Court to reconsider its judgment of March 22, 2019.

Respectfully submitted this 19th day of April, 2019.

\s\ Morris H. Moon  
MORRIS H. MOON  
Assistant Federal Public Defender  
Federal Capital Habeas Project  
6411 Ivy Lane, Suite 710  
Greenbelt, MD 20770  
(713) 880-3556  
Morris_Moon@fd.org

\s\ George G. Kouros  
GEORGE G. KOUROS  
Assistant Federal Public Defender  
Federal Capital Habeas Project  
6411 Ivy Lane, Suite 710  
Greenbelt, MD 20770  
(301) 821-0855  
George_Kouros@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on April 19, 2019. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: /s/*Morris H. Moon*  
MORRIS H. MOON  
Bar # 24032750 (TX)  
Attorney for Daniel Lee  
Assistant Federal Public Defender  
Federal Capital Habeas Project  
6411 Ivy Lane, Suite 710  
Greenbelt, MD 20770  
Telephone: (713) 880-3556  
Email: Morris_Moon@fd.org