**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DANIEL LEWIS LEE,**
                    **Movant,**                                    **Criminal Case No. 4:97-CR-00243-KGB-2**

**v.**                                                              **CAPITAL CASE**

**UNITED STATES OF AMERICA**
                    **Respondent.**

### SUPPLEMENTAL MOTION FOR RELIEF FROM JUDGMENT OR ORDER <u>PURSUANT TO FED. R. CIV. P. 60(b)</u>

COMES NOW Daniel Lewis Lee, by and through counsel, and hereby submits the

following supplement to his motion pursuant to Fed. R. Civ. P. 60(b) (Dkt. 1352), for relief from

its Judgment issued December 22, 2010, denying Mr. Lee's motion to alter or amend judgment

pursuant to Fed. R. Civ. P. 59(e) ("Rule 59(e) Motion") (Dkt. 1165).

### Introduction

On December 6, 2019, Mr. Lee filed a motion pursuant to Fed. R. Civ. P. 60(b) seeking

relief from this Court's denial of his Rule 59(e) Motion. *See* Dkt. 1352. This Court has been

holding these proceedings in abeyance pending the Supreme Court's decision in *Banister v.*

*Davis*, No. 18-6493, which Mr. Lee argued would be dispositive of the legal issue presented in

his Rule 60(b) Motion. *See* Dkts. 1353 & 1356.[1] On June 1, 2020, the Supreme Court issued its

---

[1] This Court also granted Mr. Lee's request to stay his then-scheduled December 9, 2019 execution pending the *Banister* decision. *See* Dkts. 1353 & 1356. The Government appealed that order, *see* Dkt. 1357, but otherwise did not contest this Court's authority to hold the proceedings in abeyance until the Supreme Court issued its opinion.

On June 1, 2020, the Eighth Circuit vacated the stay order. *See United States v. Lee*, No. 19-3618 (8th Cir. June 1, 2020). It held that the district court incorrectly used the legal standard articulated in *Chambers v. Bowersox*, 157 F.3d 560 (8th Cir. 1998), to evaluate Mr. Lee's request for a stay, rather than the standard set out in *Hill v. McDonough*, 547 U.S. 573, 584 (2016). The

opinion. *See Banister v. Davis*, 590 U.S. ___, 2020 WL 2814300 (2020). Mr. Lee's Rule 60(b) motion is thus now ripe for review.

*Banister* represents a sea change in decades of Eighth Circuit law holding that a motion filed pursuant to Rule 59(e) to alter or amend a habeas court's judgment qualifies as a successive petition. That circuit law had a direct effect on this Court's consideration of Mr. Lee's Rule 59(e) motion. Mr. Lee properly sought reconsideration of his previously presented claims on the ground that the denial of his § 2255 motion and request for an evidentiary hearing was based on significant errors of fact and law. That is precisely the purpose and policy behind Rule 59(e). Yet this Court held that under *Gonzalez v. Crosby*, 545 U.S.524 (2005), and governing circuit law, the Rule 59(e) was an improper successive motion, and that therefore the Court lacked jurisdiction to consider it.

As a result of that ruling, Mr. Lee has never received full merits review of an undoubtedly meritorious ineffective assistance of counsel claim. Specifically, Mr. Lee has alleged that trial counsel failed to raise a readily available challenge to an expert opinion and report claiming that Mr. Lee's score on a psychological instrument known as the Hare Psychopathy Check List-Revised ("PCL-R") diagnosed him as a "psychopath" and validly predicted that he would be a future danger in prison. In fact, there was no scientific basis for such a claim. It is indisputable that had counsel raised such a challenge, the Government's expert, Dr. Thomas V. Ryan, would have withdrawn his opinion and report, and the jury would have never

Circuit Court's brief 4-page order did not address the Supreme Court's *Banister* opinion, which was issued that same day. Nor did it reach the merits of Mr. Lee's 60(b) motion, despite the fact that the Government had urged it to do so. Thus, the issue of whether Mr. Lee has demonstrated entitlement to relief under Rule 60(b)(6) remains for this Court to decide in the first instance.

heard any of this "expert" evidence that condemned him to death.[2] We know this because in two

other federal capital cases, Dr. Ryan withdrew his opinion and report about psychopathy when

defense counsel made this same challenge.[3] (Moreover, Dr. Ryan has specifically attested that

such a challenge was available at least as early as 1998—the year before Mr. Lee's trial.) And

there is no question that counsel's failure was prejudicial: according to Judge G. Thomas Eisele,

who presided over the trial and had an opportunity to observe the jury, it was "very questionable

whether the jury would have given Defendant Lee the death penalty" if the psychopathy

evidence had been excluded.[4]

The Government secured a death sentence in this case using unreliable and unscientific

evidence that even its own expert has since disavowed. Indeed, in the 21 years since Mr. Lee's

trial, the Government has never presented such evidence again in any federal capital trial, for any

purpose. Mr. Lee is the *only* prisoner on federal death row who was sentenced to death based on

---

[2] During trial, defense counsel filed a motion in limine asking the district court to exclude testimony about psychopathy during the cross-examination of its expert, Dr. Mark Cunningham, and also during rebuttal testimony by Dr. Ryan. *See* Tr. 7755, 7830. The Court deferred ruling on the motion in limine and allowed the Government to extensively cross-examine Dr. Cunningham about psychopathy. In particular, the Government elicited through him Dr. Ryan's expert opinion that Mr. Lee's PCL-R score established he would be a future danger in prison. *See United States v. Lee*, 89 F. Supp. 2d 1017, 1026 (E.D. Ark. Mar. 21, 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001) ("Through the cross-examination of Dr. Cunningham, the Government was able to define psychopathy and describe the characteristics of a psychopath for the jury. … Ultimately, the Government, through Dr. Cunningham, advised the jury that Dr. *Ryan* had diagnosed Defendant Lee as a psychopath.") (emphasis in original); *id.* at 1031 (noting that the Government's "introduction of such aggravating evidence against Defendant Lee through his own mental health expert during his 'defense' was fundamentally unfair[.]"). However, if Dr. Ryan had withdrawn his opinion and report, the Government could not have elicited any evidence about the PCL-R or psychopathy at Mr. Lee's trial during its cross-examination of Dr. Cunningham.

[3] *United States v. Haynes,* No. PJM-98-0520 (D. Md.), and *United States v. Stitt*, No. CRIM.A 2:98CR47 (E.D. Va.).

[4] *Lee*, 89 F. Supp. 2d at 1031.

such psychopathy evidence. With the issuance of *Banister*, the impediment that precluded this Court from reconsidering its order denying § 2255 relief has now been removed. Given the equities present in this particular case, it is respectfully submitted that substantial justice would be achieved by re-opening the § 2255 proceeding and considering Mr. Lee's Rule 59(e) motion anew.

**I.      The Court's Treatment of the Relevant Claims in Mr. Lee's § 2255 and Rule 59(e) Motion.**

On August 28, 2008, the Court denied Mr. Lee's § 2255 motion without an evidentiary hearing. *See United States v. Lee*, No. 4:97-CR-00243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008) (Memorandum Opinion). With respect to the ineffective assistance of counsel claim concerning the PCL-R, the Court concluded the following in the relevant part of its order:

> *J. Failure to Object to Dr. Ryan's Testimony and Report*
> Petitioner argues that his trial counsel erred by not objecting to the Government's use of a rebuttal witness, neuropsychologist Thomas Ryan, Ph.D., since Dr. Cunningham never diagnosed Lee. *Petitioner also contends that counsel erred by allowing Dr. Ryan's report, which contained a risk assessment, to be admitted. Finally, Petitioner states that he is prepared at a hearing to offer evidence that Dr. Ryan no longer stands by his testimony based on the Hare Psychopathy Checklist because it is no longer an appropriate instrument for predicting the future dangerousness of capital defendants.* The Government argues that these issues were addressed previously by the Eighth Circuit. The Eighth Circuit concluded that Lee was not unfairly prejudiced by the evidence from Dr. Ryan as to Lee's lack of remorse.
> *Since it appears most of Petitioner's claims related to Dr. Ryan's testimony are likely foreclosed by the Eighth Circuit's prior ruling,* the Court considers such claims solely to the extent they raise broader issues than those previously presented and rejected by the Eighth Circuit.
> …
> *[T]o the extent that Petitioner claims counsel should have raised additional objections to Dr. Ryan's testimony, Petitioner can not demonstrate prejudice. In light of this Court's prior decision to set aside the death verdict and the Eighth Circuit's subsequent holding that the evidence presented through Dr. Cunningham and Dr. Ryan as to Lee's psychopathy and lack of remorse did not unfairly prejudice Lee, it is difficult to see how any additional objection that Petitioner's counsel could have made to Dr. Cunningham's or Dr. Ryan's testimony could have altered the outcome.*

4

*Lee*, 2008 WL 4079315 at \*47-\*48 (footnotes omitted) (emphasis added).

*The Rule 59(e) Motion*

Because that ruling rested on legal and factual error, Mr. Lee subsequently filed a motion pursuant to Rule 59(e) asking the Court to reconsider its just-entered judgment. Dkt. 1165. Consistent with the relevant governing standard, his pleading was addressed to "allegations of error that demonstrate a manifest error of law and fact, or present a manifest injustice." *Id.* at 2. As relevant here, Mr. Lee argued that: (1) the Court erroneously denied his IAC claim concerning the PCL-R; and (2) the Court erred in failing to grant an evidentiary hearing.

As to the IAC claim, Mr. Lee raised two manifest errors in the Court's order. First, he argued that the Court committed legal error in holding that his IAC claim was foreclosed by the Eighth Circuit's direct appeal opinion. Dkt. 1165 at 34-36 & 20 n.14. It was not. Mr. Lee's Sixth Amendment claim was legally distinct from the claim decided on direct appeal, which was an evidentiary issue about whether the testimony concerning the PCL-R and psychopathy exceeded the proper scope of cross-examination. *Id.* at 34-36. The Eighth Circuit's direct appeal opinion took it as a given that the psychopathy evidence was probative of future dangerousness in prison. But that is because there was no evidence in the record that indicated otherwise; counsel certainly never challenged that premise at trial or on direct appeal. Thus, the Circuit Court did not have occasion to consider the new, extra-record claim at issue in the § 2255 motion: that, in fact, the psychopathy evidence was *not* probative of future dangerousness in prison, and trial counsel was ineffective for failing to raise that readily available challenge. *Id.*

Second, Mr. Lee argued in his Rule 59(e) motion that the Court misunderstood the factual basis for the IAC claim, and therefore failed to fully resolve it. *See* Dkt. 1165 at 34 n.23. Mr. Lee's claim was that had counsel objected that there was no scientific basis for opining that a

5

high score on the PCL-R was predictive of future dangerousness in prison, the Government's expert would have withdrawn his opinion and report, as he had done in other federal capital cases where he was similarly retained by the Government. *Id*. The Court's error resulted in an erroneous prejudice analysis because it failed to consider how this objection "could have altered the outcome"—namely, that Dr. Ryan would have responded by withdrawing his opinion and report, and that therefore the issue of psychopathy would have never been injected into the trial in the first place. *Id*.

With respect to the evidentiary hearing claim, Mr. Lee alleged that the Court misapplied the relevant statutory standard. Dkt. 1165 at 3-12. Specifically, the Court improperly held that submitting affidavits is a necessary prerequisite for obtaining a hearing, and that Mr. Lee's failure to do so was "fatal" to his ability to prove prejudice on any of his claims. *Id*. at 7. As he noted, there is no such "affidavit requirement" present in the relevant statutory and legal authority governing the standard for granting evidentiary hearings in § 2255 proceedings, and the Court's grafting of such a requirement onto the applicable standard was a manifest error of law. *Id*. at 7-12. Mr. Lee had met the relevant standard insofar as: (1) he alleged facts which, if true, would entitle him to relief; and (2) there existed disputed issues of fact that could not conclusively be resolved on the extant record alone. *Id.* at 7-8. Mr. Lee also alleged that the Court acted contrary to clear precedent by erroneously making credibility determinations and other findings on the basis of untested affidavits and assertions in the pleadings rather than pursuant to an evidentiary hearing. *Id*. at 12-17.

*The Court's Denial of the Rule 59(e) Motion*

This Court denied the Rule 59(e) motion because it held that, pursuant to *Gonzalez*, the motion was "successive," and therefore it was without jurisdiction to consider it absent

6

authorization from the Circuit Court. *See United States v. Lee*, No. 4:97-CR-00243, 2010 WL 5347174, *1-*2, *5-*6 (E.D. Ark. Dec. 22, 2010) (Order Denying Post-judgment Relief). The Court began by noting that "in the habeas context, a Rule 59(e) motion is subject to the well established restrictions on filing successive motions for postconviction relief," *id*. at *1, and then further explained:

> It seems clear, based on existing case law and despite Petitioner's arguments to the contrary, that a district court should examine a Rule 59(e) motion filed in a § 2255 proceeding preliminarily, just as it would a Rule 60(b) motion, to ensure that it is not a successive petition.

*Id*.

With respect to the IAC claim concerning the psychopathy evidence, the Court held that the claim "should, in the Court's view, be deemed successive." *Lee*, 2010 WL 5347174 at *5. It did not address the Rule 59(e) argument that it had erroneously held that the claim was "foreclosed" by the Eighth Circuit's direct appeal opinion. Moreover, to the extent it addressed Mr. Lee's other point of error—that the Court misunderstood the factual basis for his claim and failed to fully resolve it—it stated that it was not "on notice of the full argument," *Lee*, 2010 WL 5347174 at *6, despite the fact that its original order denying relief accurately characterized the legal claim (failure to object to Dr. Ryan's testimony and report), as well as the relevant factual basis (the PCL-R was not "an appropriate instrument for predicting future dangerousness"). *Lee*, 2008 WL 4079315 at *47.

The Court then purported to conduct an alternative merits analysis (which, as a matter of law, it was not permitted to do).[5] *See Lee*, 2010 WL 5347174 at *6. Its sole basis for concluding

---

[5] As noted previously, *see* Dkt 1352 at 3 n.12, the district court's purported alternative merits analysis was legally invalid. Once it determined that the claim was successive, it lacked subject-matter jurisdiction to reach the merits. *See Steel Co. v. Citizens for a Better Environment*,

that the claim was "lacking in merit" was its "finding" that counsel could not be deemed

ineffective for failing to raise the relevant challenge at Mr. Lee's 1999 trial because the basis for

making the objection was not available until a year later. *Id*. This "finding" was demonstrably

incorrect.[6]

The Court's treatment of the separate evidentiary hearing claim was similarly flawed. It

first identified the threshold jurisdictional issue,[7] but then it vacillated between treating the issue

as successive,[8] and conducting an alternative merits analysis.[9] It "agree[d] with Petitioner that

there is no such [affidavit] requirement in the Eighth Circuit" to obtain an evidentiary hearing,

---

523 U.S. 83, 93-95 (1998); *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009) ("[A] court may not assume 'hypothetical jurisdiction' to decide 'contested questions of law when its jurisdiction is in doubt.'") (quoting *Steel Co.*, 523 U.S. at 101); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction. … Constrained by this fundamental principle, a federal district court may not dismiss a case on the merits by hypothesizing subject-matter jurisdiction.") (citations omitted); *Wivell v. Wells Fargo Bank, N.A.,* 773 F.3d 887, 896 (8th Cir. 2014) (district court erred in resolving merits of the claims after determining it lacked subject-matter jurisdiction); *Cf. Kangas v. Kieffer*, 495 Fed. Appx. 749, 750 n.2 (8th Cir. 2012) (district court improperly considered merits of claim "even as it concluded it lacked personal jurisdiction.").

[6] Contrary to the Court's finding, Dr. Ryan's declaration made clear that "the basis for a challenge to the use of the PCL-R existed at the time of the [*United States v. Richard*] *Stitt* trial," *see* Dkt. 1165-4 at ⁋ 6—which occurred in *1998*, a year before Daniel Lee's trial began. Thus, the lone basis for the court's "merits denial" was clearly erroneous. Such a significant factual error was likely the product of the Court's *Gonzalez* analysis; upon determining that the motion was successive, the Court conducted merely a cursory review of the claim rather than a careful inquiry.

[7] *See Lee*, 2010 WL 5347174 at *2 ("whether this should be considered a successive argument is not free from doubt"); *id.* at *2 n.10.

[8] *Id.* at *2 n.10 (citing case law for the proposition that a post-judgment motion challenging a district court's failure to grant an evidentiary hearing in a § 2255 proceeding "was an attack on court's analysis of the merits and therefore successive"); *id.* at *5 (noting that the Court was foreclosed from considering the issue "absent permission and direction from the Eighth Circuit to do so.").

[9] *Id.* at *2 ("[T]he Court will address this argument on the merits as Petitioner contends the Court applied the wrong standard in determining whether an evidentiary hearing was warranted.").

*Lee*, 2010 WL 5347174 at *3, but then ruled on the ground that there "simply were no issues of fact that needed to be resolved in order to dispose of his post-conviction motion." *Id*. at *4. With respect to the numerous affidavits that Mr. Lee proffered in connection with his Rule 59(e) motion corroborating his various IAC claims,[10] the Court held that if they had been provided prior to its order denying relief, "the Court might have determined that an evidentiary hearing was required." *Id*. at *5. But because it deemed the Rule 59(e) motion successive, the Court concluded it was "foreclosed by existing legal principles from considering the information now, absent permission and direction from the Eighth Circuit to do so." *Id*.

## II.    *Banister* **Establishes that the Court's Prior Judgment Rested on an Erroneous Threshold Procedural Ruling.**

Mr. Lee contends that this Court erroneously applied *Gonzalez v. Crosby*, 545 U. S. 524 (2005), to construe his Rule 59(e) motion as successive. Dkt. 1352 at 3-4. The Supreme Court has now agreed. Earlier this week, in *Banister v, Davis,* it definitively ruled that *Gonzalez* does not apply in the Rule 59(e) context.

> [A] Rule 59(e) motion is a one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal. It is a limited continuation of the original proceeding—indeed, a part of producing the final judgment granting or denying habeas relief. For those reasons, *Gonzalez* does not govern here. A Rule 59(e) motion, unlike a Rule 60(b) motion, does not count as a second or successive habeas application.

*Banister*, 2020 WL 2814300 at *8. Indeed, a Rule 59(e) motion is "part and parcel of the first habeas proceeding." *Id*. at *2. Thus, a motion seeking to "fix" "manifest errors of law and fact," or which "attack[s] the federal court's previous resolution of [a] claim on

---

[10] The plain language of Rule 59 contemplates the filing of affidavits with the motion. *See* Rule 59(c) ("Time to Serve Affidavits") ("When a motion for new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits."). Mr. Lee's submission of his affidavits was therefore fully in compliance with the dictates of Rule 59.

9

the merits," is not an improper successive petition, but rather a proper use of Rule 59(e). *Id.* at *3.

*Banister* overturns decades of Eighth Circuit law, pre-dating *Gonzalez*, which held that Rule 59(e) motions are subject to the successor standards. *See Banister*, 2020 WL 2814300 at *5 (citing *Bannister v. Armontrout*, 4 F.3d 1434, 1445 (8th Cir. 1993), as sole pre-AEDPA case dismissing Rule 59(e) motion as successive). *See also Williams v. Norris*, 461 F.3d 999, 1004 (8th Cir. 2006) (holding *Gonzalez* applicable to Rule 59(e) motions); *United States v. Lambros*, 404 F.3d 1034, 1037 (8th Cir. 2005) (construing Rule 59(e) motion as successive).

*Banister* makes clear that this Court's prior judgment denying the Rule 59(e) motion rested on an erroneous threshold procedural ruling. Mr. Lee's motion was not, in fact, "successive." *Lee*, 2010 WL 5347174, *1-*2, *5. Rather, it was a proper request for reconsideration of a just-entered judgment. Accordingly, this Court should re-open the § 2255 proceeding and reconsider the previously-filed Rule 59(e) motion. In particular, Mr. Lee respectfully requests that this Court revisit two aspects of its prior ruling.

First, Mr. Lee argued in his Rule 59(e) motion that this Court should reconsider its denial of his Sixth Amendment claim that counsel failed to adequately object to the psychopathy evidence. *See* Dkt. 1165 at 19-46. He argued that the Court's denial was erroneous because it misunderstood the factual basis for the claim, and was wrong as a matter of law. Per *Banister*, these were proper Rule 59(e) arguments. This Court's denial of these arguments on the ground that they were "successive" was therefore plainly incorrect.

Second, this Court ruled that it was "foreclosed" from even "considering" the relevant supporting information attached to the Rule 59(e) Motion "absent permission and direction from

10

the Eighth Circuit to do so." *Lee,* 2010 WL 5347174 at *5. As the Court noted, but for that self-imposed jurisdictional bar, it "might have determined that an evidentiary hearing was required." *Id*. Since *Banister* confirms that no such jurisdictional bar exists—because the Rule 59(e) motion was not successive and therefore did not require preauthorization from the circuit court—this Court is now free to make that determination based on the record that was before it at that time.[11]

### III.   Relief Is Appropriate Under Rule 60(b)(6).

In order to remedy the erroneous denial of the Rule 59(e) motion as successive, Mr. Lee filed the present Rule 60(b) motion.

The central concern of Federal Rule of Civil Procedure 60(b)(6) is that justice is done. *Klapprott v. United States*, 335 U.S. 601, 615 (1949). Accordingly, it has long been recognized that a district court has the inherent power to accomplish justice by "set[ting] aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

This "grand reservoir of equitable power to do justice," *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010), is designed to avoid enforcement of an inequitable judgment such as the one in Mr. Lee's case. *See Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989) (Rule 60(b)(6) "should be liberally construed when substantial justice will thus be served.") (internal quotation marks and citation omitted); *Thompson v. Jones*, 876 F. Supp. 202, 206 (E.D. Ark. 1993) (Rule 60(b)(6) "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.") (internal quotation marks and citation

---

[11] As Mr. Lee contemporaneously noted, the Government's seven-page response to his Rule 59(e) motion forfeited any argument as to the substantive basis for reconsidering his underlying Sixth Amendment claim or to his supporting declarations. *See* Dkt. 1172 at 2-3 & 18 n.7. The only argument the Government advanced at the time for denying reconsideration was that Mr. Lee's Rule 59(e) motion was successive under *Gonzalez*. *See* Dkt. 1170.

omitted).

Even in light of the desire for finality of judgments, "the justice-function of the courts demands that [finality] must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). It is the nature of Rule 60(b) itself to balance "the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of *all* the facts." *Id.* (emphasis added). Therefore, while finality is of great importance, the rule must be "liberally construed in order to achieve substantial justice." *Id*. at 402.

In habeas proceedings, district courts have jurisdiction to consider Rule 60(b) motions when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez*, 545 U.S. at 532. Thus, a district court can consider a Rule 60(b) motion when a petitioner—such as Mr. Lee—"asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Id*. at 532 n.4.

Rule 60(b) serves a particularly important role where a procedural ruling will prevent merits review. Accordingly, courts have held that the "main application" of Rule 60(b) "is to those cases in which the true merits of a case might never be considered" and it has "reversed where denial of relief precludes examination of the full merits of the cause," because in such instances "even a slight abuse may justify reversal." *Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007) (internal citations and quotations omitted); *see also Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("a central purpose of Rule 60(b) is to correct erroneous legal

12

judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard."); *Williams v. St. Louis County*, 812 F.2d 1079, 1083 (8th Cir. 1987) (reversing district court and granting Rule 60(b)(6) motion to vacate procedural ruling that precluded claims from being heard on the merits); *Marshall v. Boyd*, 658 F.2d 552, 555 (8th Cir. 1981) (reversing denial of Rule 60(b) motion and vacating default judgment); *Thompson v. Jones*, 876 F. Supp. 202, 206, 207 (E.D. Ark. 1993) ("As was the case in *Klapprott*, the plaintiff is asking an order be set aside so that for the first time she may litigate on the merits. … To do otherwise would result in manifest injustice.") (internal quotation marks and citation omitted).

### A.   The Determination of Extraordinary Circumstances for Relief Pursuant to Rule 60(b)(6) Requires a Fact-intensive, Individualized Inquiry.

A movant entitled to relief under Rule 60(b)(6) must "show extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (internal citations and quotation marks omitted). This means that courts must examine the unique facts and "equities of the particular case." *Seven Elves Inc.*, 635 F.2d at 401. There are myriad ways this standard can be met. A case can demonstrate extraordinary circumstances by a change in decisional law combined with other factors such as probable merit, the movant's diligence and a balance of the party's interest in finality. *Gonzalez,* 545 U.S. at 540 (Stevens, J. dissenting). It can encompass the circumstances that produced the default judgment, such as a petitioner's illness, absence of counsel, lack of funds, or imprisonment at the time of the proceedings that led to his denaturalization. *Klapprott*. 335 U.S. at 614.

The Eighth Circuit engages in a similar fact-intensive, case-by-case analysis to determine eligibility for relief under Rule 60(b)(6). *See, e.g., City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1150 (8th Cir. 2013) (conducting fact specific analysis in review of Rule 60(b) request for relief); *City of Duluth v. Fond du Lac Band of Lake Superior*

*Chippewa*, 785 F.3d 1207, 1210-1212 (8th Cir. 2015) (reversing district court because it "considered only five of the six factors" specified in 2013 order and remanding again for reconsideration of the Rule 60(b)(6) motion based on "*all* of the factors outlined here and in our prior remand order") (emphasis added). This approach is consistent with that of other courts of appeals, which also require district courts to engage in individualized, case-by-case inquiries to determine whether extraordinary circumstances warrant relief under Rule 60(b)(6).[12]

The Fifth Circuit's approach is particularly instructive, as it has set forth eight equitable factors to inform a district court's consideration:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether -- if the judgment was a default or a dismissal in which there was no consideration of the merits -- the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether -- if the judgment was rendered after a trial on the merits -- the movant had a fair opportunity to present his claim or defense; (7) whether there are

---

[12] *See, e.g., Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 87 (1st Cir. 2010) ("The district court enjoys a long familiarity with the case, and that court's fact-finding capabilities put it in a better position to construct the fact-specific balance that Rule 60(b)(6) demands."); *Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004) (examining facts to determine whether extraordinary circumstances exist); *Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342 (3d Cir. 1987) (requiring examination of facts that amount to extraordinary circumstances); *Ruiz v. Quarterman*, 504 F.3d 523, 528-32 (5th Cir. 2007) (engaging in fact-specific analysis of a Rule 60(b)(6) motion); *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 529 (6th Cir. 2001) ("the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.") (internal citations and quotations omitted)); *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986) (reviewing factual allegations in measuring extraordinary circumstances); *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) ("the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court."); *Colo. Interstate Gas Co. v. Natural Gas Pipeline Co. of Am.*, 962 F.2d 1528, 1530 (10th Cir. 1992) (reviewing facts before the court and concluding extraordinary circumstances did not exist); *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987) (examining several case-specific factors to determine whether "circumstances are sufficiently extraordinary to warrant relief").

14

intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves Inc.*, 635 F.2d at 402.

In keeping with the fact-intensive, individualized review required by Rule 60(b)(6), courts have engaged in holistic analyses when considering the significance of an intervening change in the law. Accordingly, in *Barnett v. Roper*, 941 F. Supp. 2d 1099, 1118 (E.D. Mo. 2013), a district court, in ruling on a Rule 60(b)(6) motion filed by a capital habeas petitioner, explained that "consideration of extraordinary circumstances under Rule 60(b)(6) relies on *several factors*, not just a determination as to whether the nature of the intervening law … is extraordinary." Thus, the court examined the state's "interest in finality," the "capital nature of the case combined with a claim never considered on its merits," the petitioner's diligence, the connection between the supervening case law and the claim raised by the petitioner, and the strength of the petitioner's ineffective assistance of counsel claim in its analysis. *Id.* at 1120. The court concluded that "although the type of supervening change in law in *Martinez* [*v. Ryan*, 566 U.S. 1 (2012)] may not alone warrant the reopening of a habeas judgment, here, the equitable factors offered in conjunction with the strength of the underlying constitutional error alleged enables [petitioner] to satisfy the high standard of Rule 60(b)(6)." *Id.* at 1120-21.

The nature of the judgment sought to be reopened is also a factor for consideration. In *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007), for example, where an erroneous procedural ruling precluded full merits review of a capital habeas petitioner's IAC claim, the Fifth Circuit reversed the lower court's Rule 60(b) denial.  As the court noted, a critical factor to consider is whether the judgment to be reopened would functionally operate as a default judgment, since the merits of the underlying claim for relief were never fully considered. *Ruiz*, 504 F.3d at 532 ("[A]lthough we rarely reverse a district court's exercise of discretion to deny a Rule 60(b)

15

motion, we have reversed where denial of relief precludes examination of the full merits of the cause, explaining that in such instances even a slight abuse may justify reversal. This lesser standard of review has been applied most liberally to motions to re-open default judgments[.]") (internal quotation marks and footnote omitted). Because "courts universally favor judgment on the merits," and the underlying claim was "significant and potentially meritorious," the court held that it would not serve the interests of justice for the claim to "be cut off at its knees" instead of having the court reopen the proceeding to correct "a procedural hurdle that was erroneously placed in Ruiz's path." *Id.*

Thus, in cases like Mr. Lee's, where a procedural ruling foreclosed a district court's evaluation of the full merits of an ineffective assistance of counsel claim and where review of the specific facts of the case demonstrate its extraordinariness, relief under Rule 60(b)(6) is appropriate.

### B. The Unique and Extraordinary Circumstances of Mr. Lee's Case Compel Relief Under Fed. R. Civ. P. 60(b)(6).

The factors that inform this Court's consideration of Mr. Lee's Rule 60(b)(6) motion warrant relief. *See Seven Elves Inc.*, 635 F.2d at 402 (identifying factors).

The first consideration, "that final judgments should not be lightly disturbed," *id.*, weighs in favor of relief. Mr. Lee's case is truly unique as there is no dispute that the "expert" PCL-R/psychopathy evidence that the jury heard was unreliable and invalid. Even the Government's own expert agrees. Rule 60(b)(6) relief in this case could not and would not be construed as "lightly" disturbing the judgment at issue, but instead would properly allow this Court to correct a grave injustice.

Second, the admonition that a "Rule 60(b)(6) motion is not to be used as a substitute for appeal," *id.*, is not a concern in this case. Until *Banister* was issued, Mr. Lee's argument that

16

*Gonzalez* did not apply to Rule 59(e) Motions was foreclosed by circuit law. *See Williams v. Norris*, 461 F.3d 999, 1004 (8th Cir. 2006).[13] *Banister* has created a new and previously unavailable opportunity to overcome the erroneous jurisdictional bar that precluded full consideration of his Rule 59(e) motion.

Third, federal review of the merits of Mr. Lee's Rule 59(e) motion would "achieve substantial justice." The unique circumstances of this case make that evident:

- The integrity of Mr. Lee's capital sentencing hearing was corrupted by the introduction of false and prejudicial "expert" evidence that linked his score on the PCL-R to his likelihood of future dangerousness. Indeed, there is no dispute by the parties that the PCL-R is not a valid or reliable predictor of future dangerousness in prison.

- The presiding judge, who had an opportunity to observe the jury and evaluate the impact of this evidence when it was presented, immediately regretted allowing its introduction[14] and concluded that it was "very questionable" that Mr. Lee would have been sentenced to death but for that evidence. That ruling has never been disturbed.[15]

- None of the underlying facts of Mr. Lee's Sixth Amendment claim are in dispute. Dr. Ryan himself has confirmed that the relevant challenge was available as early as 1998—a year before Mr. Lee's trial. There is no conceivable fact pattern under which counsel's

---

[13] Nevertheless, Mr. Lee diligently sought—but did not receive—a Certificate of Appealability on that issue. *See United States v. Lee*, No. 11-1380 (8th Cir.) ("Motion to Expand Certificate of Appealability," June 20, 2011, Entry ID: 3799638); *Id.* ("Order," Feb. 17, 2012, Entry ID: Entry ID: 3881641).

[14] At the conclusion of the cross-examination, the Court "knew it had made a mistake." *Lee*, 89 F.Supp.2d at 1028 n.6. *See also* Tr. 7836 ("I am convinced that I probably permitted the government to go much farther on cross-examination than is proper."). It then belatedly granted counsel's "motion in limine with respect to the issue of psychopathy, the Hare psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote." Tr. 7836. But by that time, of course, the jury had already heard extensive prejudicial testimony on the matter. *See Lee*, 89 F.Supp.2d at 1028, 1031 ("In failing to restrict the Government's statements and inquiries regarding psychopathy more than it did, the Court erred, and, as a result, Defendant Lee *did not receive a fair sentencing hearing*.") (emphasis added).

[15] In fact, the Eighth Circuit agreed that the key fact explaining why the jury sentenced Mr. Lee to death, but not (by the Government's own account) the more culpable co-defendant Chevie Kehoe, was their purported respective potential for future dangerousness. *See United States v. Lee,* 715 F.3d 215, 223 (8th Cir. 2013) (stating that the "jury sentenced the two defendants differently" because it believed Mr. Lee would be a future danger, but Mr. Kehoe would not).

omission was reasonable given that its strategy at trial was to preclude the introduction of this evidence; this additional objection was mutually reinforcing, not mutually exclusive, of counsel's motion in limine to exclude testimony about psychopathy. *See* Tr. 7755, 7830. Moreover, counsel's omission was prejudicial. On the facts of this case, it is clear that Dr. Ryan would have withdrawn his report, and Mr. Lee's jury would have never heard any evidence regarding the PCL-R or psychopathy.[16]

- Mr. Lee has never received full merits review of his Sixth Amendment claim by any federal court.

- Although circuit law previously foreclosed this Court's ability to consider Mr. Lee's Rule 59(e) motion on the merits, the Supreme Court has now created an avenue for this Court's review.

- Daniel Lee remains under federal sentence of death based on testimony about future danger that no one now defends.

Given the incredible series of errors and injustices to which Mr. Lee has been subjected, federal merits review of his ineffectiveness claim would *finally* provide him with the opportunity to "achieve substantial justice."

Fourth, Mr. Lee makes this motion "within a reasonable time." He filed his initial 60(b) motion on December 6, 2019—within 48 hours of the completion of the *Banister* oral argument—and files the instant supplement motion three days after the *Banister* decision was issued.

Fifth, "the interest in deciding [Mr. Lee's] case[] on the merits outweighs …the interest in the finality of [the] judgment[], and there is merit in [Mr. Lee's] claim." *Seven Elves*, 635 F.2d at 402. *No federal court has ever reviewed the full merits of Mr. Lee's claim of trial counsel ineffectiveness.* As noted above, Rule 60(b) applies "most liberally to judgments in default . . .

---

[16] Stated differently, Mr. Lee's claim is not dependent on a showing that the Court would, for example, have sustained a *Daubert*-based objection to the PCL-R. Dr. Ryan's response would have obviated the need for such a ruling because, as he has repeatedly confirmed in other cases, he would have unilaterally withdrawn his report once such an objection was brought to his attention.

[because] . . . truncated proceedings of this sort are not favored . . . . Thus, unless it appears that no injustice was done by the judgment, the equities in such cases will militate strongly in favor of relief." *Harrell*, 951 F.2d at 1459 (quoting *Seven Elves*, 635 F.2d at 403).

In a default case such as this one, "[t]he absence of injustice is clear when the movant is unable to show the existence of a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial." *Seven Elves*, 635 F.2d at 403. Here, this Court has previously recognized the prejudicial harm of the psychopathy evidence. It is undisputed that there was no scientific basis in 1999 for claiming that the PCL-R was a valid predictor of future dangerousness in prison, and that Dr. Ryan would have withdrawn his report had Mr. Lee's counsel raised that objection. Moreover, the Government has never presented such evidence in any federal capital trial or capital resentencing hearing for any purpose, much less to prove future dangerousness, in the 21 years since Mr. Lee was sentenced to death. The Government has no cognizable interest in preserving the finality of a death sentence based on unreliable "expert" evidence it has since abandoned and is unwilling to defend on the merits.

The sixth *Seven Elves* factor is only implicated "if the judgment was rendered after a trial on the merits." 635 F.2d at 402. Because Mr. Lee's Rule 59(e) motion was deemed successive, he never received full merits review of his ineffective assistance of counsel claim.

Finally, there are no "intervening equities that would make it inequitable to grant relief." *Seven Elves*, 635 F.2d at 402. As detailed above, the "other factors relevant to the justice of the judgment under attack" weigh in favor of granting Rule 60(b)(6) relief. *Id*.

19

IV.    **Mr. Lee's Request for Relief.**

As shown above, Mr. Lee is entitled to 60(b) relief. Given the complicated procedural history of his post-conviction proceeding, it is worth clearly defining the scope and effect of this relief.

Granting Mr. Lee's Rule 60(b) motion would have the effect of setting aside this Court's December 22, 2010 judgment denying his Rule 59(e) motion and requiring this Court to address those issues anew, unimpeded by the incorrect application of *Gonzalez. See In re Sierra Financial Services, Inc.*, 290 B.R. 718 (9th Cir. 2002) ("The effect of an order granting Rule 60(b) relief is to restore the parties to the position they were in before the court issued the vacated order. It is as if the vacated order had never been issued."). This Court must therefore decide *de novo* the two main issues raised by the Rule 59(e) motion: 1) whether the Court's denial of Mr. Lee's IAC claim related to the PCL-R was manifest error of law or fact, and 2) whether the Court erred in failing to grant an evidentiary hearing.

Resolution of the second question is admittedly complicated, and further briefing by the parties may be required to aid this Court in resolving that issue. Mr. Lee submits, however, that this Court need not wait for such briefing; the first issue is straightforward and makes plain that, regardless, the preliminary step of reopening the judgment is necessary at this juncture.

The denial of this § 2255 claim was manifest error in several ways. For example, as Mr. Lee pointed out in his Rule 59(e) motion, the Court adopted the Government's improper framing of the entire IAC prejudice analysis by using the inapplicable standard articulated in *Fretwell v. Lockhart*, 506 U.S. 364 (1993). *See Lee*, 2008 WL 4079315 at *9 (citing *Fretwell* to require an effect on the reliability of the trial not "solely because the outcome could have been different."); Dkt. 1165 at 18-19 (describing why district court's reliance on *Fretwell* constituted manifest

error of law). This is clear error. *See Williams v. Taylor*, 529 U.S. 362, 394-395, 397 (2000)

(finding an unreasonable application of law where state court required a separate requirement

under *Fretwell*).

The § 2255 opinion also improperly rejected the IAC claim related to the PCL-R by

deferring entirely to the Eighth Circuit's previous appellate ruling, as Mr. Lee argued in his Rule

59(e) motion. *See Lee*, 2008 WL 4079315 at *47-*48; Dkt. 1165 at 18 n.14, 34-36. The circuit

ruling, however, was addressing an evidentiary issue, not an IAC claim, and its harm analysis

has no bearing on a proper *Strickland* prejudice analysis. The issue before the Eighth Circuit was

whether the psychopathy evidence was more probative than prejudicial,[17] not whether there was

a reasonable probability that the outcome of the proceeding would have been different if the jury

had never heard that evidence in the first place. *See supra* at 5. This Court thus need look no

further than the § 2255 order itself to determine that Mr. Lee's Rule 59(e) motion should be

granted.

This Court can and should review the underlying IAC claim and rule that Mr. Lee is

entitled to relief based on the extant record. Counsel clearly failed to raise a proper challenge to

the PCL-R evidence in Dr. Ryan's report which (as the order denying § 2255 relief notes) could

have shown that "Dr. Ryan no longer stands by his testimony based on the Hare Psychopathy

Checklist because it is no longer an appropriate instrument for predicting the future

dangerousness of capital defendants." *Lee*, 2008 WL 4079315 at *47. And, if counsel had made

such a challenge, it is indisputable that Dr. Ryan would have withdrawn his expert opinion and it

would never have been before Mr. Lee's jury. After all, Dr. Ryan did just that when serving as a

---

[17] And this decision, as noted above, was made without any argument by counsel that the evidence was not in fact probative.

Government expert in two different federal capital cases, and he has attested that this same challenge was available at least as early as 1998—the year before Mr. Lee's trial.

Finally, this Court can easily determine that this error was prejudicial. The Government relied heavily on the PCL-R to prove its main point in the penalty phase: that given Mr. Lee's diagnosis as a psychopath, violence was intrinsic to his nature, and only a death sentence could keep him from hurting other people. Dkt. 1165 at 22-28, 37-40. The prosecution spent a substantial amount of time at trial discussing the PCL-R and highlighted the evidence in jury argument. *Id.* If Dr. Ryan had withdrawn his expert opinion in Mr. Lee's case, unquestionably there would have been a reasonable probability the outcome would have been different. Indeed, Judge Eisele, who presided over the trial, already concluded that it was highly doubtful that Mr. Lee could have been sentenced to death without it. *Lee*, 89 F. Supp. 2d at 1028, 1031. This finding was not disturbed by the Eighth Circuit's subsequent decision. *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001).

## CONCLUSION

This Court previously denied Mr. Lee's Rule 59(e) motion because, under the erroneous but governing circuit law at the time, it deemed it successive under *Gonzalez*. The Supreme Court has now overruled that flawed circuit precedent. This intervening change in dispositive law,[18] combined with the equities articulated above, warrant relief under Rule 60(b)(6). It is respectfully submitted that this Court should reopen the § 2255 proceeding and reconsider Mr. Lee's previously-filed Rule 59(e) motion on the merits.

---

[18] *See Cornell v. Nix*, 119 F.3d 1329, 1332-33 (8th Cir. 1997).

Respectfully submitted this 4th day of June 2020.

MORRIS H. MOON
Bar Number 24032750 (TX)
Attorney for Daniel Lee
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

GEORGE G. KOUROS
Bar Number 420813 (CT)
Attorney for Daniel Lee
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on June 4, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

GEORGE G. KOUROS
Bar # 420813 (CT)
Attorney for Daniel Lee
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Telephone: (301) 821-0855
Email: George_Kouros@fd.org