IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:97-CR-00243-KGB |
| | ) | (Capital Case) |
| | ) | |
| DANIEL LEWIS LEE. | ) | |

_____

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR RELIEF FROM JUDGMENT**

_____

CODY HILAND
United States Attorney
Eastern District of Arkansas

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1258
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT ...................................................................................................... 2

    I.     Procedural Overview ..................................................................... 2

    II.    The Murders................................................................................... 6

    III.   Trial and Sentencing ..................................................................... 7

    IV.   Post-Trial Motion for a New Sentencing Hearing ........................... 13

    V.    Collateral Review Under § 2255 ....................................................... 15

         A.    Lee's § 2255 Motion ................................................... 15

         B.    This Court's Denial of Lee's § 2255 Motion............................ 16

         C.    Lee's Rule 59(e) Motion for Reconsideration........................... 19

         D.    Lee's § 2255 Appeal................................................................ 23

    VI.   Lee's Prior Rule 60(b) Motion............................................................ 24

    VII.  Habeas Petition................................................................................. 25

    VIII. The Present Rule 60(b) Motion ........................................................ 26

APPLICABLE LEGAL STANDARDS ................................................................ 29

ARGUMENT ...................................................................................................... 32

    I.     Lee's Rule 60(b) Motion Is a Second or Successive § 2255
         Motion Because Lee Asks This Court to Reject Judge Eisele's
         Resolution of Lee's Rule 59(e) Motion on the Merits ........................ 33

    II.    Even Assuming Lee's Rule 60(b) Motion Is Not a Second or
         Successive § 2255 Motion, Lee Is Not Entitled to Relief Under
         Rule 60(b)(6) .............................................................................. 39

A.     *Banister*'s Change in Decisional Law Does Not Establish Extraordinary Circumstances .................................................... 39

     1.     The General Rule ........................................................... 39

     2.     The *Banister* Decision .................................................... 40

     3.     *Banister* Does Not Establish Extraordinary Circumstances, Particularly in This Case ..................... 42

B.     The Circumstances Here Are Also Not Extraordinary Because Judge Eisele Correctly Denied Lee's Rule 59(e) Motion on Additional Grounds That Remain Unaffected by *Banister* ................................................................. 47

     1.     Judge Eisele Properly Denied the Rule 59(e) Motion Because Lee Used It to Introduce New Evidence and Legal Theories That Were Available to Him Prior to the Denial of His § 2255 Motion .......... 48

     2.     The Ineffective-Assistance Claim Lee Seeks to Raise Lacks Merit .......................................................... 51

          a.     The Psychopathy Testimony at Lee's Trial Was, by Lee's Own Account, Correct and Accurate ............................................................... 51

          b.     The Psychopathy Testimony Was Admissible ..... 54

          c.     Lee's Counsel Did Not Perform Deficiently by Pursuing a Strategy to Exclude the Psychopathy Evidence That Differs from the Strategy Lee Now Claims His Counsel Should Have Adopted ........................................... 56

     3.     Lee's Hearing-Related Arguments Fail for Similar Reasons ......................................................................... 61

CONCLUSION ................................................................................. 63

CERTIFICATE OF SERVICE ........................................................... 64

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA,    )
    )
    )
    v.    )    Case No. 4:97-CR-00243-KGB
    )    (Capital Case)
    )
DANIEL LEWIS LEE.    )

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR RELIEF FROM JUDGMENT**

The government submits this response to defendant Daniel Lewis Lee's motion for relief from judgment under Federal Rule of Criminal Procedure 60(b)(6). *See* Dkt. 1352 (Rule 60 motion); Dkt. 1377 (supplement to Rule 60 motion). The motion should be denied for the reasons stated below.

**INTRODUCTION**

Defendant Daniel Lewis Lee was convicted and sentenced to death more than 20 years ago for the murders of William and Nancy Mueller and their eight-year-old daughter Sarah Powell. He received extensive review of his conviction on direct appeal and on collateral review under 28 U.S.C. § 2255, and his convictions and sentence were repeatedly affirmed. This motion is one among an array of recent legal filings in which Lee attempts to avoid or delay his execution, which had been scheduled for December 9, 2019, and is now scheduled for July 13, 2020.

1

In this motion, Lee once again seeks to reopen his § 2255 proceedings pursuant to Federal Rule of Civil Procedure 60(b), in this instance relying on the Supreme Court's recent decision in *Banister v. Davis*, __ S. Ct. __, 2020 WL 2814300 (June 1, 2020). Lee's motion is an uncertified successive § 2255 motion that attacks this Court's prior resolution on the merits, and therefore it must be dismissed for lack of jurisdiction. But even assuming that is not the case, Lee fails to establish extraordinary circumstances that would justify relief from judgment under Federal Rule of Civil Procedure 60(b)(6).

## STATEMENT

### I.    Procedural Overview

Lee committed three murders in 1996 and was convicted of three capital offenses and sentenced to death. The Eighth Circuit reversed an order from this Court (Hon. G. Thomas Eisele) granting Lee a new sentencing hearing, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002), and then affirmed Lee's conviction and sentence on direct appeal, *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005).

Lee filed a motion collaterally attacking his conviction and sentence under 28 U.S.C. § 2255. Dkt. 1118. This Court denied the motion. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008). The Court also denied a motion for reconsideration under Federal Rule of

2

Civil Procedure 59(e). *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). The Eighth Circuit then affirmed, *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), and the Supreme Court denied certiorari, *Lee v. United States*, 135 S. Ct. 72 (2014).

This Court and the Eighth Circuit subsequently rejected additional attempts by Lee to attack his conviction and sentence. In 2014, the Court (Hon. J. Leon Holmes, who took over the case after Judge Eisele's retirement) denied Lee's first motion for relief from judgment under Federal Rule of Civil Procedure 60, concluding that it was an unauthorized second or successive § 2255 motion, *United States v. Lee*, No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014), and the Eighth Circuit affirmed, *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015), *cert. denied*, 137 S. Ct. 1577 (2017). In 2019, the Court denied on similar grounds another motion—ostensibly filed as a new § 2255 motion and, alternatively, as a motion for relief from judgment under Federal Rule of Civil Procedure 60. Dkt. 1313. The Eighth Circuit denied a certificate of appealability. *Lee v. United States*, No. 19-2432 (8th Cir.) (Nov. 4, 2019).

In July 2019, the government set December 9, 2019, as the date to carry out Lee's capital sentence, and Lee subsequently filed an array of new lawsuits and motions attacking his sentence and conviction. Lee filed a habeas petition under 28 U.S.C. § 2241 in the Southern District of Indiana,

the district of his confinement, in which he asserted claims that he had unsuccessfully attempted to raise in Rule 60 motions in this Court. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) (filed Sept. 26, 2019). He sought a preliminary injunction in a lawsuit in the district court for the District of Columbia challenging the government's execution protocol. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (D.D.C.) (Sept. 27, 2019). He filed a lawsuit in the District of Columbia challenging the adequacy of his clemency proceedings. *Lee v. Barr*, No. 1:19-CV-3611 (D.D.C.) (Dec. 2, 2019). He filed an application in the Eighth Circuit seeking permission to file a second or successive § 2255 motion raising new claims. *Lee v. United States*, No. 19-3576 (8th Cir.) (filed on Dec. 4. 2019 and denied on Jan. 7, 2020). And three calendar days (and one business day) before his execution, Lee filed a third Rule 60 motion for relief from judgment in this Court—the instant motion—seeking to reopen the Court's 2010 denial of his Rule 59(e) motion for reconsideration of his § 2255 motion. Dkt. 1352.

Three courts, including this Court, entered orders barring Lee's execution from going forward. The district court in the protocol-litigation case entered a preliminary injunction. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (D.D.C.) (Nov. 20, 2019). The Indiana district court entered a stay pending the disposition of Lee's § 2241 habeas petition. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) (Dec. 5, 2019). And this Court

4

entered an order staying Lee's execution pending the Court's disposition of the instant Rule 60 motion, filed three calendar days before Lee's scheduled execution. Dkt. 1356, at 3-4. The Court also granted Lee's request to hold the motion in abeyance pending the Supreme Court's decision in *Banister v. Davis*, No. 18-6943 (S. Ct.). Dkt. 1356, at 2.

The Seventh Circuit vacated the stay entered in the habeas case prior to Lee's scheduled execution date, *Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019), but the preliminary injunction in the protocol litigation stayed in effect, as did this Court's stay order, and therefore Lee's execution did not go forward. The government appealed the preliminary injunction and this Court's stay order, and on January 29, 2020, while those appeals were pending, Lee filed in this Court yet another (his fourth) Rule 60 motion seeking to reopen his first § 2255 motion, asserting new claims. Dkt. 1363. That motion remains pending.

On March 20, 2020, the district court in the Southern District of Indiana denied Lee's § 2241 habeas petition. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) (Mar. 20, 2020). Lee subsequently filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which remains pending.

On April 7, 2020, the D.C. Circuit vacated the preliminary injunction in the execution-protocol litigation. *In re Federal Bureau of Prisons' Execution*

*Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020). That court also denied Lee's petition for rehearing en banc. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-5322 (D.C. Cir.) (May 15, 2020). Lee has filed a petition for a writ of certiorari in the Supreme Court in that case, as well as an application to recall and stay the mandate, and those filings remain pending. *See Roane v. Barr*, No. 19-1348 (S. Ct.) (filed June 5 and 10, 2020, respectively).

On June 1, 2020, the Eighth Circuit vacated the order this Court entered staying Lee's execution pending the Court's adjudication of Lee's Rule 60(b) motion (Lee's third Rule 60 motion, filed three calendar days before his scheduled execution). *United States v. Lee*, __ F.3d __, No. 19-3618, 2020 WL 2832118 (8th Cir. June 1, 2020). That same day, the Supreme Court issued its decision in *Banister v. Davis*, __ S. Ct. __, 2020 WL 2814300 (June 1, 2020). Lee subsequently filed a supplement to his Rule 60(b) motion asserting that the motion is "now ripe for review." Dkt. 1377, at 2.

## II.    The Murders

Lee and Chevie Kehoe were members of a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples' Resistance, which Kehoe founded for the purpose of establishing an independent nation of white supremacists in the Pacific Northwest. *Lee*, 374 F.3d at 641. In January 1996, expecting to find valuable property, Kehoe and

6

Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. *Lee*, 374 F.3d at 641. When Mueller arrived home with his wife Nancy and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. *Id.* at 641-42. After taking weapons worth about $30,000 and $50,000 in cash and coins, Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Lee*, 2008 WL 4079315, at *4. Kehoe and Lee taped rocks to the bodies and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42; *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003).

## III.  Trial and Sentencing

Lee and Kehoe were charged with conducting and conspiring to conduct a racketeering enterprise through a pattern of racketeering, in violation of 18 U.S.C. § 1962(c) and § 1962(d), and three counts of capital murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). Lee and Kehoe were tried together before a jury and found guilty on all counts. *See Lee*, 2008 WL 4079315, at *2.

Separate hearings were then held to determine whether each defendant should receive the death penalty for the three capital murders. *See* Tr. 7169-

7

7337 (Kehoe sentencing hearing); Tr. 7367-8022 (Lee sentencing hearing). The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593, required the jury to determine, at each hearing, whether aggravating factors proved by the government sufficiently outweighed any mitigating factors proved by the defendant to justify the death penalty. *See generally United States v. Purkey*, 428 F.3d 738, 749, 761 (8th Cir. 2005).

The emphasis of the government's case at Lee's sentencing hearing, held in May 1999, was the aggravating factor of his future dangerousness. *See* Tr. 7379-84. The government introduced evidence about Lee's involvement in a prior murder in 1990, *see* Tr. 7394-96, 7401-07, 7412-15, 7441-46, and testimony about Lee's violent behavior in prison, *see* Tr. 7462-67. The government argued that this evidence, and the evidence of Lee's offense conduct introduced during the guilt phase of the trial, established that Lee would present a danger to others in the future. Tr. 7381, 7956-75.

The emphasis of the defense presentation was that Lee suffered from mental impairment due to his troubled upbringing. *See, e.g.*, Tr. 7385-88. As relevant here, Lee called an expert witness, Mark Cunningham, Ph.D., who testified that Lee "experienced many traumatic and adverse life experiences that fundamentally shaped him . . . neurologically, psychologically, socially, emotionally and ethically, and that . . . contributed to his involvement in this offense." Tr. 7742.

The topic of psychopathy came up during the government's cross-examination of Dr. Cunningham. *See, e.g.*, Tr. 7754. Before trial, the government had disclosed an expert report from Thomas Ryan, Ph.D., containing a neuropsychological evaluation and also a risk assessment that evaluated Lee's future dangerousness using, among other things, a psychological test called the Hare psychopathy checklist revised (PCL-R). *See* Tr. 7755, 7825-27.[1] On cross-examination of Dr. Cunningham, the government elicited testimony that "psychopath" is a term that is recognized within forensic psychology and is "measured by a structured interview," the PCL-R, developed by respected psychologist Dr. Robert Hare and "widely researched within the field of forensic psychology." Tr. 7754; *see* Tr. 7783-84, 7795-97.

In the midst of Dr. Cunningham's cross-examination, Lee made a motion in limine (orally and then in writing) asking the Court to exclude testimony by Dr. Cunningham (during cross-examination) or Dr. Ryan (during rebuttal) about psychopathy or Lee's future dangerousness, arguing

---

[1] The government asked Dr. Ryan to perform a risk assessment because it thought it would be relevant for rebuttal, given that it had been informed by the defense that Dr. Cunningham would be performing a risk assessment that evaluated Lee's future dangerousness. 5/13/1999 Tr. 22-23. Dr. Cunningham started a risk assessment but did not complete it, purportedly because he did not receive certain information he requested from the Bureau of Prisons. *Id.* at 19-22.

9

that those were improper topics for cross-examination or rebuttal because Dr. Cunningham had not performed a risk assessment or testified about Lee's future dangerousness. Tr. 7746-48, 7755-58; 5/13/1999 Tr. 1-29; *see Lee*, 274 F.3d at 489-90. The government responded that it did not intend to present evidence about Dr. Ryan's risk assessment of Lee; it argued that, nonetheless, Dr. Cunningham's direct testimony had opened the door to some questioning about psychopathy because Dr. Cunningham had testified that certain background facts about Lee had contributed to Lee's behavior, while Dr. Ryan had relied on the same facts to conclude that Lee was a psychopath. 5/13/1999 Tr. 2-7; *see id.* at 2 ("The finding that Lee is a psychopath arises from the same conduct . . . detailed by Dr. Cunningham."). The government argued that the psychopathy diagnosis was "severable" from Dr. Ryan's risk assessment and that the psychopathy diagnosis was relevant because it showed that there was "another bona fide psychological explanation" for what caused Lee's behavior that differed from the explanation provided by Dr. Cunningham. *Id.* at 23-24. The Court determined that it would permit the government to proceed with questioning Dr. Cunningham about psychopathy but would "cut off" questioning if it exceeded the permissible scope of cross-examination. *Id.* at 27.

After cross-examination continued, Dr. Cunningham further explained the term "psychopathy" and the PCL-R. Tr. 7795-98. The government elicited

10

testimony that "[t]here's a greater risk of violence in the community with [a] high score" on the PCL-R, but Dr. Cunningham specifically testified that it had "not been clearly demonstrated that there is evidence that a high score is associated with violence in an institution and in fact there are some studies that don't find any association between the two." Tr. 7807. Dr. Cunningham reiterated several times that the PCL-R is predictive of "criminal activity and violence in the community" but that "[t]he instrument has not yet been shown to be predictive of correctional institutional violence." Tr. 7812; *see id.* at 7806-19.

The government elicited testimony that Dr. Cunningham had reviewed Dr. Ryan's report—and in fact on direct examination had testified about Lee's score on one of the tests that Dr. Ryan had administered to Lee—and that Dr. Ryan had "identified [Lee] by his scoring of the PCL-R as falling into the psychopathy range." Tr. 7825-28. Dr. Cunningham testified that he himself had not used the PCL-R to evaluate Lee. Tr. 7827-28. Dr. Cunningham stated that he had used the PCL-R to examine a capital defendant in one case, in 1996, because at the time he "was not adequately familiar with how little research there was associated with the PCL-R with institutional conduct," and so he thought it "had predictive significance for institutional behavior." Tr. 7828. According to Dr. Cunningham, however, he subsequently "studied it more thoroughly and became aware of substantial weaknesses in that part of

11

the research, and as a result [he] quit using the instrument in capital cases."
*Id.* Dr. Cunningham testified that he "did not find it to be adequately
research supported to tell me . . . how is this person going to act in prison, or
how is he going to behave on old age parole, because there's insufficient
research with that group as well." Tr. 7828-29. As a result, Dr. Cunningham
"discontinued using" the PCL-R in capital cases. Tr. 7829.

Dr. Cunningham's cross-examination then ended, and the Court
confirmed that Lee's counsel had interposed an ongoing objection to cross-
examination of Dr. Cunningham about psychopathy. Tr. 7832. The Court
stated that it had "probably permitted the government to go much farther on
cross-examination than is proper." Tr. 7836. The Court then granted Lee's
"motion in limine with respect to the issue of psychopathy, the Hare
psychopathy test, and any reference to the defendant being a, quote,
psychopath, unquote, on the basis that such would not be proper rebuttal."
Tr. 7836.

Accordingly, when the government subsequently called Dr. Ryan as a
rebuttal witness, he did not testify about psychopathy, let alone provide an
opinion that Lee's score on the PCL-R indicated that he posed a risk of future
dangerousness while in prison. *See* Tr. 7906-31. Dr. Ryan instead testified
about other topics, including statements by Lee demonstrating a lack of

12

remorse and his conclusion that Lee did not suffer from brain damage. *See, e.g.*, Tr. 7907, 7931.

The jury found that Lee would present a danger to others in the future, *see* Tr. 8017, 8020, and largely rejected Lee's mitigation case, with one or more of the jurors finding the existence of only five of the 14 mitigating factors claimed by Lee, Tr. 8017-19. After weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for each of the three murder charges. Tr. 8019-22.

## IV.    Post-Trial Motion for a New Sentencing Hearing

This Court granted Lee's post-trial motion for a new sentencing hearing, concluding, as relevant here, that the cross-examination of "Dr. Cunningham went well beyond the mitigation evidence raised by Dr. Cunningham on direct and ultimately became an expanded encore presentation of the Government's case for future dangerousness." *United States v. Lee*, 89 F. Supp. 2d 1017, 1028 (E.D. Ark. 2000). The Court found that, "[w]hile the psychopath evidence may, to a certain extent, have been proper cross-examination as it was an alternate explanation for [Lee's] alleged violence, the presentation of the psychopath evidence turned into future dangerousness and risk assessment evidence, thus going beyond the scope of proper cross-examination." *Id.* at 1029-30. Because "Lee chose neither to perform a risk assessment analysis nor to present rebuttal

evidence on the future dangerousness aggravating factor," the Court concluded, he was "ill-equipped to handle the Government's discussion of psychopathy." *Id.* at 1030. The Court held that, "[i]n failing to restrict the Government's statements and inquiries regarding psychopathy more than it did, the Court erred, and, as a result, Defendant Lee did not receive a fair sentencing hearing." *Id.* at 1031.

The Eighth Circuit reversed and reinstated Lee's death sentence, concluding, as relevant here, that the district court did not err in allowing the government to elicit testimony from Dr. Cunningham "on the issue of psychopathy," even if the testimony exceeded the scope of Dr. Cunningham's direct examination. *Lee*, 274 F.3d at 495. The Court explained that the "Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings" and allows a district court to "exclude evidence only 'if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" *Id.* at 494 (quoting 18 U.S.C. § 3593(c)) (emphasis omitted). The Court concluded that "Lee's potential psychopathy was probative of his future dangerousness." *Id.* at 495. The Court further concluded that no "threat of unfair prejudice" existed because "Lee opened the door to testimony concerning psychological diagnosis" by "introducing a mental health expert in defense." *Id.*

14

## V.    Collateral Review Under § 2255

### A.    Lee's § 2255 Motion

After the Eighth Circuit affirmed Lee's conviction and sentence on direct appeal, *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), and the Supreme Court denied certiorari, *Lee v. United States*, 545 U.S. 1141 (2005), Lee filed a motion for postconviction relief under 28 U.S.C. § 2255. Dkt. 1118. This Court permitted Lee to conduct discovery, allowed him to supplement his § 2255 motion after conducting discovery (Dkt. 1139), and before ruling gave Lee "one final opportunity to put before the Court additional legal authority or argument in support of the grounds for relief currently before the Court." Dkt. 1156. Ultimately, as relevant here, Lee's § 2255 motion asserted three ineffective-assistance-of-counsel claims connected to the testimony of Dr. Cunningham and Dr. Ryan during the sentencing hearing. Dkt. 1118, at 33-34.

First, Lee argued that he received ineffective assistance of counsel because his lawyers "failed to fully and continuously object during the government's improper cross-examination" of Dr. Cunningham. Dkt. 1118, at 33. According to Lee, "the government exceeded the proper scope of cross examination and made Dr. Cunningham their own expert witness on the issue of [his] future dangerousness." *Id.* Second, Lee asserted that he received ineffective assistance because his counsel used Dr. Cunningham, instead of a

lay witness, to offer testimony about Lee's "life and family history." Dkt. 1118, at 33. According to Lee, this strategy "allowed the government to open the door to cross examination on the inflammatory issue of 'psychopathy.'" *Id.* at 34. Third, he argued that he received ineffective assistance because his counsel "failed to object to Dr. Ryan's testimony as improper rebuttal given that Dr. Cunningham never offered a diagnosis" and "failed to object to the submission of Dr. Ryan's report especially since it included a risk assessment, something that Dr. Cunningham had not included in his testimony." Dkt. 1118, at 34.[2] Lee stated in a footnote that he was prepared to offer evidence at a hearing that Dr. Ryan no longer believed that the PCL-R is "an appropriate instrument to be utilized in evaluating the future danger of capital defendants." *Id.* at 34 n.14.

## B.    This Court's Denial of Lee's § 2255 Motion

This Court concluded that a hearing was not necessary to decide Lee's § 2255 motion and denied it on the merits. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *8 (E.D. Ark. Aug. 28, 2008). As relevant here, the

---

[2] This Court characterized Lee's claim as asserting that his "counsel erred by allowing Dr. Ryan's report, which contained a risk assessment, to be admitted." *Lee*, 2008 WL 4079315, at *47. Dr. Ryan's report was not admitted into evidence at the sentencing hearing, however, and Lee's § 2255 motion instead asserted that his lawyers erroneously failed to object to the report's "submission," Dkt. 1118, at 34, although he did not explain what he meant by that term.

Court rejected the three ineffective-assistance claims linked to Dr. Cunningham's and Dr. Ryan's testimony. *Id.* at \*47-\*48.

First, with respect to Lee's claim that "his counsel erred in allowing the Government to exceed the scope of cross-examination and make Dr. Cunningham a witness for the prosecution as to [his] future dangerousness," the Court concluded that Lee's "[t]rial counsel performed exactly as [Lee] now argues that they should have—by interposing a continuing objection to said cross-examination of Dr. Cunningham." *Lee*, 2008 WL 4079315, at \*46. The Court further concluded that "[t]he subject of Dr. Cunningham's testimony has received extensive scrutiny, both post-trial and on appeal," and "the merits of this issue, which have been ruled on by the Eighth Circuit, may not be revisited on collateral review." *Id.*

Second, the Court concluded that it was a reasonable trial strategy to have Dr. Cunningham, rather than a lay witness, present Lee's "family and social history including a history of prior mental diagnoses." *Lee*, 2008 WL 4079315, at \*47. The "strategy provided Lee with the benefit of having a certified forensic psychologist detail his family and social history, which allowed the expert to summarize such history with broad sweeping opinions which were difficult to counter." *Id.* In addition, the Court concluded, Lee's "trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination failed." *Id.* "Trial counsel

17

attempted to limit the risk of damaging cross-examination of Dr. Cunningham by not having him perform any risk assessment or offer any testimony on direct as to a formal diagnosis or future dangerousness," the Court concluded, and "[i]t was certainly not foreseeable that this Court would allow the Government to expand the cross-examination as far as it did." *Id.*

Third, the Court found no merit to Lee's claim that he received ineffective assistance because his counsel failed to object to Dr. Ryan's rebuttal testimony and report. *Lee*, 2008 WL 4079315, at *47-*48. The court concluded that Lee's "premise that Dr. Ryan was offered as a rebuttal witness to Dr. Cunningham is flawed, since a fair reading of Dr. Ryan's testimony indicates that he was called primarily to counter the opinion testimony of Petitioner's expert, Kevin Joseph Bianchini, Ph.D," who "diagnosed Lee with 'nonpsychotic mental disorder following organic brain damage.'" *Id.* at *48. The Court also explained that Lee's counsel preserved an objection to Dr. Ryan's testimony about Lee's level of remorse, and the Eighth Circuit had rejected the claim on the merits, finding the testimony admissible. *Id.*

Finally, the Court determined that "to the extent that [Lee] claims counsel should have raised additional objections to Dr. Ryan's testimony, [he] can not demonstrate prejudice." *Id.* "In light of this Court's prior decision to set aside the death verdict and the Eighth Circuit's subsequent holding that the evidence presented through Dr. Cunningham and Dr. Ryan as to Lee's

18

psychopathy and lack of remorse did not unfairly prejudice Lee," the Court concluded, "it is difficult to see how any additional objection that [Lee's] counsel could have made to Dr. Cunningham's or Dr. Ryan's testimony could have altered the outcome." *Id.*

### C.    Lee's Rule 59(e) Motion for Reconsideration

Lee filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), asserting numerous grounds for rehearing. *See* Dkt. 1165. As relevant here, Lee argued for the first time that he received ineffective assistance of counsel because his trial counsel did not object to the psychopathy testimony elicited during cross-examination of Dr. Cunningham as "scientifically invalid and non-probative of the issue of future dangerousness." Dkt. 1165, at 20; *see id.* at 19-46.[3] Lee attached to his motion affidavits from psychologists (dated May 2000) stating that the current research was insufficient to conclude that the PCL-R could predict future dangerousness in prison. Dkt. 1165-7; *see also* Dkt. 1165-6 (affidavit from psychologist dated November 2003). Lee also attached an affidavit from Dr. Ryan stating that, as of 2000 (after the 1999 sentencing hearing), he had

---

[3] In his § 2255 motion, Lee made a different claim about cross-examination of Dr. Cunningham, asserting that "the government exceeded the proper scope of cross examination" and that his "counsel failed to fully and continuously object during the government's improper cross-examination." Dkt. 1118, at 33.

determined it was not appropriate to use the PCL-R to assess an individual's future dangerousness in prison. Dkt. 1165-4.[4]

This Court denied the reconsideration motion. *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174, at \*1 (E.D. Ark. Dec. 22, 2010). The Court explained that Rule 59(e) motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence" and "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (quoting *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)). The Court also concluded that it "should examine" Lee's Rule 59(e) motion to determine whether it amounted to an impermissible "successive" § 2255 motion. *Id.*; *see* 28 U.S.C. § 2255(h) (restrictions on "second or successive" § 2255 motions).

The Court addressed "on the merits" Lee's claim that "the Court applied the wrong standard in determining whether an evidentiary hearing was warranted" for the § 2255 motion. *Lee*, 2010 WL 5347174, at \*2. The Court explained that it "did not apply an affidavit requirement in considering

---

[4] Consistent with Dr. Cunningham's testimony at Lee's sentencing hearing, Tr. 7812, 7828-29, these affidavits stated that the PCL-R is predictive of future dangerousness in the community but that scientific studies had not shown a statistically significant relationship between a diagnosis as a psychopath using the PCL-R and acts of physical violence while in prison, *see, e.g.*, Dkt. 1165-6, at 2; Dkt. 1165-7, at 3-4.

whether there was a need for an evidentiary hearing" and instead had "applied well established Eighth Circuit law." *Id.* at *4. The Court explained that it had provided Lee with ample opportunity to "expand the record as [he] wished," *id.* at *2, and "submit anything he wished," *id.* at *4, before taking up the merits of Lee's § 2255 motion. The Court found that Lee "offer[ed] no explanation for why" the 65 pages of affidavits Lee submitted with his Rule 59(e) motion, which included material on the lack of research on the reliability of the PCL-R for predicting future dangerousness in prison, "were not provided to the Court before it ruled on his original motion for § 2255 relief." *Id.* at *5. "Had they been," the Court stated, it "might have determined that an evidentiary hearing was required," but "existing legal principles" foreclosed the Court from "now" considering that information. *Id.*

Turning to the ineffective-assistance claim at issue in the present motion, the Court determined that, although Lee's claims "related to Dr. Ryan . . . should, in the Court's view, be deemed successive, they are also lacking in merit." *Lee*, 2010 WL 5347174, at *5.

The Court noted that Lee's Rule 59(e) motion asserted that "his counsel was ineffective for failing to fully and adequately object to the psychopathy evidence presented during the cross-examination of defense expert Dr. Mark Cunningham" on the ground that psychopathy is not a valid predictor of future dangerousness in capital cases. *Lee*, 2010 WL 5347174, at *5. The

21

Court explained that Lee's § 2255 motion "included only one sentence referencing this argument," in a footnote, whereas the Rule 59(e) motion "devotes over 25 pages to this argument." *Id.* at *6. "Clearly," the Court observed, "the theory is much more developed now than the cursory reference made in requesting 2255 relief," yet Lee did "not explain why the information he now includes was not included in connection with his original petition." *Id.* The Court determined that Lee's "conclusory statement that Dr. Ryan, subsequent to his testimony in this case, stopped using the PCL-R to evaluate future dangerousness was not sufficient to place the Court on notice of the full argument that [Lee] now presents." *Id.*

The Court also concluded that "the claim, even if considered on the merits, is problematic." *Lee*, 2010 WL 5347174, at *6. The Court explained that according to Dr. Ryan's affidavit, he revised his views in the "Spring of 2000," but Lee was sentenced in May 1999, and Lee "ha[d] not explained" how his sentencing counsel could be deficient in failing to challenge the "scientific underpinnings" of the PCL-R "almost one year before Dr. Ryan himself rejected the PCL-R as an effective predictor of future conduct." *Id.*

In closing, the Court stated that Lee's reconsideration motion had not shown any "manifest errors of law or fact" and that many of his claims were "either reiterations of previous arguments or attempts to introduce new

22

evidence or legal theories which could have been raised prior to the entry of judgment." *Lee*, 2010 WL 5347174, at \*6.

### D.    Lee's § 2255 Appeal

This Court and the Eighth Circuit granted certificates of appealability with respect to two issues not relevant here but denied certificates of appealability on all other issues. *See Lee*, 715 F.3d at 217. The Eighth Circuit specifically denied a certificate of appealability on whether Lee's sentencing counsel provided ineffective assistance because they failed to seek exclusion of testimony about "psychopathy and concomitant predisposition towards violence" as "scientifically invalid." Motion to Expand Certificate of Appealability at 70-90, *United States v. Lee*, No. 11-1380 (8th Cir.) (filed June 20, 2011); *see Lee*, 2020 WL 2832118, at \*2.

The Eighth Circuit then affirmed the denial of Lee's § 2255 motion. *Lee*, 715 F.3d at 217. As relevant here, although the Court had denied a certificate of appealability on the issue, Lee argued that "the government's evidence of future dangerousness was premised on junk science." *Id.* at 224. The Eighth Circuit determined that the issue was "beyond the scope of our certificate of appealability" but went on to state that "we have previously concluded that there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing." *Id.* The Court "conclude[d] that the jury properly considered the aggravating factors

23

advanced by the government in determining that Lee should be sentenced to death." *Id.*

## VI.   Lee's Prior Rule 60(b) Motion

In 2013, Lee filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), again asserting that he received ineffective assistance at sentencing because his counsel failed to challenge, as "unreliable and scientifically invalid," testimony that diagnosis as a psychopath demonstrates a risk of future dangerousness in prison. Dkt. 1230, at 46; *see id.* at 29-48. Lee argued that he should be permitted to raise this ineffective-assistance claim in a Rule 60(b) motion because the lawyers who represented him in his § 2255 proceedings negligently failed to present facts in support of that claim in the § 2255 motion and instead provided those facts for the first time in a Rule 59(e) reconsideration motion. Dkt. 1230, at 13-15, 20-22; *see, e.g.*, Dkt. 1230, at 14 ("In the subsequently filed Rule 59(e) motion for reconsideration, § 2255 counsel provided the Court with factual support and attached declarations in support of the [ineffective-assistance] claim."); Dkt. 1230, at 20 ("[T]here was no valid reason for § 2225 counsel to wait until after the judgment was issued to proffer relevant declarations and supporting facts for the [ineffective-assistance] claim.").

This Court denied Lee's motion for lack of jurisdiction, concluding that the motion amounted to an uncertified second or successive motion for

collateral relief under 28 U.S.C. § 2255, *Lee*, 2014 WL 1093197, at *4-*5, and

the Eighth Circuit affirmed, *Lee*, 792 F.3d at 1022. The Eighth Circuit noted

Lee's acknowledgement "that his counsel made the [ineffective-assistance]

claim in his initial § 2255 petition" but "omitted the required evidentiary

support." *Id.* at 1023. The Court then explained that, under the Supreme

Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), a Rule 60(b)

motion seeking to reopen a claim to cure "omissions by federal habeas

counsel" is a second or successive § 2255 motion. *Id.* at 1023-24.

## VII.   Habeas Petition

In September 2019, Lee filed a habeas petition under 28 U.S.C. § 2241

in the Southern District of Indiana, the district of his confinement, in which,

as relevant here, he asserted the same ineffective-assistance claim that he

had raised in the prior Rule 59(e) and Rule 60(b) motions in this case, and

that he now, as explained below, attempts to raise once again in the instant

Rule 60(b) motion. Specifically, Lee claimed that he received ineffective

assistance because his counsel failed to object to questioning of Dr.

Cunningham on the topic of psychopathy on the ground that psychopathy is a

scientifically invalid predictor of future dangerousness in prison. *Lee v.*

*Warden*, No. 2:19-CV-468, Dkt. 1, at 7-18 (S.D. Ind.). Lee asserted that he

could raise this ineffective-assistance claim in a § 2241 habeas petition

because the lawyers who represented him in his § 2255 motion "bungled the

25

litigation" by "fail[ing] to present the district court with evidence available to establish" the ineffective-assistance claim even though "they knew there was evidence available." *Id.*

On March 20, 2020, the district court in the Southern District of Indiana denied Lee's § 2241 habeas petition. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) (Mar. 20, 2020). Lee's Rule 59(e) motion for reconsideration of that ruling remains pending.

## VIII. The Present Rule 60(b) Motion

On December 6, 2019, three calendar days (and one business day) before his scheduled execution, Lee filed the present Rule 60(b) motion, again attempting to revive the ineffective-assistance claim that he had asserted in his Rule 59(e) motion in September 2008, in his Rule 60(b) motion in 2013, and in his habeas petition in the Southern District of Indiana earlier in 2019. Specifically, the motion sought to assert the claim that Lee's lawyers were ineffective at sentencing for failing to challenge the cross-examination of Dr. Cunningham about psychopathy on the ground that "there was no scientific basis in 1999 for claiming that the PCL-R was a valid predictor of future dangerousness in prison." Dkt. 1352, at 2.

Lee argued that when this Court ruled on his Rule 59(e) motion to reconsider the denial of his § 2255 motion, it erred in assessing whether the motion amounted to a "successive" § 2255 motion for purposes of § 2255(h)'s

26

restrictions on second or successive § 2255 motions. Dkt. 1352, at 3. According to Lee, a Rule 59(e) motion should never be subject to the statutory restrictions on second or successive § 2255 motions. *Id.* at 4. Lee asserted that this Court should reopen the judgment denying his Rule 59(e) motion so that the motion may be considered anew. *Id.* at 4-6.

Lee accompanied his Rule 60(b) motion with a motion to stay his execution (Dkt. 1353) pending the Supreme Court's ruling in *Banister v. Davis*, No. 18-6943 (S. Ct.), a case in which the court granted certiorari to determine whether a timely Rule 59(e) motion should be subject to the statutory restrictions on second or successive collateral attacks. Lee asserted that if the Supreme Court were to rule in the petitioner's favor in *Banister*, this Court would be "required to" reopen the judgment and "reconsider the previously-denied Rule 59(e) motion." Dkt. 1353, at 2. Lee argued that a stay was appropriate because of an "'appreciable chance'" that he did not receive full review of his Rule 59(e) motion due to this Court's application of the statutory restrictions on second or successive § 2255 motions. *Id.* at 2-4.

This Court granted Lee's request for a stay. Dkt. 1356. Relying on *Chambers v. Bowersox*, 197 F.3d 308 (8th Cir. 1999) (per curiam), the Court concluded that *Banister* might support reconsideration of Lee's previously denied Rule 59(e) motion and therefore without a stay an "'appreciable

27

chance'" existed that Lee would be executed without receiving full review of his Rule 59(e) motion. *Id.* at 2-3.

The Eighth Circuit vacated the stay, concluding that this Court "did not apply the correct legal standard." *Lee*, 2020 WL 2832118, at *2. "An appreciable chance that *Banister* could allow for additional judicial consideration of Lee's previously denied Rule 59(e) motion was not sufficient to justify a stay of execution," the Eighth Circuit concluded. *Id.* Rather, this Court had to evaluate whether Lee satisfied "the ordinary requirements for a stay," which required Lee to "show a significant possibility of success on the merits." *Id.*

On the same day the Eighth Circuit vacated this Court's stay order, the Supreme Court issued its decision in *Banister*, holding that a Rule 59(e) motion to alter or amend a habeas court's judgment is not a successive petition and therefore is not subject to the gatekeeping provisions for second or successive habeas petitions. *Banister*, 2020 WL 2814300, at *2.

Lee then filed in this Court a supplement to his Rule 60(b) motion reiterating and augmenting his arguments that *Banister* creates "extraordinary circumstances" that warrant relief from judgment under Rule 60(b). Dkt. 1377. Lee specifically requests that this Court reopen his § 2255 proceedings so that the Court may consider his Rule 59(e) reconsideration

28

motion "anew" without regard to the gatekeeping provisions for second or successive § 2255 motions. *Id.* at 20.

## APPLICABLE LEGAL STANDARDS

Under statutory provisions enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal defendant can file a second or successive § 2255 motion only if a court of appeals certifies that the motion relies on previously undiscoverable facts that would establish the defendant's innocence or a new rule of constitutional law that the Supreme Court has made retroactive on collateral review. 28 U.S.C. § 2255(h); *see United States v. Lee*, 792 F.3d 1021, 1023 (8th Cir. 2015). A motion for relief from judgment under Federal Rule of Civil Procedure 60(b) is subject to these gatekeeping procedures if the motion, in substance, amounts to a second or successive § 2255 motion. *Id.* The availability of relief from judgment under Rule 60(b) in collateral-review proceedings "threatens serial habeas litigation," and "without rules suppressing abuse, a prisoner could bring such a motion endlessly." *Banister v. Davis*, __ S. Ct. __, 2020 WL 2814300, at *8 (June 1, 2020).

A Rule 60(b) motion is a second or successive § 2255 motion subject to AEDPA's gatekeeping provisions if it attacks the federal court's previous "determination that there exist or do not exist grounds entitling" the defendant to collateral relief and "asks for a second chance to have the merits

29

determined favorably." *Gonzalez v. Crosby*, 545 U.S. 524, 532 & nn.4-5 (2005). This occurs if a Rule 60(b) motion "seeks to add a new ground for relief," for example, or if it "asserts that a previous ruling regarding one of those grounds was in error." *Id.* at 532 & n.4. On the other hand, a Rule 60(b) motion that "attacks[] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the" § 2255 proceedings should not be treated as a second or successive § 2255 motion. *Id.* at 532. A motion attacks a defect in the integrity of the § 2255 proceedings if it asserts error in a "ruling which precluded a merits determination," such as the denial of a § 2255 motion because of a "procedural default" or a "statute-of-limitations bar." *Id.* at 532 n.4.

Even if a defendant's Rule 60(b) motion does not amount to a second or successive § 2255 motion—and therefore is not subject to the AEDPA's gatekeeping procedures for successive § 2255 motions—the defendant must nonetheless establish that he is entitled to relief under Rule 60(b). *See Gonzalez*, 545 U.S. at 535-36. Here, Lee seeks relief from judgment under Federal Rule of Civil Procedure 60(b)(6), which is a catch-all provision that permits a court to relieve a party from a final judgment for "any . . . reason that justifies relief" other than the more specific circumstances covered by the preceding five subsections. Fed. R. Civ. P. 60(b)(6); *see Gonzalez*, 545 U.S. at 528-29. The Supreme Court has "held that relief under Rule 60(b)(6) is

30

available only in 'extraordinary circumstances.'" *Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017) (quoting *Gonzalez*, 545 U.S. at 535). And the Supreme Court has instructed that "[s]uch circumstances will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

"In determining whether extraordinary circumstances are present, a court may consider a wide range of factors." *Buck*, 137 S. Ct. at 778; *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (explaining that Rule 60(b)(6) "does not particularize the factors that justify relief"). Although there are no rigid rules for determining "extraordinary circumstances," cases applying Rule 60(b)(6) establish relevant principles. First, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *see Gonzalez*, 545 U.S. at 536-37 (concluding that a change in decisional law did not establish extraordinary circumstances); *see generally* 12 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 60.48[5] (3d ed. 2013). Second, a viable claim for relief is a requirement for showing extraordinary circumstances. *Buck*, 137 S. Ct. at 780. In other words, a movant warrants relief from judgment only if he can "show that granting the motion will not be an 'empty exercise' by demonstrating that the underlying claim for relief is likely to succeed on the merits." *Caisse v. DuBois*, 346 F.3d 213, 215 (1st Cir. 2003) (per curiam); *see*

31

*United States v. Ausler*, 4:01-CR-142, 2010 WL 3363382, at \*2 (E.D. Ark. Aug. 25, 2010). Third, negligence by counsel representing the defendant on collateral review does not amount to extraordinary circumstances justifying relief under Rule 60(b)(6). *Christeson v. Griffith*, 860 F.3d 585, 589 (8th Cir. 2017) (per curiam) (an attorney's negligent miscalculation of the statute of limitations would not establish extraordinary circumstances); *see generally* Moore *et al.*, *supra*, ¶ 60.48[4][b].[5]

## ARGUMENT

The present Rule 60(b)(6) motion is, in substance, an uncertified second or successive § 2255 motion. The motion attacks Judge Eisele's merits determination that no grounds entitling Lee to collateral relief exist and asks for a second chance to have the merits determined favorably. Because Lee has not sought, let alone obtained, authorization from the court of appeals, this Court lacks jurisdiction.

---

[5] Lee relies heavily on the factors that the court identified in *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Unit A, Jan. 26, 1981), as relevant to evaluating a Rule 60(b)(6) motion for relief from judgment. *Seven Elves*, however, is a 1981 case from the Fifth Circuit involving a commercial dispute between private parties, and it has never been cited by the Eighth Circuit or any district court within the Eighth Circuit. *Seven Elves* therefore provides little if any relevant guidance here. More instructive are decisions from this Court and the Eighth Circuit, in particular cases involving Rule 60(b)(6) motions in collateral-review cases. *See, e.g.*, *Davis v. Kelley*, 855 F.3d 833, 835 (8th Cir. 2017) (per curiam); *Scott v. Hobbs*, No. 5:04-CV-82, 2014 WL 3700581, at \*2 (E.D. Ark. July 25, 2014).

Even assuming Lee's Rule 60(b) motion is not a second or successive § 2255 motion, Lee cannot demonstrate extraordinary circumstances justifying relief under Rule 60(b)(6). *Banister* is a modest change in decisional law, particularly as applied to this case. Judge Eisele specifically rejected Lee's Rule 59(e) motion on the merits, and the Eighth Circuit denied a certificate of appealability. Lee therefore received a full round of review on the claim. Moreover, reopening Lee's § 2255 case would be an empty exercise because this Court would have to deny Lee's Rule 59(e) motion even if it were to consider it anew. Lee impermissibly used the Rule 59(e) motion to present new evidence and theories that were available, by his own account, before the denial of his § 2255 motion. And Lee seeks to assert an ineffective-assistance claim that lacks merit.

Lee was lawfully convicted of murder and sentenced to death by a jury, and he has received thorough review of his conviction and sentence. There is no basis to reopen the long-final judgment in this case.

## I.    Lee's Rule 60(b) Motion Is a Second or Successive § 2255 Motion Because Lee Asks This Court to Reject Judge Eisele's Resolution of Lee's Rule 59(e) Motion on the Merits

Judge Eisele found that the Rule 59(e) motion to reconsider the denial of Lee's § 2255 motion was without merit, and specifically, as relevant here, that it was meritless insofar as Lee sought relief on the basis of an ineffective-assistance claim connected to the introduction of psychopathy

33

evidence at his sentencing hearing. *United States v. Lee*, 4:97-CR-243, 2010 WL 5347174, at *5-*6 (E.D. Ark. Dec. 22, 2010). To be sure, Judge Eisele concluded that "a district court should examine a Rule 59(e) motion filed in a § 2255 proceeding preliminarily . . . to ensure that it is not a successive petition," *id.* at *1, and he determined that Lee's "arguments related to Dr. Ryan . . . should, in the Court's view, be deemed successive," *id.* at *5, a determination that *Banister* establishes was erroneous. But Judge Eisele also concluded that Lee was not entitled to relief under Rule 59(e) without regard to the AEDPA's gatekeeping provisions for second or successive § 2255 motions. As the Eighth Circuit recently explained, Judge Eisele "rejected [the] Rule 59(e) motion from Lee on the grounds that it was a successive motion under 28 U.S.C. § 2255(h) *and* lacking in merit." *United States v. Lee*, __ F.3d __, 2020 WL 2832118, at *1 (8th Cir. June 1, 2020).

Specifically, Judge Eisele made clear that Rule 59(e) could not be used to introduce new evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to entry of judgment, *Lee*, 2010 WL 5347174, at *1, and he concluded that Lee improperly used his Rule 59(e) motion to present new theories and evidence that he could have presented in his § 2255 motion, *id.* at *6. Judge Eisele also concluded that the underlying ineffective-assistance claim Lee attempted to assert was without merit because Lee's counsel could not be faulted for failing to "challenge the

34

scientific underpinnings" of using the PCL-R to assess the future dangerousness of capital defendants at the time of his sentencing hearing in 1999 when Dr. Ryan himself had not disavowed his use of the PCL-R in capital cases until a year later. *Id.* at *6. Accordingly, as the Eighth Circuit recently concluded in reversing the stay, "Lee already received one full round of review on his present claim of ineffective assistance: the district court ruled that the claim was 'lacking in merit,' and this court denied a certificate of appealability on that issue." 2020 WL 2832118, at *2 (quoting *Lee*, 2010 WL 5347174, at *5-*6).[6]

Thus, in order to grant Lee's present motion for relief from judgment under Rule 60(b), this Court would now have to reject Judge Eisele's determination that Lee's Rule 59(e) motion lacked merit, a claim for which the Eighth Circuit specifically denied a certificate of appealability. The Court would have to conclude, contrary to Judge Eisele, that Rule 59(e) permitted Lee to present new theories and new evidence that were available to him before the denial of his § 2255 motion. And the Court would also have to conclude, contrary to Judge Eisele, that Lee asserts a meritorious ineffective-assistance claim.

---

[6] Lee is therefore incorrect when he asserts (Dkt. 1377, at 18) that he has not received a merits review of his ineffective-assistance claim.

35

Consistent with the prior rulings of Judge Eisele and the Eighth Circuit, Lee's Rule 60(b) motion is, in substance, a second or successive § 2255 motion. Lee attacks the "substance of the federal court's resolution of a claim on the merits" and "asks for a second chance to have the merits determined favorably." *Gonzalez v. Crosby*, 545 U.S. 524, 532 & n.5 (2005). Because Lee's motion is a successive § 2255 motion and Lee has not obtained court-of-appeals authorization as required by the AEDPA's gatekeeping provisions, *see* 28 U.S.C. § 2255(h), this Court must reject the motion for lack of jurisdiction, *see Burton v. Stewart*, 549 U.S. 147, 153 (2007) (per curiam) (AEDPA gatekeeping provisions are jurisdictional).

The same conclusion follows as to Lee's claim that he is entitled to the reopening of his Rule 59(e) motion because, according to Lee, Judge Eisele incorrectly evaluated his claim that he was improperly denied an evidentiary hearing on his § 2255 motion. Judge Eisele expressly stated that he would "address this argument on the merits." *Lee*, 2010 WL 5347174, at *2. Judge Eisele agreed with Lee that there is no "affidavit requirement" and made clear that he "did not apply an affidavit requirement in considering whether there was a need for an evidentiary hearing." *Id.* at *3-*4. He instead "gave [Lee] the benefit of all allegations of fact," *id.* at *2, and accordingly "applied well established Eighth Circuit law," *id.* at *4. To the extent Lee now

challenges this merits determination, he must satisfy the gatekeeping provisions for successive § 2255 motions.[7]

Lee acknowledges that Judge Eisele, in denying his Rule 59(e) motion, "conduct[ed] an alternative merits analysis" but contends that this merits determination was "demonstrably incorrect." Dkt. 1377, at 7-8. The government disagrees with Lee's evaluation of Judge Eisele's reasoning, but regardless, insofar as Lee's Rule 60(b) motion attacks Judge Eisele's merits determination and asks for a second chance to achieve a favorable result, it is a second or successive § 2255 motion that requires authorization from the court of appeals.

Lee attempts to avoid Judge Eisele's merits determination by claiming that Judge Eisele's "merits analysis was legally invalid" because "[o]nce [the Court] determined that the claim was successive, it lacked subject-matter jurisdiction to reach the merits." Dkt. 1377, at 7 n.5. Lee is correct that the AEDPA's gatekeeping provisions for successive § 2255 motions are jurisdictional, *see Burton*, 549 U.S. at 153, but *Banister* establishes that the AEDPA's gatekeeping provisions—the same provisions in effect at the time of

---

[7] Notably, Lee does not identify what allegations of fact Judge Eisele failed to credit in his § 2255 motion, nor does he claim that a hearing is necessary. To the contrary, Lee does not even ask for a hearing and instead contends that "[t]his Court can and should review the underlying [ineffective-assistance] claim and rule that Mr. Lee is entitled to relief based on the extant record." Dkt. 1377, at 21.

Lee's Rule 59(e) motion—do not (and never did) apply to Rule 59(e) motions. It is the Supreme Court's "responsibility to say what a statute means," and its "construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 (1994); *accord AT&T Corp. v. Hulteen*, 556 U.S. 701, 712 n.5 (2009). The Supreme Court's authoritative construction of the AEDPA in *Banister* establishes that at the time Lee filed his Rule 59(e), that motion was not subject to the AEDPA's jurisdictional gatekeeping provisions and that consequently Judge Eisele possessed jurisdiction to reject the Rule 59(e) motion on the merits. Judge Eisele's merits determination was not "legally invalid."

In short, Lee cannot use the present Rule 60(b) motion to attack Judge Eisele's prior merits determination and avoid the restrictions on successive § 2255 motions. Absent authorization from the court of appeals, this Court lacks jurisdiction.[8]

---

[8] Because the requirement to obtain appellate court authorization before filing a second-or-successive motion is jurisdictional, it can be raised at any time in the litigation. *See, e.g.*, *Ford v. Massarone*, 902 F.3d 309, 314 (D.C. Cir. 2018).

## II.   Even Assuming Lee's Rule 60(b) Motion Is Not a Second or Successive § 2255 Motion, Lee Is Not Entitled to Relief Under Rule 60(b)(6)

Even assuming this Court possesses jurisdiction to consider Lee's Rule 60(b)(6) motion, this Court should deny the motion. Lee cannot demonstrate extraordinary circumstances as required to obtain relief under Rule 60(b)(6).

### A.   *Banister*'s Change in Decisional Law Does Not Establish Extraordinary Circumstances

As noted, as a general matter, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997). No basis exists to depart from that general rule in this case.

#### 1.   The General Rule

The Supreme Court's decision in *Gonzalez v. Crosby*, *supra*, exemplifies the general rule that changes in decisional law rarely establish extraordinary circumstances justifying relief from judgment under Rule 60(b)(6). In that case, a state prisoner filed a habeas petition in federal court under 28 U.S.C. § 2254, but the district court, applying Eleventh Circuit law, dismissed the petition as barred by the AEDPA's statute of limitations. 545 U.S. at 526-27. After the Supreme Court subsequently construed the AEDPA's statute of limitations in *Artuz v. Bennett*, 531 U.S. 4 (2000), the prisoner filed a motion

39

for relief from judgment under Rule 60(b)(6) asserting error under *Artuz*. *Gonzalez*, 545 U.S. at 527, 536.

The Supreme Court—proceeding on the assumption that the district court's time-bar ruling was incorrect under *Artuz* and that therefore the district court had erroneously dismissed the habeas petition—determined that "*Artuz*'s change in the interpretation of the AEDPA statute of limitations" did not establish "'extraordinary circumstances'" that would justify relief from judgment under Rule 60(b)(6). *Gonzalez*, 545 U.S. at 536. "The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of" the AEDPA's statute of limitations, the Court explained, and "[i]t is hardly extraordinary that subsequently, after [the prisoner's] case was no longer pending, this Court arrived at a different interpretation." *Id.* The Court emphasized that "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Id.*

### 2.    The *Banister* Decision

In *Banister v. Davis*, a state prisoner filed a habeas petition under 28 U.S.C. § 2254 raising claims of ineffective assistance of counsel, which the district court denied on the merits, and the prisoner then filed a Rule 59(e) reconsideration motion, which the district court also denied on the merits. 2020 WL 2814300, at *3 (June 1, 2020). The prisoner filed a notice of appeal,

40

but the court of appeals dismissed the appeal as untimely, concluding that the prisoner's Rule 59(e) motion was a successive habeas petition—subject to the AEDPA's gatekeeping provisions—and therefore the time for filing a notice of appeal had run from the date the district court denied the habeas petition and not the date the district court denied the Rule 59(e) motion. *Id.*

The Supreme Court reversed, concluding that Rule 59(e) motions are never successive habeas petitions subject to the AEDPA's gatekeeping provisions and are "instead a part of a prisoner's first habeas proceeding." *Banister*, 2020 WL 2814300, at *7. This conclusion "mean[t] that the Court of Appeals should not have dismissed Banister's appeal as untimely." *Id.* at *8.

The Court explained that treating Rule 59(e) motions as part of the initial habeas proceeding is consistent with the purposes of the AEDPA, *i.e.*, "to prevent serial challenges to a judgment of conviction, in the interest of reducing delay, conserving judicial resources, and promoting finality." *Banister*, 2020 WL 2814300, at *6. The Court emphasized that "a prisoner may invoke [Rule 59(e)] only to request 'reconsideration of matters properly encompassed' in the challenged judgment," which means that "[c]ourts will not entertain arguments that could have been but were not raised before the just-issued decision." *Id.*; *see id.* at *2 (explaining that Rule 59(e) serves a "corrective function" and that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued").

41

Because Rule 59(e) is "backward-looking," the Court explained, "it maintains a prisoner's incentives to consolidate all of his claims in his initial application." *Id.* at *6.

### 3.   *Banister* Does Not Establish Extraordinary Circumstances, Particularly in This Case

*Banister* does not merit deviation from the general rule that a change in decisional law does not establish exceptional circumstances justifying relief from judgment under Rule 60(b)(6). To the contrary, *Banister* is a modest procedural ruling, and moreover, the district court's application of the Eight Circuit's then-prevailing interpretation of the AEDPA's gatekeeping provisions law had minor consequences in this case, if any at all. Accordingly, even assuming the effect of *Banister* could in some case result in extraordinary circumstances warranting relief, it does not do so on the facts here.

To start, "[i]f the change in habeas decisional law at issue in *Gonzalez* cannot pass as an extraordinary circumstance, then the change here should not fare any better." *Moses v. Joyner*, 815 F.3d 163, 168 (4th Cir. 2016) (addressing the change in law in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013)); *accord Hobbs*, 2014 WL 3700581, at *2. The change in law caused by *Banister* is much more modest than the change in law at issue in *Gonzalez*.

Whereas the district court's application of pre-*Artuz* law in *Gonzalez* to conclude that the habeas petition was time-barred precluded in its entirety a merits determination of the claims in that case, Judge Eisele's conclusion that the AEDPA's gatekeeping procedures should be applied to Lee's Rule 59(e) (contrary to *Banister*) had no such effect here. To the contrary, Lee had ample opportunity to raise any number of claims in his § 2255 motion, and Judge Eisele ruled on the merits of those claims. *Lee*, 2008 WL 4079315, at *8-*60. And then, Judge Eisele also ruled on the merits of the augmented ineffective-assistance claim that Lee asserted in his Rule 59(e) motion, and the Eighth Circuit denied a certificate of appealability on that issue. *See Lee*, 2020 WL 2832118, at *2. The consequences of the change in law in *Banister* in this case are therefore far less severe than the consequences of the change in law in *Gonzales*, where the petitioner never received an adjudication of his habeas petition on the merits. Thus, if the change in decisional law at issue in *Gonzales* was not enough to establish extraordinary circumstances, it necessarily follows that neither is the change in law occasioned by *Banister* in this case.

The contrast with Lee's circumstances and those of the habeas petitioner in *Banister* further establishes that the decision in *Banister* does not establish extraordinary circumstances here. The Supreme Court explained in *Banister* that the application of the AEDPA's gatekeeping

43

provisions in that case were of "no moment because the District Court had already addressed [the Rule 59(e)] motion's merits." 2020 WL 2814300, at \*3. The same is true here, given that Judge Eisele similarly addressed the merits of Lee's Rule 59(e) motion. *See Lee*, 2010 WL 5347174, at \*5-6. But in *Banister*, the application of the AEDPA's gatekeeping provisions "had another consequence" that did "affect [the prisoner]" because treating the Rule 59(e) motion as a successive habeas petition resulted in the dismissal of the prisoner's appeal from the denial of his habeas petition as untimely. 2020 WL 2814300, at \*3. Lee did not suffer the same consequence here.

To the contrary, unlike the prisoner in *Banister*, Lee received an opportunity for appellate consideration of his § 2255 claims. Lee filed a notice of appeal after the dismissal of his Rule 59(e) motion, *see* Dkt. 1195; the Eighth Circuit partially granted Lee's motion to expand the certificate of appealability; and the Eighth Circuit then affirmed Judge Eisele's denial of Lee's § 2255 motion. *United States v. Lee*, 715 F.3d 215, 217 (8th Cir. 2013). To be sure, the Eighth Circuit denied a certificate of appealability on whether Lee received ineffective assistance because his counsel failed to seek exclusion of testimony about "psychopathy and concomitant predisposition towards violence" as "scientifically invalid." Motion to Expand Certificate of Appealability at 70-90, *United States v. Lee*, No. 11-1380 (8th Cir.) (filed June 20, 2011); *see Lee*, 2020 WL 2832118, at \*2; *see also Lee*, 715 F.3d at 224 ("Lee

44

raised these arguments in his motion to expand his certificate of appealability, but we declined to grant him a certificate on the issues."). Nonetheless, in affirming the denial of Lee's § 2255 motion, the Eighth Circuit reiterated "that there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing," and it reaffirmed that "the jury properly considered the aggravating factors advanced by the government in determining that Lee should be sentenced to death." *Lee*, 715 F.3d at 224. In short, in contrast to the habeas petitioner in *Banister* (and in *Gonzalez*), Lee received "one full round of review on his present claim of ineffective assistance," *Lee*, 2020 WL 2832118, at *2, *i.e.*, the ineffective-assistance claim contained in his Rule 59(e) motion that he presently seeks to revive via Rule 60(b)(6).

The Supreme Court's decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), demonstrates just how truly exceptional the circumstances must be to warrant relief from judgment under Rule 60(b)(6). In *Buck*, a psychologist testified at a capital sentencing hearing that the defendant was "statistically more likely to act violently because he is black." *Id.* at 767. The Supreme Court concluded that inviting the jury to sentence a defendant to death in part based on his race "poisons public confidence in the judicial process" and "injures not just the defendant, but the law as an institution," "the community at large," and "the democratic ideal reflected in the processes of

45

our courts." *Id.* at 778 (internal quotation marks omitted). The Court also noted that the State of Texas had acquiesced to relief in five other cases in which the same psychologist had provided similar testimony, circumstances the Court characterized as "remarkable." *Id.* at 778-79. The circumstances in this case are far different from those "extraordinary facts." *Davis v. Kelley*, 855 F.3d 833, 836 (8th Cir. 2017) (per curiam) (discussing *Buck*). Lee cannot come close to demonstrating extraordinary circumstances of the same magnitude.

It is also noteworthy that *Banister* was "about . . . procedural rules," 2020 WL 2814300, at *2, and under *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), a new procedural rule does not apply retroactively to cases on collateral review unless it is a new "watershed" procedural rule on par with the right-to-counsel rule of *Gideon v. Wainright*. *See, e.g.*, *Burton v. Fabian*, 612 F.3d 1003, 1010 (8th Cir. 2010). *Banister* is far from the type of watershed procedural rule that would apply retroactively under the *Teague* standard. *See, e.g.*, *Schriro v. Summerlin*, 542 U.S. 348, 355-58 (2004) (concluding that *Ring v. Arizona*, 536 U.S. 584 (2002), is not a watershed procedural rule that applies retroactively on collateral review). Even if *Teague* does not categorically bar Lee from invoking *Banister* to reopen the final judgment denying his § 2255 motion, the *Teague* retroactivity principles

46

counsel against concluding that *Banister* establishes extraordinary circumstances that would justify such relief under Rule 60(b)(6).

> **B.    The Circumstances Here Are Also Not Extraordinary Because Judge Eisele Correctly Denied Lee's Rule 59(e) Motion on Additional Grounds That Remain Unaffected by *Banister***

In addition to the modest nature of *Banister*'s change in decisional law and the fact that Lee obtained the opportunity for one full round of review of his § 2255 claims, there are other substantial grounds precluding Lee from establishing extraordinary circumstances warranting relief under Rule 60(b)(6). As discussed, Judge Eisele rejected Lee's Rule 59(e) motion on two alternative grounds that remain unaffected by the Supreme Court's decision in *Banister*. Specifically, Judge Eisele concluded that Lee impermissibly used his Rule 59(e) motion to raise theories and facts that he could have raised prior to the denial of his § 2255 motion, and Judge Eisele further concluded that Lee's ineffective-assistance claim failed on the merits. *Lee*, 2010 WL 5347174, at *5-*6. Both of those rulings were correct and stand after *Banister*, and therefore, even if this Court were free to reopen Lee's § 2255 proceedings and consider his Rule 59(e) motion anew, as Lee requests, *see* Dkt. 1377, at 4, 20, the Court would be required to deny Lee's Rule 59(e)

motion for the same reasons Judge Eisele denied the motion ten years ago.[9]

Because Lee would not be able to obtain relief if this Court were to reopen his

§ 2255 proceedings, he cannot demonstrate extraordinary circumstances.

> **1.   Judge Eisele Properly Denied the Rule 59(e) Motion Because Lee Used It to Introduce New Evidence and Legal Theories That Were Available to Him Prior to the Denial of His § 2255 Motion**

It is well established that "Rule 59(e) motions serve the limited

function of correcting manifest errors of law or fact or . . . present[ing] newly

discovered evidence" and "cannot be used to introduce new evidence, tender

new legal theories, or raise arguments which could have been offered or

raised prior to entry of judgment." *United States v. Metropolitan St. Louis*

*Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotation marks

omitted); *see* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*

*Procedure* § 2810.1 (2d ed. 2019) ("The Rule 59(e) motion may not be used to

---

[9] In addition, not only was Judge Eisele's rejection of the Rule 59(e) motion on the merits correct, but because Lee received one full round of review, this Court would also have to adhere to Judge Eisele's determinations as the law of the case. Under the law-of-the-case doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Carter*, 490 F.3d 641, 644 (8th Cir. 2007) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see Cox v. Wyrick*, 873 F.2d 200, 202 (8th Cir. 1989) (applying law of the case to Rule 60(b) motion in habeas case). District court decisions that "either have not been appealed or have been appealed and affirmed[] are the law of the case and need not be revisited." *Liddell by Liddell v. Bd. of Educ. of the City of St. Louis*, 121 F.3d 1201, 1216 (8th Cir. 1997).

relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.") (footnotes omitted). The Supreme Court affirmed these principles in *Banister*. *See* 2020 WL 2814300, at *2 ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued."); *id.* at *6 ("Courts will not entertain arguments that could have been but were not raised before the just-issued decision."). As the Eighth Circuit has explained, Judge Eisele correctly "relied upon" these rules when it denied Lee's Rule 59(e) motion. *United States v. Lee*, 792 F.3d 1021, 1025 (8th Cir. 2015).

This Court would likewise be required to apply these rules and deny Lee's Rule 59(e) for the same reasons if it were to consider the motion anew. Lee's motion was an impermissible "attempt[] to introduce new evidence or legal theories which could have been raised prior to the entry of judgment." *Lee*, 2010 WL 5347174, at *6. As Judge Eisele explained, Lee used his Rule 59(e) motion to augment a single sentence in a footnote in his § 2255 motion with 26 pages of additional theory development and multiple affidavits with new facts. *Id.* Lee's Rule 59(e) motion did not explain why that new "information" was not "included in connection with his original" § 2255 motion. *Id.* In fact, Lee has elsewhere conceded that he could have and should have included in his initial § 2255 motion the information he provided in his Rule 59(e) motion, but, according to him, he failed to do so because of

49

negligence by the lawyers who represented him in his § 2255 proceedings. *See* Dkt. 1230, at 13-15, 20-22; *see supra* pp. 24, 25-26. Alleged ineffective assistance of counsel, however, is not a ground for relief under Rule 59(e), *see, e.g., Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 169 n.8 (1st Cir. 2016), and *Jennings v. Rivers*, 394 F.3d 850, 854-55 (10th Cir. 2005), or Rule 60(b)(6), for that matter, *see, e.g., Heim v. Comm'r*, 872 F.2d 245, 248 (8th Cir. 1989), and *Easley v. Kirmsee*, 382 F.3d 693, 699 n.5 (7th Cir. 2004).

Lee does not acknowledge these rules, let alone explain how this Court could possibly disregard them if it were to consider his Rule 59(e) motion "anew." Lee instead argues (Dkt. 1377, at 7-8) only that Judge Eisele erroneously rejected the ineffective-assistance claim in his Rule 59(e) motion on the merits. As discussed in more detail below, Judge Eisele was correct about the merits of Lee's ineffective-assistance claim, but regardless, Lee must also show that he seeks to use Rule 59(e) in a permissible manner. Lee cannot make that showing because he attempts to use his Rule 59(e) motion to present new evidence and new theories that were available prior to the denial of his § 2255 motion. Because Lee cannot show he would be entitled to relief under Rule 59(e) if this Court were to consider that motion anew, he cannot demonstrate extraordinary circumstances justifying relief from judgment under Rule 60(b)(6).

### 2.    The Ineffective-Assistance Claim Lee Seeks to Raise Lacks Merit

Not only are Lee's attempts to present new evidence and theories foreclosed by Rule 59(e), but in addition, the underlying ineffective-assistance claim that Lee seeks to assert is, as Judge Eisele concluded, "lacking in merit." *Lee*, 2010 WL 5347174, at \*5-\*6. Lee fails to establish extraordinary circumstances for that reason as well.[10]

### a.    The Psychopathy Testimony at Lee's Trial Was, by Lee's Own Account, Correct and Accurate

Lee does not dispute that the PCL-R is predictive of future dangerousness in the community, as reflected in the factual material Lee attached to his Rule 59(e) motion, which included a psychologist's affidavit stating that "higher PCL-R scores have been found to be associated with a higher likelihood of aggression in certain contexts (*e.g.*, individuals in the community)." Dkt. 1165-6, at 2. Lee instead contends that there is no "scientific basis" to use the PCL-R to predict future dangerousness "in prison," and according to Lee, the government presented "unreliable and unscientific" expert opinion evidence that the PCL-R is predictive of future dangerousness in prison. Dkt. 1377, at 2-3.

---

[10] Lee asserts (Dkt. 1377, at 2, 17-18, 21-22) that the merits of his ineffective-assistance claim are clear and indisputable, but as discussed in more detail below, Lee's ineffective-assistance claim lacks merit, and thus the government plainly does not agree with Lee's evaluation of his own claim.

The fundamental flaw in Lee's argument is that there was no expert opinion testimony at his trial that a diagnosis as a psychopath using the PCL-R predicted future dangerousness in prison. The only evidence about psychopathy came in through Lee's own expert, Dr. Cunningham, during cross-examination by the government. And Dr. Cunningham never testified that Lee's diagnosis as a psychopath predicted his future dangerousness in prison. To the contrary, Dr. Cunningham expressly disclaimed using the PCL-R to predict future dangerousness in prison.

During cross-examination of Dr. Cunningham, Dr. Cunningham acknowledged that a diagnosis as a psychopath using the PCL-R was associated with a high risk of violence in the community. *See, e.g.*, Tr. 7806, 7807, 7809, 7810, 7812; *see also* Tr. 7815 ("The psychopathy check list is state-of-the-art if you are looking at likelihood of criminal activity and violent recidivism in the community among white males through midlife."). But Dr. Cunningham repeatedly emphasized that the test had "not yet been shown to be predictive of correctional institutional violence." Tr. 7812; *see* Tr. 7806-07, 7815-16, 7818-19, 7828-29. Dr. Cunningham made clear his view that, although "[t]here's a greater risk of violence in the community with [a] high score" on the PCL-R, "[i]t has not been clearly demonstrated that there is evidence that a high score is associated with violence in an institution and in

52

fact there are some studies that don't find any association between the two." Tr. 7807.[11]

To be sure, Dr. Ryan's expert report, which was turned over to the defense before trial, contained his opinion that Lee's diagnosis as a psychopath indicated Lee would present a higher risk of future dangerousness in prison. But Dr. Ryan's report was not admitted into evidence, and Dr. Cunningham did not tell the jury during cross-examination about Dr. Ryan's opinion linking Lee's psychopathy diagnosis with future dangerousness in prison. Furthermore, before Dr. Ryan testified on rebuttal, Judge Eisele ruled that the government could not present any more evidence about psychopathy. Tr. 7836. As a result, Dr. Ryan did not mention psychopathy during his testimony, let alone provide an expert opinion that the PCL-R is predictive of future dangerousness in prison.

In short, Lee's claim that the jury heard expert opinion evidence linking psychopathy and future dangerousness in prison is belied by the

---

[11] Lee contends that "there is no dispute by the parties that the PCL-R is not a valid or reliable predictor of future dangerousness in prison." Dkt. 1377, at 17. But the government need not—and does not—take a position here on the scientific validity of using the PCL-R to predict future dangerousness in prison, because there was no "scientific" expert opinion testimony at Lee's trial connecting the PCL-R to future dangerousness in prison. The government notes that, as a general matter, it relies on testing and analysis conducted by qualified experts in individual cases to determine the validity and use of psychological testing.

record. The only expert opinion evidence the jury heard about psychopathy

came from Lee's own expert and that testimony, by Lee's own account, was

entirely accurate.

### b.    The Psychopathy Testimony Was Admissible

Furthermore, the psychopathy testimony that came in at Lee's trial

was properly admitted. Dr. Cunningham testified that Lee's traumatic life

experiences resulted in his violent criminal behavior, including his

involvement in the murders in this case. *See, e.g.*, Tr. 7742. The cross-

examination on the topic of psychopathy was therefore relevant to probe Dr.

Cunningham's testimony by questioning him about alternative explanations

for Lee's violent behavior. Moreover, as the Eighth Circuit correctly

concluded, "Lee's potential psychopathy was probative of his future

dangerousness." *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001). Dr.

Cunningham testified, and Lee does not appear to dispute, that the PCL-R is

predictive of dangerousness in the community. The jury was entitled to

consider that evidence when evaluating the aggravating factor of future

dangerousness. *See United States v. Coonce*, 932 F.3d 623, 642-43 (8th Cir.

2019) (rejecting the argument that "future dangerousness for a person under

a sentence of life imprisonment should be narrowed to future dangerousness

in prison") (emphasis omitted), *petition for cert. filed*, No. 19-7862 (Mar. 3,

2020). To the extent Lee suggests that no psychopathy evidence should have

54

been permitted at all because, by Lee's account, scientific studies link the PCL-R only to dangerousness in the community and not in prison, his position is inconsistent with governing authority. *Id.*

The admission of the testimony about psychopathy was, as a general matter, consistent with the broad admissibility of evidence about future dangerousness at capital sentencing hearings. In *Barefoot v. Estelle*, 463 U.S. 880, 896-903 (1983), for example, the Supreme Court rejected the argument, supported by the American Psychiatric Association, that expert opinion testimony about future dangerousness is too unreliable to be admissible at capital sentencing hearings. The Court concluded that the "adversary process" could be "trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness." *Id.* at 901. Relevant evidence "should be admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party." *Id.* at 898. Consistent with *Barefoot*, the Federal Death Penalty Act "erects very low barriers to the admission of evidence at capital sentencing hearings." *Lee*, 274 F.3d at 494. The Federal Death Penalty Act broadly permits the presentation of relevant information and then allows the parties an opportunity to "rebut any information received at the hearing" and "to present argument as to the adequacy of the information." 18 U.S.C. § 3593(c); *see Lee*, 274 F.3d at 496. The statute allows "more rather than less evidence

55

during the penalty phase" and leaves it to the adversarial system to test that evidence. *United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004). This system "increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." *Id.*

In short, the cross-examination of defense expert Dr. Cunningham about psychopathy, which was the only time that evidence about psychopathy came in at trial, was proper. As the Eighth Circuit reiterated when it affirmed the denial of Lee's § 2255 motion, "there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing," and "the jury properly considered the aggravating factors advanced by the government in determining that Lee should be sentenced to death." *Lee*, 715 F.3d at 224 (quoting *Lee*, 274 F.3d at 495).

> **c.    Lee's Counsel Did Not Perform Deficiently by Pursuing a Strategy to Exclude the Psychopathy Evidence That Differs from the Strategy Lee Now Claims His Counsel Should Have Adopted**

A defendant claiming that he received ineffective assistance of counsel must satisfy the two-prong standard in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must first "show that counsel's representation fell below an objective standard of reasonableness," measured according to

"prevailing professional norms." *Id.* at 688. As a general matter, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant must then "affirmatively prove prejudice," which means he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94.

Lee claims that his trial counsel should have "objected that there was no scientific basis for opining that a high score on the PCL-R was predictive of future dangerousness in prison." Dkt. 1377, at 5-6. According to Lee, if his trial counsel had raised this objection, "the issue of psychopathy would have never been injected into the trial." *Id.* at 6.[12]

---

[12] Lee asserts (Dkt. 1377, at 20-21) that Judge Eisele misapplied the *Strickland* prejudice standard when denying his § 2255 motion. In denying the § 2255 motion, Judge Eisele observed that, because the Eighth Circuit had determined that the psychopathy testimony was admissible at Lee's sentencing hearing, "it is difficult to see how any additional objection that [Lee's] counsel could have made to [that testimony] could have altered the outcome." *Lee*, 2008 WL 4079315, at *48. Judge Eisele's evaluation of the effect of the allegedly deficient performance on the "outcome" of the trial makes clear that Judge Eisele applied the correct *Strickland* prejudice standard. *See Lee*, 2010 WL 5347174, at *5. When referring to the allegedly deficient performance, Judge Eisele spoke in general terms about "any additional objection that [Lee's] counsel could have made" because the one-sentence footnote in Lee's § 2255 motion did not provide notice of the claim that Lee later fleshed out over the course of 26 pages in his Rule 59(e) motion. *See id.* at *6. Even so, Judge Eisele's reasoning was correct. In any

Lee's ineffective-assistance claim is devoid of merit because, among other things, Lee cannot show that the performance of his lawyers was objectively unreasonable. Lee's trial counsel adopted a strategy intended to keep out psychopathy evidence at Lee's sentencing hearing, even though, as described above, evidence about psychopathy was admissible under the evidentiary rules that apply at capital sentencing hearings. Specifically, Lee's lawyers elected not to introduce evidence about Lee's future dangerousness during the defense case and instead focused on proving mitigating factors, a strategy that permitted defense counsel to object to cross-examination of Dr. Cunningham about psychopathy as outside the bounds of proper cross-examination. It also allowed defense counsel to contend that the government's expert witness, Dr. Ryan, should not be allowed to testify on rebuttal about Lee's diagnosis as a psychopath. Judge Eisele eventually adopted the defense position and excluded evidence "of psychopathy, the Hare psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote." Tr. 7836. As a result, only limited evidence about psychopathy was presented to the jury; it came in only through Lee's expert,

---

event, for the additional reasons set forth above and in Judge Eisele's opinion denying Lee's Rule 59(e) motion, Lee's present ineffective-assistance claim—which was not properly raised in his § 2255 motion—lacks merit, and therefore Lee's criticisms of Judge Eisele's § 2255 ruling do not establish extraordinary circumstances justifying relief from judgment.

58

Dr. Cunningham, and the government's expert, Dr. Ryan, did not testify about psychopathy. The jury therefore never heard any expert testimony linking psychopathy and future dangerousness in prison.

There is no reason to believe that the strategy Lee now claims his lawyers should have pursued at trial would have fared any better in keeping out evidence of psychopathy. The argument (Dkt. 1377, at 3) that evidence about psychopathy was "unreliable and unscientific" is inconsistent with the Federal Death Penalty Act's low barriers to the admissibility of evidence and *Barefoot*'s holding that expert opinion testimony about future dangerousness should not be excluded as unreliable. Indeed, courts applying the Federal Death Penalty Act and *Barefoot* have specifically concluded that the reliability standards for expert testimony under the Federal Rules of Evidence do not provide the standards for determining the admissibility of expert opinion testimony about future dangerousness at a capital sentencing hearing. *See United States v. Fields*, 483 F.3d 313, 341-45 (5th Cir. 2007). Thus, at a 1998 capital trial, after a defendant unsuccessfully sought to exclude PCL-R evidence on the ground that it was not reliable scientific evidence, the jury heard evidence that psychopathy demonstrated future dangerousness. *See United States v. Barnette*, 211 F.3d 803, 811, 815-16 (4th

Cir. 2000). Lee's lawyers did not perform deficiently by forgoing a strategy that had failed at a then-recent capital trial.[13]

Nor does Dr. Ryan's later disavowal of using the PCL-R in two capital cases demonstrate that Lee's lawyers performed deficiently. Dr. Ryan did not disavow the PCL-R as a predictor of future dangerousness in prison until 2000, after Lee's trial, and in one of those cases, which went to trial in 1998 (the year before Lee's trial), Dr. Ryan actually provided opinion testimony that the defendant's diagnosis as a psychopath using the PCL-R indicated that the defendant would likely present a risk of future dangerousness in prison. *Stitt v. United States*, 369 F. Supp. 2d 679, 699 (E.D. Va. 2005).[14] The strategy that Lee's counsel pursued in this case, in contrast, avoided all testimony by Dr. Ryan about psychopathy. Lee's lawyers cannot be faulted

---

[13] In *Barnette*, the court of appeals ordered a new sentencing hearing, not because evidence about the PCL-R was introduced at the hearing, but because the district court had denied the defendant an opportunity to rebut that evidence by calling Dr. Cunningham to testify on sur-rebuttal. 211 F.3d at 823-24. The same circumstances are not present here because all of the psychopathy evidence came in through Dr. Cunningham, and therefore the jury heard Dr. Cunningham's views about the limits of using the PCL-R in capital cases.

[14] In ruling on a § 2255 motion several years later, the district court concluded that Dr. Ryan's later disavowal of this opinion did not provide a basis to grant the defendant a new sentencing hearing. 369 F. Supp. 2d at 699-700. The defendant was granted a new sentencing hearing on different grounds. *See United States v. Stitt*, 552 F.3d 345, 348 (4th Cir. 2008).

for failing to foresee Dr. Ryan's later disavowal of the PCL-R. The performance of Lee's lawyers did not fall below professional norms.

When evaluating attorney performance under *Strickland*, courts should not "second-guess trial strategy [or] use the benefit of hindsight to determine what a better course of action may have been." *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). That admonition is particularly apt here. The strategy that Lee's trial counsel pursued was sound and well within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### 3.   Lee's Hearing-Related Arguments Fail for Similar Reasons

Lee's arguments (Dkt. 1377, at 8-9, 20) that Judge Eisele erroneously denied him a hearing on his § 2255 motion fail for similar reasons. Even if the Court were to consider this claim in Lee's Rule 59(e) motion anew, it would have to reject it. To start, Rule 59(e) cannot be used to present new evidence that was available prior to entry of judgment, and Lee's Rule 59(e) motion impermissibly used new evidence (in the form of affidavits) to support his claim that the Court erred in denying a hearing. *See* Dkt. 1165, at 12; *Lee*, 2010 WL 5347174, at *5. Judge Eisele also rejected on the merits the argument in Lee's Rule 59(e) motion that the Court applied an incorrect legal standard by imposing an "affidavit requirement." As Judge Eisele explained,

61

he did not impose an affidavit requirement and instead assumed that Lee could prove any factual assertion in his § 2255 motion, and he therefore applied the correct standard. *Id.* at \*2-\*4. Because this Court would have to reject Lee's arguments on the same grounds if considered anew today, Lee cannot demonstrate extraordinary circumstances.

Perhaps more fundamentally, Lee does not establish the need for a hearing or even request one. Lee does not identify any allegation in his § 2255 motion that Judge Eisele failed to credit or any disputed issue of fact that would require a hearing. To the contrary, the only allegation of fact in Lee's § 2255 motion that is relevant at present was his allegation that Dr. Ryan changed his mind about using the PCL-R, *see* Dkt. 1118, at 23 n.14, but Judge Eisele credited that allegation, *see Lee*, 2008 WL 4079315, at \*47. And in fact, Lee does not even currently seek an evidentiary hearing on his ineffective-assistance claim and instead asserts that the claim can be decided "on the extant record." Dkt. 1377, at 21. For these additional reasons, Lee fails to demonstrate exceptional circumstances that would justify reopening the long-final judgment in this case.

## CONCLUSION

For the foregoing reasons, this Court should deny Lee's motion or

dismiss it for lack of jurisdiction.

Respectfully submitted,

CODY HILAND                        BRIAN A. BENCZKOWSKI
United States Attorney             Assistant Attorney General
Eastern District of Arkansas

                                   /s/John M. Pellettieri
MICHAEL GORDON                     JOHN M. PELLETTIERI
Assistant United States Attorney   Attorney, Appellate Section
Eastern District of Arkansas       Criminal Division
                                   U.S. Department of Justice
                                   950 Pennsylvania Ave., N.W., Rm. 1260
                                   Washington, D.C. 20530
                                   (202) 307-3766
                                   john.pellettieri@usdoj.gov

June 18, 2020

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on June 18, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

64