# EXHIBIT 2



## AFFIDAVIT FOR SEARCH WARRANT

IN THE MUNICIPAL COURT OF THE CITY OF RUSSELLVILLE, ARKANSAS

STATE OF ARKANSAS
COUNTY OF POPE

BEFORE THE HONORABLE DENNIS SUTTERFIELD, MUNICIPAL JUDGE

The undersigned being duly sworn, states:

The undersigned has reason to believe and upon reasonable cause does believe that on the premises located at: The PAUL EDWARD HUMPHREY residence, ███████████ Street, Russellville, Arkansas including all vehicles, outbuildings, and appurtenances thereto, there is now being concealed certain property, namely evidence of the homicide of WILLIAM MUELLER, NANCY MUELLER, and SARAH POWELL. This evidence sought is to include trace evidence including carpet fibers, clothing fibers, blood spots, hair, samples of duct tape and plastic trash bags. The warrant should also include documents relating to the victims to include an envelope which HUMPHREY claimed to have received a title to the victims vehicle, the certificate of origin to the victims utility trailer and two bills of sale for the victims vehicle and trailer. Also sought is evidence of items stolen from the victims to include firearms, firearms parts, silver coins, gold coins, silver bars, and U.S. currency. Also sought is evidence of the forgery of the title of the victims vehicle, the certificate of origin for the victims trailer and the two bills of sale to include tracings, signatures and other related evidence. Also sought is evidence to include telephone records, address books and other documents which link HUMPHREY to suspects in this case who are either known or unknown.

FILED BY *Judy abuthel*

AUG 30 1996

CLERK, POPE COUNTY
MUNICIPAL COURT



WHICH IS/ARE  held and possessed in violation of the laws of the State of Arkansas. to wit: A.C.A. 5-10-101. A.C.A. 5-37-201. 5-36-103. and 5-12-103.  The facts tending to establish the foregoing grounds for issuance of a Search Warrant are. to wit:

1) My name is Sergeant Aaron Duvall. I am an investigator for the Pope County Sheriff's Department and have been so employed for the past 13 years.  I have attended numerous schools involving the investigation of homicides, crimes against persons, and property including but not limited to thefts and forgeries.

2)  On or about January 11, 1996. WILLIAM MUELLER, NANCY MUELLER and SARAH POWELL were substantiated to have been in Russellville, Arkansas.  None of the MUELLER'S relatives or close associates saw them after this date.

3)  On February 2, 1996, DAVID BRANCH, the brother of NANCY MUELLER, was at the MUELLER residence located at █████████. Tilley, Arkansas.  While in the residence, BRANCH observed the title to WILLIAM MUELLER'S 1989 jeep, the certificate of origin for the MUELLER'S utility trailer, and blank bills of sale ( referred to as the MUELLER documents) on the kitchen table of the MUELLER residence.  The title to the jeep, the certificate of origin for the utility trailer, and the bills of sale were unsigned.

4)  On February 11, 1996, the WILLIAM MUELLER vehicle, a 1989 jeep cherokee with attached utility trailer was taken into custody by the Pope County Sheriff's Department.  The vehicle had been observed abandoned for approximately three weeks on Arkansas state highway 7 in rural Pope County, Arkansas.  An examination of the interior of the vehicle and trailer revealed no items of value present.

AUG 3 0 1996
CLERK, POPE COUNTY



affiant further states that this is inconsistent with WILLIAM MUELLER'S habits and characteristics in that the investigation has revealed MUELLER often carried items of value such as firearms, ammunition, gold and silver. It was also suspected that the MUELLERS were on their way to a gun show when they disappeared, this being inconsistent with no items of value being found in the jeep.

5) On or about February 22, 1996, DAVID BRANCH contacted SHERIFF JAY WINTERS, Pope County Sheriff's Department, and stated he had received information that PAUL EDWARD HUMPHREY had possession of the title to the MUELLERS' jeep and the certificate of origin to the MUELLERS' utility trailer. SHERIFF WINTERS contacted HUMPHREY by telephone and HUMPHREY admitted that he had the documents for the vehicles. SHERIFF WINTERS asked HUMPHREY to come to the Sheriff's office the following day and bring the documents.

6) On or about February 23, 1996, HUMPHREY met with SHERIFF WINTERS at the Pope County Sheriff's Department. HUMPHREY did not bring the documents and stated he would answer any questions regarding the documents. HUMPHREY stated he had received the documents in the mail and that it was an agreed arrangement between he and WILLIAM MUELLER for MUELLER to sell him his vehicles for 21 pieces of silver. SHERIFF WINTERS asked HUMPHREY to surrender the documents and HUMPHREY stated he would deliver the documents to SHERIFF WINTERS.

7) On or about March 1, 1996, SHERIFF WINTERS contacted HUMPHREY by telephone regarding the documents. HUMPHREY stated his attorney, DALE BRADEN, of Russellville, Arkansas, had advised him not to

FILED BY *[signature]*

AUG 30 1996

CLERK, PO—
MUNICIPAL COURT

surrender the documents to SHERIFF WINTERS at this time. HUMPHREY stated he would be in contact with the Sheriff at a later date regarding the documents.

8) On or about March 5 1996 SHERIFF WINTERS contacted attorney DALE BRADEN who stated he had not been retained or contacted by PAUL EDWARD HUMPHREY to do any work relating to the MUELLER documents thus giving rise to the suspicion that HUMPHREY was being untruthful about said documents. It should be further noted that HUMPHREY was trying to keep law enforcement from examining said documents despite his previous assertion of February 22, 1996, that he would turn them over.

9) On or about March 15 ,1996, SHERIFF WINTERS again contacted HUMPHREY about the MUELLER documents. HUMPHREY stated that he did not have the documents and that they were with a friend in Little Rock, Arkansas. HUMPHREY was asked if he planned on getting the titles back and he once again stated he would obtain the titles and bring them to SHERIFF WINTERS.

10) On or about March 26, 1996, SHERIFF WINTERS contacted HUMPHREY for the sixth time about the MUELLER documents. HUMPHREY stated that his attorney in Little Rock, Arkansas had the documents. SHERIFF WINTERS contacted the attorney in Little Rock and the attorney stated that he did not have any documents pertaining to HUMPHREY nor was he performing any work for HUMPHREY. He further stated he did not know a PAUL EDWARD HUMPHREY. This again gives rise the likelihood that HUMPHREY was being untruthful about and had reason to prevent, the examination of said documents

11) On or about April 3, 1996, SHERIFF WINTERS met with HUMPHREY

AUG 30 1996

CLERK, POPE COUNTY
MUNICIPAL COURT

at the Hughs Community Center in Russellville Arkansas. SHERIFF WINTERS confronted HUMPHREY and told him the attorney in Little Rock knew nothing about any documents and stated he did not know him. HUMPHREY stated he was unsure as to what to do about the documents and some of his friends had told him to take the documents to the attorney however he did not take the documents to the attorney, despite his having previously said he did, but instead that the documents were on a friends property. SHERIFF WINTERS again told HUMPHREY, for the seventh time to surrender the documents.

12) On June 28, 1996, the bodies of WILLIAM MUELLER, NANCY MUELLER and SARAH POWELL, were discovered in the Illinois Bayou near Russellville, Arkansas, the three having been victims of a triple homicide. WILLIAM MUELLER was wearing a camouflage jacket and blue jeans. PAUL HUMPHREY, in a statement to authorities, indicated the last time he saw WILLIAM MUELLER he was wearing a camouflage jacket and blue jeans.

13) On July 12, 1996, Affiant interviewed a cooperating witness (CW) who stated that on or about the 18th day of January, 1996 he/she observed WILLIAM MUELLER and NANCY MUELLER at the First Bank of Arkansas located on North Arkansas Avenue in Russellville, Arkansas. The (CW) stated that as he/she was exiting the bank, NANCY MUELLER yelled. He/she turned and noticed NANCY MUELLER seated in the front seat of a large tan colored car. He/she stated that NANCY was seated in the front seat of the car near or in the middle. The (CW) stated he/she walked over to the car and engaged NANCY MUELLER in conversation. The (CW) noticed a white male

FILED BY

AUG 3 0 1996

CLERK,

seated behind the wheel of the vehicle. The (CW) also noticed that WILLIAM MUELLER was seated in the back seat of the vehicle in the middle of the seat. A white male was seated on WILLIAM MUELLERS left and at least one white male seated on WILLIAM MUELLERS' right The (CW) was shown a series of photographs of persons suspected in the MUELLER homicide. The (CW) positively identified PAUL EDWARD HUMPHREY as the person driving the vehicle. The (CW) positively identified a photograph of TIMOTHY COOMBS AKA JAMES WILSON seated on the left of WILLIAM MUELLER. COOMBS is currently a fugitive for shooting a Missouri State Trooper. The (CW) did not identify any other photographs. The (CW) did state that the other person(s) in the car were "rough looking". It should be noted that this date (January 18, 1996) was corroborated by bank records and this date of January 18, 1996 was one week after the last known date the MUELLERS were seen by relatives or any other known associates. The (CW) positively identified a vehicle owned by HUMPHREY as the vehicle she saw WILLIAM AND NANCY MUELLER in on that date.

14) On July 9, 1996. BOBBY HULSE, a gun show associate of the MUELLERS, met with DAVID BRANCH to discuss the murder of the MUELLERS. HULSE told BRANCH that he and HUMPHREY went to the Arkansas state revenue office in Little Rock, Arkansas prior to the MUELLERS' bodies being discovered and attempted to get the MUELLER documents transferred into HUMPHREY'S name. The attempt was unsuccessful.

15) On July 1, 1996 Detective David Davis and Detective Robert McKinney of the Russellville Police Department, at the request of Sheriff Winters. went to the residence of PAUL HUMPHREY at ███████

FILED BY ⟨signature⟩

AUG 30 1996

CLERK, POPE ........
MUNICIPAL COURT

█████████ Russellville, Arkansas and asked PAUL HUMPHREY if he would accompany them to the Sheriff's Office to talk to Sheriff Winters concerning the deaths of WILLIAM MUELLER, NANCY MUELLER and SARAH POWELL. When PAUL HUMPHREY was asked to step outside and talk to the officers he removed from the back of his waistband a .45 caliber semi-automatic pistol which he laid on a table near the door. When asked by Detective Davis if he (PAUL HUMPHREY) usually answered the door with a gun, he stated no that he was "expecting them."

16) On July 1, 1996, The MUELLER Jeep and utility trailer were transported to the State Crime Laboratory Trace evidence unit for processing. It was subsequently reported by Shantel Baquette of the trace evidence unit of the Arkansas State Crime Lab that there were some fibers found in the vehicle which were inconsistent with fibers taken from the MUELLER residence and vehicle. This group of fibers, of unknown origin, are consistent with known colors in HUMPHREY'S vehicle and residence. Affiant specifically requests that pursuant to this search warrant, officers be allowed to remove, for testing, fiber from HUMPHREY'S vehicle and residence in order to have it examined by the Arkansas State Crime Lab.

17) On July 1, 1996, HUMPHREY was interviewed by SHERIFF WINTERS and INVESTIGATOR STEVE BROWN of the 5th Judicial District Drug Task Force concerning any information he had concerning the death of the MUELLERS. HUMPHREY admitted having the MUELLER documents and stated he would be in the following day to surrender the documents. HUMPHREY stated he had received the titles in the mail after the MUELLERS were reported missing. HUMPHREY stated the documents were

AUG 3 0 1996

MUNICIPAL COURT

signed when he received them. When asked by INVESTIGATOR BROWN if he usually answered the door with a gun PAUL HUMPHREY stated no. When asked why he did on this occasion he stated that it was because of the MUELLER murders. When asked why the discovery of this incident obviously several months after it was committed caused him to be in such a heightened state of awareness. PAUL HUMPHREY could not or would not answer

18) On July 2, 1996, HUMPHREY was interviewed by SERGEANT DUVALL at the Pope County Sheriff's Department. HUMPHREY surrendered the MUELLER documents to SERGEANT DUVALL. An examination of the documents revealed that the title to the jeep was signed by WILLIAM MUELLER with an accompanying bill of sale signed by WILLIAM MUELLER. The certificate of origin for the utility trailer was signed by NANCY MUELLER and also had an accompanying bill of sale signed by NANCY MUELLER. HUMPHREY stated the last time he spoke to WILLIAM AND NANCY MUELLER was on January 8 and January 9, 1996 at a restaurant in Russellville, Arkansas. HUMPHREY also stated that WILLIAM MUELLER was wearing a camouflage jacket and blue jeans. HUMPHREY stated he did not bring the envelope the documents were received in but would see if he could find it. said envelope has not been provided to law enforcement and given HUMPHREYS untruthfulness and lack of cooperation on the documents, affiant has reason to believe and does believe that if said envelope exists, HUMPHREYS will not provide the same. Affiant further states that if said envelope exists, it is reasonable to assume it would be at the HUMPHREY residence, in his residence or other buildings under his control.

FILED BY ____

AUG 3 0 1996

CLERK, POPE COUNTY
MUNICIPAL COURT

19) On or about July 9, 1996, a package of documents were examined by SERGEANT DUVALL. Said documents were received from DOUG WILLIAMS of the Arkansas State Police. The documents were received by WILLIAMS from DAVID MASON, the landlord of WILLIAM MUELLER. MASON had retrieved the documents from MUELLERS personal effects from his residence. Contained in the documents was a telephone bill which reflected that a telephone call was made from WILLIAM MUELLER residence to PAUL HUMPHREY'S residence at 9:27 PM on January 11, 1996. This is the day after HUMPHREY stated he last spoke to the MUELLERS. On the same date (July 9, 1996) the MUELLER documents obtained from HUMPHREY were compared with the documents received from Doug Williams. It appeared that the WILLIAM MUELLER signature on the jeep title and bill of sale was consistent with the signature of WILLIAM MUELLER'S deceased father, William Mueller, Sr. It should be noted WILLIAM MUELLER SR died on or about August 1, 1995. It should further be noted that signature was inconsistent with that of WILLIAM MUELLER JR, the victim of the homicide and owner of the Jeep.

20) On August 13, 1996, SPECIAL AGENT GLEN JORDAN, Bureau of Alcohol, Tobacco, and Firearms (ATF) submitted the MUELLER documents along with known signature and handwriting for WILLIAM FREDERICK MUELLER JR. (victim), NANCY MUELLER (victim) and WILLIAM FREDERICK MUELLER SR. (deceased father) to determine if the MUELLER documents had forged signatures of WILLIAM MUELLER (victim) and NANCY MUELLER to the ATF forensic science laboratory, Atlanta Georgia for examination.

21) On August 22, 1996, Nancy Davis, ATF document examiner, issued

AUG 30 1996

MUNICIPAL COURT

a report which stated "Both sets of signatures were prepared with thick fiber-tip type pen, making examination of 'line detail' difficult. However, the subtle differences noted between the questioned and known signatures in addition to the apparent slow careful manner in which they were written indicated they may be simulations/tracings." Nancy Davis is prepared to testify that the signatures are inconsistent with known signatures of WILLIAM WHATLEY to (victim)

22) It is, therefore, prayed by the affiant(s) herein that a Warrant to Search said premises be issued for the hereinabove described items.

_____
SIGNATURE OF AFFIANT

_____
OFFICIAL TITLE, if any

Sworn to before me and subscribed in my presence, at **8:31 A.M.** RUSSEL. ARI this **827** day of **Aug.** 19**96**.

Dennis C. Sutterfield
JUDGE

AUG 30 1996