**FEDERAL DEATH PENALTY CASE**
**\*\*\*\*EXECUTION SCHEDULED FOR JULY 13, 2020\*\*\*\***

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**DANIEL LEWIS LEE,**
                    **Movant,**                         **Criminal Case No. 4:97-CR-00243-KGB-2**

**v.**                                                              **CAPITAL CASE**

**UNITED STATES OF AMERICA**
          **Respondent.**

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR RELIEF**
**FROM JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60(b)**

MORRIS H. MOON                                   GEORGE G. KOUROS
Bar Number 24032750 (TX)                   Bar Number 420813 (CT)
Attorney for Daniel Lee                          Attorney for Daniel Lee
Assistant Federal Public Defender          Assistant Federal Public Defender
Federal Capital Habeas Project               Federal Capital Habeas Project
6411 Ivy Lane, Suite 710                       6411 Ivy Lane, Suite 710
Greenbelt, MD 20770                            Greenbelt, MD 20770
Telephone: (713) 880-3556                    Telephone: (301) 821-0855
Email: Morris_Moon@fd.org                 Email: George_Kouros@fd.org

*Counsel for Daniel Lee*

TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………...1

I.  Mr. Lee's Rule 60(b) motion is not a successor………………………………………..5

II. The case-specific factors and equities in this case demonstrate extraordinary
    circumstances that warrant reopening the judgment…………………………………….8
    A.  Mr. Lee relies on more than just a change in decisional law…………………………8
    B.  *Banister* supports Rule 60(b) relief in Mr. Lee's case……………………………10
    C.  Mr. Lee properly set out the fact-intensive, individualized inquiry necessary for
        the "extraordinary circumstances" determination in this Circuit and meets that
        test……………………………………………………………………………………11

III. Mr. Lee's Rule 59(e) motion is meritorious…………………………………………..14
    A.  The Rule 59(e) motion presented the same IAC claim raised in the § 2255
        motion.......................................................................................................................14
    B.  The Rule 59(e) motion properly raised meritorious claims that the Court committed
        manifest errors of law and fact in its denial of the § 2255 motion…………………..15
    C.  Courts have discretion to review supporting information attached to a Rule 59(e)
        motion………………………………………………………………………………..17

IV. Mr. Lee's trial IAC claim is meritorious…………………………………………...19
    A.  The Government has invented a Sixth Amendment claim and attacked it rather
        than Mr. Lee's actual IAC claim…………………………………………………..19
    B.  Current protestations notwithstanding, the Government presented the PCL-R
        evidence to convince the jury that Mr. Lee would be a future danger……………….22

CONCLUSION…………………………………………………………………………...25

**FEDERAL DEATH PENALTY CASE**
**\*\*\*\*EXECUTION SCHEDULED FOR JULY 13, 2020\*\*\*\***


**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**DANIEL LEWIS LEE,**
           **Movant,**                  **Criminal Case No. 4:97-CR-00243-KGB-2**

**v.**                                   **CAPITAL CASE**

**UNITED STATES OF AMERICA**
           **Respondent.**


**REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR RELIEF**
**FROM JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60(b)**

COMES NOW Daniel Lewis Lee, by and through counsel, and hereby submits the

following reply to the Government's Response ("GR") in opposition to his motion for relief from

judgment or order pursuant to Fed. R. Civ. P. 60(b). *See* Dkt. 1386.

### Introduction

The Government's Response is primarily engaged in erecting strawmen only to tear them

down. It mischaracterizes the basis for Mr. Lee's 60(b) motion; distorts the request in his Rule

59(e) motion; misstates the ineffective assistance of counsel (IAC) claim at issue in his initial

§2255 proceeding; and grossly distorts the trial record. Procedural histories in habeas cases can

be complicated enough: Inaccuracy makes this Court's task needlessly difficult. Mr. Lee will

respond in turn to the Government's errors as he addresses each step in the required analysis.

Before proceeding further, however, Mr. Lee must comment on the first section of the

Government's brief. Nearly half of its pleading is devoted to recounting the litigation Mr. Lee

has pursued in various courts on this and other issues. Respondent's purpose here is not subtle: It

is plainly intended to create the impression that Mr. Lee has engaged in endless or frivolous

lawsuits to "avoid or delay his execution." GR at 1.

Of course, there's another way of looking at this. If, at the time of trial, the Government

had disclosed—

- that the original prime suspect in the case flunked a polygraph examination about his involvement in the Mueller murders;

- that its star witness was mentally unstable, so much so that its own case agents confided their concerns about it to its other cooperating witnesses;

- that two of its cooperating witnesses repeatedly denied the existence of the alleged racketeering enterprise that formed the basis for federal jurisdiction;

- that a key government witness repeatedly warned the prosecution that Mr. Lee had a history of exaggerating to make himself seem tough and that his "confessions" of wrongdoing were not worthy of belief; and

- that a teenaged Danny Lee did not "get a gift" from Oklahoma prosecutors of plea to a lesser charge when he had committed a murder, but instead had that murder charge dismissed by a judge who found the state's evidence so lacking that it did not satisfy a probable cause standard;

—then perhaps Mr. Lee would not have had to litigate these issues piecemeal every time one of

these facts—which the Government has assiduously worked to conceal—came to light.[1]

It should go without saying, but post-conviction counsel cannot simply "look the other way"

when they uncover such matters. Indeed, it speaks volumes that, when presented with new

evidence, *three* different federal judges opined that, but for procedural obstacles, Mr. Lee *should*

---

[1] Similarly, if the Government had not interfered with Mr. Lee's clemency proceeding, he would not have had to sue it. *See Lee v. Barr*, No. 1:19-CV-3611 (D.D.C.) (Dec. 2, 2019). Indeed, it is deeply ironic that the Government is fighting to protect a death sentence secured using "expert evidence" that Mr. Lee is an incorrigible psychopath inherently prone to violence, while at the same time blocking correctional officers who have observed him daily for nearly two decades from providing evidence that Mr. Lee is not violent or dangerous, but in fact a model prisoner—a "poster boy" for how an inmate could mature and turn his life around in prison. *Id.*, Dkt. No. 1 at 9-10

have had his death sentence vacated already.[2] And although the Government has, at least thus far, succeeded in invoking procedural roadblocks, this litigation over procedural matters is a far cry from the *substantive* review that the many troubling facts about his case deserve, and which the Government cannot credibly claim he has already received.

But fortunately, one of those previous roadblocks can now be lifted.

Now before this Court is Mr. Lee's Motion for Relief from Judgment pursuant to Rule 60(b). That motion asks the Court to reconsider an earlier ruling in the case on a motion filed pursuant to Rule 59(e). As the Government concedes, the Court's application of the successor standards to that Rule 59(e) motion was "erroneous" under *Banister v. Davis*, 590 U.S. ___, 140 S. Ct. 1698 (2020). *See* GR 34. This intervening change in law, combined with a wide range of case-specific factors, justifies vacating the prior order that denied the Rule 59(e) motion as successive. Such a 60(b) ruling would allow this Court to consider the Rule 59(e) motion anew. To address the Rule 60(b) motion, this Court must answer two questions: First, is Mr. Lee's Rule 60(b) motion properly addressed to a procedural ruling that precluded a merits determination of his § 2255 claims? And second, do the facts of the case demonstrate the kind of extraordinary circumstances that warrant relief?

---

[2] *See United States v. Lee*, No. 4:97-CR-00243, 2008 WL 4079315, at *60 (E.D. Ark. Aug. 28, 2008) (Memorandum Opinion) (Hon. G. Thomas Eisele observing that, while not in the case before him "redressable under existing legal principles," Daniel Lee's death sentence was not fairly obtained); *see also* Dkt. 1313 at 14 (Hon. J. Leon Holmes observing that, although he was precluded from granting relief for procedural reasons, Government's withholding of evidence regarding the handling of the Oklahoma charge met the standard for a *Brady* violation). Judge Holmes's assessment was later echoed by the Hon. Patrick J. Hanlon, who reviewed Judge Holmes's order regarding the materiality of this information in connection with Mr. Lee's Petition for Writ of Habeas Corpus and stated that he saw "no basis to disagree with that finding[.]" *See Lee v. Warden USP Terre Haute, et al.*, No. 2:19-cv-00468-JLH-DLP, Dkt. No. 27 at 16 (S.D. Ind. Dec. 5, 2019). (The Court denied Mr. Lee's petition on jurisdictional grounds on March 30, 2020, and specifically did not reach the merits of the claims. *See* Dkt. 35 at 3.)

This Reply addresses the Rule 60(b) questions below first. It then turns to the task before the Court should it answer those two questions in the affirmative: reviewing the Rule 59(e) pleadings *de novo*. At this stage, the Court will need to determine whether there are grounds to reconsider the prior order denying § 2255 relief. Mr. Lee explains below how the post-conviction court erred, both legally and in misconstruing the facts, and why the Rule 59(e) motion should have been granted.

If the Court agrees that the Rule 59(e) motion should have been granted, it then will turn to the third and final action—*de novo* review of the IAC claim. Mr. Lee sets out below why he has established both prongs of the *Strickland* ineffectiveness inquiry. Given that their stated trial strategy was to exclude the psychopathy evidence, it was objectively unreasonable for counsel to omit a challenge to the validity and reliability of the PCL-R at a capital trial. Prejudice in this case is unusually clear: Had counsel raised such a challenge, Dr. Ryan would have unilaterally withdrawn his opinion and report—just as he has done in two other federal capital cases when faced with the same challenge. The jury would therefore have never heard the damning evidence that Judge Eisele found most likely affected its sentencing verdict.[3]

(Alternatively, this Court could decide that more fact development is necessary because there are still disputed issues of material fact that cannot be conclusively resolved based on the extant record. *See* 28 U.S.C. § 2255(b) (articulating statutory standard for granting evidentiary hearing). In that case, further proceedings would be necessary before the Court could render a decision on the merits of the IAC claim.)

With this overview complete, Mr. Lee now turns to those three facets of the case and the

---

[3] *United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. Mar. 21, 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001).

arguments raised in the Government's Response.

**ARGUMENT**

### I.     Mr. Lee's Rule 60(b) motion is not a successor.

The Government argues that Mr. Lee's 60(b) motion is successive because he is requesting reconsideration of a merits ruling. GR 33 *et seq*. This is incorrect. Mr. Lee's Rule 60(b) motion is addressed to Judge Eisele's improper application of *Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005) to his Rule 59(e) motion. This is a procedural ruling, no different in this context from one holding that a claim is unexhausted, defaulted, or time-barred; these are not rulings "on the merits," but rather reasons why the merits cannot be reached. *Id.*

If this Court were to agree that Judge Eisele's application of the successor standards to the Rule 59(e) motion was erroneous—as it should, given that even the Government agrees it was[4]—it would be addressing a defect in the integrity of the § 2255 proceeding, not a claim for habeas relief. Granting Mr. Lee's Rule 60(b) motion would not disturb Mr. Lee's underlying conviction or sentence: It would have the more limited effect of vacating the Court's order denying the Rule 59(e) motion. This is unquestionably a "true" 60(b) motion, not a successive pleading.

The Government suggests that since Judge Eisele also conducted an "alternative merits analysis," then any criticism of that analysis must render Mr. Lee's Rule 60(b) motion successive pursuant to *Gonzalez*'s rule that 60(b) cannot be used to attack a prior merits determination. GR 36-38. This argument is wrong for a number of reasons.

First, and most fundamentally, this "alternative" ruling was a legal nullity. The

---

[4] *See* GR 34 (noting that Judge Eisele applied the successor standards to Mr. Lee's Rule 59(e) motion and deemed it successive, and that this was "a determination that *Banister* establishes was erroneous.").

Government's argument presumes that Judge Eisele made a valid *simultaneous* ruling "on the merits" of the Rule 59(e) motion. He did not, and he could not: A court cannot render a merits decision unless it first finds it has jurisdiction to do so. *See* Dkt. 1377 at 7 n.5 (collecting cases). Here, Judge Eisele explicitly stated that the IAC claim about psychopathy was successive. *Id*. at 7.[5] That was the end of the matter. Any "alternative merits analysis" about these claims was a dead letter. A district court cannot properly consider the merits of a claim—"at all"—unless it has jurisdiction. *Crawford v. F. Hoffman-La Roche Ltd*., 267 F.3d 760, 764 (8th Cir. 2001). Indeed, in *Arnold v. Wood*, 238 F.3d 992, 997-98 (8th Cir. 2001), the Eighth Circuit held that a district court's merits ruling on an untimely Rule 59(e) motion was *ultra vires*. Once the Court determined it did not have jurisdiction, any further merits analysis "was effectively a nullity." *Id*.[6]

Even where a court (in a capital habeas case) ultimately agrees with a ruling's outcome, it cannot merely accept it if it was premised on hypothetical jurisdiction. *See Leal Garcia v. Quarterman*, 573 F.3 214 (5th Cir. 2009) (reversing where second-in-time petition deemed non-successive; vacating district court's merits ruling "based on its erroneous assumption of hypothetical jurisdiction," but dismissing after conducting its own merits review).

Second, insofar as Mr. Lee's Rule 60(b) motion addressed factual errors in the Court's

---

[5] Likewise, instead of affirmatively finding that he had jurisdiction to consider the evidentiary hearing claim, he stated that the matter was "not free from doubt." Dkt. 1377 at 8 n.7.

[6] The Government notes that in its order vacating the stay of execution, the Eighth Circuit wrote that this Court "rejected a Rule 59(e) motion from Lee on the grounds that it was a successive motion under 28 U.S.C. § 2255(h) *and* lacking in merit." GR 34 (emphasis in Government's brief, not original). This proves nothing. The order correctly recounts that Judge Eisele *stated* he did both of those things, but it does not establish that he was *entitled* to. Contrary to the Government's suggestion, the order vacating the stay did not upend decades of settled Supreme Court and circuit precedent barring a district court from considering the merits of a claim once it finds it lacks jurisdiction to do so. *See* Dkt. 1377 at 7 n.5 (collecting cases).

"alternative merits analysis," it was to highlight the dangers of making cursory fact finding without careful review of a full record. *See* Dkt. 1377 at 8 n.6. The fact that the alternative merits analysis got a basic and indisputable fact wrong demonstrates that it was not a careful and reliable review, but rather hastily conducted after the Court had already decided it lacked jurisdiction to do more. *Id.* In other words, the Court's faulty alternative analysis underscores the procedural defect Mr. Lee seeks to remedy. The Government's construal of this as an improper "attack on the merits" is inaccurate.

Third, the Government argues that because Mr. Lee's ultimate aim is to have this Court reach the underlying merits of his § 2255 claims, his Rule 60(b) motion is just a disguised attack on the merits. GB 37. This is a flawed, circular argument. If the Government's view were correct, *no* Rule 60(b) motion could ever succeed; any effort to correct a procedural ruling precluding merits review is—ultimately—always concerned with reaching the merits. *See United States v. Vialva*, 904 F.3d 356, 361 (5th Cir. 2018) ("Rule 60(b) motions can legitimately ask a court to reevaluate already-decided claims—as long as the motion credibly alleges a non-merits defect in the prior habeas proceedings."); *In re Pickard*, 681 F.3d 1201, 1206 (10th Cir. 2012) (Rule 60(b) motion not improper "if success on the motion would ultimately lead to a claim for relief under § 2255. What else could be the purpose of a 60(b) motion? The movant is always seeking in the end to obtain § 2255 relief.")

Finally, the Government proposes that, since *Banister* establishes that the jurisdictional ruling was erroneous, then the Court's alternative merits analysis suddenly *automatically* springs forth, absent Court intervention, to resolve and take the place of the now defunct basis for denying the Rule 59(e) motion. GR 38. The Government offers no authority for the fanciful claim that a judgment can magically amend itself in this way. In fact, as discussed above, case

7

law establishes the opposite. *See e.g. Leal Garcia v. Quarterman, supra.* The cases the Government cites, *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994) and *AT&T Corp. v. Hulteen*, 556 U.S. 701 (2009), are wholly inapposite. These cases examine the retroactive effect of judicial construction of a statute; they have nothing to do with the instant matter. The Eighth Circuit's law applying successor standards to Rule 59(e) motions, upon which Judge Eisele relied, was not the result of an erroneous statutory construction of AEDPA's gatekeeping provisions; indeed, as the Supreme Court noted, the Eighth Circuit's practice is traceable to *Bannister v. Armontrout*, 4 F.3d 1434, 1445 (8th Cir. 1993), which *pre-dated* AEDPA's passage. *See Banister*, 140 S.Ct. at 1707. In sum, there is no basis for the claim that the Court's previous Rule 59(e) order was suddenly transformed from a jurisdictional ruling to a merits ruling the moment the Supreme Court's *Banister* decision came into existence. That order is due to be vacated and reconsidered *de novo*.

## II.     The case-specific factors and equities in this case demonstrate extraordinary circumstances that warrant reopening the judgment.

Consistent with the fact-intensive and individualized nature of the 60(b) inquiry, Mr. Lee set forth a wide range of case-specific factors that demonstrate extraordinary circumstances in this case and argue for the granting of his 60(b). *See* Dkt. 1377 at 16-19.

### A.  Mr. Lee relies on more than just a change in decisional law.

The Government rebuts an argument that was never made—that intervening developments in the law *by themselves* are sufficient to establish extraordinary circumstances. GR at 31, 39-47. That's not Mr. Lee's position, and never has been. Although a change in decisional law is an appropriate factor to be considered as part of a Rule 60(b) analysis,[7] Mr. Lee

---

[7] *See Buck v. Davis*, 137 S. Ct. 759, 767 (2017) (noting that petitioner alleged "change in the law" among multiple factors as establishing extraordinary circumstances for purposes of Rule

8

is not relying *solely* on *Banister* to demonstrate that there are extraordinary circumstances that warrant reopening the judgment.

Instead, he has pointed to a wide range of case-specific factors, *in addition to* a change in law, that establish an equitable basis for granting relief.[8] These include, among other things, that it would be a manifest injustice to allow Mr. Lee to be executed on the basis of "scientific" evidence that has been thoroughly debunked by the forensic psychology community, that the Government's own expert has repudiated, and that the Government itself no longer even seeks to introduce in its capital prosecutions. *See* Dkt. 1377 at 16-19.

For this same reason, the Government's quibbling over whether *Banister* represents a modest rather than major change in Eighth Circuit law is irrelevant. It has already conceded that *Banister* establishes that the Court's denial of the Rule 59(e) motion on jurisdictional grounds was "erroneous." GR 34.[9] This did not have "minor consequences," GR 42—it resulted in Mr.

---

60(b)(6)); *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014) (rejecting per se rule that a change in decisional law is inadequate, either standing alone or in tandem with other factors, to invoke relief from a final judgment under Rule 60(b)(6)).

[8] The Government cites to *Moses v. Joyner*, 815 F.3d 163 (4th Cir. 2016), and *Scott v. Hobbs,* No. 5:04-CV-82, 2014, WL 3700581 (E.D. Ark. July 25, 2014), for the proposition that a court may not rely on a change in decisional law as a basis to find extraordinary circumstances. These cases found that the change in law in *Martinez v. Ryan*, 566 U.S. 1 (2012) was, *on its own*, insufficient to establish extraordinary circumstances. GR 42. Unlike those case, however, Mr. Lee's Rule 60(b) motion does not claim that a change in law, on its own, warrants reopening the judgment.[9] The Government suggests that the *Teague* non-retroactivity doctrine would preclude Rule 60(b) relief based on *Banister*. GR 46. This falls into that category of contentions that some courts charitably refer to as "so far from correct that they're not even wrong." *Chrystal v. Huntington Nat. Bank,* No. 610-CV-668-ORL-31GJK, 2010 WL 1965870, at *1 (M.D. Fla. May 17, 2010). *Teague v. Lane*, 489 U.S. 288 (1989), applies only to "new constitutional rules of criminal procedure," *id.* at 310, that apply to the trial—not collateral review—process. Because *Banister* is not a constitutional rule governing criminal trials, *Teague*'s general rule against retroactivity does not apply. (Indeed, the *Banister* rule applies to Mr. Banister – also a habeas litigant.)

[9] The Government suggests that the *Teague* non-retroactivity doctrine would preclude Rule 60(b) relief based on *Banister*. GR 46. This falls into that category of contentions that some courts charitably refer to as "so far from correct that they're not even wrong." *Chrystal v.*

Lee's Rule 59(e) motion being deemed successive and precluded him from receiving full merits review of his IAC claim at a stage that is "part and parcel" of the initial § 2255 proceeding. *Banister*, 140 S. Ct. at 1702.

### B. *Banister* supports Rule 60(b) relief in Mr. Lee's case.

Mr. Lee's Supplemental Motion (Dkt. 1377) explains *Banister*'s relevance to his case and he will not belabor the point here. It is worth noting though that the Government's response supports Mr. Lee's argument. Conceding as it must that *Banister* marks a change in decisional law, GR 33, 39, the Government then agrees that, in light of *Banister*, Judge Eisele's determination that Mr. Lee's Rule 59(e) motion was successive is error. GR 34. In other words, both Mr. Banister's and Mr. Lee's Rule 59(e) motions were the subject of procedural rulings that have now been determined erroneous.

Yet the Government still strives to stave off the same outcome. It posits that while Mr. Banister was deprived of a merits determination due to his faulty procedural ruling (on a Certificate of Appealability), Mr. Lee suffered no harm as a result of his erroneous jurisdictional ruling because Judge Eisele also conducted an alternative merits review. GR 43.[10] Again, that

---

*Huntington Nat. Bank,* No. 610-CV-668-ORL-31GJK, 2010 WL 1965870, at *1 (M.D. Fla. May 17, 2010). *Teague v. Lane*, 489 U.S. 288 (1989), applies only to "new constitutional rules of criminal procedure," *id.* at 310, that apply to the trial—not collateral review—process. Because *Banister* is not a constitutional rule governing criminal trials, *Teague*'s general rule against retroactivity does not apply. (Indeed, the *Banister* rule applies to Mr. Banister – also a habeas litigant.)

[10] The Government suggests that *Banister* supports this analysis because it noted that since Mr. Banister received a merits determination in the district court on his Rule 59(e) motion, he suffered no harm at that juncture. GR 43-44. But the comparison doesn't work. In *Banister*, the district court did not deem the petitioner's Rule 59(e) motion successive under *Gonzalez*: The circuit court did. Because of the circuit court's improper ruling, the time for filing a Notice of Appeal was not tolled, and Mr. Banister's appeal was time-barred. That is the parallel procedural error and where the harm occurred to both litigants. There is nothing in *Banister* that suggests the Supreme Court would have approved of the district court conducting an incidental alternative merits analysis *after* concluding the Rule 59(e) motion was successive under *Gonzalez*. Indeed,

10

merits review was a legal nullity.[11] And, as discussed above, the decision's obvious factual error

highlights the truncated nature of the ruling. *See* Dkt. 1377 at 8 n.6.[12]  The Government cannot

credibly claim that that improper (and factually flawed) review constitutes a ground "unaffected

by *Banister*" that counsels against relief.

Lamentably, the Government is still trying to take advantage of that factual error and

hoping that this Court won't notice. GR 60. It is acutely aware that although Dr. Ryan's

disavowal occurred in 2000, the declaration also makes clear that: (a) the relevant challenge was

available at the time of the *Richard Stitt* trial—which the Government knows occurred in 1998,

since DOJ was the entity that prosecuted Mr. Stitt; and (b) if Mr. Stitt's counsel had raised the

relevant challenge prior to the 1998 trial, Dr. Ryan would have withdrawn his report and opinion

at the time. *See* Dkt. 1165-4 at ¶¶ 5-6 (Declaration of Thomas V. Ryan, Ph.D.). And if the

---

such a practice would have flouted well-established Supreme Court precedent that prohibits a
district court from deciding the merits of a claim without jurisdiction. *See Steel Co. v. Citizens
for a Better Environment*, 523 U.S. 83, 93-95 (1998).

[11] The Government appears to argue that the Eighth Circuit conducted a similar
"alternative merits analysis" in 2013. *See* GR 44-45. But the Circuit denied a Certificate of
Appealability on that claim, thus denying itself jurisdiction to consider it. *See United States v.
Lee*, 715 F.3d 215, 224 (8th Cir. 2013) ("These issues raised by Lee are beyond the scope of our
certificate of appealability and are therefore not properly before the court."); *see also Arnold v.
Wood*, 238 F.3d 992, 994, 998 (8th Cir. 2001) (circuit court cannot proceed further on an issue
once it finds it lacks jurisdiction.). Moreover, as is clear from that opinion, the Eighth Circuit
merely harkened back to its 2001 direct appeal opinion, which decided an evidentiary issue on a
different standard; it did not engage with the Sixth Amendment claim. *Lee,* 715 F.3d at 224
(citing *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001)).

[12] Mr. Lee's Sixth Amendment claim is that if counsel had raised an available challenge,
Dr. Ryan would have withdrawn his opinion and report. That claim has never been considered on
the merits by any court. Judge Eisele admitted that he misunderstood the claim, then erroneously
determined it was successive, and then offered a cursory analysis that got the most basic fact
about the claim wrong. This did not constitute "one full round of review," GR 48 n.9, and the
Government cannot point to single judicial decision that has addressed the full merits of this
Sixth Amendment claim.

challenge was available and would have been successful in 1998, it certainly would have been so a year later.

### C. Mr. Lee properly set out the fact-intensive, individualized inquiry necessary for the "extraordinary circumstances" determination in this Circuit and meets that test.

The Government faults Mr. Lee's reliance on the Fifth Circuit's *Seven Elves*[13] test for extraordinary circumstances. GR 32 n.5. It argues that *Davis v. Kelley*, 855 F.3d 833, 835 (8th Cir. 2017) (*per curiam*) is "more instructive," GR 32 n.5, implying that the Eighth Circuit's approach is somehow incompatible.[14] It is not.

Much like its sister circuit, the Eighth Circuit recognizes that Rule 60(b) "should be liberally construed when substantial justice will thus be served." *See Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989) (internal quotation marks and citation omitted); *compare with Seven Elves*, 635 F.2d at 401 ("[T]he rule should be liberally construed in order to do substantial justice."). Whereas the Fifth Circuit has articulated eight factors to make this "general statement" more amenable to legal analysis,[15] *id*., the Eighth Circuit has a more open-ended test. As explained in *Davis*, "a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." 855 F.3d at 835 (internal quotation marks and citations omitted).

---

[13] *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981).

[14] The Government also cites *Scott v. Hobbs*, No. 5:05-CV-82, 2014 WL 3700581, at *2 (E.D. Ark. July 25, 2014), as instructive. *Scott*, however, does not detail what factors a court should affirmatively consider. Instead, it provides a negative definition – a change in the law "is not *by itself* an extraordinary circumstance," *Scott* at *2 (emphasis added). That is not at issue here.

[15] The *Seven Elves* factors are derived from a leading treatise. *See Seven Elves*, 635 F.2d at 402 (noting that factors originated in 7 Moore's Federal Practice P 60.19, at 237-39).

Mr. Lee's Rule 60(b) motion satisfies this test. It thoroughly discusses the equities in this case, including the risk of injustice to Mr. Lee (and the lack of prejudice to the Government). *See* Dkt. 1377 at 16-19. And carrying out a death sentence on the basis of expert evidence—*that the Government's own expert has since disavowed*—would quite obviously undermine the public's confidence in the judicial process. The fact that Mr. Lee discussed these factors in the context of the more stringent *Seven Elves* framework is beside the point.

Respondent then appears to argue that only a case like *Buck v. Davis,* 137 S. Ct. 759 (2017), can meet the "extraordinary circumstances" test. *Buck* involved rank evidence of racial bias, with an expert testifying that a factor to weigh in assessing Mr. Buck's potential future danger was the fact that he is African American. One can only hope that any case so tainted by racial bias will find relief on some basis in some court. But in finding that the test had been satisfied in his case, the Supreme Court did not hold that egregious racism was a requisite factor for Rule 60(b) relief.[16] Indeed, some of the other factors the Court pointed to—that the "scientific" evidence went to future dangerousness, a significant issue in a death penalty case, *id.* at 775; that the fact that the testimony came in through the defense's own expert made it even more likely that the jury gave it credence, *id.* at 767; or the fact that Mr. Buck remained the only person still on Texas's death row whose death sentence had been tainted by such evidence, *id.* at 778-79—apply equally to Mr. Lee. All of those circumstances are relevant in assessing the harm here.

Mr. Lee's Sixth Amendment claim is that if counsel had raised an available challenge, Dr. Ryan would have withdrawn his opinion and report and the evidence never would have come

---

[16] *Buck*, in fact, reaffirmed the fact-intensive nature of a Rule 60(b) inquiry and that district courts are vested with "wide discretion" to determine whether justice would be served based on the case-specific equities presented. *Id.* at 772, 778.

in. That claim has never been considered on the merits by any court. Judge Eisele admitted that he misunderstood the claim, then erroneously determined it was successive, and then offered a cursory analysis that got the most basic fact about the claim wrong. This did not constitute "one full round of review," GR 48 n.9, and the Government cannot point to single judicial decision that has addressed the full merits of this Sixth Amendment claim. Mr. Lee remains the only prisoner on federal death row whose sentence of death was tainted by this unreliable expert testimony. His claim should be heard.

## III.    Mr. Lee's Rule 59(e) motion is meritorious.

The Government argues it would be futile to reopen the judgment because Judge Eisele correctly denied the Rule 59(e) motion on additional grounds unaffected by *Banister*. GR 47. The Government is wrong. Mr. Lee's Rule 59(e) motion was properly addressed to manifest errors of law and fact in the Court's order denying § 2255 relief. His arguments under Rule 59 were not only permissible, they were also plainly meritorious. *See* Dkt. 1377 at 5-6, 20-21.

### A.  The Rule 59(e) motion presented the same IAC claim raised in the § 2255 motion.

The Government suggests that the IAC claim presented in the Rule 59(e) motion was not the same claim raised in the initial § 2255 motion, and therefore impermissibly sought to raise a "new" claim. This is not true. *See* Dkt. 1377 at 4, 7 (demonstrating that Court correctly understood the nature of the claim in its order on the § 2255 motion). In fact, the Government has litigated this precise issue before and lost.

In 2015, the parties were before the Circuit Court on Mr. Lee's 60(b) motion to reopen the Rule 59(e) judgment after *Trevino v. Thaler*, 569 U.S. 413 (2013), was issued. The Government argued at that time that the IAC claim regarding the PCL-R was a "new claim" as presented in the Rule 59(e) motion and therefore that the 60(b) motion improperly sought to raise

14

a new claim as well. *See United States v. Lee*, No. 14-2853, Entry ID: 4233704 (Brief for the United States) at 22-23, 36, 39-40 (8th Cir. Jan. 12, 2015). The Eighth Circuit flatly rejected this assertion: "After consideration, we conclude that Lee's Rule 60(b) motion [which sought to reopen the Rule 59(e) judgment] … was seeking to reopen a claim *which had been raised in his initial habeas petition* and decided by the district court." *United States v. Lee*, 792 F.3d 1021, 1023 (8th Cir. 2015) (emphasis added).

Indeed, even Judge Eisele did not characterize the claim as new when he denied the Rule 59(e) motion; like the Eighth Circuit, he faulted § 2255 counsel for waiting until the Rule 59(e) stage to proffer affidavits, not for raising a different claim.[17] *See* Dkt. 1377 at 7; *United States v. Lee*, No. 4:97-CR-00243, 2010 WL 5347174, at *6 (E.D. Ark. Dec. 22, 2010) (Order Denying Post-judgment Relief); *Lee*, 792 F.3d at 1023.[18]

### B. The Rule 59(e) motion properly raised meritorious claims that the Court committed manifest errors of law and fact in its denial of the § 2255 motion.

Mr. Lee properly asked the Court to reconsider two manifest errors of law in its denial of his IAC claims. First, he pointed out that the Court erroneously held that Mr. Lee's IAC claim about psychopathy was foreclosed by the Eighth Circuit's direct appeal opinion. *See United*

---

[17] The Government also characterizes the IAC claim as "augmented." GR 28, 43, 49. But even if that were true, under governing Eighth Circuit law, Judge Eisele would have been required to treat it as a motion to amend and conduct a relation-back analysis, not deny it out of hand. *See United States v. Sellner*, 773 F.3d 927, 931-32 (8th Cir. 2014) (expressly adopting the holding in *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002), that any new claim raised before the § 2255 motion has been finally adjudicated on appeal should be construed as a motion to amend the original § 2255 motion). Clearly, the issue set forth in the Rule 59(e) motion related back to the § 2255 motion because it arose "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).

[18] Nor did the Government treat it as a different claim in its response to the Rule 59(e) motion. In fact, it stated the opposite: that Mr. Lee was attempting to re-assert the *same* claims that had already been decided by the Court. *See* Dkt. 1170 at 4, 5 n.4. The only thing the Government described as "new" was the supporting information attached to the Rule 59(e) motion. *Id.* at 5.

15

*States v. Lee*, No. 4:97-CR-00243, 2008 WL 4079315, at \*48 (E.D. Ark. Aug. 28, 2008)

(Memorandum Opinion). As was noted in the Rule 59(e) motion, this was not so. Dkt. 1165 at

34-36 & 20 n.14. On direct appeal, the Eighth Circuit considered an evidentiary issue: whether

the psychopathy evidence was more prejudicial than probative given the unchallenged premise

that Mr. Lee's PCL-R score was relevant to future dangerousness. The IAC claim raised in the §

2255 proceeding was different. Not only *did* it challenge the probative value of the PCL-R

evidence, but it also required the Court to answer an entirely different question: If Dr. Ryan had

voluntarily withdrawn the psychopathy evidence prior to trial and it had never been introduced,

is there a reasonable probability that the outcome of the proceeding would have been different?

*See* Dkt. 1165 at 20 n.14, 34-36. These are different inquiries, based on different legal standards

and different facts. It was therefore legally erroneous to conclude that the Eighth Circuit's

decision foreclosed Mr. Lee's Sixth Amendment claim.

Additionally, the Court's analysis was tainted by its adoption of an incorrect legal

framework for assessing all of Mr. Lee's Sixth Amendment claims. In the "Legal Standards"

section of its Order, the Court explicitly stated that it was applying the more stringent standard

articulated in *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993), to assess the prejudice prong of

Mr. Lee's IAC claims, so as to prevent him from reaping a "windfall" if he were "solely" able to

meet the *Strickland* standard for prejudice. *See Lee*, 2008 WL 4079315, at \*9 (stating that

prejudice also required a showing of "some effect of the challenged conduct on the reliability of

the trial process" under *Fretwell*). The Court was unmistakably clear that it would assess *all* of

Mr. Lee's Sixth Amendment claims "[w]ith this standard in mind[.]"[19] As Mr. Lee pointed out in

---

[19] Indeed, the Court adopted the *Fretwell* standard at the Government's urging. *See* Dkt. 1126 at 36, 73.

16

his Rule 59(e) motion, the Supreme Court specifically held in *Williams v. Taylor*, 529 U.S. 362, 391-95 (2000) that it is error to assess IAC prejudice using the more stringent *Fretwell* standard. *See* Dkt. 1165 at 18. This was a manifest error of law.[20]

Mr. Lee also properly raised an error of fact: that the Court misunderstood the factual basis for the IAC claim, and therefore failed to fully resolve it. *See* Dkt. 1165 at 34 n.23.The Court did not recognize that Mr. Lee's claim depended on what *Dr. Ryan* would do in response to a readily available challenge: namely, withdraw his opinion and report, as he had done in other cases when the same challenge had been brought to his attention. *Id.* Consequently, the Court's prejudice analysis was flawed because, based on the highly fact-specific nature of Mr. Lee's claim, it is clear that the jury would have never heard any evidence concerning the PCL-R or psychopathy in making its sentencing determination. *Id.* The Court simply did not consider this aspect of the claim in its order denying the § 2255 motion. *See* Dkt. 1377 at 7.

Finally, Mr. Lee properly argued that the Court committed legal error in denying an evidentiary hearing. *See* Dkt. 1377 at 8-9. That claim did not hinge on the Court's consideration of the declarations attached to the motion, either. Rather, it relied on an analysis of whether the statutory standard for obtaining a hearing was met given that there were obvious disputed issues of material fact that could not be *conclusively* resolved based on the extant record, and which

---

[20] Notably, the Court did not deny that it relied on *Fretwell* after the error was brought to its attention. Rather, it expressly rejected the notion that its application of *Fretwell* was erroneous. *See Lee*, 2010 WL 5347174, at \*5 ("The Court rejects Petitioner's argument that it applied the wrong standard in resolving his ineffective assistance of counsel claims.") The Government claims that, nevertheless, Judge Eisele "applied the correct *Strickland* prejudice standard" as to the IAC claim concerning the PCL-R because he referenced the "outcome" in his analysis. GR 57 n.12. This is no answer. Indeed, in *Williams v. Taylor,* 529 U.S. at 394, the Virginia court also evaluated the "outcome" of the trial but its reasoning was still rejected by the Supreme Court. Judge Eisele's order did not disentangle *Fretwell*'s focus on the "reliability of the trial process" from the inquiry over whether the "outcome" would have been different. The legal analysis was tainted; this Court should conduct the prejudice inquiry anew free of that taint.

required the Court to make credibility determinations about witnesses that it was not permitted to do purely on the basis of declarations submitted by the Government. *See* Dkt. 1165 at 3-17.

### C. Courts have discretion to review supporting information attached to a Rule 59(e) motion.

The Government states that a district court cannot reconsider a claim based on affidavits that were available prior to the filing of the Rule 59(e) motion. This is not so. District courts have broad discretion in considering Rule 59(e) motions. *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir.1998). And because the "text of Rule 59(e) contains no requirement that the grounds must be based on newly discovered evidence," *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 n.6 (Fed. Cir. 1994), there is no bright-line rule that prohibits courts from considering previously available affidavits in connection with a Rule 59(e) motion.[21]

The Eighth Circuit appears to permit the practice.[22] And as other courts have noted, where a litigant "offers no substantial explanation for its failure to submit, before judgment, the documentary and affidavit evidence," that is "not determinative" because under Rule 59(e), a litigant need "need not make any particular showing of inadvertence or excusable neglect." *Texas A & M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 401 (5th Cir. 2003)

---

[21] Indeed, "[t]he circuits appear split as to whether evidence that is not newly discovered may be submitted in support of [a] motion to reconsider." *Hake v. Guardian Life Insurance Co.*, No. 2:07-cv-01712-RCJ-RJJ, 2010 WL 11578944, *1 (D. Nev. 2010) (citing cases). *Banister* did not consider or address this circuit split.

[22] In *Parkus v. Delo*, 33 F.3d 933 (8th Cir. 1994), the Court remanded for a hearing on a capital habeas petitioner's IAC claims based on facts alleged in documents first submitted with the Rule 59 motion. 33 F.3d at 936-37 (describing contents of petitioner's appendix on appeal). Although the *Parkus* opinion states that one of the affidavits accompanied the federal habeas petition, *id*. at 936, it is the undersigned's understanding that the bulk of the materials the Eighth Circuit considered were submitted with the Rule 59 motion, as well as a series of supplements to that motion. *See Parkus v. Delo*, No. 4:90-cv-01007-DJS (E.D. Mo.) at Dkts. 14, 19, 21, and 25.

(internal quotation marks and citation omitted). A court must also consider whether the evidence is "critical" to correctly resolving the relevant claims before the court, and whether the opposing party would be unfairly prejudiced if the evidence were considered.[23] These factors are particularly germane here. The Government does not contest the veracity of Mr. Lee's supporting information, nor can it claim "unfair surprise"—these affidavits had been publicly filed several years prior to Mr. Lee's § 2255 proceeding in two other federal capital cases in which the Government was a party.[24] Thus, it would suffer no unfair prejudice from this Court's consideration of that information. (That said, the Court need not consider those affidavits in order to grant Mr. Lee's 60(b) motion, or to grant relief on the Rule 59(e) motion.).

## IV.    Mr. Lee's trial IAC claim is meritorious.

Rather than directly address Mr. Lee's trial IAC claim, the Government continues to avoid and obfuscate. Nothing it raises defeat the merits of his claim.[25]

---

[23] *See Texas A & M Research Foundation*, 338 F.3d at 401 (granting Rule 59(e) motion because belated documents were of "critical importance" to resolving issue; since defendants were already aware of information, they could not be "unfairly surprised" or "unfairly prejudiced" by its consideration).

[24] *United States v. Richard Stitt*, No. 2:98-cr-00047-RAR-RJK (E.D. Va.); *United States v. Willis Haynes*, No. 8:98-cr-00520-PJM-1 (D. Md.).

[25] Contrary to the Government's assertion, GR 37 n.7, Mr. Lee did not state that a hearing would never be necessary; he merely pointed out that, if the Court were so inclined, there is a path by which it could grant relief on this IAC claim that would obviate the need for a hearing. Dkt. 1377 at 20-21. (Ultimately, of course, it would be for the Court to decide whether it requires more fact-development from the parties to fill in any potential gaps in the record before it can properly assess the merits.) Mr. Lee still separately contends that the Court erred in denying his § 2255 motion without an evidentiary hearing, for the reasons articulated in his Rule 59(e) motion: he had met the relevant statutory standard for a hearing because he alleged facts which, if true, would entitle him to relief, and there existed disputed issues of fact that could not be conclusively resolved on the extant record alone. *See* Dkt. 1377 at 6. The Government's contention, at GR 62, that no hearing was necessary because Judge Eisele credited all of Mr. Lee's allegations before denying his § 2255 motion rings hollow considering that the Court admitted it did not fully understand the nature of Mr. Lee's IAC claim at the time of the denial. *See* Dkt. 1377 at 7. And to the extent the Court thereafter attempted to credit the allegations as part of its "alternative merits analysis," it improperly *failed* to credit Mr. Lee's claim that the

### A. The Government has invented a Sixth Amendment claim and attacked it rather than Mr. Lee's actual IAC claim.

The Government expends much effort inviting the Court to consider whether a trial challenge would have resulted in exclusion of the PCL-R evidence under the relaxed evidentiary standards of the Federal Death Penalty Act and *Barefoot v. Estelle*, 463 U.S. 880, 896-903 (1983). GR 54-56. But that question is irrelevant. The issue presented by Mr. Lee's IAC claim is not whether the *Court* would have rejected the psychopathy evidence based on this challenge, but whether *Dr. Ryan* would have.

All of the Government's arguments about the admissibility of psychopathy evidence—and whether it still has probative value if it only applies to a community setting rather than an institutional setting—is just noise. Mr. Lee's claim is that the Court never would have been called upon to make any of these determinations because Dr. Ryan would have short-circuited the process himself. We know this because that is exactly what he did in two other federal capital cases. Once made aware of the scientific shortcomings of the PCL-R for future dangerousness predictions in a capital case, he acted ethically and responsibly, and not only withdrew his relevant opinions and reports, but also publicly disavowed the instrument and stated he would never use it in a capital case again. According to Dr. Ryan, such a challenge could have been made at least as early as 1998—the year before Mr. Lee's trial—and he would have made the same decision at that time if this challenge had been brought to his attention. *See* Dkt. 1165-4 at ¶¶ 5-6 (Declaration of Thomas V. Ryan, Ph.D.).

The question, therefore, is not whether there is a reasonable probability the Court would have ruled that the PCL-R/psychopathy evidence was inadmissible if counsel had raised the

---

relevant challenge was available to trial counsel in 1999, even though that is an objectively true fact that not even the Government's expert disputes.

challenge.[26] Rather, it is whether there is a reasonable probability that the outcome of the sentencing proceeding would have been different if Dr. Ryan had withdrawn his report and no evidence about psychopathy was ever admitted at the trial.

The answer to that question is obvious.

As Judge Eisele ruled, it was "very questionable" that Mr. Lee would have been sentenced to death but for that evidence. *Lee*, 89 F. Supp. 2d at 1031. And even the Eighth Circuit has acknowledged the key role that perceptions of future dangerousness played in the jury's decision to sentence Mr. Lee to death, and Mr. Kehoe to life. *See United States v. Lee*, 715 F.3d 215, 223 (8th Cir. 2013) (stating that the "jury sentenced the two defendants differently" because it believed Mr. Lee would be a future danger, but Mr. Kehoe would not).

Nevertheless, the Government implies that even if Dr. Ryan had withdrawn his expert opinion about Mr. Lee's purported psychopathy prior to trial, the Government still could have presented it to the jury. But no, it could not have. There is not a single case the Government can point to where a federal court has allowed the introduction of expert evidence *after the expert unilaterally withdrew that evidence because of concerns about its reliability*. The Government cannot even identify how, as a practical matter, it could have introduced that evidence through anyone *other than* the expert whose opinion it was. Even under the relaxed evidentiary standards governing capital sentencing proceeding, a court would be hard-pressed to find that such expert evidence was probative of the issue for which it was being offered after the expert had

---

[26] Similarly, the Government's invocation of the evidentiary standard of "unfair prejudice" is a distraction. By way of analogy: A Court can make a determination under FRE 404(b) to admit evidence of an accused's prior convictions. If the evidentiary ruling is correct, then a defendant cannot argue that the admission of the evidence resulted in "unfair prejudice." However, it could still be the case that there is a reasonable probability that the outcome of the proceeding would have been different if the jury *hadn't heard* that evidence. That is an entirely different inquiry, and not synonymous with the "unfair prejudice" standard.

specifically disavowed it.

(The Government states that it "need not—and does not—take a position here on the scientific validity of using the PCL-R to predict future dangerousness in prison" and that it decides "validity and use of psychological testing" on a case-by-case basis. GR 53 n.11. Its actions over the last 20 years belie this claim. The Government has abandoned the use of the PCL-R to prove future dangerousness in its capital prosecutions, even in resentencing proceedings where psychopathy evidence had been previously presented.[27] In fact, federal prosecutors have never presented the PCL-R in any other capital trial since Dr. Ryan's recantation.[28])

The Government also invents a "strategy" for trial counsel it claims succeeded in preventing the jury from "hear[ing] any expert testimony linking psychopathy and future dangerousness in prison." GB 58-59. But the Government neglects to note that defense counsel did not "win" their motion in limine until *after* all of the questioning of Dr. Cunningham had already taken place. *See* Dkt. 1377 at 17 n.14. The damage had been done, and the Government

---

[27] *See*, *e.g.*, *United States v. Aquilia Marcivicci Barnette*, No. 3:97CR–23 (W.D. N.C.).[28] Although the Government is correct that the district court in *Stitt* ultimately granted relief on different grounds, it was not because it found that the PCL-R testimony was accurate; in fact, it found the opposite. *United States v. Stitt*, 369 F. Supp. 679, 699 (E.D. Va. 2005) ("[T]he Court is reasonably satisfied that Dr. Ryan's testimony was erroneous.") There was no appellate decision on the issue because, in § 2255 cases, the Government cannot appeal a grant of punishment phase relief until after the resentencing is conducted and a new judgment entered. *See United States v. Stitt*, 459 F.3d 483, 485-86 (4th Cir. 2006). Because the case was resolved, the circuit court never had the opportunity to review the claim.

[28] Although the Government is correct that the district court in *Stitt* ultimately granted relief on different grounds, it was not because it found that the PCL-R testimony was accurate; in fact, it found the opposite. *United States v. Stitt*, 369 F. Supp. 679, 699 (E.D. Va. 2005) ("[T]he Court is reasonably satisfied that Dr. Ryan's testimony was erroneous.") There was no appellate decision on the issue because, in § 2255 cases, the Government cannot appeal a grant of punishment phase relief until after the resentencing is conducted and a new judgment entered. *See United States v. Stitt*, 459 F.3d 483, 485-86 (4th Cir. 2006). Because the case was resolved, the circuit court never had the opportunity to review the claim.

made the most of it in closing. *See infra* at 23-24. Mr. Lee's claim has consistently been that the PCL-R had no role to play in a capital case, and had trial counsel conducted a reasonable investigation and made the proper objections, Dr. Ryan would have agreed and withdrawn the opinion that formed the basis of this evidence.

### B. Current protestations notwithstanding, the Government presented the PCL-R evidence to convince the jury that Mr. Lee would be a future danger.

The Government is trying to re-write history. But it is not writing on a blank slate. Judge Eisele wrote a detailed opinion that recounts in painstaking detail the centrality of the psychopathy evidence to Mr. Lee's sentencing proceeding. *Lee*, 89 F. Supp. 2d at 1021-32. None of his findings about the manner in which that evidence was introduced and presented were disturbed on appeal. Mr. Lee respectfully invites the Court to compare Judge Eisele's description of the proceedings with the Government's Response to get the full sense of how grossly it has mischaracterized the trial record. But the following points may suffice.

First, the Government is engaged in hair-splitting when it represents that Dr. Ryan never expressed his opinion about Mr. Lee's purported psychopathy during his testimony. He didn't have to: As Judge Eisele contemporaneously observed, by the time Dr. Ryan took the stand, the Government had *already* submitted his opinion to the jury *through the defense expert,* Dr. Mark Cunningham. *See* Dkt. 1377 at 3 n.2. Indeed, the prosecution built its case for death around the cross-examination of Dr. Cunningham. *Lee*, 89 F. Supp. 2d at 1019-20 (noting that "the Government's case-in-chief was brief," and its examination of Dr. Cunningham "extensive").

The Government's claim that it did not present expert psychopathy evidence to persuade the jury that Mr. Lee would be a future danger in prison is belied by the extensive record on this matter. From its opening argument, the Government linked the psychopathy finding to the future danger aggravator:

23

[Mr. Lee's] psychological profile that in the end will convince you that as he sits here today and will be in the future, Mr. Lee is a dangerous man. That, ladies and gentlemen, is a lot of what this trial will be about.

Tr. 7379. The argument continued in this vein: "In the end, what the evidence that will be presented will establish is that Mr. Lee is a psychopath. I don't mean that in a common term. I do mean that in the medical use." Tr. 7381. And "[w]e will prove in this case to you that Mr. Lee, because of his psychological profile, who he is and who he will be for years to come, is dangerous and will continue to be dangerous." Tr. 7383. The Government's argument was quite clear that this meant Mr. Lee, if sentenced to life, would continue to be a future danger *in prison*:

> The last aggravating factor that you will consider is the factor, the nonstatutory factor, called future dangerousness. What this means is that the evidence presented to you in this case as to Mr. Lee means that *even if jailed for the rest of his life, he still will be a danger to others, to fellow inmates, to prison guards.* He continues to be dangerous.

Tr. 7381 (emphasis added). *See also id*. ("The evidence that will be presented in this trial is going to help you understand that Mr. Lee, this man who sits right here in this courtroom, is a violent and dangerous man. He thrives on this stuff. That is part of his profile. *Even if you sent him to prison for the rest of his life, he will be a threat for a long, long time.*") (emphasis added).

The Government's "proof" was elicited through its protracted questioning of the defense witness about the PCL-R test that its own expert had administered. It took Dr. Cunningham though numerous aspects of the test; discussed its implications with the expert ("a psychopath is five times more likely to be violently dangerous. . . , correct?" Tr. 7810); and even had him burnish the credentials of its own expert, Dr. Ryan. The prosecution reminded the jurors repeatedly in closing of its questioning of Dr. Cunningham, leaving them in the end with

> Can't we all, with the benefit of hindsight, look at this and see, My God, look at what the *diagnosis* was.

Tr. 7968 (emphasis added). For the Government to pretend now that no link was made between

24

the expert evidence and future dangerousness in prison–the only "future" the jury could leave

Daniel Lee if it did not sentence him to die[29]–is to distort this capital trial beyond recognition.

Finally, the Government argues that ultimately there was no harm to Mr. Lee because the

jury got to hear "both sides" of whether the PCL-R is a valid predictor of future dangerousness in

prison. GR 52. Putting aside how Dr. Cunningham's attempts at making a contrary point were

ignored by his questioners, if a capital jury is given the impression that it is at the very least

*debatable* whether a defendant is a clinical psychopath who is not amenable to treatment and will

be a danger even if incarcerated for the rest of his life, then the damage has already been done.

This is an obvious point. Indeed, even Judge Eisele—who presided over the trial and was able to

observe how the jury received this evidence—opined at the time that it was highly doubtful that

Mr. Lee would have been sentenced to death if the Government hadn't injected this issue into the

case. *Lee*, 89 F. Supp. 2d at 1031.

### CONCLUSION

Unreliable evidence results in unreliable verdicts. And there is no question that the

evidence that Mr. Lee's jury heard during his capital sentencing proceeding was unreliable. *The

Government's own expert says so*. The PCL-R should never have been utilized in this case.

There was no scientific basis for using it to opine on the central issue at Mr. Lee's sentencing

hearing: whether he would be a future danger in prison.

Yet, because of a series of compounding errors—an oversight of trial counsel, a

misunderstanding by a judge, an improper application of appellate procedural rules—Mr. Lee

remains on death row, the only federal inmate whose death sentence was based on this faulty

---

[29] The Government acknowledged as much in its closing argument. *See* Tr. 7970 ("Now, I know we are talking about a man who is going away for the rest of his life *at a minimum*.") (emphasis added).

25

evidence.

Finality is not the goal of the justice system. *Justice* is. It is why Rule 60(b) exists—its "whole purpose is to make an exception to finality," *Gonzalez*, 545 U.S. at 529, and it "should be liberally construed when substantial justice will thus be served." *Mohammed*, 866 F.2d at 260. No justice will be served by leaving Judge Eisele's judgment in place. The issuance of *Banister* means that the Court's jurisdictional ruling *can* be reopened; and given the wide range of case-specific equities present here, that ruling *should* be reopened.

The Government offers no countervailing equities. And it would be hard-pressed to do so. The victim's family members, the presiding judge, and even the lead prosecuting attorney at trial have all stated that they do not believe Mr. Lee should have been sentenced to death. In whose interest, then, is it to elevate the finality of an erroneous procedural ruling over the "the incessant command of a court's conscience that justice be done in light of all the facts"?[30] Rule 60(b) "is intended to prevent the judgment from becoming a vehicle of injustice,"[31] and it is respectfully submitted that substantial justice would be achieved by granting Mr. Lee's Rule 60(b) motion and reviewing his Rule 59(e) motion anew.

Respectfully submitted this 23rd day of June, 2020.

| | |
|---|---|
| MORRIS H. MOON | GEORGE G. KOUROS |
| Bar Number 24032750 (TX) | Bar Number 420813 (CT) |
| Attorney for Daniel Lee | Attorney for Daniel Lee |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Federal Capital Habeas Project | Federal Capital Habeas Project |
| 6411 Ivy Lane, Suite 710 | 6411 Ivy Lane, Suite 710 |

---

[30] *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 515 (8th Cir. 1984) (internal quotation marks and citation omitted).

[31] *Id.*

26

Greenbelt, MD 20770
Telephone: (713) 880-3556
Email: Morris_Moon@fd.org

Greenbelt, MD 20770
Telephone: (301) 821-0855
Email: George_Kouros@fd.org

27

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on June 23, 2020. This motion was served via this court's CM/ECF electronic case filing system upon:

JOHN M. PELLETTIERI
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., N.W., Rm. 1264
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

MICHAEL GORDON
JONATHAN D. ROSS
SHANNON S. SMITH
U. S. Attorney's Office
Eastern District of Arkansas
Post Office Box 1229
Little Rock, AR 72203-1229
(501) 340-2600
michael.gordon@usdoj.gov
Jonathan.D.Ross@usdoj.gov
shannon.smith@usdoj.gov

GEORGE G. KOUROS
Bar # 420813 (CT)
Attorney for Daniel Lee
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Telephone: (301) 821-0855
Email: George_Kouros@fd.org