# EXHIBIT C



# HEINONLINE

DATE DOWNLOADED: Mon Jun 22 14:57:34 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 20th ed.
Caleb Cushing, Pardoning Power, 7 Op. Att'y Gen. 561 (1856).

ALWD 6th ed.
Caleb Cushing, Pardoning Power, 7 Op. Att'y Gen. 561 (1856).

APA 7th ed.
Cushing, C. (1856). Pardoning power. Official Opinions of the Attorneys General of
the United States, 7(Opinions of Hon. Caleb Cushing), 561-565.

Chicago 7th ed.
Caleb Cushing, "Pardoning Power," Official Opinions of the Attorneys General of the
United States 7, no. Opinions of Hon. Caleb Cushing (1854-1856): 561-565

McGill Guide 9th ed.
Caleb Cushing, "Pardoning Power" (1856) 7:Opinions of Hon. Caleb Cushing Official
Opinions of the Attorneys General of the United States 561.

MLA 8th ed.
Cushing, Caleb. "Pardoning Power." Official Opinions of the Attorneys General of the
United States, vol. 7, no. Opinions of Hon. Caleb Cushing, 1854-1856, p. 561-565.
HeinOnline.

OSCOLA 4th ed.
Caleb Cushing, 'Pardoning Power' (1856) 7 Op Att'y Gen 561

Provided by:
University of Michigan Law Library

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.
-- To obtain permission to use this article beyond the scope of your  license, please use:
   *Copyright Information*

Pardoning Power.

All the considerations which led to this convention, as set forth in its preamble, are not less applicable to the United States than to Great Britain.

Finally, there is another modern act of the Spanish government, which tends to the same conclusion, namely, the authority given to the Captain General of Cuba, and to that of Puerto Rico, to suspend, in their discretion, the functions of all foreign consuls, and even to compel them to leave the islands. (Circular of March 24, 1829.) If this purely international function may fitly be exercised by the Captain General, to the prejudice of consuls, other governments have a right to expect that he shall, at the same time, be intrusted with a beneficial power in the same relation, if not in both of the Spanish Antillas, at any rate in Cuba.

I am, very respectfully,

C. CUSHING.

Hon. WM. L. MARCY,
     *Secretary of State.*

PARDONING POWER.

In the early period of the Government, there was irregularity in the practice regarding capital sentences under acts of Congress, that is, upon the point whether the convict should be executed on a warrant of the court by which he was tried, or of the President.

But, in the administration of President Jackson, it was determined, and made known by circular from the office of the Attorney General, in all cases to leave the execution of the sentence of the law to the discretion of the court, in confidence that the courts will give a reasonable time for the interposition of executive clemency in cases where it ought to be interposed.

The President of the United States alone has the power to pardon offences committed in a Territory in violation of acts of Congress.

ATTORNEY GENERAL'S OFFICE,
          *October* 19, 1855.

SIR: I have considered the questions, which you committed to my charge this morning verbally, in regard to the possible contingency of criminal proceedings being instituted in the Territory of Oregon, or the State of California, against officers

Pardoning Power.

or soldiers of the Army, on account of acts performed by them in the discharge of their duty.

For any act of homicide, however justifiable it may be, and although done strictly in the line of duty, within the United States, and in time of peace, an officer or soldier of the Army is subject to trial by the civil authority. The Articles of War explicitly require, that any officer or soldier, *accused* of a capital crime, or of having used violence against the person of any citizen of the United States, such as is punishable by the known laws of the land, shall, on due application, be delivered over to the civil magistrate for trial. (See opinion of April 7th, 1854, in Steiner's case, ante, vol. vi, p. 413.) If indicted, therefore, and demanded for trial, a soldier, in the case supposed, must be given up for trial, whether in California or in Oregon.

If the offence be committed within a fort or other building or place, the site whereof is " ceded to, and is under the jurisdiction of, the United States," then the party is to be tried by the courts of the United States; and the punishment is either what the acts of Congress prescribe, or, in the absence of such provision, what the laws of the State, within which the place is, provide for the same offence when committed within the jurisdiction of the State. (Act of March 3d, 1825, iv Stat. at Large, p. 145.)

In any such case, it is clear that the President, and he alone, would have the right to pardon a convict, though the fact should occur within the limits of a State.

Until the year 1830, there was some irregularity in the practice of the Government as to capital executions in the case of conviction under acts of Congress; that is, upon the point whether the convict should be executed on a warrant of the court by which he was tried, or of the President. (Mr. Wirt's opinion, August 19th, 1828, ed. 1851, p. 145.)

But, in 1830, the President " determined in all cases to leave the execution of the sentence of the law to the discretion of the court, in full confidence that the courts will give a reasonable time for the interposition of executive clemency in cases where it ought to be interposed;" and notice to that effect was com-

Pardoning Power.

municated to all the judges by circular from the office of the Attorney General. (Opinions, June 4th, 1830, ed. 1851, p. 707.)

Such is now the established practice. The court sentences, and fixes the day of execution; and unless the President interpose, the Marshal of the United States proceeds to execution in due time.

If, therefore, an act of homicide, charged as a capital offence, occur in California within any place of which jurisdiction has been ceded to the United States, it may be taken for granted that the federal court, before which it may be tried, will, in case of conviction, fix the time of execution at such a day as will enable the President to pardon if he see fit. If the case occur within the proper jurisdiction of the State, of course it will be beyond the control of the President.

In the Territory of Oregon, the relations of the question are not identically the same.

The judicial power of that Territory is vested in a Supreme Court, District Courts, Probate Courts, and justices of the peace. The justices of the Supreme Court, who also officiate as District Courts, are appointed and removable by the President, in common with other legislative officers of the United States. (Act of August 14th, 1848, sec. 9,—ix Stat. at Large, p. 327.)

Much of the details of the jurisdiction of the courts is in terms left to the legislation of the Territory; but, according to the outlines as drawn by the organic act, the District Courts have the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States, and also of all cases arising under the laws of said Territory or otherwise. (Ibid. p. 327.)

Then, as to pardons, the same statute enacts that the Governor of the Territory "may grant pardons and respites for offences against the laws of the Territory; and reprieves for offences against the laws of the United States until the decision of the President can be made known thereon. (Ibid. sec. 2, p. 324.)

Thus, it appears that any trial in the Territory, in the cases supposed, must take place before judges of the United States,

564                    HON. CALEB CUSHING

Pardoning Power.

but the power of pardon may not necessarily rest with the President. That will depend on whether the indictment be founded on a territorial or on a federal law.

I doubt whether a homicide committed within what is a mere military or other reservation, in an organized Territory, comes within the general provision of the act of Congress as to the punishment of crimes by federal law. Such reservation is not a place "*ceded*" to the United States in the apparent sense of the act; that is, ceded by a State. It is under the jurisdiction of the United States, to be sure, in the same sense that the rest of the Territory is; and is excluded from pre-emption and entry; but is not under the jurisdiction of mere federal courts in the sense of that act.

If, however, it be a place within the unceded Indian country of Oregon, then it is subject to the federal, as distinguished from the territorial law, in consequence of another series of statutes and of legal considerations.

According to the general effect of the provisions of the organic law of the Territory, and expressly by the act of June 5th, 1850, (ix Stat. at Large, p. 437,) the federal statute regulating intercourse with the Indian tribes west of the Mississippi, is made applicable to the Indian country in Oregon. (Opinion, June 22d, 1855, ante, p. 293.)

That statute, enacted June 30th, 1834, declares that so much of the laws of the United States, as provides for the punishment of crimes committed at any place within the sole jurisdiction of the United States, shall be in force in the Indian country. This provision seems to apply to the case apprehended, and bring it within the pardoning power of the President.

I have carefully examined the late edition (1854) of the revised "Statutes of Oregon," to see if they throw any light on what there is obscure, so far as regards the present subject, in the acts of Congress. They seem to be silent on the points involved.

It deserves note, however, that the statutes of Oregon are explicit in declaring the true rule of the law as to homicide, namely, that it is justifiable when committed by public officers and those acting by their command in their aid and assistance,—

TO THE SECRETARY OF STATE.          565

Americans in Turkey.

either when necessarily committed in overcoming actual resist-
ance to the execution of legal process, or to *the discharge* of
any legal duty,—or in lawfully suppressing any riot, or in law-
fully keeping and preserving the peace,—or when resisting any
attempt to murder the person, or to commit a felony in the
house in which he may be.   (P. 186.)

These provisions of the statute are but declaratory, and do
not include all the cases of justifiable homicide ; but they cover
the facts reported in the present case, of laudable attempts of
the troops to defend Indians under their care against the wanton
outrages of mere felons and murderers ; and any jury which
convicts, or any judge who accepts and executes a conviction
of, soldiers in such circumstances, will be guilty of gross viola-
tion of law, and of criminal and odious servitude of the mind
to the worst influences of prejudice and passion.

I will not permit myself to anticipate that the soldiers con-
cerned are themselves to be murdered in forms of law on ac-
count of their resistance, in the course of duty, to the commis-
sion of deliberate murder by citizens.

Nevertheless, to meet any possible question of conflicting or
doubtful jurisdiction, it appears to be advisable that, in addition
to instructions to be sent to the Marshal of the United States
for the Territory, correspondence be had with its Governor on
the subject.

I have the honor to be, very respectfully,

C. CUSHING.

To the PRESIDENT.

———

AMERICANS IN TURKEY.

Citizens of the United States, in common with all other foreign Christians,
enjoy the privilege of exterritoriality in Turkey, including Egypt; the same
in the Turkish regencies of Tripoli and Tunis; and also in the independent
Arabic states of Morocco and Muscat.

ATTORNEY GENERAL'S OFFICE,
*October* 23, 1855.

SIR : In my communication of the 19th ult., on the subject