IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA,     )
                              )
                              )
        v.                    )     Case No. 4:97-CR-00243-LPR
                              )          (Capital Case)
                              )
DANIEL LEWIS LEE.             )

_____

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE HIS EXECUTION DATE NULL AND VOID
AND HIS MOTION TO RESCHEDULE HIS EXECUTION**

_____

CODY HILAND
United States Attorney
Eastern District of Arkansas

JONATHAN D. ROSS
Assistant United States Attorney
Eastern District of Arkansas

BRIAN C. RABBITT
Acting Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1258
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

BACKGROUND ....................................................................................... 2

    I.    Legal Background ........................................................................ 2

    II.   Relevant Factual and Procedural Background ................................... 6

    III.  The Present Motions ................................................................... 10

ARGUMENT ......................................................................................... 11

    I.    The Bureau of Prisons Possessed Lawful Authority to Set the
         Date of Lee's Execution ........................................................... 12

    II.   The Court Lacks Authority to Change or Modify the Execution
         Date Properly Set by the Bureau of Prisons .................................. 20

CONCLUSION ...................................................................................... 26

CERTIFICATE OF SERVICE .................................................................... 28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:97-CR-00243-LPR |
| | ) | (Capital Case) |
| | ) | |
| DANIEL LEWIS LEE. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE HIS EXECUTION DATE NULL AND VOID
AND HIS MOTION TO RESCHEDULE HIS EXECUTION**

The government submits this response to defendant Daniel Lewis Lee's motion requesting an order declaring that the July 13, 2020, execution date scheduled by the Bureau of Prisons is "null and void," Dkt. 1400, and his motion asking the Court to reschedule his execution for March 19, 2021, Dkt. 1401. The motions should be denied for the reasons stated below.

**INTRODUCTION**

Defendant Daniel Lewis Lee was convicted and sentenced to death more than 20 years ago for the murders of William and Nancy Mueller and their eight-year-old daughter Sarah Powell. He received extensive review of his conviction on direct appeal and on collateral review under 28 U.S.C. § 2255, and his convictions and sentence were repeatedly affirmed. The two motions now before the Court are just two among an array of recent legal

1

filings in which Lee attempts to avoid or delay his execution, which had been scheduled for December 9, 2019, and is now scheduled for July 13, 2020.

In his first motion, Lee seeks an order from this Court declaring that the execution date set by the Bureau of Prisons, July 13, 2020, is "null and void." Dkt. 1400, at 1, 8-9. In his second motion, Lee seeks an order from the Court postponing his execution until March 19, 2021. Dkt. 1401, at 4 n.5, 10-31. Lee's motions lack merit—in fact the relief he seeks, if granted, appears to be unprecedented—and should be denied.

## BACKGROUND

The government has explained at length many of the details of this case in numerous filings in this Court. *See, e.g.*, Dkt. 1367, at 3-21; Dkt. 1386, at 2-26. The government here focuses on background that is most relevant to the motions now pending before the Court.

## I.   Legal Background

Since the First Congress "made a number of" federal offenses "punishable by death" in the Crimes Act of 1790, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019), to the present, Congress has not, to the government's knowledge, prescribed rules for fixing the date of execution. That omission is consistent with the fact that "at common law the sentence of death was generally silent as to the precise day of execution." *Holden v. Minnesota*, 137 U.S. 483, 496 (1890). The Supreme Court has determined, however, that the

Constitution permits either the executive or judiciary to set a date for execution. *Id.* at 495-96.

As a matter of historical practice, in the federal system, both the Executive Branch and the Judiciary have set execution dates in death penalty cases. Accordingly, in an 1855 opinion, the Attorney General explained that sometimes the President fixed the date of execution and sometimes the courts. 7 Op. Att'y Gen. 561, 562 (1855) (Dkt. 1401-5, at 4); *see Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993) (describing nineteenth-century practices). In 1830, President Andrew Jackson decided to "leave" it to the "discretion of the court" to fix the date of execution, and it appears that this became the "established practice" for at least a period. 7 Op. Att'y Gen. at 562-63 (Dkt. 1401-5, at 4-5). But the varied practice in which either the Judiciary or the Executive Branch may set the date of execution in a federal death penalty case has persisted and continued to the recent past. *See infra* p. 6.

While Congress has not set rules for fixing the date of federal executions, it has at various times set rules for the method of execution. The Crimes Act of 1790 prescribed hanging as the method of execution. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108-09 (D.C. Cir. 2020) (per curiam). This provision governed until 1937, when Congress determined that the method of execution would be the method

3

prescribed by the laws of the State within which sentence was imposed. *Id.* at 109. Congress repealed the 1937 provision in 1984, and the Attorney General promulgated regulations in 1993 to "fill this gap." *Id.*[1]

The 1993 regulations provide, in relevant part, that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," "[a]t a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons," "[b]y a United States Marshal designated by the Director of the United States Marshals Service," and "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 C.F.R. § 26.3(a). The regulations also direct federal prosecutors to file a "proposed Judgment and Order" with the district court stating that "[t]he sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service," "[t]he sentence shall be executed by intravenous injection of a lethal

---

[1] The 1993 regulations were also prompted by Congress's passage of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848 (1989), which created the death penalty for certain drug-related offenses and established procedures for imposing a sentence of death but did not create rules for implementing a death sentence, such as rules regarding the method of execution. *See Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, 56536 (Nov. 30, 1992) (proposed rule to be codified in 28 C.F.R. part 26). Prior to enactment of the Anti-Drug Abuse Act of 1988, the federal death penalty was dormant after *Furman v. Georgia*, 408 U.S. 238 (1972), and *Gregg v. Georgia,* 428 U.S. 153 (1976).

substance or substances in a quantity sufficient to cause death," "[t]he sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons," and "[t]he prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence." 28 C.F.R. § 26.2(a).

Congress subsequently enacted the Federal Death Penalty Act of 1994, which remains in effect to this day. That statute provides, in a section entitled "[i]mplementation of a sentence of death," that "[a] person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," and "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The statute further provides that "[i]f the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law." *Id.*

5

Three federal defendants have been executed after enactment of the Federal Death Penalty Act of 1994: Timothy McVeigh, Juan Raul Garza, and Louis Jones, Jr. The Bureau of Prisons set an execution date for McVeigh, and he was executed on June 11, 2001. *See* Memorandum from Kathleen Hawk Sawyer, Federal Bureau of Prisons (May 11, 2001) (attached as Ex. 1). The district court in the Southern District of Texas set Garza's date of execution, but President Clinton granted a reprieve and then set a new execution date, and Garza was executed on June 19, 2001. *See* Executive Grant of Clemency (Dec. 11, 2000) (attached as Ex. 2); Executive Grant of Clemency (Aug. 2, 2000) (attached as Ex. 3).[2] The Bureau of Prisons set an execution date for Jones, and he was executed on March 18, 2003. *See* Memorandum from Kathleen Hawk Sawyer, Federal Bureau of Prisons (Nov. 14, 2002) (attached as Ex. 4).

## II.    Relevant Factual and Procedural Background

In connection with efforts to establish an independent nation of white supremacists in the Pacific Northwest, Lee and co-defendant Chevie Kehoe

---

[2] Although Garza was executed after enactment of the Federal Death Penalty Act, he was sentenced to death under the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848 (1992). *See United States v. Flores*, 63 F.3d 1342, 1369 (5th Cir. 1995). The Federal Death Penalty Act's "general implementation provision," 18 U.S.C. § 3596, "does not by its terms apply to death sentences imposed under" the Anti-Drug Abuse Act of 1988. *United States v. Tipton*, 90 F.3d 861, 902 (4th Cir. 1996). Congress repealed the Anti-Drug Abuse Act's death-penalty provisions in 2006.

went to the Arkansas home of gun dealer William Mueller in January 1996, expecting to find valuable property, and after taking weapons worth about $30,000 and $50,000 in cash and coins, murdered Mueller and his wife Nancy and their eight-year-old daughter Sarah Powell. *United States v. Lee*, 374 F.3d 637, 641 (8th Cir. 2004); *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *4 (E.D. Ark. Aug. 28, 2008). Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Lee*, 2008 WL 4079315, at *4 & n.52. They taped rocks to the bodies and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42.

A jury convicted Lee and Kehoe of conducting and conspiring to conduct a racketeering enterprise through a pattern of racketeering, in violation of 18 U.S.C. § 1962(c) and § 1962(d), and three counts of capital murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). *See Lee*, 2008 WL 4079315, at *2. The evidence "overwhelmingly supported the jury's finding of guilt." *Id.* at *25; *see also id.* at *7 (discussing the strength of the evidence).

After the guilt phase of the trial, the jury, after a separate sentencing hearing, returned a verdict on May 14, 1999, in accordance with the Federal Death Penalty Act, 18 U.S.C. § 3593(e), recommending that Lee be sentenced to death. Tr. 8015-22. This Court subsequently granted Lee's request for a new sentencing hearing, *United States v. Lee*, 89 F. Supp. 2d 1017, 1042 (E.D.

Ark. 2000), but the Eighth Circuit reversed and reinstated Lee's death sentence, *United States v. Lee*, 274 F.3d 485, 497 (8th Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002). This Court then sentenced Lee to death as required by the Federal Death Penalty Act, 18 U.S.C. § 3594, and entered judgment on May 13, 2002. Dkt. 996. The judgment imposed the death sentence and remanded Lee to the custody of the United States Marshal. Dkt. 996, at 2.

The Eighth Circuit affirmed Lee's conviction and sentence on direct appeal. *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005). This Court then denied a motion by Lee to vacate or set aside his sentence under 28 U.S.C. § 2255. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008); *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). The Eighth Circuit affirmed, *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), and the Supreme Court denied certiorari, *Lee v. United States*, 135 S. Ct. 72 (2014). Lee unsuccessfully attempted to file second or successive § 2255 motions on multiple occasions in the ensuing years. *See, e.g.*, *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015), *cert. denied*, 137 S. Ct. 1577 (2017).

On July 25, 2019, the Bureau of Prisons, at the direction of the Attorney General, scheduled Lee's execution to take place on December 9, 2019. *Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse*, July 25, 2019, *available at* https://www.justice.gov/opa/pr/

8

federal-government-resume-capital-punishment-after-nearly-two-decade-lapse (last visited July 7, 2020). A district court in the District of Columbia presiding over a lawsuit challenging the federal execution protocol granted a preliminary injunction prohibiting Lee's execution from going forward. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145, Dkt. 51 (D.D.C. Nov. 20, 2019). This Court also entered a stay of Lee's execution pending the Court's resolution of a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). Dkt. 1356, at 3-4. The Court also ordered the Rule 60(b) motion to be held in abeyance pending the Supreme Court's issuance of a ruling in *Banister v. Davis*, No. 18-6943 (Sup. Ct.).[3] Dkt. 1356, at 2. Lee's execution therefore did not go forward on December 9, 2020.

On April 7, 2020, the D.C. Circuit vacated the preliminary injunction in the execution-protocol litigation. *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020). And on June 1, 2020, the Eighth Circuit vacated this Court's stay of Lee's execution. *United States v. Lee*, 960 F.3d 1023 (8th Cir. 2020). Accordingly, on June 15, 2020, the Bureau of Prisons, at the direction of the Attorney General, scheduled Lee's execution to take place on July 13, 2020. *See* Dkt. 1379, at 1. The Supreme Court

---

[3] The Supreme Court issued its decision in *Banister* on June 1, 2020, 140 S. Ct. 1698, and this Court denied Lee's Rule 60(b) motion on July 2, 2020, Dkt. 1404.

subsequently granted expedited consideration of Lee's petition for certiorari in the execution-protocol litigation and denied that petition, along with Lee's stay application. *Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29, 2020).

### III.    The Present Motions

On July 1, 2020, more than two weeks after the Bureau of Prisons set a date for Lee's execution for a second time, Lee filed a motion arguing, for the first time, that the Bureau of Prisons lacked authority to set a date for his execution. Dkt. 1400, at 1. According to Lee, "the authority regarding when and how to implement [his] death sentence rests solely with this Court and authorization to act can be granted to BOP only through a proper judicial order." Dkt. 1400, at 4; *see also id.* at 6 (arguing that "the district court has the authority to set the execution date for capital defendants sentenced in its court," and [t]his authority remains solely with the Court unless and until it is shared by entry of a judicial order"). Lee argues that because the Bureau of Prisons did not request and obtain an order from this Court permitting it to set a date for Lee's execution, the Bureau of Prisons was without authority to schedule Lee's execution, and therefore this Court should declare the July 13, 2020, execution date "null and void." Dkt. 1400, at 8-9.

The next day, on July 2, 2020, Lee filed another motion arguing that even if this Court does not possess exclusive authority to set his execution

date—in other words, even if the Bureau of Prisons also possessed authority to set that date—this Court nonetheless retains "absolute discretion" to change an execution date set by the Bureau of Prisons. Dkt. 1401, at 4-10 & n.10. Lee contends that this Court should exercise that alleged "absolute discretion" and reschedule his execution because of the COVID-19 pandemic. Dkt. 1401, at 6 n.10, 10-31. According to Lee, March 19, 2021, is an appropriate date to reschedule his execution because the pandemic will not subside sufficiently until Spring 2021, and March 19, 2021, is "the business day closest to the first day of Spring." Dkt. 1401, at 4 n.5.

## ARGUMENT

The Executive Branch possesses lawful authority to schedule execution dates for federal defendants sentenced to death, and therefore the Bureau of Prisons properly set Lee's execution to take place on July 13, 2020. The Executive Branch has long possessed the authority to schedule execution dates in federal death penalty cases, and the Federal Death Penalty Act of 1994 confirms the Executive Branch's central role in implementing federal death sentences. Even if this Court also possessed the authority to set a date for Lee's execution before the Bureau of Prisons set a date, now that the Bureau of Prisons has properly exercised its authority to set a date, this Court lacks discretion to change or modify that date. If courts retained such discretion in these circumstances, then defendants in Lee's position would

11

never have to meet the stringent standards for obtaining a stay in order to delay an execution. Moreover, even assuming the Court possessed discretion to change or modify an execution date set by the Executive Branch, it would be a manifest abuse of discretion to do so in the circumstances of this case.

## I.   The Bureau of Prisons Possessed Lawful Authority to Set the Date of Lee's Execution

As discussed above, the Executive Branch has long possessed the authority to set an execution date in federal death penalty cases. That authority goes back to the founding era and has continued to the present, and it is now codified in the 1993 regulations, which state that a federal death sentence shall be executed "[o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," and "[i]f the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted." 28 C.F.R. § 26.3(a)(1). Accordingly, the Bureau of Prisons acted within its lawful authority when, at the direction of the Attorney General, it rescheduled Lee's execution to take place on July 13, 2020.

Nothing in the Federal Death Penalty Act of 1994, or any other statute, alters or revokes the Executive Branch's longstanding authority to set an execution date in federal death penalty cases. To the contrary, the Federal Death Penalty Act confirms the Executive Branch's central role in

implementing federal death sentences. The statute provides that "[a] person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence." 18 U.S.C. § 3596(a). And "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." *Id.*

The Executive Branch's authority to set an execution date, and the Attorney General's codification of that authority in the 1993 regulations, is also consistent with the Executive Branch's constitutional and statutory duties in general. *Cf. United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996) (concluding that "absent directly preempting congressional action, the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences imposed under [the Anti-Drug Abuse Act of 1988]," which preceded the Federal Death Penalty Act). The Executive Branch is constitutionally obligated to "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3. And Congress has authorized the Attorney General to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and

13

performance of its business," 5 U.S.C. § 301; has vested all functions of the Department of Justice in the Attorney General, 28 U.S.C. § 509; and has authorized officers, employees, and agencies of the Department to perform those functions, 28 U.S.C. § 510. Among the agencies within the Department of Justice are the United States Marshals, whose obligation is to "obey, execute, and enforce all orders of the United States District Courts," 28 U.S.C. § 566(a), and to "execute all lawful writs, process, and orders issued under the authority of the United States," 28 U.S.C. § 566(c). Also among the agencies within the Department of Justice is the Bureau of Prisons, which is charged with determining the place and manner of custody of prisoners. *See* 18 U.S.C. § 3621. These provisions, together with the implementation provisions in the Federal Death Penalty Act, reinforce the Executive Branch's longstanding authority to set federal execution dates.

Lee nonetheless contends in his first motion (Dkt. 1400, at 4-9) that this Court alone possesses exclusive authority to set an execution date and that the Executive Branch may set a date only if authorized by the Court. That argument, however, is unsupported by statute, precedent, or long-standing prior practice, as discussed above. After the Court entered judgment sentencing Lee to death, the Executive Branch possessed the lawful authority to set a date to carry out that judgment. The Bureau of Prisons therefore

14

acted well within its authority when it scheduled Lee's execution to take place on July 13, 2020.

Lee nonetheless contends (Dkt. 1400, at 7-8) that the 1993 regulations recognize the Court's exclusive authority to set an execution date because those regulations state that the Bureau of Prisons may carry out the execution in accordance with the implementation procedures set out in the regulations "[e]xcept to the extent a court orders otherwise." 28 C.F.R. § 26.3(a). Lee contends that the "except" clause is a recognition that the court has exclusive "implementation authority" for the death penalty. Dkt. 1400, at 8. On the contrary, the "except" clause makes clear that the Bureau of Prisons may set an execution date even in the absence of any court order. Section 26.3(a) provides that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and time designated by the Director of [the Bureau of Prisons]." 28 C.F.R. § 26.3(a)(1). Where, as here, a court does not enter any order at all, it has not entered any "order[]] otherwise." *Id.* Thus, even in the absence of any court order, the Bureau of Prisons has the authority to "designate[]" the "date and time" of the execution under § 26.3(a). Given that the Bureau of Prisons has that authority even "if the court decides to take no action," Dkt. 1400, at 7, the Bureau of Prisons' authority is not contingent on any "transfer of power" from the court, *id.* at 2.

15

Far from establishing that a court has the exclusive authority to set an execution date, the "except" clause is merely a recognition that both the Judiciary and the Executive Branch possess authority during the implementation of a capital sentence. Thus, the proviso is consistent with the Judiciary's long-standing concurrent—not exclusive—ability to set an execution date initially before the Executive Branch sets a date. And the proviso further recognizes that a district court may enter a stay of execution, which would preclude the Bureau of Prisons from setting an execution date or carrying out a capital sentence. In short, the 1993 regulations do not adopt Lee's theory that the Executive Branch can set an execution date only if authorized by the court. To the contrary, the regulations establish that "[t]he date, time, and place of execution are to be determined by the Director of the Federal Bureau of Prisons, the institution normally charged with determining the place and manner of custody of prisoners." *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26).

Lee also contends (Dkt. 1400, at 2-3, 6-7) that 28 C.F.R. § 26.2 confirms his view that the Bureau of Prisons lacks authority to set an execution date, unless the court enters an order granting the Bureau of Prisons that authority. Nothing in § 26.2, however, makes the Bureau of Prisons' authority to set an execution date contingent on the court's entry of such an

16

order. Section 26.2 provides that the government "shall promptly file . . . a proposed Judgment and Order," but it does not say that the court must adopt the "proposed Judgment" in order for the Bureau of Prisons to set an execution date. On the contrary, as explained above, the very next regulation, 28 C.F.R. § 26.3, makes clear that the Bureau of Prisons may set an execution date even in the absence of such a court order; § 26.3 provides that "[e]xcept to the extent a court orders otherwise"—*i.e.*, in the absence of any court order at all—"a sentence of death shall be executed . . . [o]n a date and time designated by the Director of the Federal Bureau of Prisons." 28 C.F.R. § 26.3(a)(1). Lee's contention that a court order is necessary for the Bureau of Prisons to set an execution date thus finds no support in the text of the regulations themselves.

Nor does it find any support in the history or purpose of the regulations. When proposing those regulations, the Department of Justice explained that "[i]n cases where the court adopts in full the proposed Judgment and Order, the execution will be carried out according to the procedures dictated by both judicial and executive mandates, operating in tandem." *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26). But the Department made clear that "[t]he rule contemplates . . . that establishment by the Executive Branch of procedures for execution is

17

entirely adequate for execution of a duly-ordered sentence of death." *Id.* In other words, while the government's submission of a proposed judgment and order promotes coordination between the Executive Branch and the Judiciary, the court's entry of such a judgment and order is not necessary to give the Executive Branch the authority to carry out an execution. The Executive Branch therefore possessed the authority to set a date for Lee's execution, with or without a court order.

Lee relies (Dkt. 1400, at 7) on the Department's responses to commenters who opposed the proposed regulations. In those responses, however, the Department explained that historically both the Executive Branch and the Judiciary have set the dates for federal executions. *See Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993). And the Department did not abandon its view that "establishment by the Executive Branch of procedures for execution is entirely adequate" and that a judgment and order memorializing those procedures is therefore not necessary. *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26).

To the extent that Lee suggests that 28 C.F.R. § 26.2 makes the Bureau of Prisons' authority to set an execution date contingent on the government's *submission* of a "proposed Judgment and Order" under that regulation, that

18

suggestion is likewise misplaced. Although § 26.2 provides that the government "shall promptly file with the sentencing court a proposed Judgment and Order," it does not specify any consequence for failure to promptly file such a "proposed Judgment and Order." The text of the regulation therefore does not support depriving the government of authority to set an execution date as a sanction for not promptly making such a filing. *See Dolan v. United States*, 560 U.S. 605, 611 (2010) (explaining that where "a statute 'does not specify a consequence for noncompliance with' its 'timing provisions,' 'federal courts will not in the ordinary course impose their own coercive sanction'"). And construing § 26.2 to impose such a sanction would be particularly misguided given the purpose of the regulation, which was to promote comity and coordination between the Executive Branch and the Judiciary, not to confer on a defendant any enforceable rights. *See Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899, 4900 (Jan. 19, 1993).

At the very least, § 26.2 provides no valid basis for imposing any sanction where, as here, any noncompliance with its provisions did not prejudice Lee in any way. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659-660 (2007) (recognizing that "in reviewing agency action, 'due account shall be taken of the rule of prejudicial error,'" and quoting *PDK Labs. Inc. v. United States Drug Enforcement Admin.*, 362 F.3d

19

786, 799 (D.C. Cir. 2004), for the proposition that "[i]n administrative law, as in federal civil and criminal litigation, there is a harmless error rule"). Lee has received ample notice of every item of information that a "proposed Judgment and Order" under § 26.2 would contain. *See* 28 C.F.R. § 26.2(a)(1)-(4). And he nowhere argues in his motion (Dkt. 1400) that he was prejudiced by the fact that no such "proposed Judgment and Order" was promptly filed in his case. To construe § 26.2 as depriving the government of authority to set execution dates in cases such as this would thus be to grant massive windfalls to defendants like Lee, who cannot point to any harm from any noncompliance with § 26.2's provisions.

In short, the Executive Branch possesses the authority to set execution dates in federal death penalty cases, and that authority is not contingent on either the government's filing of a "proposed Judgment and Order" or a court's adoption of such a "proposed Judgment and Order." Therefore, the Bureau of Prisons lawfully set Lee's execution for July 13, 2020. A ruling that the date set by the Bureau of Prisons is null and void would be not only erroneous but also, to the government's knowledge, unprecedented.

## II. The Court Lacks Authority to Change or Modify the Execution Date Properly Set by the Bureau of Prisons

In his second motion, Lee argues (Dkt. 1401, at 4-10 & n.10) that even if the Executive Branch possesses authority to set his execution date, this

Court nonetheless retains "absolute discretion" to change that date. And he requests (Dkt. 1401, at 10-31) that this Court exercise that alleged discretion and postpone his execution until more than eight months from now because of the COVID-19 pandemic.

This Court lacks discretion to change the date of Lee's execution as Lee requests. The Bureau of Prisons, as discussed above, has lawfully scheduled Lee's execution to take place on July 13, 2020. Now that the Bureau of Prisons has lawfully scheduled Lee's execution, the Court may postpone or halt the execution only through an equitable remedy such as a stay. In order to obtain a stay, however, Lee would have to satisfy a host of requirements. *See Lee*, 960 F.3d at 1025. Lee does not attempt to meet those requirements and instead expressly disavows that he is seeking a stay. *See* Dkt. 1401, at 1. The Court therefore may not, on the grounds asserted by Lee, postpone Lee's execution to a later date.

In support of his argument that the Court possesses "absolute discretion" to postpone his execution, Lee relies (Dkt. 1401, at 4-9) on the historical authority of federal courts to set dates for federal executions. As the government has described, it is true that over the course of the history of the federal death penalty, federal courts have sometimes provided the dates for federal executions. But it is equally, if not more, clear that the Executive Branch has the power to set execution dates, *see Implementation of Death*

*Sentences in Federal Cases*, 58 Fed. Reg. 4898-01, at 4899-4900 (Jan. 19, 1993), and in fact the Bureau of Prisons set the execution dates for the only two executions carried out under the Federal Death Penalty Act of 1994, *see supra* p. 6. Lee does not identify any historical practice permitting a federal court to reschedule an execution date lawfully set by the Executive Branch as an exercise of discretion, and the government is not aware of any such historical precedent.

Lee also contends (Dkt. 1401, at 6-7) that the 1993 regulations demonstrate that any order by this Court "controls (and supersedes) any action by BOP" because those regulations, *see* 28 C.F.R. § 26.2(a), direct federal prosecutors to request a judgment and order setting forth the execution procedures established elsewhere in the regulations, *see* 28 C.F.R. § 26.3(a). But as discussed above, the Executive Branch need not propose or obtain a judgment and order to implement the procedures that the regulations authorize; the "establishment by the Executive Branch of procedures for execution is entirely adequate" by itself. *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26). The 1993 regulations do not recognize, let alone create, judicial authority to countermand a lawful execution date set by the Executive Branch.

22

Lee's arguments also fall short insofar as he relies (Dkt. 1401, at 7) on the proviso in the 1993 regulations stating that the Bureau of Prisons can set the date and time of an execution "[e]xcept to the extent a court orders otherwise." 28 C.F.R. § 26.3(a). That proviso contemplates that a court may, for example, issue a stay of execution. *See supra* pp. 14-15. But Lee provides no support for the sweeping assertion that the proviso gives a district court absolute discretion to change an execution date previously set by the Executive Branch.

Indeed, if Lee's view were correct, then defendants in his position would never have to meet the stringent standards for obtaining a stay in order to delay an execution. Under Lee's view, a defendant in his position could always ask for such a delay simply as an exercise of the court's discretion, rather than seek a stay. Federal executions, however, have never been regarded as such an exception to ordinary stay standards.

Even assuming this Court possessed discretion to change or modify an execution date properly set by the Executive Branch, changing the date as requested by Lee would represent a manifest abuse of discretion in the circumstances of this case. Lee does not identify circumstances that justify a halt to federal capital proceedings for more than eight months. And the government has an overwhelming interest in the enforcement of a criminal

sentence imposed by a unanimous federal jury after a fair trial and upheld through extensive appellate and post-conviction proceedings in federal courts.

Lee suggests (Dkt. 1401, at 3, 12) that all legal visits at FCC Terre Haute, where he is confined, have been halted as a result of the COVID-19 epidemic. Elsewhere, however, he acknowledges (Dkt. 1401, at 12 n.18) that his lawyers would be permitted to visit him if they wished to do so, and in fact Lee is permitted to have legal visits. Watson Decl. ¶ 9 (attached as Ex. 5).[4] Lee also may communicate with his counsel by phone. Watson Decl. ¶¶ 6, 8. Lee contends that phone calls are not an adequate substitute for in-person meetings, suggesting that officials from the Bureau of Prisons may listen in on phone calls with counsel. Dkt. 1401, at 16 (claiming that phone calls raise "confidentiality concerns"). That suggestion, however, is baseless. In accordance with applicable regulations, the Bureau of Prisons does not monitor legal calls. Watson Decl. ¶¶ 6-8.

Lee contends that his lawyers cannot adequately represent him in end-stage litigation and clemency proceedings "from a thousand miles away," Dkt. 1401, at 14, but his assertions are speculative and vague. Notably, Lee already filed a clemency petition when his execution was previously

---

[4] Lee is also permitted to have "social" visits, and in fact there are currently social visits scheduled for Lee through the period preceding his execution. Watson Decl. ¶ 12.

24

scheduled for December 9, 2019, and Lee does not identify the additional investigation he wishes to conduct in support of his renewed petition, let alone investigation that he has been unable to accomplish because of the COVID-19 pandemic. The same is true of what Lee calls the "end-stage litigation." Lee's counsel have represented him for years and have aggressively litigated and investigated the case well before the current pandemic. Lee's claim that his legal efforts have been hampered are speculative and conclusory.

Lee also claims (Dkt. 1401, at 15-31) that the COVID-19 pandemic will prevent his lawyers from providing in-person emotional support in the weeks prior to his execution and may prevent them from being present at his execution. Although the risks cannot be eliminated, the Bureau of Prisons is taking steps to reduce the risk to those who wish to be present at the execution. Watson Decl. ¶ 10. Notably, however, there is "no law that would support a right to counsel throughout an execution." *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1117 (10th Cir. 2016). Although an accused has a Sixth Amendment right to counsel in all "critical stages" of the criminal proceeding, *United States v. Wade*, 388 U.S. 218, 227-28 (1967), an execution is not such a stage because it is not a confrontation between the prosecution and the defense, *see id.* Thus, any repercussions from the COVID-19 pandemic on the ability of Lee's counsel to be present at the

25

execution would not impinge on Lee's constitutional rights, and indeed, Lee makes no such contention.

Finally, it is worth noting that federal courts throughout the country are not entirely halting criminal proceedings. For example, in the United States District Court for the Southern District of Indiana, the federal district that contains FCC Terre Haute, in-person criminal plea and sentencing hearings resumed as of July 6, 2020, and single-defendant criminal jury trials will resume beginning July 20, 2020. *General Order: Continued Court Operations Under the Exigent Circumstances Created by COVID-19 and the Related Coronavirus* (June 26, 2020), *available at* https://www.insd.uscourts. gov/sites/insd/files/General%20Order%20June%2026%20-%20Court%20 Operations.pdf (last visited July 7, 2020).

In short, this Court does not possess the authority, absent a stay supported by the requisite findings, to postpone or reschedule the execution that the Bureau of Prisons lawfully set for July 13, 2020. And even if the Court were to possess discretion to reschedule the execution date set by the Bureau of Prisons, doing so in the present circumstances would represent a manifest abuse of discretion. Lee's motion should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Lee's motion (Dkt. 1400) to declare the July 13, 2020, execution date set by the Bureau of

26

Prisons "null and void," and it should also deny Lee's motion (Dkt. 1401) to

postpone his execution.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas


JONATHAN D. ROSS
Assistant United States Attorney
Eastern District of Arkansas

BRIAN C. RABBITT
Acting Assistant Attorney General


JOHN M. PELLETTIERI
Bar Number 4145371 (NY)
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

July 7, 2020

27

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on July 7, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

> JOHN M. PELLETTIERI
> Bar Number 4145371 (NY)
> Attorney, Appellate Section
> Criminal Division
> U.S. Department of Justice
> 950 Pennsylvania Ave., N.W.
> Rm. 1260
> Washington, D.C. 20530
> (202) 307-3766
> john.pellettieri@usdoj.gov

28