**FEDERAL DEATH PENALTY CASE**
**\*\*\*\*EXECUTION SCHEDULED FOR JULY 13, 2020\*\*\*\***

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**


**DANIEL LEWIS LEE,**
    **Movant**


**vs.**

                                   **Criminal Case No. 4:97-cr-00243-LPR**
                                   **CAPITAL CASE**

**UNITED STATES OF AMERICA,**
    **Respondent.**

**Reply to Government Response to Motion to Declare the Bureau of Prison's Notice
Scheduling Daniel Lee's Execution Null and Void And Request for Supplemental Remedy**

COMES NOW Daniel Lee ("Mr. Lee"), by his undersigned counsel, and hereby files this

Reply to the Government's Response (Dkt. 1413) to his *Motion to Declare the Bureau of*

*Prison's Notice Scheduling Daniel Lee's Execution Null and Void* (Dkt. 1400).

The Government's responsive argument rests on mistakes of fact, historical errors, and it

simply ignores evidence that it finds inconvenient. At its core, the Government's position is that

"[t]he Executive Branch possesses lawful authority to schedule execution dates for federal

defendants sentenced to death [ ] therefore the Bureau of Prisons [BOP] properly set Lee's

execution…" As explained below, this is incorrect.[1]

However, as an initial matter Mr. Lee supplements the remedy he has requested: because

his execution date is fast approaching, he now also respectfully requests that, should this Court

find the BOP notice lacked the authority to issue the notice, this Court issue an order prohibiting

---

[1] Respondent asserts that Mr. Lee argues "the Executive Branch may set a date only if authorized by the Court." GR. 14. This is a red herring. Mr. Lee's assertion is that *BOP*, an agency, may not set a date unless it receives proper authorization.

the BOP from acting on that notice on July 13, 2020. It is axiomatic that any action pursuant to a void order is an *ultra vires* action and should be prohibited.

**I.      The Government's theory of Executive Branch authority in this case is incorrect.**

Respondent's argument hinges on the proposition that because the "Executive Branch" has the authority to set dates, BOP's notice is a proper exercise of authority. Throughout its pleading the Government speaks of the authority of the "Executive Branch." No such monolith exists; the Attorney General's authority derives from statute, and agencies with the Executive Branch are authorized to act through various means (none of which are present here). It is incorrect and misleading to refer to "Executive Branch" authority and mean by that *BOP* authority or the authority of the Attorney General. The fatal flaw of Respondent's argument is that it can never clearly explain from where BOP's authority derives if not from this Court.

There is no clearer precept of administrative law than the rule that an agency "'literally has no power to act … unless and until Congress confers power upon it.'" *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). It would be a gross violation of the precepts of our Constitutional government to allow agencies to simply assume power not properly granted. This is especially true for an agency such as the BOP which is led by a director appointed by the Attorney General and not confirmed by the Senate. 18 U.S.C. § 4041; *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017) ("The Senate's advice and consent power is a critical 'structural safeguard of the constitutional scheme.'") (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)); *United States v. Giordano*, 416 U.S. 505, 514 (1974), (emphasizing Congress' desire to vest authority in a person "responsive to the political process"); *see also Senators McConnell, Lee, Sinema, Paul Introduce Bipartisan Bill to Increase Accountability at Federal Prisons,*

Mitch McConnell: Senate Majority Leader , Oct. 30, 2019 (proposal to require that the BOP Director be confirmed by the Senate to provide for greater accountability).[2]

Respondent argues that the BOP's authority to set an execution date is not derived from the Court, yet it cannot point to any other source.

**A. The Federal Death Penalty Act Did Not Grant Authority to BOP to set execution dates.**

Although not made explicit, the Government appears to suggest that the Federal Death Penalty Act of 1994 somehow granted authority to the BOP to set execution dates. GR. 5, 12-13.[3] The statute does no such thing. The statutory language mandates that a death-sentenced prisoner "shall be committed to the custody of the Attorney General" until exhaustion of legal challenges. On this the parties agree. Indeed, this Court's judgment sentencing Mr. Lee to death also instructed that he be committed to the custody of the Attorney General pending appeals. Dkt. 996.

The Government, however, reads too much into the next sentence: "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States Marshal…" This passive phrase does not designate *who* determines when the sentence is to be implemented; it simply gives instructions to the Attorney General of what should occur "when" the sentence is be implemented. It strains credulity to read this phrase as explicit congressional authorization allowing the Attorney General to make decisions about when this Court's judgment should be implemented.

---

[2] Available at: https://bit.ly/38UOMWk (last visited July 8, 2020).
[3] Strangely, in other parts of the pleading the Government appears to concede Congress has not granted this authority. GR. 3.

Moreover, even if this strained reading were accurate, there is no indication that Congress, through this statute, granted this authority to an agency (the BOP). If the statute expressly authorized anyone the authority to set execution dates (which it didn't), it would only have been the named party, the Attorney General. When Congress expressly identifies who has authority carry out an act, that authority cannot be arbitrarily assumed by another party. For example, in *United States v. Giordano*, 416 U.S. 505 (1974), the Supreme Court held that a statute providing that the "Attorney General" or "any Assistant Attorney General specially designated by the Attorney General" to authorize wiretap applications did not permit the Attorney General's Executive Assistant to authorize such an application. *Id.* at 513 (quoting 28 U.S.C. § 2516(1) (1970)). The Court explained that because "the matter of delegation" was "expressly addressed" in the statute, the statute "was intended to limit the power to authorize wiretap applications" to the persons mentioned in the statute. *Id.* at 514. It also "appear[ed] wholly at odds" with the statutory scheme, the Court noted, "to permit the Attorney General to delegate his authority at will" to someone else in the Department of Justice not specifically mentioned in the statute.  *Id.* at 523.

**B.  The President has not authorized BOP to set execution dates.**

The Government contends that the "Executive Branch" has authority today to set an execution date, because it possessed that authority long ago. GR. 12. This is mistaken for several reasons. First, historically the only person in the executive branch with such authority was the President himself. Respondent has provided no explanation of how BOP derives that authority from the President. An agency cannot assume the President's authority simply because it is in the same branch of government as Respondent seem to argue.

Second, the Government's historical retelling is incorrect. Respondent cites to an 1855

Attorney General opinion and asserts that it "explained that sometimes the President fixed the date of execution and sometimes the courts." GR. 3. This is true as far as it goes, except Respondent glosses over the fact that the opinion recounts that fact to point out that *it is no longer done* and courts had sole authority to set dates since 1830. 7 Op. Att'y Gen. 561, 562 (1885). In 1830, President Jackson pronounced that the Executive Branch would no longer set execution dates via death warrants and proclaimed the judiciary would exercise power over "the execution of the sentence of the law" in "all cases." *See* Dkt. 1400 at 5. President Jackson's executive directive, to Mr. Lee's knowledge, has never been revoked by any subsequent President, and the Government does not cite to any such event. The judiciary's sole prerogative to fix a day and time of execution to carry out its judgment is now—and has been since 1830— "the established practice."[4] Caleb Cushing, 7 Op. Atty. Gen. 561 (1855).

DOJ has openly acknowledged this in a 1991 memorandum from Ted Calhoun to then-Director of the United States Marshals Service Henry Hudson, which concluded,

> [T]here is no historical example, save perhaps in time of war or national emergency, where the president, acting through the Attorney General or the Bureaus of the Department of Justice, determined the date of an execution and its method independent of any orders of the court or laws of Congress… Consequently, since 1830, the trial judge alone has set the date of the execution…

*See* Ex. 1.

Even if the President still retained the power to fix a date and time for execution, this power: (1) is limited to cases in which it is necessary to implement the sentence; (2) is the President's alone to exercise; and (3) must be exercised by formally issuing a warrant of

---

[4] If in fact the executions of Timothy McVeigh and Louis Jones, Jr.,—the first federal executions in almost 40 years—were carried out by BOP absent court order this fact does not magically confer agency authority where there was none before. This is especially true where the legality of the BOP action was not challenged in those cases.

execution fixing the date and time.

Before the practice of judicial date-fixing was established by President Jackson, United States Attorney General Wirt explained in 1818 that "[t]he President will issue death-warrants in order to give effect to the laws *in cases where they are necessary* by the practice of the State in which the sentence is passed." 1 U.S. Op. Atty. Gen. 228 (emphasis added). Attorney General Wirt expressed that it was President Monroe's view "that it was the duty of the court which passed the sentence to fix the day for the execution." *Id*. at 228. In the absence of a law passed by Congress directing a specific entity to fix the date, however, "the courts of the United States have adopted, in this particular, the practice of the State courts in which they hold their sessions, and these are various: death-warrants from the governor being required in several of the States; and in others the courts fixing the day." *Id*. For that reason, "the President must, of necessity, to give effect to our laws, follow that which the courts have adopted." *Id*.

In short, any authority the President has to issue a death warrant is not inherent to the Executive Branch but flows directly from the courts themselves. By creating federal law that federal death sentences were to be implemented according to the practice of the state in which the conviction was had, the *judiciary* was requiring the President to issue a death warrant when the state in which the conviction was obtained fixed the date and time of executions by gubernatorial proclamation.

Moreover, Attorney General Wirt's opinion establishes that execution warrants—orders to execute—have always been required in the United States before an execution may occur. The historical practice was for the President to issue the warrant only while Congress has been silent—which it continues to be—and only when it is necessary to enforce the judgment of death, i.e., when the law of the state in which the conviction was obtained designates issuance of the

warrant to the state's governor. But, in every case, a warrant—a formal directive issued by either a court or the President—is required.[5] No warrant ordering Mr. Lee's execution exists at all.

## II.      The Government's argument about its regulations is incorrect.

Respondent goes to great length to contest Mr. Lee's reading of the regulations related to the implementation of the federal death penalty. Its arguments miss the mark. First, it argues that the language of 28 C.F.R. § 26.3 and § 26.4 stating "[e]xcept to the extent a court orders otherwise" is a "recognition that both the Judiciary and the Executive Branch possess authority…", GR. 16, and that the " 'except' clause makes clear that the Bureau of Prisons may set an execution date even in the absence of a court order." GR. 15. The Government's argument could possibly have legs if these provisions existed in a vacuum. But they do not; they directly follow 28 C.F.R § 26.2, and thus must be read in conjunction with that provision.

Section § 26.2 says the Government *shall* file a proposed order with the Court asking it to order the BOP to act in various ways including setting a date. This language makes the filing mandatory and it is the first substantive provision of the regulations. Read in *pari materia* it is clear that the regulations intend the subsequent provisions to be contingent on completion of § 26.2. In other words, if a court did not sign the proposed order, but rather chose its own procedures, then the other regulations would be inapplicable ("Except to the extent a court orders otherwise…"). This is, in fact, what happened in *Hammer*.

Respondents also contend that the "except" clause "makes clear that the Bureau of Prisons can set an execution date even in the absence of a court order." GR. 15. This begs the

---

[5] The Garza document Respondent attached to its pleading support Mr. Lee's position. Even though President Clinton's action was expressly designated as a "reprieve" which flows explicitly from Article II, Sec. 2 and not a date setting, the formality of the document speaks for itself. Absent specifically delegated authority, a "notice" from a BOP warden cannot substitute for a Presidential warrant.

question: If this is true, where does the BOP get this authority? The Government never explains but again merely refers this Court to the authority of the "Executive Branch."

The Government's argument also makes § 26.2 superfluous. It is passing strange to enact a rule that an agency must file a proposed order with a United States Court, but the signing of the order has no relevance. Why would the Government be required to submit a proposed order asking the court to assign the BOP authority to set a date if it can do so without this Court's authority? Respondent has no real answer other than that it would "promote coordination." GR. 18.

Respondent's argument also contradicts the direct explanation given by DOJ when it passed the regulations (and which the Government never addresses in its response):

> The Department is authorized *to rely on the authority of the federal courts*, acting pursuant to the All Writs Act, 28 U.S.C. 1651(a), *to order* that their sentences be implemented. *Thus, § 26.2 directs the government's attorney in a capital case to file with the court a proposed Judgment and Order consistent with the regulations.*

58 Fed. Reg. 4898-01, 4899-900 (Jan. 19, 1993) (emphasis added).

The best the Government can do is quote its proposed rule, 57 Fed. Reg. 56536-01, at 56536 (Nov. 30, 1992) and assert that the "Department did not abandon its view that 'establishment by the Executive Branch of procedures for execution is entirely adequate' and that a judgment and order memorializing those procedures is therefore not necessary." GR. 18. But an agency statement made during OIRA rule-making is far from authoritative. As this Court knows, that stage of rulemaking is an internal deliberative process and not subject to contest or debate. During notice and comment the following year, when the proposed authority of BOP to set dates was directly challenged, DOJ conceded it was derived through this Court's power under the All Writs Act. *See supra*. Respondent ignores this crucial admission.

**Conclusion**

For the foregoing reasons, Mr. Lee respectfully requests that this Court issue an order declaring the Government's *ultra vires* action setting Mr. Lee's execution on July 13, 2020 null and void and prohibiting it from carrying out his execution pursuant to a void notice.

Respectfully submitted this 8th day of July, 2020.

| | |
|---|---|
| MORRIS H. MOON | GEORGE G. KOUROS |
| Bar Number 24032750 (TX) | Bar Number 420813 (CT) |
| Attorney for Daniel Lee | Attorney for Daniel Lee |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Federal Capital Habeas Project | Federal Capital Habeas Project |
| 6411 Ivy Lane, Suite 710 | 6411 Ivy Lane, Suite 710 |
| Greenbelt, MD 20770 | Greenbelt, MD 20770 |
| Telephone: (713) 880-3556 | Telephone: (301) 821-0855 |
| Email: Morris_Moon@fd.org | Email: George_Kouros@fd.org |

## CERTIFICATE OF SERVICE

   I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Arkansas using the CM/ECF system on July 8, 2020. This motion was served via this court's CM/ECF electronic case filing system upon:

JOHN M. PELLETTIERI
Attorney, U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave., N.W., Rm. 1264
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

MICHAEL GORDON
JONATHAN D. ROSS
SHANNON S. SMITH
U. S. Attorney's Office
Eastern District of Arkansas
Post Office Box 1229
Little Rock, AR 72203-1229
(501) 340-2600
michael.gordon@usdoj.gov
Jonathan.D.Ross@usdoj.gov
shannon.smith@usdoj.gov

        GEORGE G. KOUROS
        Bar # 420813 (CT)
        Attorney for Daniel Lee
        Assistant Federal Public Defender
        Federal Capital Habeas Project
        6411 Ivy Lane, Suite 710
        Greenbelt, MD 20770
        Telephone: (301) 821-0855
        Email: George_Kouros@fd.org