# EXHIBIT 1

July 21, 1992


TO: DIRECTOR HUDSON

FROM: TED CALHOUN

SUBJECT: HISTORIC PROCEDURES FOR FEDERAL EXECUTIONS


Since returning yesterday from my trip, I have had an opportunity to research the procedures U.S. Marshals have historically used to implement death sentences on those condemned by the federal courts.

On April 30, 1790, "An Act for the Punishment of certain Crimes against the United States" (I Stat 112) imposed the death penalty for such crimes as treason, murder on federal property or the high seas, piracy, and counterfeiting. The law did not specify the particular method of execution. At that time, hanging was the state of the art, though theoretically firing squads could also have been used. Nor did the early law specify who would set the date of the execution, either the courts or the president. In addition, the law did not explicitly assign the task of carrying out the punishment to the U.S. Marshal. Rather, the law, in stating that the judge could also order the corpse of the condemned dissected, explained that "the marshal who is to cause such sentence to be executed" would deliver the body to a doctor. Since the earlier Judiciary Act of 1789 (1 Stat 70) already detailed the marshal the task of "executing all lawful precepts issued under the authority of the United States," Congress had no need to specify that the marshals would execute this particular order of the court.

Throughout the nineteenth century and well into the twentieth, it fell to each trial judge to determine how the defendant would be put to death. Acting on the orders of Judge David Sewall, Marshal Henry Dearborn (D/ME) conducted the first federal execution on June 25, 1790. He hanged Thomas Bird, who had been convicted of murdering on the high seas one John Connor, Master

of the <u>Mary</u>.    Dearborn spent $4.00 constructing the gallows and $1.50 on Bird's coffin.

It is impossible to know for certain just how many federal executions have been committed since 1790, though certainly they have been numerous, particularly during the nineteenth century. Judge Isaac Parker (W/AR), the infamous "Hanging Judge," ordered some 160 defendants to hang, of whom the marshals actually executed 79 after appeals and commutations.    Exhibit A lists by year, offense, race, and state 33 federal executions between 1930 and 1963.

Most judicial death warrants used the well-known phrase "hang by the neck until dead."    Attached as Exhibits B and C are copies of two such orders.    The first, dated April 24, 1888, is from Judge Parker.    The second, dated October 29, 1902, is from Judge John E. Carland (D/SD).    Please note that Judge Parker's death warrant was a printed form, whereas Judge Carland's was written out as an order of the court.    This stylistic variation probably reflected the difference in frequency of executions between the two districts.

In both examples, the judge ordered the marshal to arrange a death by hanging on a certain day between 9:00 a.m. and 4:00 p.m. The only discretion given the two marshals was to take the defendant to some "convenient place within this district" for the actual executions.    The marshal was also responsible for obtaining the gallows.    Attached as Exhibit D is a copy of the design for a portable gallows submitted by Marshal E.D. Nix (D/OK), who in 1894 was ordered to hang two defendants some one hundred miles apart.    At around the same time it was also the responsibility of the marshal to control the size of the crowds gathered to witness the ever-popular event.    Attached as Exhibit E is a copy of a ticket to an execution issued by U.S. Marshal George J. Crump (W/AR) for the September 20, 1894, execution of John Poynter.

With the twentieth century introduction of the electric chair and gas chamber, Congress finally directed that "the manner of inflicting the punishment of death shall be that prescribed by the laws of the place within which the sentence is imposed." (18 U.S.C. 3566 [June 25, 1948])    Attached as Exhibit F are the instructions for conducting federal executions as explained in the United States Marshals Manual.    These particular instructions are taken from the manual that was current at least up to 1976, but the same wording was used in the manuals in effect during the 1950s.

As the manual shows, the method of conducting an execution was to contract with a local state facility (or one in a neighboring district if the marshal's state had no such facility).    Using funds "in an amount approved by the Attorney General," the marshal hired up to three doctors, arranged for the presence of government witnesses, provided the condemned with the spiritual consoling of his choice, and allowed certain representatives of

the news media to be present.  Exhibit G is an artist's rendition of the 1954 execution of Julius Rosenberg, convicted along with his wife of treason. Both executions were arranged by U.S. Marshal William Carroll (S/NY) at Sing Sing State Penitentiary. Marshal Carroll and Chief Deputy [(b) (7)(C)] are portrayed among those men standing along the wall on the left.

The last federal execution to date occurred on March 15, 1963, when U.S. Marshal Covell Meek (N/IA) executed Victor Fueger, convicted of kidnapping and murder.  According to Chief Deputy (ret.) [(b) (7)(C)], the jury returned a verdict of guilty and recommended the death sentence.  The trial judge ordered the marshal to execute the sentence by hanging.  The Iowa State Penitentiary erected the gallows in its prison shop, but Marshal Meek actually pulled the lever dropping the trap door.

The procedures defined by 18 U.S.C. 3566 remained in effect until Congress passed the Sentencing Reform Act of 1984, Pub.L. 98-473, which repealed the death sentence.  Attached as Exhibit H is a July 20, 1992, memorandum with attachments from Gerald L. Elston of the Office of Legal Counsel titled "Involvement of Marshals in Execution of Death Sentences."  This memo contains the specific legal citations and copies of relevant court decisions.

In 1990, Congress passed a new death penalty (21 U.S.C. 848). A copy of the law is attached as Exhibit I.  Although the law detailed a number of complicated procedures for reaching the death sentence, Congress failed to specify how it intended the sentence to be carried out.  There is no mention of following state practice nor any expression of a preference for any particular mode of inflicting death.  In this respect, the current law is much like the original 1790 law.

On May 14, 1991, [(b) (7)(C)] was convicted and sentenced to death for violation of 21 U.S.C. 848 (U.S. v. [(b) (7)(C)] N/AL CR 90-H-266-E).  A copy of the judgment is attached as Exhibit J.  In passing sentence, Judge James H. Hancock ordered that "the defendant will be remanded to the custody of the Bureau of Prisons with directions to cause such death sentence to be implemented."  Unlike traditional death warrants, the judge did not specify on which day the execution would take place nor by which method the execution was to be effected.

Unfortunately, there is no historical example, save perhaps in time of war or national emergency, where the president, acting through the Attorney General or the Bureaus of the Department of Justice, determined the date of an execution and its method independent of any orders of the court or laws of Congress.  Since the original death penalty passed in 1790 did not specify who would set the date of the execution, and since the president had power to pardon the condemned, there was originally some question over whether the president or the courts would set the actual date.  In 1818, Attorney General William Wirt issued an opinion

that, in those states wherein the governor issued a death warrant setting the date, then the president would do likewise.  In those states wherein the courts issued the death warrant setting the date, then the federal courts would do so. (1 Op. Atty. Gen. 228 [1818])  This opinion is attached as Exhibit K.  In 1830, President Andrew Jackson "determined in all cases to leave the execution of the sentence of the law to the discretion of the court, in full confidence that the courts will give a reasonable time for the interposition of executive clemency in cases where it ought to be interposed." As Attorney General Caleb Cushing concluded in an 1855 opinion, "Such is now the established practice.  The court sentences, and fixes the day of execution; and unless the President interpose, the Marshal of the United States proceeds to execution in due time." (7 Op. Atty. Gen. 561 [1855]) This opinion is attached as Exhibit L.

Consequently, since 1830, the trial judge alone has set the date of the execution (although sometimes only a particular week was specified, thus allowing the marshal to pick the exact day and hour.)  It is also unusual -- though perhaps not unheard of -- for the Bureau of Prisons to be ordered to implement the death sentence.  That task has historically fallen to the U.S. Marshal. More importantly, it originally fell to the trial judge to determine the method of execution. Of course, that procedure was followed at a time when hanging was the common practice.  Later, when more choices were available, Congress specified that the method of execution would follow the practice of the state wherein the crime, trial, and sentence occurred.

For these several reasons, the combination of the current law and the orders of the trial judge in the instant case are unprecedented.

Since U.S. v. (b) (7)(C) is on appeal to the Eleventh Circuit, I do not know how complicated it would be to ask the judge to amend his order to specify the time and method of execution.

I hope this information is sufficient to your purpose.  Should you need more details or other historic examples, I am, of course, at your service.