# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

No:  20-2351
_____

Daniel Lewis Lee

Petitioner - Appellant

v.

United States of America

4:97-cr-00243-02-LPR

Respondent - Appellee
_____

Appeal from U.S. District Court for the Eastern District of Arkansas - Central
(4:18-cv-00649-KGB)
_____

## AMENDED JUDGMENT

Before COLLOTON, KELLY and ERICKSON, Circuit Judges.

Lee's motion for stay of execution pending appeal has been considered by the court and is denied.  The application for a certificate of appealability and alternative motion for authorization to file a second or successive motion under 28 U.S.C. § 2255 are also denied.

Judge Kelly would grant the motion for stay of execution and the application for a certificate of appealability.

KELLY, Circuit Judge, dissenting.

I would grant Lee's application for a certificate of appealability because I believe jurists of reason could debate whether the district court correctly denied Lee's Rule 60(b) motion.  See Miller-El v. Cockrell, 537 U.S. 322, 342 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).  Lee argued in his Rule 60(b) motion

that misconduct and misrepresentations by the government caused a defect in the integrity of his initial post-conviction proceedings under 28 U.S.C. § 2255. See Fed. R. Civ. P. 60(b)(3), (6). Specifically, Lee alleged the government suppressed evidence that law enforcement conducted a polygraph examination of Paul Humphrey—an individual whom police initially suspected of murdering the Mueller family and who testified favorably for the government at trial. Lee alleged that the polygraph results showed Humphrey was involved in the Mueller murders. Lee argued the government violated its Brady obligations by failing to turn over this evidence prior to trial. He also contended the government made false statements, during both his trial and § 2255 proceedings, that it had provided all relevant Brady material pertaining to Humphrey. The government does not deny it violated its s28 Brady obligations.

Nevertheless, the district court denied Lee's Rule 60(b) motion. Relying on Smith v. Clarke, 458 F.3d 720, 725 (8th Cir. 2006), the court concluded that, to gain relief under Rule 60(b)(3), Lee was required to demonstrate that the government made intentional or deliberate misrepresentations. Jurists of reason could debate whether this decision was correct. Prior to Smith, we explained that a party moving under Rule 60(b)(3) need only "establish that the adverse party engaged in fraud or other misconduct and that this conduct prevented the moving party from fully and fairly presenting its case." E.F. Hutton & Co. v. Berns, 757 F.2d 215, 216–17 (8th Cir. 1985). In my view, Lee has arguably shown the government's alleged Brady violation and misrepresentations prevented him from fully and fairly litigating his initial § 2255 motion. See id.; see also In re Pickard, 681 F.3d 1201, 1204 (10th Cir. 2012) (holding that a "claim of prosecutorial misconduct in the § 2255 proceedings is a proper Rule 60(b) claim"); United States v. Williams, 753 F. App'x 176, 177 (4th Cir. 2019) (same).

It is not obvious that Smith set a different standard for Rule 60(b)(3) relief. But even if it did, jurists of reason could debate whether Lee adequately established that the government made intentional or deliberate misrepresentations during his trial and initial § 2255 proceedings. Lee plausibly contends the government suppressed Humphrey's polygraph results because those results did not fit with its theory of Lee's guilt. These are not Lee's first allegations of government misconduct. Rather, they are part of allegations regarding a broader pattern of the

government repeatedly failing to abide by its Brady obligations and its own policies and procedures, as well as employing tactics at sentencing that even the district court found concerning. I would evaluate Lee's application in light of that pattern and the extraordinary nature of the proceedings against him. See Cornell v. Nix, 119 F.3d 1329, 1332 (8th Cir. 1997) (holding that a Rule 60(b) motion "should be liberally construed when substantial justice will thus be served"); see also Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (explaining that in a death-penalty case, "the nature of the penalty is a proper consideration" in deciding whether to certify an issue for appeal). Viewed in their totality, Lee's allegations show an arguable case of intentional government misconduct and an extraordinary case in which the risk of injustice to Lee and the threat of undermining the public's confidence in the judicial process potentially merit relief. See Buck v. Davis, 137 S. Ct. 759, 777–78 (2017) (discussing Fed. R. Civ. P. 60(b)(6)).

* * *

In 1999, Lee and his co-defendant, Chevie Kehoe, proceeded to trial together on charges of racketeering and murder in aid of racketeering. United States v. Lee, 374 F.3d 637, 641 (8th Cir. 2004). The murder charges stemmed from the brutal killings of William and Nancy Mueller, and Nancy's eight-year-old daughter, Sarah Powell. Id. at 641–42. The government alleged Kehoe led a group of people working to establish a white-supremacist nation in the Pacific Northwest. United States v. Lee, No. 4:97-CR-243-(2) GTW, 2008 WL 4079315, at *2–3 (E.D. Ark. Aug. 28, 2008). Lee was one of Kehoe's "assistants." Id. Or, in the dehumanizing words of the government's closing argument to the jury: "Chevie Kehoe is the leader of this enterprise. . . . Danny Lee is like the faithful dog." Id. at *32. The government's evidence showed that, although Lee had participated in the murder of William and Nancy Mueller, he "would have no part in the killing of Sarah Powell," so Kehoe killed the child himself. Lee, 374 F.3d at 642. As presiding District Judge G. Thomas Eisele put it: "There was no question that Kehoe was the more culpable of the two." DCD 1353 Ex. A.

The jury convicted Kehoe and Lee as charged. Lee, 374 F.3d at 643. The government then sought the death penalty for both defendants before the same jury. Id. Kehoe's penalty phase proceeded first. Recognizing the clear disparity in

culpability between Kehoe and Lee, the government informed the district court and Lee's counsel that "if the jury sentenced Defendant Kehoe to life imprisonment, it would not pursue the death penalty for Defendant Lee." United States v. Lee, 89 F. Supp. 2d 1017, 1032 (E.D. Ark. 2000). The jury ultimately sentenced Kehoe to life without release, and the United States Attorney for the Eastern District of Arkansas requested to withdraw the death notice in Lee's case. Lee, 374 F.3d at 643. But the Deputy Attorney General denied this request. Id. And, despite his being undeniably less culpable than Kehoe, Lee was sentenced to death.

Lee's death sentence is controversial. In the years that followed the jury's verdict, Lee raised numerous concerns with his sentence, including allegations of government misconduct. He asserted that the government improperly introduced evidence during his penalty phase that he had been diagnosed a "psychopath" and thus had an alleged propensity for future dangerousness. Lee, 89 F. Supp. 2d at 1026–27. The prosecution "had affirmatively stated to [Lee] and the [district court] that it would not introduce mental health evidence in its case-in-chief." Id. at 1027–28. However, the government instead introduced damning mental health evidence "through the 'back door.'" Id. at 1028. During its cross-examination of Lee's mitigation expert, the government elicited testimony that its own expert had previously diagnosed Lee as a "psychopath" using a tool called the Hare Psychopathy Checklist-Revised (PCL-R). Id. The government then argued that because Lee is a "psychopath" according to the PCL-R, he posed a grave risk of future dangerousness. This was the thrust of the government's argument for executing Lee. Id.

But, as the district court explained, the government's introduction of "such aggravating evidence against Defendant Lee through his own mental health expert during his 'defense' was fundamentally unfair in that Defendant Lee had no opportunity to respond." Id. The government's "back-door" tactic deprived Lee of the notice to which he was entitled so that he could adequately prepare for his mitigation defense. Id. In the words of presiding Judge Eisele: "The unfairness is patent." Id. at 1029.

More fundamentally, however, Lee has presented evidence that the PCL-R's psychopathy finding was wholly irrelevant to any issue before the jury. The jury

had two options at the penalty phase: it could sentence Lee either to life in prison or to death. Yet the PCL-R has no predictive value with respect to whether a person will be dangerous in an institutional setting like a prison; it predicts only future dangerousness in the community. Indeed, the government's own mental health expert who testified during Lee's penalty phase later disavowed using the PCL-R in capital cases due to its unreliability. United States v. Lee, No. 4:06-cv-1608 GTE, 2010 WL 5347174, at *5–6 (E.D. Ark. Dec. 22, 2010). The district court concluded "it is very questionable whether the jury would have given Defendant Lee the death penalty" had the government not relied on the PCL-R's psychopathy finding. Lee, 89 F. Supp. 2d at 1031. This court has similarly reasoned that "the jury sentenced the two defendants differently" because it believed Kehoe would not be a future danger but that Lee would. United States v. Lee, 715 F.3d 215, 223 (8th Cir. 2013). Therefore, Lee has argued, the government's use of the PCL-R's irrelevant psychopathy finding led directly to his death sentence.

Lee has also alleged that the government misled the jury about his role in a separate murder. During Lee's penalty phase, the government told the jury that Lee, as a juvenile, had murdered someone named Joseph John Wavra in Oklahoma. Lee, 89 F. Supp. 2d at 1031. The only reason Lee was not charged with murder, the government argued, was by the grace of the Oklahoma state prosecutors. United States v. Lee, No. 4:97-cr-243-02 KGB, 2020 WL 3618709, at *5 (E.D. Ark. July 2, 2020). But in fact, a state court judge had dismissed the murder charge for a lack of evidence. Id. Lee later filed a motion to vacate his death sentence, arguing the government had suppressed an Oklahoma state-court document reflecting the true reason he was not charged with murder. See DCD 1313. The district court recognized that, "[i]n light of the government's reliance on the Wavra murder during sentencing, it is reasonably likely that, if it had been disclosed at trial that the Oklahoma court found the evidence insufficient to establish that Lee was guilty of murder, the outcome of the sentencing would have been different." Id. at 14. Despite this, the court ultimately denied Lee's motion as an unauthorized successive habeas application. Id. at 20 (citing 28 U.S.C. §§ 2244(b)(3), 2255(h)).

Lee's execution also raises real concerns about the arbitrary application of the death penalty. Nearly fifty years ago, the Supreme Court halted executions because of the death penalty's arbitrary application. Furman v. Georgia, 408 U.S. 238, 239–

40 (1972). Justice Brennan highlighted the constitutional and moral requirement that the government must not, "without reason, . . . inflict[ ] upon some people a severe punishment that it does not inflict upon others." Id. at 274 (Brennan, J., concurring). Indeed, "the very words 'cruel and unusual punishments' imply condemnation of the arbitrary infliction of severe punishments." Id. Justice White cautioned against a death-penalty regime where "there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." Id. at 313 (White, J., concurring). And Justice Stewart concluded that the Constitution "cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed." Id. at 310 (Stewart, J., concurring).

Four years later, the Court allowed executions to proceed, satisfied that newly enacted state statutes would "provide guidance to the sentencing authority and thereby reduce the likelihood that it will impose a sentence that fairly can be called capricious and arbitrary." Gregg v. Georgia, 428 U.S. 153, 194–95 (1976). Despite Gregg's promise of a rational, balanced, and fair system of executions, Lee's case underscores how the death penalty continues to be arbitrarily applied. Everyone agrees that Kehoe was far more culpable than Lee, yet Kehoe was sentenced to life in prison while Lee was sentenced to death.

Lee's case is extraordinary. The trial judge and the lead prosecutor, as well as members of the victims' family have all expressed their beliefs that it would be unjust to execute Lee. As Judge Eisele noted, "All who review the record will recognize the unequal and disparate roles that Kehoe and Lee played in their horrific crime spree, which Kehoe directed and Lee joined intermittently." DCD 1353 Ex. A. Judge Eisele expressed particular concern about the government's use of the PCL-R psychopathy finding and the role it played in the jury's ultimate verdict, writing "the end result leaves me with the firm conviction that justice was not served." Id. Yet Lee remains on death row.

Dan Stripling, the Assistant United States Attorney who prosecuted Lee's case, finds it "very disturbing the randomness with which defendants are charged, convicted, and sentenced in capital cases. [Lee's] case perfectly illustrates this unexplainable randomness." DCD 1353 Ex. B. "Kehoe is intelligent, appeared

clean cut, and had support of convincing witnesses who genuinely supported him. Lee had none of the benefits. If this was the reason for the jury's decision, life should not be taken because of these disparities." Id.

Kimma Gurel, who is Nancy Mueller's sister and Sarah Powell's aunt, wrote:

Even though he was the leader, Chevie Kehoe was sentenced to life in prison. However, Daniel Lee got the death sentence. Maybe the jurors based their decision on Daniel Lee's looks; having a swastika neck tattoo and a blind eye made him look pretty scary. Chevie Kehoe was a clean-cut young man with a wife and four kids who would lose their father. **Whatever the reason, it was not fair or just for Daniel Lee to be sentenced to death, and none of the reasons I come up with make me feel any better.**

DCD 1353 Ex. C (emphasis in original).

There is no question that the death penalty is unique in its severity and irrevocability. Gregg, 428 U.S. at 187. With Lee's life at stake, courts must be "particularly sensitive to insure that every safeguard is observed." Id. The sentencing disparity between Kehoe and Lee, along with serious questions about the evidence presented to the jury at both trial and sentencing and the government's course of conduct during Lee's post-conviction proceedings, underscores how denying relief to Lee—who faces execution to carry out a sentence of death—risks severe injustice. At a minimum, the unjust and arbitrary result in the case of United States v. Daniel Lewis Lee threatens to undermine the public's confidence in the judicial process on which we all rely.

I dissent.

_____

July 12, 2020

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.
_____
        /s/ Michael E. Gans

| | |
|---|---|
| **From:** | ca08ml_cmecf_Notify@ca8.uscourts.gov |
| **Subject:** | 20-2351 Daniel Lee v. United States "Amended Judgment Filed coa denied" (4:18-cv-00649-KGB, Lead: 4:97-cr-00243-KGB-2) |
| **Date:** | Sunday, July 12, 2020 11:08:08 PM |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**Eighth Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was filed on 07/12/2020

  **Case Name:**     Daniel Lee v. United States

  **Case Number:**   20-2351

  **Document(s):**   Document(s)


**Docket Text:**
AMENDED JUDGMENT FILED: Lee's motion for stay of execution pending appeal has been considered by the court and is denied. The application for a certificate of appealability and alternative motion for authorization to file a second or successive motion under 28 U.S.C. § 2255 are also denied.

Judge Kelly would grant the motion for stay of execution and the application for a certificate of appealability.
See attached judgment for Judge Kelly's dissent. STEVEN M. COLLOTON, JANE KELLY and RALPH R. ERICKSON July 2020 [4932692] [20-2351] (Amanda Trautt)

**Notice will be electronically mailed to:**

Mr. Michael S. Gordon, Assistant U.S. Attorney: Michael.Gordon@usdoj.gov, sonya.jeffords2@usdoj.gov, stephanie.mazzanti@usdoj.gov, john.webster@usdoj.gov, leslie.bright@usdoj.gov
Mr. George Gust Kouros, Assistant Federal Public Defender: George_Kouros@fd.org
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Morris H. Moon, Assistant Federal Public Defender: Morris_Moon@fd.org, moonmorris@aol.com
Mr. John Michael Pellettieri: john.pellettieri@usdoj.gov
Mr. Jonathan Dean Ross, Assistant U.S. Attorney: jonathan.d.ross@usdoj.gov
Ms. Shannon S. Smith, Assistant U.S. Attorney: Shannon.Smith@usdoj.gov


**Notice will be mailed to:**

Mr. Daniel Lewis Lee
U.S. PENITENTIARY
P.O. Box 33
Terre Haute, IN 47808-0033

The following document(s) are associated with this transaction:
**Document Description:** Amended Judgment
**Original Filename:** /opt/ACECF/live/forms/AmandaTrautt_202351_4932692_BlankJudgment_128.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/12/2020] [FileNumber=4932692-0]
[3595571b8ad2fb8af18a5423f41c622deeba64019e612ffd4c558ca130bf71d414b729336e65a6b15ac5be78cab36873980d82733b96d10c44a17c8601536d8e]]
**Recipients:**

- Mr. Michael S. Gordon, Assistant U.S. Attorney
- Mr. George Gust Kouros, Assistant Federal Public Defender
- Mr. Daniel Lewis Lee
- Mr. Jim McCormack, Clerk of Court
- Mr. Morris H. Moon, Assistant Federal Public Defender
- Mr. John Michael Pellettieri
- Mr. Jonathan Dean Ross, Assistant U.S. Attorney
- Ms. Shannon S. Smith, Assistant U.S. Attorney

The following information is for the use of court personnel:


**DOCKET ENTRY ID:** 4932692
**RELIEF(S) DOCKETED:**
  coa denied
**DOCKET PART(S) ADDED:** 6568884, 6568881, 6568882, 6568885